# 25-443

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

JOSEPH J. CECCARELLI, SUSAN L. CECCARELLI,

*Plaintiffs-Appellants,*

-against-

MORGAN STANLEY PRIVATE BANK, N.A., AS ORIGINAL HOLDER OF CECCARELLI NOTE AND AS SUCCESSOR-IN-INTEREST SERVICING AGENT FOR PRESENTLY UNKNOWN PURCHASERS DOES OF CECCARELLI NOTE AS PART OF SECURITIZED POOL OF RESIDENTIAL MORTGAGE NOTES, AND

PURCHASER DOES IN THE CHAIN OF TITLE AFTER SALE OF CECCARELLI NOTE BEING UNKNOWN TO PLAINTIFFS, PRINCIPALS-NEW CREDITORS, SUCCESSORS-IN INTEREST TO DEFENDANT ORIGINAL HOLDER OF CECCARELLI NOTE UNDER MORTGAGE ELECTRONIC RECORDING SYSTEM, INC. FOR MEMBER BANKS (MERS),

*Defendants-Appellees.*

On appeal from Orders and Judgment of the U.S. District Court for the Southern District of New York

## APPELLANTS' BRIEF

**CECCARELLI LAW FIRM PLLC**
12 East 49th Street, 11th Floor
New York, New York 10017
(917) 710-6231
jceccarelli@ceccarellilaw.com
*Attorneys for Plaintiffs-Appellants*

TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .......................................................................... iv

NATURE OF THE ACTION ......................................................................... 1

THE RESULT BELOW .................................................................................. 2

STATEMENT OF THE CASE ....................................................................... 4

    A. AMENDED COMPLAINT AND CERTIFIED RECORD ON
       APPEAL BEFORE APPELLATE DIVISION OF STATE OF
       NEW YORK, FIRST DEPARTMENT (SpA. Sec. 3, 25-792) .............. 4

STATEMENT OF QUESTIONS PRESENTED ........................................... 6

TEXT OF SIGNIFICANT STATUTORY PROVISIONS UNDER FEDERAL
TRUTH IN LENDING ACT PERTAINING TO MORTGAGE LOAN
TRANSACTIONS (SpA. Sec. 2, 22-24) ..................................................... 10

ARGUMENT .................................................................................................. 11

LEGAL STANDARDS FOR MOTION TO DISMISS
UNDER RULES 12(b)(1) and (6) ............................................................... 11

POINT I

PRELIMINARY INJUNCTIVE RELIEF SHOULD ISSUE STAYING
ENFORCEMENT OF STATE COURT FORECLOSURE JUDGMENT
UNDER COUNT II OF THE AMENDED COMPLAINT PENDING THE
DETERMINATION OF PLAINTIFFS HOMEOWNERS TILA STATUTORY
CLAIMS ON THE MERITS FOR VIOLATION OF MRPC RULE 3.3 ................... 15

    A. DEFENDANT MERS BANK'S COUNSEL MADE
       MATERIALLY FALSE STATEMENTS THAT IT WAS THE
       HOLDER IN DUE COURSE OF AN INDORSED NOTE TO
       MAKE ITS PRIMA FACIE CASE OF STANDING (REAL
       PARTY IN INTEREST CAPACITY) AS THE TRUE, SOLE
       AND LAWFUL OWNER OF THE NOTE UNDER NY UCC 3-
       202 AT THE INCEPTION OF THE FORECLOSURE ACTION,

i

WHEN IN FACT THERE NEVER WAS SUCH AN
INDORSEMENT .................................................................................. 15

POINT II

THE COURT HAS SUBJECT MATTER JURISDICTION UNDER EXXON
MOBIL AND ENSUING SECOND CIRCUIT AUTHORITY, AND
CONCOMITTANT SUPPLEMENT JURISDICTION UNDER COUNT II OF
THE AMENDED COMPLAINT TO STAY ENFORCEMENT OF STATE
COURT JUDGMENT OF FORECLOSURE TO PRESERVE THE STATUS
QUO PENDING DETERMINATION OF PLAINTIFFS' TILA STATUTORY
CLAIMS UNDER COUNT I AGAINST DEFENDANT MERS BANK AND
ITS END-NOTE BUNDLER, JOINTLY AND SEVERALLY UNDER
FEDERAL TRUTH IN LENDING ACT, SECTIONS 1640(a)(2)(A)(i),(3), (e)
and (h); 1641(f)(1), and (g) .......................................................................... 23

    A. THE MAIN THRUST OF COUNT II OF THE AMENDED
       COMPLAINT IS FOR INJUNCTIVE RELIEF STAYING
       ENFORCEMENT OF THE UNDERLYING FORECLOSURE
       ACTION PENDING THE DETERMINATION OF
       PLAINTIFFS' TILA DAMAGE CLAIMS ON THE MERITS ........... 28

POINT III

HOMEOWNERS ARE NOT BARRED FROM PROSECUTING  THEIR
TILA DAMAGE CLAIMS OFFENSIVELY, OR DEFENSIVELY UNDER
TILA LIMITATIONS PERIOD SECTIONS 1640(h) or (e), RESPECTIVELY
AGAINST DEFENDANTS MERS BANK, AND ITS PRINCIPAL END-
NOTE MERS BANK BUNDLER UNDER WELL-SETTLED PRINCIPLES
GOVERNING EQUITABLE TOLLING, FOR PUBLIC POLICY REASONS
ENUNCIATED BY FORMER CHIEF JUDGE OF THE COURT OF
APPEALS OF THE STATE OF NEW YORK, HON. JUDITH ANN KAYE
IN MERSCORP, INC V. ROMAINE ......................................................... 30

    A. OVERARCHING REMEDIAL PURPOSES AND LIBERAL
       CONTRUCTION OF TILA ................................................ 30

    B. APPLICATION OF EQUITABLE TOLLING DOCTRINE ............... 33

POINT IV

PLAINTIFFS ARE NOT BARRED BY RES JUDICATA OR COLLATERAL
ESTOPPEL FROM LITIGATING INDEPENDENT, FEDERAL COURT,
ORIGINAL JURISDICTION STATUTORY CLAIMS OFFENSIVELY

UNDER TILA SECTION 1640(h) AND F.R.C.P. RULE 19, BECAUSE
THERE IS NO IDENTITY OF PARTIES OR ISSUES IN FORECLOSURE
ACTION .................................................................................................. 42

      A. THERE WAS NO BASIS FOR HOMEOWNERS TO HAVE
         PROSECUTED THEIR TILA CLAIMS DEFENSIVELY
         UNDER TILA SECTION 1640(e) IN STATE COURT, SINCE
         DEFENDANT MERS BANK NEVER ADDED IT PRINCIPAL
         END-NOTE BUNDLER MERS BANK AS A PARTY
         PLAINTIFF, EVEN PUTTING ASIDE FOR SAKE OF
         DISCUSSION, FUNDAMENTAL PUBLIC POLICY
         UNDERGIRDING NEW YORK'S PERMISSIVE
         COUNTERCLAIM RULE ..................................................... 42

CONCLUSION.......................................................................................... 48

CERTIFICATE OF COMPLIANCE.......................................................... 50

## TABLE OF AUTHORITIES

**CASES:**

*Amalfitano v. Rosenberg*, 533 F.3d 117 (2d Cir. 2008)................................ 15

*American Trucking Ass'n, Inc. v. New York State Thruway Authority*, 795 F.3d 351 (2d Cir. 2015)....................................................................................... 47

*Anderson Bros. Ford v. v. Alencia*, 452 U.S.205 (1981) ............................. 30

*Ascroft v. Iqbal*, 556 U.S. 662 (2009) ................................................... 11, 14

*Atlantic City Electric Co. v. General Electric Co*., 312 F.2d 236 (2d Cir. 1962)........ 33

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd*., 968 F.2d 196 (2d Cir. 1992) ........................................................................................................ 12

*Aurecchione v. Schoolman Transp. Sys., Inc*., 426 F.3d 635 (2d Cir. 2005)......... 12, 13

*Bailey v. Glover*, 88 U.S. (21 Wall) 342 (1875) ......................................... 36

*Beach v. Ocwen Fed. Bank,* 523 U.S. 410 (1998) ....................................... 30

*Bell Atl. Corp. v. Twombly,* 550 U.S.544 (2007) .................................... 11, 14

*Bernheim v. Litt*, 79 F.3d 318 (2d Cir. 1996) ............................................. 12

*Blue Tree Hotels, Inc v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212 (2d Cir. 2004)...................................................................................... 15

*Burnett v. New York Central R.R. Co.,* 380 U.S. 424 (1964) ....................... 35

*Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41 (2d Cir. 2003)............... 13

*Cerbone* v. *International Ladies' Garment Workers' Union*, 768 F.2d 45 (2d Cir. 1985).................................................................................................. 37

*Clement v. Am. Honda Fin. Corp.* 145 F.Supp. 2d 206 (D.Conn.2001)................. 31

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................... 12

*Council v. Better Homes Depot, Inc*., No. 04-CV-5620, 2006 WL 2376381 (E.D.N.Y. Aug. 16, 2006)....................................................................... 37

*D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S. Ct. 1303 (1983)............. 23

*Deans v. Bank of America.,* 2011 WL 5103343 (S.D.N.Y. Oct. 27, 2011)............ 15

*Detroit City Gas Co. v. Syme*, 109 F.2d 366 (2d Cir. 1940) ........................................ 32

*DiFalco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010) ..................................... 14

*Duncan v. Walker,* 533 U.S. 167 (2001) ........................................................................ 38

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280 (2005) ....... 7, 23, 24, 26

*Fiorenza v. Fremont Inv. & Loan,* No. 08-CV-858, 2008 WL 2517139
(S.D.N.Y. June 20, 2008) ............................................................................................... 31

*Fire & Police Pension Association of Colorado v. Bank of Montreal*, 368
F.Supp.3d 681 (S.D.N.Y. 2019) ..................................................................................... 37

*GASH Assocs. v. Rosemont*, 995 F.2d 726 (7th Cir. 1993) ........................................... 23

*Greenlee v. Steering Wheel, Inc*., 693 F. Supp. 1396 (D. Conn.1988) .................... 32, 40

*Grimes v. Fremont Gen, Corp.,* 785 F. Supp.2d 269 (S.D.N.Y. 2011) ........................ 39

*Hoblock v. Albany County Bd. Elections*, 422 F.3d 77 (2d Cir. 2005) .............. 7, 24, 25

*Holmberg v. Armbrecht*, 327 U.S. 392 (1945) .............................................................. 33

*Hoover v. Ronwin*, 466 U.S. 558 (1984) ....................................................................... 12

*Kaiser v. Cahn*, 510 F.2d 282 (2d Cir. 1974) ............................................................... 36

*King v. State of Cal.,* 784 F.2d 919 (9th Cir. 1986) ..................................................... 35

*Kreindler v. United Techs Corp*., 985 F.2d 1148 (2d Cir.1993) .................................. 13

*Kurz v. Chase Manhattan Bank*, 273 F. Supp.2d 474 (S.D.N.Y. 2003) ............... 30, 34

*Long Island Lighting Co. v. Transamerica Delayal Inc*., 646 F.Supp. 1442
(S.D.N.Y.1986) .............................................................................................................. 36

*Magee v. Nassau County Med. Ctr.,* 27 F.Supp.2d 154 (E.D.N.Y. 1998) ................... 13

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................. 12

*McCarthy v . Port of New York*, 21 AD2d 248 (1st Dept 1968) .................................. 46

*McKithen v. Brown*, 481 F.3d 89 (2007) .......................................................... 7, 24, 29

*McLamb v. County of Suffolk*, 280 Fed. Appx. 107 (2d Cir. 2008) ............. 7, 23, 24, 29

*MERSCORP, Inc. v. Romaine*, 8 N.Y. 3d 90 (2006) .................................. 8, 30, 38, 40

*Morgan Stanley Private Bank, N.A v. Ceccarelli,* 210 A.D.3d 478, 178 N.Y.S. 2d 28 (1st Dept. 2024) ........................................................................ 17

*Myers v. Citicorp Mortgage, Inc.,* 878 F. Supp. 1553 (Dist Ct., M.D. Alabama, 1995 ........................................................................................................ 32, 41

*N.C. Freed Co., Inc. v. Bd. of Governors of Fed.Res.Sys*., 473 F.2d 1210 (2d Cir. 1973) ...................................................................................................... 34

*Nash v. Port Authority of New York and New Jersey*, 22 NY3d 220 ......................... 46

*New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065 (2d Cir. 1988) ......................... 37

*Paramount Pictures Corporation v. Allianz Risk Transfer AG*, 31 N.Y.3d 64 (2018) ................................................................................................................. 42

*Phifer v. City of New York*, 289 F.3d 49 (2d Cir. 2002) ............................................ 13

*Rawlings v. Ray*, 312 U.S. 96 (1941) ........................................................................ 36

*Rooker v. Fid. Trust Co*., 263 U.S. 413 (1923) .......................................................... 23

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .......................................................... 13

*Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008) ....................................... 29

*Saint-Jean v. Emigrant Mortg. Co.* 50 F. Supp.3d 300 (E.D.N.Y. 2014) .............. 34, 37

*Schnall v. Marine Midland Bank,* 225 F.3d 263 (2d Cir.2000) ................................. 31

*Smith v. Fid. Consumer Disc. Co.,* 898 F.2d 896 (3d Cir.1990) ................................ 31

*Sonterra Captial Master Fund, Ltd. v. Barclays Bank PLC*, 366 F.Supp.3d 516 (S.D.N.Y. 2018) .......................................................................................... 36

*Sweet v. Sheahan*, 235 F.3d 80 (2d Cir. 2000) .......................................................... 12

*Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239 (2d Cir. 2014) ................................................................................................................. 13

*Trapp v. American Trading and Production Corp.*, 66 AD2d 515, 1st Dept.) ............ 46

*US Bank, N.A. v. Nelson*, 36 NY3d 998(2020) ................................................ 16, 21, 44

*Vermont Federal Bank v. Chase*, 641 N.Y.S.2d 440 (N.Y.A.D. 3 Dept. 1996) ......... 18

*Wilson v. Merrill Lynch & Co*., 671 F.3d 120, 128 (2d Cir. 2011) ............................ 11

**STATUTES:**

12 U.S.C. § 2605(i)(2)-(3) ............................................................. 32

15 U.S.C. § 1601(a) ....................................................................... 30

15 U.S.C. § 1640(a) ....................................................................... 31

15 U.S.C. § 1640(a)(2)(A)(i), (3) .............................. 1, 5, 6, 11, 23, 27

15 U.S.C. §§ 1640(e), (h) .......................................................... *passim*

15 U.S.C. § 1641(f)(1) .............................................................. *passim*

15 U.S.C. § 1641(f)(3) .............................................................. *passim*

15 U.S.C. § 1641(g) ................................................... 33, 37, 38, 39, 41

28 U.S.C. § 1257 ....................................................................... 1, 6

28 U.S.C.A. § 1738 ....................................................................... 26

CPLR § 3011 ........................................................................... 42, 43

CPLR § 3012-b ............................................................................. 21

CPLR § 3019 ........................................................................... 42, 43

CPLR § 5015(a)(1) ....................................................................... 46

CPLR § 5015(a)(3) ....................................................................... 46

CPLR § 5519(c) ....................................................................... 19, 45

RPAPL § 1302-a ..................................................................... 21, 44

## NATURE OF THE ACTION

In this case of first impression, the Plaintiffs Homeowners-Appellants (at times "Plaintiffs" or "Homeowners") set forth comprehensive and detailed factual allegations and two claims for relief in their Amended Complaint ("AC") against Defendant MERS member banks, undisclosed principal real estate mortgage-backed securities, end-note bundler Doe in assignment chain of title to the Plaintiffs' mortgage note under NY UCC 3-202, and the original holder of the Homeowners' mortgage note, and its servicing agent, the named Defendant-Appellee Morgan Stanley Private Bank, N.A. (at times "Defendant MERS Bank") (collectively "Defendants-Appellees" or "Defendants MERS Banks") with respect to:

1) Subject matter jurisdiction of the court below under Article III of the U.S. Constitution and 28 U.S.C.§ 1257 to adjudicate Plaintiffs Federal Truth in Lending Act (TILA) statutory claims under Count I of the AC against Defendant MERS Bank, as the original holder of the Homeowners' Note, and its principal RMBS MERS end-note bundler Doe, jointly and severally Sections 1640(a)(2)(A)(i), (e) and (h); 1641(f)(1), and (g).

2) Offensive and defensive Limitations periods under Section 1640(e) and (h), respectively, the Plaintiffs Homeowners' TILA claims against the Defendants MERS Banks. Jointly and severally, not having run under well-settled principles

governing equitable tolling, including the inherently self-concealing nature of

MERS business and operations model for Defendants MERS Banks for the public

policy reasons enunciated by former Chief Judge of the New York Court of

Appeals, Hon. Judith Ann Kaye in the court's concurring opinion in the seminal

MERS case in New York *MERSCORP, Inc. v. Romaine*, 8 N.Y. 3d 90, 104 (2006).

3) Supplemental Jurisdiction of the District Court to issue preliminary

injunctive relief against Defendant MERS Bank to stay enforcement of underlying

foreclosure judgment against Plaintiffs Homeowners to preserve the status quo

pending the determination of their TILA statutory claims against Defendants

MERS Banks, jointly and severally on the merits (AC, Count II).

## <u>THE RESULT BELOW</u>

Defendant MERS Bank's motion to dismiss the AC for lack of subject

matter jurisdiction, Fed. R. Civ. P. 12(b)(1) and failure to state a claim, Fed. Civ. P.

12(b)(6) with respect to Plaintiffs' Homeowners TILA statutory claims under

Count I of the AC was granted, and Plaintiffs Homeowners' motion for preliminary

injunctive relief, Fed Civ. P. 65 under Count II of the AC to preserve the status quo

pending the determination of their TILA claims on the merits was denied by

Opinion and Order of Hon. J. Paul Oetken, U.S.D.J, filed January 24, 2025. (SpA.

Sec. 1, 1-15)

2

Plaintiffs Homeowners' motion to reconsider the Opinion and Order and for limited amendment was denied by Order of the District Court, filed March 25, 2025. (SpA. Sec. 1, 17-21)

## STATEMENT OF THE CASE[1]

### A. AMENDED COMPLAINT AND CERTIFIED RECORD ON APPEAL BEFORE APPELLATE DIVISION OF STATE OF NEW YORK, FIRST DEPARTMENT (SpA. Sec. 3, 25-792)

Amended Complaint ("AC") (A.10-54) organizes factual allegations at

Part IV into five sections at AC ¶¶ 24-134:

Sec. A: Plaintiffs Homeowners and the condominium apartment in issue;

Sec. B (¶¶ 24-31) mortgage finance terms and conditions, including the right to

lock into a fixed rate (¶¶ 32-35); Sec. C: MERS Business Model, including the

---

[1] Page References to Sec. 3 of the accompanying Special Appendix pursuant to leave granted by Order of the Second Circuit filed April 13, 2025 appearing at AMCS Dkt Entry: 22, are to the fully reproduced Record on Appeal to the NY Appellate Division, First Department from the final judgment of residential foreclosure issued by the lower state court are shown as "SpA:" followed by the sequential numbering set forth in the SpA.

Page References to the accompanying Appendix are to:

1) Electronic Index and files in lieu of record transmitted and certified by the SDNY Clerk to USCA, appearing under ACMS Dkt Entry: 5, with respect to Notice of Appeal from each and every part of the Order and Opinion of Hon. J. Paul Oetken, U.S.D.J, filed January 24, 2025; and

2) First Supplemental Electronic Index and files in lieu of record transmitted and certified by the SDNY Clerk to USCA, appearing under ACMS Dkt Entry: 18 with respect to the Amended Notice of Appeal from each and every part of the Order of the same District Court, filed March 31, 2025, are shown as "A:" followed by the sequential numbering set forth in the Appendix.

public policy issues presented by MERS (¶¶ 36-61); Sec D: Sale of the
Homeowners mortgage note by Defendant MERS bank to unidentified RMBS
MERS Bank end-note bundler Doe (¶¶ 62-84); Section E; Pertinent Litigation
History of State Court foreclosure action.(¶¶ 85-134).

Factual Allegations in the AC are followed by Section V, two claims for
relief. Count I is Plaintiffs Homeowners' TILA statutory damage claims with
respect to the intersection of Sections 1640(a)(2)(A)(i), (e) and (h); 1641(f)(1), and
(g) (¶¶ 135-159). Count II is Plaintiffs Homeowners' claims for injunctive relief to
preserve the status quo pending the adjudication of their TILA claims on the merits
(¶¶ 160-204).

The two Counts incorporate each of the factual allegations of the AC.
Count II incorporates the allegations under Count I as well.

The beginning of the Factual Allegations section of the AC provides that
Page References to "R_" are to the fully reproduced certified Record on Appeal to
the NY Appellate Division from the final judgment of foreclosure issued by the
lower state court. It is a matter of public record and has been made an integral part
of the AC at p. 6, fn1. (A.18) which the District Court has taken judicial notice of
(SpA. Opinion and Order, at p. 3, fn2).

The Record on Appeal was bookmarked and electronically filed with the
Appellate Division and the NYSCEF links to the electronic Record were furnished

for the convenience of the District Court and a physical copy of the entire Record on Appeal was offered to be furnished to chambers upon request at p. 6, fn1 of the AC (A.18).

References to "R.__" appear throughout the factual allegations and the two counts in the AC (A. 10-54). They are to consecutive numbering appearing in the Appellate Division's certified Record on Appeal in the accompanying Special Appendix, SpA. Section 3, 25-792.

## STATEMENT OF QUESTIONS PRESENTED

### I. Subject Matter Jurisdiction

In this case of first impression, did the District Court err and abuse its discretion in granting Defendant Bank's motion to dismiss the Amended Complaint ("AC") on the grounds that it does not have subject matter jurisdiction under Article III of the U.S. Constitution and 28 U.S.C.§ 1257 to adjudicate Plaintiffs statutory claims against Defendant MERS member banks, undisclosed principal real estate mortgage-backed securities, end-note bundler Doe in assignment chain of title to the Plaintiffs' mortgage note contract under NY UCC 3-202, and its servicing agent, Defendant Bank (collectively, Defendants MERS Member Banks), jointly and severally, under the Federal Truth in Lending Act (TILA), §§ 1640(a)(2)(A)(i),(3), (e) and (h); 1641(f)(1), and (g) ?

A. Did the lower court err and abuse its discretion in misconstruing and misapplying *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) and ensuing Second Authority, including *Hoblock v. Albany County Bd. Elections*, 422 F.3d 77 (2d Cir. 2005), *McKithen v. Brown*, 481 F,3d 89 (2007) and *McLamb v. County of Suffolk*, 280 Fed. Appx. 107 (2d Cir. 2008) in granting Defendant MERS Bank's motion to dismiss the AC for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), despite the Plaintiffs Homeowners making explicit and stipulating in its briefing what was at minimum implicit that the plain thrust of the relief sought in Count II of the AC was limited to injunctive relief to preserve the status quo pending the adjudication on the merits of their TILA claims, and does not require the court below to sit in review of the underlying state court judgment of foreclosure?

## II. Defensive and Offensive Limitations Periods under 1640(e) and (h), respectively

In this case of first impression, did the court below err and abuse its discretion in granting Defendant Bank's motion to dismiss the AC for failure to state a claim under F.R.C.P 12(b)(6), regarding expiration of the defensive and offensive limitations periods under 15 U.S.C. 1640(e) and (h) respectively, on the grounds that Plaintiffs Homeowners TILA  statutory claims against the Defendants MERS Member Banks, jointly and severally, has not run under well-settled

7

principles governing equitable estoppel and tolling, given the inherently self-concealing nature of MERS Business Model and operations for Defendants MERS member banks for the public policy reasons stated by Chief Judge of the New York Court of Appeals, Hon. Judith Ann Kaye in her concurring opinion in *MERSCORP, Inc. v. Romaine*, 8 N.Y. 3d 90, 104 (2006).

> A. Did the lower court err and abuse its discretion in not ruling that the fraudulent concealment prong for the application of equitable tolling principles to apply to the running of the defensive and offensive limitations periods under 1640(e) and (h), respectively has been satisfied by the inherently self-concealing nature of the MERS business model and operations, compounded by the mutual financial self-interest of Defendants MERS Member Banks in concealing who the real-party-in-interest, undisclosed principal RMBS, end-note bundler Doe is in assignment ownership chain of title to the Plaintiffs' mortgage note under NY UCC 3-202 since the inception of the foreclosure action and thereafter ?

## III. No Identity of Issues or Parties for Issue Preclusion to Apply

Did the court below err and abuse its discretion, in granting Defendant Bank's motion to dismiss the AC under Fed. R. Civ. P. 12(b)(6) on the grounds of res judicata and collateral estoppel without running afoul of Fed. R. Civ. P. 19

requiring joinder of necessary and indispensable parties, where full and complete relief cannot be afforded to Plaintiffs Homeowners regarding the joint liability of Defendants MER Banks prayed for in the AC, and where directing dismissal and non-joinder of undisclosed principal RMBS MERS Bank end-note bundler Doe in assignment chain of title to the Plaintiffs' mortgage note under NY UCC 3-202, would deprive Plaintiffs Homeowners of their day in Court to test their TILA statutory claims against them as principal and servicing agent and original holder of Plaintiffs Homeowners Note of Defendant MERS Banks, jointly and severally?

A. Did the court below err and abuse its discretion in granting Defendant Bank's motion to dismiss the AC under Fed. R. Civ. P. 12(b)(6) on the grounds of Res judicata and collateral estoppel, where there is no identity of parties and issues and the central question in the present TILA action is whether Defendant new creditor note assignee unidentified principal end-note bundler Doe in the assignment chain of ownership and title to Plaintiffs' mortgage note was acting in its financial self-interest with its servicing agent Defendant MERS Bank in concealing the identity of Defendant RMBS MERS Bank end-note bundler in assignment chain of title to Plaintiffs Homeowners' mortgage note in violation of the public policies undergirding 1640(h), 1641(f)(1) and (g)?

B. Did the lower court err and abuse its discretion in relying solely upon prior motion papers outside the certified record on appeal properly before the

Appellate Division, First Department which was not an integral part of the AC

before the District Court in dismissing the AC under Fed. R. Civ. P. 12(b)(6) on the

grounds of res judicata or collateral estoppel?

**IV. Issuance of Preliminary Injunctive Relief to Preserve Status Quo**

Did the lower court err and abuse its discretion in denying preliminary

injunctive relief against Defendant Bank servicing agent to stay enforcement of the

underlying foreclosure judgment against Plaintiffs Homeowners to preserve the

status quo pending the determination of their TILA statutory claims against its

Defendant undisclosed principal real estate mortgage-backed securities, end-note

bundler Doe in assignment chain of title to Plaintiffs' mortgage note under NY

UCC 3-202,  jointly and severally on the merits (AC, Count II), notwithstanding

the showing of likelihood of success on the merits, or at minimum serious

questions that go to the merits based on the extensive evidentiary showing in the

certified Record on Appeal before the Appellate Division, First Department, that

Defendant Bank was not the true, sole and lawful owner of the Plaintiffs

Homeowners' Note at the inception of the foreclosure action as more fully set

forth in SpA. Sec. 3.

**TEXT OF SIGNIFICANT STATUTORY PROVISIONS
UNDER TILA PERTAINING TO MORTGAGE LOAN
TRANSACTIONS (SpA Sec. 2. 22-24)……….**

This case of first impression involves the intersection of the following

10

statutory provisions regarding the joint and several, civil liability of Defendants

MERS Member Banks, as original holder of the Homeowners' Note and servicing

agent to its successor, assignee principal RMBS Note Purchaser Doe under TILA,

§§ 1640(a)(2)(A)(i),(3), (e) and (h); 1641(f)(1), and (g).

The text of these statutory provisions appears attached as Sec. 2 to the

Special Appendix pursuant to L.R. 32.1(c).

## <u>ARGUMENT</u>

### **LEGAL STANDARDS FOR MOTION TO DISMISS**
### <u>**Rule 12(b)(1) and (6)**</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter ... to state a claim to relief that is plausible on its

face." *Wilson v. Merrill Lynch & Co*., 671 F.3d 120, 128 (2d Cir. 2011) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))."A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*,

556 U.S. at 678). In determining whether this standard is satisfied, courts assume

that all "factual allegations contained in the complaint" are true, *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all inferences in the light most

favorable to the non-moving party[ ]," *In re NYSE Specialists Sec. Litig*., 503 F.3d

89, 95 (2d Cir. 2007) (Sotomayor, J.) (citation omitted).

11

The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

Like a motion for failure to state a claim, when a court reviews a motion for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it accepts as true all material factual allegations in the complaint. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992) (internal citations omitted). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists, and "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it." ' *Aurecchione v. Schoolman Transp. System, Inc.,* 426 F.3d 635, 638 (2d Cir,. 2005) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In resolving a motion to dismiss under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint (or petition) as true and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d Cir. 2014). *Aurecchione v. Schoolman Transp. Sys., Inc*., 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").

In a challenge to the court's subject matter jurisdiction over a case, a court "may consider materials extrinsic to the complaint." *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002).

Where a motion to dismiss is made pursuant to both Rules 12(b)(1) and 12(b)(6), the Court first determines the jurisdictional motion because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."). *United States ex rel. Kreindler v. United Techs Corp*., 985 F.2d 1148, 1156 (2d Cir.1993) (internal quotation and citation omitted); *see also Magee v. Nassau County Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y. 1998).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe all claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir. 2003); *see also Roth v. Jennings*, 489

13

F.3d 499, 510 (2d Cir. 2007). To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ascroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). However, if the plaintiff's well-pleaded allegations "nudge [its] claims across the line from conceivable to plausible," the complaint will not be dismissed. See id. at 570.

When ruling on a motion to dismiss, the court may consider the "facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFalco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

It is well-established that courts may take judicial notice of documents available in the public record or integral as here to Plaintiffs TILA and related

claims. *See Deans v. Bank of America.,* 2011 WL 5103343 at 1 and 1 n.2 (S.D.N.Y. Oct. 27, 2011) (documents including "public records, such as (Plaintiffs Homeowners) litigation history in state court" were "judicially noticeable.") *See also Blue Tree Hotels, Inc v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004) (courts "may also look to public records, including complaints filed in state court in deciding a motion to dismiss")

## POINT I

**PRELIMINARY INJUNCTIVE RELIEF SHOULD ISSUE STAYING ENFORCEMENT OF STATE COURT FORECLOSURE JUDGMENT UNDER COUNT II OF THE AC PENDING THE DETERMINATION OF PLAINTIFFS HOMEOWNERS TILA STATUTORY CLAIMS ON THE MERITS FOR VIOLATION OF MRPC RULE 3.3.**

**A. DEFENDANT MERS BANK'S COUNSEL MADE MATERIALLYFALSE STATEMENTS THAT IT WAS THE HOLDER IN DUE COURSE OF AN INDORSED NOTE TO MAKE OUT ITS PRIMA FACIE CASE OF STANDING (REAL PARTY IN INTEREST CAPACITY)AS THE TRUE, SOLE AND LAWFUL OWNER OF THE NOTE REQUIRED UNDER NY UCC 3-202 AT THE INCEPTION OF THE FORECLOSURE ACTION, WHEN IN FACT THERE NEVER WAS SUCH AN INDORSEMENT**

When a lower court decision is predicated upon a material misrepresentation by an attorney in violation of the duty of candor under MRPC Rule 3.3, and this misrepresentation is outcome determinative, appellate courts have grounds to set aside the decision. *Amalfitano v. Rosenberg*, 533 F.3d 117 (2d Cir. 2008)

15

MRPC Rule 3.3 and the parallel rule in New York, NYRPC Rule 3.3, imposes a duty of candor on attorneys, requiring them not to knowingly make false statements of fact or law to a tribunal or fail to correct false statements previously made. *Rules of Prof. Con., Rule 3.3 McK.Consol.Laws, Book 29 App.* The rule underscores the importance of maintaining the integrity of the adjudicative process and obligates attorneys to take reasonable remedial measures, including disclosure to the tribunal, if they come to know that material evidence offered is false. *Id.*

Defendant MERS Bank counsel submitted an attorney's affirmation in opposition to Homeowners' summary judgment motion that the Homeowners' Note was indorsed pursuant to NY UCC 3-202 to make out its prima facie case that it was the "true, sole and lawful" owner of the note as a holder in due course, when it was not. (AC, ¶¶ 168-202) (*US Bank, N.A. v. Nelson*, 36 NY3d 998, 1006-1012 (2020) (Wilson, C.J. concurring) (proof of signed indorsement of note in blank or by assignment required showing chain of title to establish holder in due course ownership of note under NY UCC 3-202).

Defendant MERS Bank's counsel made this material representation of operative fact, not only to effect the outcome of the foreclosure action and obtain a judgment when it was not in fact a holder in due course of the Homeowners' Note at the inception of the state court action, but as a plainly cynical ruse to avoid completing discovery, including court-ordered discovery, because it had an

16

indorsed note signed by a bank officer or authorized representative, when in fact there was none. Completion of discovery by the homeowners would have pulled the curtain away from this deception by the Defendant Bank. (A. 10-54, AC, Sec. E, ¶¶ 90-92, 101-114).

On appeal to the Appellate Division, First Department, Defendant MERS Bank, instead of taking remedial measures to withdraw the improperly obtained judgment, doubled down and continued to argue that there was an indorsed note under NY UCC 3-202 to establish its real party in interest capacity to sue at the inception of the foreclosure action when there was none. In reliance on these representations by Defendant MERS Bank counsel, the Appellate Division affirmed the foreclosure judgment on the sole threshold issue of standing. *Morgan Stanley Private Bank, N.A v. Ceccarelli,* 210 A.D.3d 478, 178 N.Y.S. 2d 28 (1st Dept. 2024). The entire fully reproduced Record on Appeal that was before the Appellate Division is set forth at Section 3 in the accompanying Special Appendix. (SpA. 25-793)

Contrary to the representations made by Defendant MERS Bank's counsel, a close examination of the certified Record on Appeal shows that there is no indorsed note required under NY UCC 3-202 for Defendant MERS Bank to make out is prima facie case of proof of title to the Homeowners' note at the inception of the foreclosure action was ever produced by the bank, including in its opposing

papers to the Homeowners' motion for summary judgment to dismiss the foreclosure complaint on the threshold issue of standing. (SpA. 25-793)[2]

Defendant MERS bank's counsel misrepresentations regarding the existence of an indorsed note in compliance with NY UCC 3-202 when there was none, was never brought to the attention of the Appellate Division or the lower state court, nor was it ever brought to the attention of the District Court in this action.

Further, the District Court did not rely on the four corners of the certified Record of Appeal that was before the Appellate Division for review, and instead referred only to the papers submitted by the earlier granting of summary judgment by the Supreme Court (Bluth, J.) (Bluth, J. I) (MS no. 1) outside the certified Record (A.121). (SpA.10, 12, Op. p. 10, 12). Defendant MERS Bank knew this was the case by simple reference to the Table of Contents for the Record in the AC (A.18, p.6, fn 1), but it went ahead and did it anyway. This was a violation of New York Law, *Vermont Federal Bank v. Chase*, 641 N.Y.S.2d 440 (N.Y.A.D. 3 Dept. 1996).

---

[2] The Record on Appeal was electronically filed and bookmarked pursuant to the rules of the First Department and NYSCEF links to the fully reproduced Record were made an integral part of AC at p.6. fn1 with courtesy physical copies offered at chambers' request (A.18) which the District Court has taken judicial notice of (SpA. p. 3, fn2).

References to "R.__" in the AC are to the consecutive numbering appearing in the Record on Appeal beginning at SpA. 41.

Defendant Bank's motion to dismiss the AC should have been denied by the District Court on this basis alone. It was misleading and prejudicial to shift the focus away from what was properly in the Record on Appeal and made an integral part of the AC: that same Court (Bluth, J.) granted leave to bring on summary judgment to dismiss the complaint (Bluth, J. II) on the basis of new evidence, not the least of which was Defendant Bank's own cooperating fact and expert witness coming forward to give affidavit testimony on behalf of Plaintiffs homeowners (A.573-577, R. 519-523). These proofs would be prima facie admissible under Federal Rules of Evidence at a merits hearing and resulted in an interim stay on appeal under CPLR 5519(c). The Supreme Court also directed immediate discovery on the threshold issue of standing, which order Defendant defaulted upon (Bluth, J. III). (AC, ¶¶ 93-117, 123-127).

Defendant MERS Bank argued that even if the Court has subject matter jurisdiction to entertain the Plaintiff Homeowners TILA and related injunctive relief claims, they have not "proven" Defendant Bank "misrepresented its standing to foreclose on the property" (A. 276, Pt 1(B), Opp MOL to Pls. Preliminary Injunction Motion, at p.7) pointing to its letter notice, dated September 26, 2016, and saying the letter does not serve notice that the Ceccarelli Note was being sold to a RMBS Note Purchaser Doe five months before foreclosure action was ever commenced. (A. 221, Dkt. no. 20-4, p.98). However, Defendant Bank

19

conspicuously omits reference to page two of the same letter following at p.99 (A. 222), and the Record Evidence before the District Court on the Amended Complaint (A. 10-54, AC ¶¶ 72-73; R.511;524-525) which provides in pertinent part:

> "we will provide you with the following information about your loan….The name of the investor that holds your loan."

In this regard Section 20 of the Mortgage security instrument for the Ceccarelli Note provides in relevant part:

> "The Note, or an interest in the Note together with this Security Instrument may be sold one or more times. I may not receive prior notice of these sales." (AC ¶¶ 76-77; R. 519-522; 324, 308-392).

Aside from the Notice of Note sale, the Record Evidence before the Court demonstrates in a variety of material respects that Defendant Bank's capacity was no more than that a servicer of the Ceccarelli Note at the time of commencement of the foreclosure action, including the affidavit testimony of Defendant Bank's cooperating fact and expert witness, Mr. Pellegrino and two declarations against interest. (AC, ¶¶ 188-204, R. 519-523; Pls. summary judgment motion, R. 502-562). They independently corroborate each other and are admissible under the Federal Rules of Evidence for party admissions, Rule 801(d)(2); declarations against interest, Rule 803; and expert witness qualification, Rule 702.

In any event, it is Defendant Bank's burden of pleading and proving standing (not that of  Plaintiffs Homeowners) as the true, sole and lawful owner of

the *indorsed* Homeowners' Note under NY UCC 3-202 at the inception of the foreclosure action pursuant to CPLR § 3012-b and RPAPL § 1302-a. *US Bank, N.A. v. Nelson*, 36 N.Y.3d 998, 1010 (Wilson, C.J.)

Further, as Chief Judge Rowan D. Wilson explains in his concurring opinion, for Defendant Bank to have established standing (real-party-interest capacity) as an owner having title to the mortgage note as a holder in due course of a mortgage note entitled to sue on it at the commencement of a foreclosure action pursuant to NY UCC 3-202, it must attach to the Complaint an indorsement signed in blank, typically by a bank officer or other authorized representative, by the original note holder or a signed indorsement by assignment from a RMBS note purchaser in the chain of title to the note. *US Bank, N.A. v. Nelson*, at 1006-1012.

In the matter at hand, what Defendant MERS Bank has utterly failed to show in the exhibit attached to its motion to dismiss (A. 121-221), or in the greater entire four corners of the accompanying Appendix or Section 3 of the Special Appendix, which is an integral part of the Amended Complaint, was that it ever possessed or presented an *indorsed* note signed by a bank officer or other authorized representative pursuant to NY UCC 3-202, to make out its prima facie case of ownership of the Homeowners' Note at the inception of the foreclosure action.

Instead, Defendant MERS Bank made a deliberately false statement to the state court through an attorney's affirmation that it was in fact indorsed, when they

21

knew it was not (AC, ¶¶ 180, 174-186). Defendant MERS Bank knew the Homeowners' Note was never indorsed at any point before or after it served its Notice of Note Sale ((AC ¶¶ 72-73; R.511;524-525), up to and at least including the inception of the foreclosure action five months later (AC ¶¶ 174-199), because it was the Defendant MERS Bank (plaintiff in state court) which attached what it falsely claimed was proof of ownership of an *indorsed* note to the foreclosure complaint to make out its prima facie case on standing.(AC, Sec. E. ¶¶ 85-100).

Furthermore, any attorney saying things are so, that there is an i*ndorsed* note within the four corners of the accompanying Appendix and Special Appendix, when there is not, is not going to change these fundamental, threshold facts on the ground.

**POINT II**

**THE COURT HAS SUBJECT MATTER JURISDICTION UNDER
*EXXON MOBIL* AND ENSUING SECOND CIRCUIT AUTHORITY, AND
CONCOMITTANT SUPPLEMENT JURISDICTION UNDER COUNT II
OF THE AC TO STAY ENFORCEMENT OF STATE COURT
JUDGMENT OF FORECLOSURE TO PRESERVE THE STATUS QUO
PENDING DETERMINATION OF PLAINTIFFS' TILA STATUTORY
CLAIMS UNDER COUNT I AGAINST DEFENDANT MERS BANK AND
ITS END-NOTE BUNDLER, JOINTLY AND SEVERALLY UNDER
FEDERAL TRUTH IN LENDING ACT, SECTIONS 1640(a)(2)(A)(i),(3),
(e) and (h); 1641(f)(1),(2), and (g)**

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280 (2005), the

Supreme Court clarified that not all actions dealing with the "same or related

question" resolved in state court are barred in federal court. *Id*. at 292. Instead, a

district court must retain a case that presents an "independent claim" even if, in

parallel or concurrently, the claimant challenges or denies some conclusion reached

by the state court. *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726,

728 (7th Cir. 1993).

The Second Circuit has since followed the *Exxon Mobil* holding in *Hoblock

v. Albany County Bd. Elections*, 422 F.3d 77 (2d Cir. 2005) and in *McLamb v.

County of Suffolk*, 280 Fed. Appx. 107 (2d Cir. 2008).

According to the *Rooker-Feldman* doctrine, see *D.C. Court of Appeals v.

Feldman,* 460 U.S. 462, 103 S. Ct. 1303 (1983): *Rooker v. Fid. Trust Co*., 263 U.S.

413, 482 (1923), districts courts lack jurisdiction "to review final judgments of a

state court in judicial proceedings." *Feldman*, 460 U.S. at 482, 103 S.Ct. 1303.

23

The *Rooker-Feldman* bar applies when four elements exist: First, the federal court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517 (2005).

The Second Circuit has clarified that post Exxon Mobil handed down in March 2005, *Rooker-Feldman* does not apply merely because a plaintiff's federal court claims are "inextricably intertwined" with a state-court decision. To the extent, that the Second Circuit's pre-2005 cases reflected this standard, they did not survive the Supreme Court's decision in *Exxon Mobil*. See *Hoblock*, 422 F.3d at 84-85. *McLamb v. County of Suffolk*, 280 Fed. Appx. 107 (2d Cir. 2008).

In *Hoblock*, the Second Circuit further explained that the second and third "substantive requirements can be reduced to the following statement: "federal plaintiffs are not subject to the *Rooker-Feldman* bar *unless they complain of an injury* caused by a state judgment." *Hoblock*, 422 F. 3d at 87.

*McKithen v. Brown*, 481 F,3d 89 (2007), then followed and added that *Exxon Mobil* and *Hob lock* make clear is that the applicability of the *Rooker–Feldman*

24

doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court. *See Hoblock*, 422 F.3d at 87 ("[A] plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker–Feldman.*"); *Exxon Mobil, 544 U.S. at 293* (the *Rooker–Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," because "[i]f a federal plaintiff present [s] some independent claim[, i.e., a claim based on an injury that was not *caused by* the state-court judgment,] albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion" (internal quotation marks omitted) (second alteration in original)).

Further, the *McKithen* court held that a party is not complaining of an injury "caused by" a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been "caused by" those proceedings. (Plaintiff commenced a

subsequent §1983 suit seeking redress for an injury, denial of access to DNA testing to overturn criminal conviction in state court).

In sum, Exxon Mobil has clarified that federal jurisdiction does not automatically terminate upon the entry of a state-court judgment in parallel litigation. Instead, disposition of the federal action, once the state-court adjudication is complete would be governed by preclusion law under the Full Faith and Credit Act, 28 U.S.C.A. § 1738. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280 (2005). Federal courts may be bound to recognize the claim and issue-preclusive effects of a state court judgment, but federal jurisdiction over an action does not vanish simply because a state court has reached a judgment on the same or related question while the case remains sub judice in a federal court. *Id.*

Applying these fundamental principles to the action at bar, the Court has subject matter jurisdiction over this action for several reasons.

First, the remedies sought by Plaintiffs in the Amended Complaint for statutory and related damages under TILA as to which the Court has original jurisdiction (Claim One); are separate and independent from Claim Two, for a preliminary injunction staying the enforcement of the state court judgment to preserve the status quo pending determination of Plaintiffs' TILA claims on the merits, as to which the Court has supplemental jurisdiction. (AC ¶¶ 20-21).

26

While they involve the same bank note, the parties are different, they are jointly and severally liable, the TILA claims for damages under Count I are for interest rate setoffs, penalties and related damages under TILA, 15 U.S.C. §§ 1640 (e),(h) and 1640 (a)(2)(A)(i), (3) regarding them.

Therefore, the adjudication of Plaintiffs' TILA claims does not require this Court to sit in review of the state court judgment of foreclosure action except to the limited extent of issuing injunctive relief to preserve the status quo pending the determination of the TILA claims on the merits through discovery and final judgment. (AC, Sec, B ¶¶ 32-35; Sec. D. ¶¶ 62-84; Claim One, ¶¶ 135-159, Pellegrino Affidavit Testimony, A.573-577; R.519-523).

Second, Plaintiffs' TILA claims exist independent of the state court foreclosure judgment whether they arose five months before the foreclosure action began as the Record Evidence shows, or whether they arose, for argument's sake, one day after it was commenced. (*Id.*)

Third, Plaintiffs' statutory claims under TILA Sections 1640(a)(2)(A)(i),(3), (e) and (h); 1641(f)(1), and (g) (SpA. Sec. 2, 22-24), arose prior in time to the state court foreclosure action, so they could not have been "caused by" the subsequent state court action five months later. (*Id.*)

27

## A. THE MAIN THRUST OF COUNT II OF THE AMENDED COMPLAINT IS FOR INJUNCTIVE RELIEF STAYING ENFORCEMENT OF THE UNDERLYING FORECLOSURE ACTION PENDING THE DETERMINATION OF PLAINTIFFS' TILA DAMAGE CLAIMS ON THE MERITS

The Court ruled that it does not have subject matter jurisdiction because the Plaintiffs are complaining that the state court judgment should be "set aside and vacated" referring to a portion of the Ad Damnum Clause for Count II. (SpA.8, Op. p. 8). However, the clear thrust of the relief sought in Count II is limited to injunctive relief to preserve the status quo by staying enforcement of the judgment of foreclosure pending the adjudication of the Plaintiffs TILA claims on the merits.

Therefore, in an abundance of caution Plaintiffs seek leave pursuant to F.R.C.P. Rule 15 to amend the AC to the limited extent of further making explicit, what is at minimum already implicit and plainly reserved in the Plaintiffs' briefing [ACMS DktEntry: 5; SDNY, ECF no. 28, Point I (C]: the relief sought in the AD Damnum clause, and Nature of Action section of the AC supports the issuance of injunctive relief to preserve the status quo pending the determination of their TILA claims on the merits.

This limited amendment removes any arguable claim by Defendant Bank that this Court does not have subject matter jurisdiction to entertain Plaintiffs' TILA claims for damages under Count I for injuries that was not "caused by" underlying state court judgment (second and third *Rooker-Feldman* factors) under

28

a post-*Exxon Mobil* analysis, including ensuing Second Circuit authority, under *Hoblock*, *Mckithen,* and *McLamb.* The limited amendment will also support that the Court does indeed have supplemental jurisdiction to entertain Plaintiffs' Count II claim for injunctive relief (Pls. Moving and Reply Memo. of Law in Support of Preliminary Injunction, A. 67-87; ACMS DktEntry: 5; SDNY ECF no. 28).

Under Rule 15, leave should be freely granted for Plaintiffs to test their claims on the merits. There can be no demonstrable prejudice to a substantial right of the Defendant Bank, since it was given notice that they had reserved its right to do so under Plaintiffs' briefing, including the primary thrust of the remedies sought under its separate two counts. *Ruotolo v. City of New York*, 514 F.3d 184 (2d Cir. 2008).

In this regard, it is noted: 1) the Court has also held that it does have subject matter jurisdiction to adjudicate Plaintiffs Homeowners' TILA claims for damages under Count I (SpA. 7; Op. p.9, fn 4); and 2) Defendant MERS Bank has not opposed so much of Plaintiffs Homeowners as sought leave to amend the AC.

Upon these authorities and for these reasons, so much of the District Court's Opinion and Order which dismissed the AC pursuant to F.R.CP. 12(b)(1) for lack of subject matter jurisdiction to adjudicate Plaintiffs' TILA damage claims should be reversed.

## POINT III

**HOMEOWNERS ARE NOT BARRED FROM PROSECUTING THEIR TILA DAMAGE CLAIMS OFFENSIVELY, OR DEFENSIVELY UNDER TILA LIMITATIONS PERIOD SECTIONS 1640(h) OR (e), RESPECTIVELY AGAINST DEFENDANTS MERS BANK, AND ITS PRINCIPAL END-NOTE MERS BANK BUNDLER UNDER WELL-SETTLED PRINCIPLES GOVERNING EQUITABLE TOLLING WITH RESPECT TO MERS BANKS FOR THE PUBLIC POLICY REASONS ENUNCIATED BY FORMER CHIEF JUDGE OF THE NEW YORK COURT OF APPEALS, HON. JUDITH ANN KAYE IN *MERSCORP, INC V. ROMAINE***

### A. OVERARCHING REMEDIAL PURPOSES AND LIBERAL CONTRUCTION OF TILA

The Truth in Lending Act, originally enacted in 1968, was the first federal consumer protection law. As a remedial statute, it is intended to be construed liberally in favor of the consumer. *See Anderson Bros. Ford v. Valencia*, 452 U.S.205, 220 (1981); *Kurz v. Chase Manhattan Bank*, 273 F. Supp.2d 474, 477 (S.D.N.Y. 2003). The purpose of the Act is "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available…" 15 U.S.C. § 1601(a).

TILA was enacted by Congress to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available and avoid the uninformed use of credit ...." 15 U.S.C. § 1601(a); *see also Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412 (1998) (discussing TILA's purpose). Accordingly, "TILA requires that creditors provide borrowers with clear

30

and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights, as well as notice of the borrower's right of rescission." *Fiorenza v. Fremont Inv. & Loan,* No. 08-CV-858, 2008 WL 2517139, at * 2 (S.D.N.Y. June 20, 2008) (internal quotation marks omitted).

Creditors who fail to comply with these disclosure requirements are subject to civil liability. *See id.* at *3; *see also* 15 U.S.C. § 1640(a). "Consistent with its purpose, TILA is meant to be construed liberally in favor of the consumer." *Schnall v. Marine Midland Bank,* 225 F.3d 263,267 (2d Cir.2000) (alteration and internal quotation marks omitted).

"TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures have not been made." *Smith v. Fid. Consumer Disc. Co.,* 898 F.2d 896, 898 (3d Cir.1990). Indeed, a "court need find only a single violation of the statutory requirements to hold [a] defendant liable under TILA." *Clement v. Am. Honda Fin. Corp.* 145 F.Supp. 2d 206, 210 (D.Conn.2001) (internal quotation marks omitted).

Creditors and assignees are subject to liability under TILA. *See* 15 U.S.C. §§ 1640, 1641(a). A servicer – a person responsible for receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, 15 U.S.C. §

31

1641(f)(3); 12 U.S.C. § 2605(i)(2)-(3) – is not to be treated as an assignee "unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1).

Liability of creditors and assignees for damages under TILA are joint and several. *Greenlee v. Steering Wheel, Inc*., 693 F. Supp. 1396 (D. Conn.1988) (Cabranes, J.); There is nothing in history of the Act to indicate that Congress intended that the liability is to be separate and distinct. *Id. See, Myers v. Citico rp Mortgage, Inc.,* 878 F. Supp. 1553 (Dist Ct., M.D. Alabama, 1995).

A defendant who is jointly and severally liable does not have the right to choose which party is liable by agreement or otherwise. The decision rests with the aggrieved party. *Detroit City Gas Co. v. Syme*, 109 F.2d 366 (2d Cir. 1940).

 The suppression of vital relevant information and details in writing and related disclosures required under the Truth in Lending Act (TILA) continues to compromise, impair and effectively compete, and impede the Homeowners and their representatives from fully, fairly, and effectively competing and negotiating with, and concluding best refinancing and restructuring terms and conditions with competing lenders as well as with new, undisclosed  principal RMBS MERS Bank, Note Purchaser Does creditors (AC ¶¶ 155-159, 7-9).

TILA operates under a system of strict liability; creditors are liable for any failure to comply with the disclosure requirements, regardless of intent or actual

harm to the borrower. *In re Stanley*, 315 B.R. 602 (2004). This strict liability underscores the importance of accurate and complete disclosures.

In cases where creditors fail to provide the required disclosures, borrowers may not be aware of the true cost of available credit, which prevents them from effectively comparing and negotiating terms with other lenders. *In re Schweizer*, 354 B.R. 272 (2006). This can lead to borrowers being locked into less favorable terms without realizing better options with competing lenders. *Id.*

Under 15 U.S.C. § 1641(g), when a mortgage loan is sold or transferred, the new creditor must notify the borrower in writing within 30 days, including the identity, address, and contact information of the new creditor. Failure to provide this notice can further impede mortgagors' ability to negotiate, refinance and lock-in favorable rates provided for in their note and mortgage agreements. They cannot negotiate with the undisclosed principal phantom who holds their loan.

## B. <u>APPLICATION OF EQUITABLE TOLLING DOCTRINE</u>

The doctrine of equitable tolling is read into every federal statute of limitations. *Holmberg v. Armbrecht*, 327 U.S. 392, 397. The Second Circuit has declared that this "policy is so strong that it is applicable unless Congress expressly provides to the contrary in clear and unambiguous language." *Atlantic City Electric Co. v. General Electric Co.*, 312 F.2d 236, 241 (2d Cir. 1962, *cert. denied*, 373 U.S. 909 (1963).

If "a statute is remedial in nature, its terms must be construed in liberally if the underlying Congressional purpose is to be effectuated." *N.C. Freed Co., Inc. v. Bd. of Governors of Fed.Res.Sys*., 473 F.2d 1210, 1214 (2d Cir. 1973), *cert. denied,* 414 U.S. 827.

TILA is designed to be a remedial statute, meaning it is intended to be construed liberally in favor of the consumer to ensure broad compliance and protection. *Kurz v. Chase Manhattan Bank*, 273 F. Supp.2d 474 (S.D.N.Y. 2003). The legislative intent behind TILA, including section 1640 (h), underscores Congress's recognition that consumers need to be adequately informed about the costs and terms of credit to make sound financial decisions. By mandating disclosures and providing remedies for violations, TILA aims to enhance economic stability and strengthen competition in the credit market. *Saint-Jean v. Emigrant Mortg. Co.* 50 F. Supp.3d 300 (E.D.N.Y. 2014)

Section 1640 (h) of TILA specifically prohibits creditors or assignees from offsetting any amount for which they are potentially liable to a consumer under subsection (a)(2) against any amount owed by the consumer, unless the liability has been determined by a court judgment in an action where the consumer was a party. This provision ensures that consumers are not unfairly deprived of their rights to recover damages for TILA violations by having those amounts offset against their debts without proper judicial determination (15 U.S.C.A. § 1640).

34

Courts have often applied equitable tolling to statutes of limitations to prevent unjust results or to maintain the integrity of the statute. *King v. State of Cal.,* 784 F.2d 919, 915 (9th Cir. 1986), *appeal dism'd, cert. denied,* 484 U.S. 802 (1987) (and cases cited therein). "[T]he basic inquiry is whether Congressional purpose is effectuated by tolling the statute of limitations in given circumstances." *Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 427 (1964). An inflexible interpretation of the limitations period in TILA is inconsistent with legislative intent and thus ruled that equitable tolling may be applied. *King, supra* 784 F.2d at 914. The Ninth Circuit advanced the following interpretation of § 1640(e) the time limitation provision of TILA:

[W]e hold that the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the [plaintiff] had reasonable opportunity to discover the fraud ... that form[s] the basis of the action. Therefore, generally the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly. *Id.* at 915.

35

The question of when a limitations period begins to run on a federal statute is governed by federal law. *Rawlings v. Ray*, 312 U.S. 96, 98 (1941); *Kaiser v. Cahn*, 510 F.2d 282, 285 (2d Cir. 1974); *Long Island Lighting Co. v. Transamerica Delayal Inc.*, 646 F.Supp. 1442, 1454 (S.D.N.Y.1986).

The purpose of the federal equitable tolling doctrine is to prevent a defendant from "concealing a fraud, or ... committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it ..." *Bailey v. Glover*, 88 U.S. (21 Wall) 342, 349 (1875).

The elements of the doctrine of equitable tolling are well-settled: 1) the defendant concealed the existence of the cause of action; 2) the action commenced within the applicable limitations period once plaintiff aware of identity of the party against whom to assert the cause of action; and 3) lack of due diligence was not the basis plaintiff's ignorance of the identity of the party against whom the claim is to be asserted. *Sonterra Captial Master Fund, Ltd. v. Barclays Bank PLC*, 366 F.Supp.3d 516 (S.D.N.Y. 2018).

The equitable tolling doctrine has been regularly applied in a long line of cases, including the following.

*Fire & Police Pension Association of Colorado v. Bank of Montreal*, 368 F.Supp.3d 681 (S.D.N.Y. 2019) (price-fixing conspiracies are inherently self-

36

concealing, satisfying the concealment prong of equitable tolling). *Saint-Jean v. Emigrant Mortgage Company et al*., 50 F. Supp. 3d 300 (E.D.N.Y. 2014) (claims of discriminatory mortgage lending inherently self-concealing)

   *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir. 1988) (equitable tolling appropriate in enduring fraudulent enterprise involving multiple contracts and participation incentives); *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985). (equitable tolling appropriate in age discrimination claim). *Council v. Better Homes Depot, Inc*., No. 04-CV-5620, 2006 WL 2376381, at * 9 (E.D.N.Y. Aug. 16, 2006) (FHA, ECOA, and TILA mortgage fraud claims subject to equitable tolling).

   The MERS business model renders the limitations period under 15 U.S.C. 1640(e) with respect to the five categories of mandatory disclosure requirements under 15 U.S.C. 1641(g) inherently self-concealing (A. 10-54, AC, Sec. C, ¶¶ 36-61; Sec. D, ¶¶ 62-84). This is at odds with the essential public policy undergirding 1641(g) (A. 10-54, AC ¶¶ 155-156).

   Further, to not to recognize that the private mortgage industry trading of securitized pools of residential mortgage notes under the MERS business model and operations are inherently self-concealing is to render 1641(g), a dead letter in violation of axiomatic principles of statutory construction. All the words in a legislative act are to be given force and meaning, otherwise they would be

superfluous having been enough to have written the act without the words. We are thus "reluctant to treat statutory terms as surplusage" in any setting. *Duncan v. Walker,* 533 U.S. 167 (2001).

Underscoring the inherently self-concealing nature of the MERS business model and operations under Sections 1640(e) and (h) regarding prosecuting TILA claims offensively or defensively as they pertain to the mandatory disclosure requirements of 1641(g) by the Defendant unidentified new creditor, principal RMBS MERS end-note bundler to which the Defendant MERS Bank continues to act as servicing agent, are the public policy reasons underscored in this appeal as enunciated by former Chief Judge for the New York Court of Court of Appeals, Judith Ann Kaye in the seminal MERS case in New York, *MERSCORP, Inc. v. Romaine*, 8 N.Y. 3d 90, 104 (2006):

Through use of MERS as nominee, transfers of mortgage instruments are faster, allowing for efficient trading in the secondary private securities market, mortgage notes change hands at least five time on average.

Although creating efficiencies for its members, MERS does not provide equivalent benefits to home buyers and borrowers…. While MERS necessarily opted for a system that tracks both the beneficial owner of the loan and servicer of the loan, its 800 numbers and Web site allow a borrower to access information regarding only the borrower's loan servicer, *and not the underlying lende*r (emphasis furnished).

The lack of disclosure creates substantial difficulties when homeowners wish to negotiate the terms of their mortgage or enforce a legal right against the mortgagee and are unable to learn the mortgagee's identity. Public records no longer contain this information. MERS effectively renders the public record

useless by masking the beneficial ownership of mortgages and eliminating records of assignments altogether…

This information deficit effectively functions to insulate a noteholder from liability, mask lender error and hide predatory lending practices." (A. 10-54, AC, Section C, ¶¶ 54-61).

MERS operates by listing itself as the mortgagee or the lender's nominee on the mortgage instrument, which is recorded in the County Clerk's office. During the lifetime of the mortgage, the beneficial ownership interest or servicing rights may be transferred among MERS members, but these assignments are not publicly recorded; instead, they are tracked electronically within MERS's private system. *Knox Countrywide Bank*, 4 F.Supp.3d 499 (2014).

Applying the foregoing equitable tolling principles to the inherently self-concealing and business operations of the MERS business model for trading securitized pools of residential mortgage notes to the appeal at hand:

First, the 1640(e) and (h) limitations periods as they pertain to mandatory 1641(g) disclosure requirements under the MERS business model in which Defendant MERS Bank is a large participant is inherently self-concealing.[3] The

---

[3] It was error for the District Court to dismiss the AC on limitations ground in reliance on *Grimes v. Fremont Gen, Corp.,* 785 F. Supp.2d 269 (S.D.N.Y. 2011) for the proposition that fraudulent conduct beyond the TILA nondisclosure itself must be shown under one-year limitations period to raise TILA violations defensively in setoff or recoupment under Section 1640(e).

Plaintiff Homeowners have only been able to learn of the servicer of their Note, and not the underlying MERS end-note bundler lender in the chain of title beginning with the bundler to which Defendant MERS Bank sold their Note five months before the state court foreclosure action was commenced. *MERSCORP, Inc. v. Romaine*, *supra*, at 104. (A. 10-54, AC, ¶¶ 1, 141, 151)

Second, under TILA there is joint and several liability by Defendant Bank, acting as servicer to, and acting in concert with the unidentified Defendant RMBS note purchaser Does to which they sold the Ceccarelli Note, and these RMBS purchasers. Liability of creditors and assignees for damages under TILA are joint and several. *Greenlee v. Steering Wheel, Inc*., 693 F. Supp. 1396 (D. Conn.1988) (Cabranes, J.); There is nothing in history of the Act to indicate that Congress intended that the liability is to be separate and distinct. *Id. See, Myers v. Citicorp Mortgage, Inc.,* 878 F. Supp. 1553 (Dist Ct., M.D. Alabama, 1995).

---

 However, this begs the larger question presented in this appeal that if the very nature of the fraudulent enterprise or business operations of Defendant is inherently self-concealing, then the fraudulent concealment element of the equitable tolling doctrine is satisfied. This appeal presents such a case and the argument for which is presented at length under this Point III of Appellant's Opening Brief.

At any rate, in *Grimes* the mortgagor's complaint did not plead facts that there were grounds for asserting that TILA violations were concealed by during the 1640(e) limitations period, as is the case here under the AC.

Under the MERS business model, Defendant MERS Bank continues to earn servicing fees for the Homeowners' Note as servicing agent for their principal RMBS MERS end-note bundler in chain of title to their Note. (A. 10-54; AC, Sec. C, ¶ 44)

They therefore have an ongoing financial interest in concealing who holds title to the Homeowners' Note, as well as continuing to insulate itself and their principal RMBS Note Purchaser Does from liability under TILA and representations and warranties litigation for selling a Note to the end-note bundler RMBS MERS Bank Does in chain of title to the Note, without being a holder in due course of the Note under UCC 3-202 at the inception of the foreclosure action. (A. 10-54, AC, Sec. C, ¶¶ 46-47) *See e.g., In Re: Part 60 RMBS Put-Back Litigation*, 185 A.D.3d 40 (First Dept. 2021).

Third, the ongoing concealment of vital relevant information and details in writing and related disclosures by Defendant Bank, as servicing agent under 15 U.S.C. 1641(g) continues to compromise, impair and effectively compete, and impede Plaintiffs Homeowners and their representatives from fully, fairly, and effectively competing and negotiating with, and concluding best refinancing and restructuring terms and conditions with non-MERS competing lenders as well as with Defendant MERS Bank's new, undisclosed principal RMBS Note Purchaser end-note bundler in chain of title to their Note (A. 10-54, AC ¶¶ 155-159, 7-9).

41

# POINT IV

**PLAINTIFFS ARE NOT BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL FROM LITIGATING INDEPENDENT, FEDERAL COURT, ORIGINAL JURISDICTION STATUTORY CLAIMS OFFENSIVELY UNDER TILA SECTION 1640(h) AND F.R.C.P. RULE 19, BECAUSE THERE IS NO IDENTITY OF PARTIES OR ISSUES IN FORECLOSURE ACTION**

**A. THERE WAS NO BASIS FOR HOMEOWNERS TO HAVE PROSECUTED THEIR TILA CLAIMS DEFENSIVELY UNDER TILA SECTION 1640(e) IN STATE COURT, SINCE DEFENDANT MERS BANK NEVER ADDED IT PRINCIPAL END-NOTE BUNDLER MERS BANK AS A PARTY PLAINTIFF, EVEN PUTTING ASIDE FOR SAKE OF DISCUSSION, FUNDAMENTAL PUBLIC POLICY UNDERGIRDING NEW YORK'S PERMISSIVE <u>COUNTERCLAIM RULE</u>**

In New York, the public policy underlying the permissive counterclaim rule is to allow defendants the flexibility to choose whether to assert counterclaims in the initial action or in a subsequent separate action. This policy is codified in CPLR 3011 and CPLR 3019, which do not mandate the assertion of counterclaims in the initial action, thus distinguishing New York from jurisdictions with compulsory counterclaim rules, including federal court. *Paramount Pictures Corporation v. Allianz Risk Transfer AG*, 31 N.Y.3d 64 (2018).

The permissive counterclaim rule in New York is designed to avoid the inefficiencies and complexities that can arise from requiring all claims to be litigated in a single action. This approach allows the initial action to proceed more

simply and expeditiously, with the possibility of a second action being obviated by settlement or reduced by issue preclusion from the first action. *Id.*

In contrast Rule 13(a) of the Federal Rules of Civil Procedure requires any party to a suit to assert any mandatory counterclaims that is has in that litigation or else they will later be barred from doing so. That rule has never applied to New York state court litigation. A defendant to a New York litigation has no obligation to assert any counterclaims but can wait to assert its own claims in a later action in accordance with NY CPLR §§ 3011 and 3019.

Even putting aside, for the sake of discussion., Plaintiffs' rights and remedies under New York's permissive counterclaim rule, neither Res Judicata nor collateral estoppel applies in this action for several reasons.

First, Plaintiffs could not and should have been expected to have asserted TILA counterclaims and defenses in the state court action when it is Defendant MERS Bank who failed to join the Defendant RMBS MERS bank current end-note bundler Doe in the chain of title to Homeowners' Note in the state court action.

Since Defendant MERS Bank has the burden of pleading and proving who the true, sole and lawful owner of an Indorsed Note is under NY UCC 3-202 at the inception of the foreclosure action under RPAPL 1302-a in the first instance (*See US Bank, N.A. v. Nelson*, 36 NY3d at 1006-1012) (Wilson, C.J.), it was incumbent upon the Bank to have named the assignee of the Homeowners' Note at the

43

commencement of the action as a co-Plaintiff. There is therefore no fair or reasonable basis to assert collateral estoppel against Plaintiffs Homeowners as a bar to bringing their present TILA action which correctly names the Defendant Bank servicing agent, and its principal Note Purchaser Does jointly.

Second, assuming for the sake of discussion, upon Defendant Bank having failed to have properly joined Defendant Note Purchaser Does in the foreclosure action at the commencement of the action as a party Plaintiff, there was no basis to have asserted a counterclaim or defense against a non-existent party, nor was the burden on Plaintiffs Homeowners to do so (A. 10-54, AC ¶¶87, 88, 94-100).

Third, although the District Court properly has taken judicial notice of the entire public Record on Appeal (SpA.3, Op. p. 3, fn2) based on access to the NYSCEF hyperlinks furnished in the AC by the attorneys of record for Plaintiffs Homeowners in the state court proceedings, it did not take account of their continuing to pursue the threshold issue of standing (real party in interest capacity) through appeal in 2022, and rulings in their favor which would have made the assertion of permissive TILA counterclaims and defenses at best premature and wasteful and senseful exercise, assuming Defendant MERS bank had brought in the Defendant RMBS MERS Bank, current end-note bundler in chain of title to Plaintiffs'' Note into the state court action as a party plaintiff, upon failing to do so at the commencement of the action (A. 10-54, AC ¶¶ 114, 119-122)

44

The District Court simply focused on Defendant Bank's summary judgment motion (SpA. 10, Op. p. 10), but did not take account that the same Supreme Court judge ( Bluth, J. ) who initially ruled in favor of Defendant Bank granted leave to Plaintiffs Homeowners to bring on own motion for summary judgment to dismiss the foreclosure action based on upon Defendant Bank's own fact and highly credentialed mortgage expert coming forward as a cooperating witness to furnish affidavit testimony on behalf of the Plaintiffs Homeowners among other proof to present a detailed evidentiary basis for dismissal on the foreclosure action that the Note was not indorsed in accordance under the law of negotiable instruments under NY UCC 3-202 at the commencement of the action. (A. 10-54, AC ¶¶ 114, 119-122).

The District Court also overlooked that an Associate Appellate Justice granted interim relief staying the foreclosure action based on the heavy showing required to obtain such relief under CPLR 5519(c). (A. 10-54, AC ¶¶ 123-127).

Under these circumstances, Plaintiffs Homeowners acted reasonably with respect to exercising their permissive counterclaim and defenses rights.[4] A

---

[4] In this regard, Plaintiff Homeowners have yet to exercise their CPLR 5015(a)(3) rights. CPLR 5015(a) (3) provides that the court which rendered a judgment or order may relieve a party from it upon such terms as may be just upon the ground of fraud, misrepresentation or other misconduct of an adverse party. The grounds in paragraph 3 do not have a one-year time limit as provided under CPLR 5015(a)(1), or otherwise, for a moving party to obtain this relief (Siegel, Practice Commentaries, McKinney's Cons. Laws, Book 7B, CPLR C5015:3,

45

dismissal of the state court action on the threshold issue of standing (real-party-in-interest capacity), would have naturally obviated the need to sue for Injunctive relief under Count II in this action to preserve the status quo.

As to res judicata (SpA. 11, Op. p. 11), the same Rule 19 infirmity which bars the application of collateral estoppel against the Plaintiffs Homeowners applies with equal force to this doctrine. The claims asserted of joint liability against Defendant MERS Bank and its principal Defendant MERS Bank End-Note Bundler Doe, could not have been asserted as defenses or counterclaims to non-existent necessary and indispensable parties as in the present TILA damages claims against them jointly as servicing Defendant MERS Bank agent and its principal RMBS MERS bank end-note bundler Doe.

Moreover, the District Court having directed dismissal and non-joinder of the Defendant RMBS MERS Note Purchaser Does in chain of title to Homeowners' Note,[5] would deprive the Plaintiffs Homeowners of their day in

---

at 205–206 [main vol.]). Motions under paragraph 3 (fraud, misrepresentation, or other misconduct of an adverse party) must be made within a reasonable time. *Id.* at 205-206. (*See* <u>Nash v. Port Authority of New York and New Jersey</u>, 22 NY3d 220).

The traditional power of the court to set aside an order or judgment on default in the interests of justice and in the exercise of discretion is not limited to the grounds enumerated in CPLR 5015 (a) (<u>McCarthy v. Port of New York</u>, 21 AD2d 248, 1st Dept; <u>Trapp v. American Trading and Production Corp.</u>, 66 AD2d 515, 1st Dept.).

[5] While Defendants-Principals-New Creditors, Successors-in-Interest to Defendant Original Note Holder of Ceccarelli Note have been named pending completion of

Court to test their TILA damage claims, and runs afoul of the standards requiring

joinder of necessary and indispensable parties under Rule 19 of the Federal Rules

of Civil Procedure. A party is considered necessary if the court cannot accord

complete relief among existing parties. *American Trucking Ass'n, Inc. v. New York*

*State Thruway Authority*, 795 F.3d 351 (2d Cir. 2015).

This is precisely the case here. It is at best premature to drop the Defendant

RMBS purchaser Does still in the action, because the Court would not be able to

accord full and complete relief to Plaintiffs Homeowners regarding the joint and

several liability of Defendant Bank servicing agent and its Defendant RMBS

MERS Bank end-note bundler in chain of title to the Homeowners' Note prayed for

in the AC.

---

discovery and determination of Plaintiffs' TILA claims on the merits, at the end of
the day naming the current end note bundler in the chain of title is likely to be
sufficient to make the Plaintiffs whole.

Any newly added Defendant may move to dismiss the Amended Complaint as the
Court notes (Op. p. 15, fn 8), but the more likely scenario is that there would be
crossclaims asserted by the co-defendants servicing agent, original note holder and
its undisclosed end-note bundler principal. [A. 10-54, AC, ¶¶ 46-47, Pls MOL Opp
Motion to Dismiss, Pt II (B), p. 18].

## **CONCLUSION**

For the reasons and upon the authorities set forth above:

1) Order and Judgment of the District Court granting Defendant MERS Bank's motion to dismiss the Amended Complaint, denying Plaintiffs Homeowners Motion for Preliminary Injunctive relief staying the enforcement of state court judgment of foreclosure pending the determination of the merits of Plaintiffs-Homeowners TILA claims under Count I of the AC, and Order denying Plaintiffs-Homeowners' motion for reconsideration and amending complaint to limited extent regarding Plaintiffs not requiring this Court to sit in review of and vacate and set aside the state court judgment in question, should be reversed;

2) Plaintiffs-Homeowners motion for injunctive relief under Count II of the AC to preserve the status quo pending the adjudication of Plaintiffs' TILA claims under Count I on the merits against Defendant MERS Bank and its principal end-bundler, joint and severally, should be granted; and

3) an order should issue directing remedial measures by counsel for Defendant MERS Bank forthwith to stipulate to or otherwise take such other fair and reasonable measures steps to inform the state court which rendered the foreclosure judgment that Defendant MERS Bank never made out its prima facie case of showing that it was the true, sole and lawful owner at the inception of the foreclosure action in order to ever had standing (real party in interest capacity) to

48

have prosecuted it in the first place in violation of the Duty of Candor required under MPRC 3.3 and NYRPC 3.3(a) based the representations by Defendant MERS Bank's counsel in state court, and counsel in this Case, that there was an *indorsed* note signed by an officer from the Defendant MERS Bank or other authorized representative required under NY UCC 3-202, when there is no such record evidence, as more fully set forth in the accompanying Appendix and the Record on Appeal in the New York Appellate Division, Special Appendix, Section 3; together with such other and further relief as is just and proper.

Dated: New York, New York
         May 9, 2025

                                       Respectfully submitted,

                                       Ceccarelli Law Firm PLLC

                                       By: s/<u>Joseph J. Ceccarelli</u>
                                            Joseph J. Ceccarelli
                                            Tower 49
                                            12 East 49th Street
                                            Suite Floor 11
                                            New York, New York 10017
                                            jceccarelli@ceccarellilaw.com
                                            M: 917-710-6231

                                            *Attorneys for*
                                            *Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure,

the undersigned counsel hereby certifies that this brief complies with the type-

volume limitation of Rule 32(a)(7)(B).  As measured by Microsoft Word 2013, the

word-processing system used to prepare it, this brief contains 11,233 words.

Dated: New York, New York
     May 9, 2025

               Yours, etc.

               Ceccarelli Law Firm PLLC

               By: s/Joseph J. Ceccarelli
                   Joseph J. Ceccarelli
                   Tower 49
                   12 East 49th Street
                   Suite Floor 11
                   New York, New York 10017
                   jceccarelli@ceccarellilaw.com
                   M: 917-710-6231

                   *Attorneys for*
                   *Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that one ( 1) copy of the following:

APPELLANTS' BRIEF, SPECIAL APPENDIX
And APPELLANTS' APPENDIX

was served upon Appellee's counsel via the Court's ECF/ACMS System, as indicated, this 9th day of May, 2025, upon the following:

Stradley Ronon Stevens & Young, LLP
100 Park Avenue, Suite 2000
New York, New York 10017
212-404-0641


Date: May 9, 2025



s/ Joseph J. Ceccarelli

_____

JOSEPH J. CECCARELLI
*Attorneys for Plaintiffs-Appellants*