**Volume II of III**
**[pp. SpA.301-SpA.600]**

# 25-443

---

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

JOSEPH J. CECCARELLI, SUSAN L. CECCARELLI,

*Plaintiffs-Appellants,*

-against-

MORGAN STANLEY PRIVATE BANK, N.A., AS ORIGINAL HOLDER OF CECCARELLI NOTE AND AS SUCCESSOR-IN-INTEREST SERVICING AGENT FOR PRESENTLY UNKNOWN PURCHASERS DOES OF CECCARELLI NOTE AS PART OF SECURITIZED POOL OF RESIDENTIAL MORTGAGE NOTES, AND

PURCHASER DOES IN THE CHAIN OF TITLE AFTER SALE OF CECCARELLI NOTE BEING UNKNOWN TO PLAINTIFFS, PRINCIPALS-NEW CREDITORS, SUCCESSORS-IN INTEREST TO DEFENDANT ORIGINAL HOLDER OF CECCARELLI NOTE UNDER MORTGAGE ELECTRONIC RECORDING SYSTEM, INC. FOR MEMBER BANKS (MERS),

*Defendants-Appellees.*

---

*On appeal from Orders and Judgment of the U.S.*
*District Court for the Southern District of New York*

---

## SPECIAL APPENDIX

---

**CECCARELLI LAW FIRM PLLC**
12 East 49th Street, 11th Floor
New York, New York 10017
(917) 710-6231
jceccarelli@ceccarellilaw.com
*Attorneys for Plaintiffs-Appellants*

TABLE OF CONTENTS                    Page

SECTION 1

RELEVANT OPINION AND ORDERS, OPINIONS AND JUDGMENT
BEING APPEALED:

Opinion and Order of SDNY (New York City) (Oetken, J.), filed
January 24, 2025, granting Defendant-Appellee's Motion to Dismiss
Complaint pursuant to Amended Complaint for lack of subject matter
jurisdiction under F.R.C.P. 12(b)(1), and failure to state a claim, and
denying Plaintiffs-Appellants' motion for preliminary injunction as
moot ................................................................................................... SpA.1

Clerk's Judgment in accordance with Opinion and Order of the Court,
filed January 24, 2025 .............................................................. SpA.16

Order of the Court denying Plaintiffs-Appellants Motion to Reconsider
the Opinion and Order of the Court, filed March 25, 2025 ...................... SpA.17

SECTION 2

APPLICABLE STATUTORY LAW:

Provisions Under Federal Truth-in-Lending Act Pertaining to Mortgage
Loan Transactions .................................................................... SpA.22

NY CPLR 5015(a)(3) ............................................................... SpA.24

SECTION 3

FULLY REPRODUCED RECORD ON APPEAL TO NEW YORK
SUPREME COURT, APPELLATE DIVISION, FIRST DEPARMENT (Case
no. 2012-04118) ...................................................................... SpA.25

RECORD ON APPEAL Volume 1 of 2 (Pages 1 to 392) ......................... SpA.25

RECORD ON APPEAL Volume 2 of 2 (Pages 393-740) ...................... SpA.431

ORDER AUTHORIZING OVERSIZE SPECIAL APPENDIX (Apr.
18, 2025) ................................................................................ SpA.793

263

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 85

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

(hereafter "Mortgagor"), in consideration of a loan in the amount of $ 468,000.00 made available by RBS CITIZENS, N.A., whose address is 1 Citizens Plaza Providence, RI 02903 (hereafter "Lender"), the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, and convey to the said Lender, its successors and assigns forever, the following real Property, situated in the County of NEW YORK , in the State of New York ("Property") and more particularly described as follows:

### SEE EXHIBIT A ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF

and all the Estate, Title and Interest of the said Mortgagor either in law or equity, of, in and to the said premises; together with all the privileges and appurtenances to the same belonging, and all the rents, issues and profits thereof; to have and to hold the same in the only proper use of the said Lender, its successors and assigns forever.

1. **Definitions.** In addition to the definitions set forth in the Master Mortgage form referenced in Section 4 hereof, which definitions shall apply to all capitalized terms contained herein which are not otherwise specifically defined, the following term shall have the following meaning:

(x) "Note" means the Promissory Note or Agreement signed by Mortgagor, delivered to Lender and dated 05/29/2015 . The Note states that Mortgagor owes Lender $ 468,000.00 plus Interest. Mortgagor promises to pay this debt in regular Periodic Payments and to pay the debt in full not later than 06/03/2040 .

2. **THIS IS A FUTURE ADVANCE MORTGAGE.** The repayment of which debt is evidenced by a Credit Line Agreement (the "Agreement") made in favor of the Lender by the Mortgagor and dated the same date as this Security Instrument, under which the Mortgagor and the Lender reasonably contemplate that there will be a series of advances, payments and readvances but which limits the aggregate principal indebtedness at any time outstanding to a maximum principal amount, excluding protective advances, of $ 468,000.00 ; including, but not limited to, any future advances, with interest thereon.

3. **Payment of Principal, Interest and Other Charges.** Mortgagor will pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.

4. **Incorporation of Terms and Conditions of Master Mortgage Form Recorded by Lender.** Mortgagor covenants and agrees that it shall be bound by the terms, conditions and provisions set forth in that certain Master Mortgage Form recorded in Volume , Page , of the NEW YORK County, New York Instrument # 20080001.59842 Records ("Master Mortgage"). Upon the occurrence of a default under such Master Mortgage, Lender shall be entitled to pursue all remedies specified in such Master Mortgage against the Mortgagor and the Property.

5. **Defeasance.** This Security Instrument is given to secure the advances made by Lender to Mortgagor under the Note, which Note has a maturity date of 06/03/2040 . Upon the repayment in full of the amounts advanced under the Note, all accrued interest under the Note and all incidental Amounts as set forth in the Master Mortgage, this Security Instrument shall be void.

6. **REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST.** Mortgagor and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over the Security Instrument to give Notice to Lender's address set forth on page one of the Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

Page 2

231 of 246

SpA.301

264

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 85

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and covenants contained in the Security Instrument and in any Rider(s) executed by Mortgagor and recorded with it.

JOSEPH J CECCARELLI

SUSAN L CECCARELLI

GENERAL PROVISIONS INCORPORATED BY REFERENCE AND NOT TO BE RECORDED
SEE MASTER MORTGAGE FORM REFERRED TO HEREIN

Page 5

232 of 246

SpA.302

265

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 85

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT
(Within New York State)

State of New York
County of Westchester ss.:

On the 29th day of May in the year 2015 before me, the undersigned, personally appeared

JOSEPH J CECCARELLI
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

Print Name: Yeinis Aquino

My Commission Expires: 12/3/2016

YEINIS AQUINO
Notary Public - State of New York
No. 01-AQ6272656
Qualified in New York County
My Commission Expires 12/03/2016

ACKNNY REV 1105

233 of 246

SpA.303

266

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 85

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

UNIFORM FORM CERTIFICATE OF ACKNOWLEDGMENT
(Within New York State)

State of New York
County of Westchester ss.:

On the 29th day of May, in the year 2015 before me, the undersigned, personally appeared

SUSAN L CECCARELLI personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

Print Name: Yeimis Aquino

My Commission Expires: 12/3/2016

YEIMIS AQUINO
Notary Public - State of New York
No. 01-AQ6375853
Qualified in New York County
My Commission Expires 12/03/2016

ACKNHY REV 11/99

SpA.304

267

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 85

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

EXHIBIT "A" - PROPERTY DESCRIPTION

Borrower(s):     Joseph J. Ceccarelli and Susan L. Ceccarelli

Property Address:     260 East 22nd Street, Unit 26B, New York, New York

This Condominium Unit (hereinafter to as the "Unit") in the Building (hereinafter referred to as the "Building") known as The Future and by the street number 260 and 22nd street, Borough of Manhattan, City, County and State of New York, said Unit being designated and described as Unit No. 26B in that certain declaration dated March 8, 1983 made by 22nd Street Southeast Company L.P. pursuant to article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act") establishing a plan for Condominium ownership of the Building and the land (hereinafter referred to as the "land") upon which the Building is situate (which Land is more particularly described in Exhibit A annexed hereto and by the reference made a part hereof) which declaration was recorded in the New York County Office of the Register of The City of New York on May 20, 1983 in Reel 1972 page 195 (and has been amended as set forth on Exhibit B annexed hereto and by this referenced made a part hereof) (which declaration and any amendments thereto are hereinafter collectively referred to a the "Declaration"). This Unit is also designated as Tax Lot 1165 in Block 912, of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of The City of New York and on the Floor Plans of the Building, certified by Costas Kondylas, Architects, on April 8, 1983, and filed with the Real Property Assessment Department of the City of New York on May 20, 1983 and also filed in the City Register's Office on May 20, 1983, as Condominium Plan No. 844;

Together with an undivided .751143% interest in the common elements (as each term is defined in the Declaration);

Property is a condominium unit.

Meaning and intending to describe and mortgage the same premises as conveyed to the Mortgagor(s) by Deed dated November 14, 2005 and recorded with New York County Clerk's Office on November 14, 2005 in Liber 2005042001228001001, to which Deed reference is hereby made for a more detailed description of the mortgaged premises and which description is incorporated herein by reference and made a part hereof.

SpA.305

268

## NOTICE OF PENDENCY, DATED JANUARY 5, 2017
### (REPRODUCED HEREIN AT PP. 34-39)

269

## DEFENDANTS-MORTGAGORS' AMENDED ANSWER, DATED APRIL 10, 2017 [269 - 275]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/10/2017 03:16 PM
NYSCEF DOC. NO. 18

INDEX NO. 850018/2017
RECEIVED NYSCEF: 04/10/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------- X

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

                     Plaintiff,

   -against-

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI ; SUSAN K. LANGHOLZ AKA
SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI ; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM ; RBS CITIZENS, N.A.,
and JOHN DOE AND JANE DOE #1 through #7, the
last seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the
tenants, occupants, persons or parties, if any, having or
claiming an interest in or lien upon the mortgaged
premises described in the Complaint,

                    Defendants.

------------------------------------------------------------- X

Index #: 2017-850018

AMENDED ANSWER

      Defendants, Joseph J. Ceccarelli, III and Susan K. Langholz, by their attorney, Steven W. Stutman, Esq., in answering the Complaint of the plaintiff, alleges upon information and belief, as follows:

1.     Denies having knowledge or information sufficient to form a belief as to paragraphs "1", "29", "30", "31" and "32" of the Complaint.

2.     Denies the allegations of paragraphs "4", "7", "10", "13", "14", "15", "16", "17", "18", "19", "23", "24", "25", "26", "27" and "28" of the Complaint.

3.     Denies the allegations set forth in paragraphs numbered "2", "5", "8", "11" "12", "20" and "21" of the Complaint, except admits that Defendants executed a Note, and the Court is respectfully referred to the Note for its terms and conditions.

4.     Denies the allegations set forth in paragraph numbered "3", "6", "9" and "22" of the Complaint except admits that Defendants executed a mortgage and the Court is respectfully referred to the mortgage for its terms and conditions.

## AFFIRMATIVE DEFENSES

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

SpA.307

270

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/10/2017 03:16 PM

NYSCEF DOC. NO. 18

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/10/2017

5. Pursuant to RPAPL 1302 Plaintiff is required to allege in its pleadings that it was both the owner of the mortgage and note prior to the commencement of this action.

6. Plaintiff has failed to allege the required allegations as referenced in RPAPL 1302 and therefore the Plaintiff has not stated a cause of action for which relief can be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

7. To maintain a foreclosure action under New York State law, the plaintiff must own both the mortgage and the note. Because the Plaintiff does not own the note, and possibly does not own the mortgage as of the date this action was commenced, the Plaintiff lacks legal capacity and standing to bring this foreclosure action. The Plaintiff has neither the standing and/or cannot claim a cause of action because it was not the owner of the mortgage and promissory note when this action was commenced.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

8. Loan is unenforceable because Plaintiff failed to contract in good faith with Defendants.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

9. The Plaintiff failed to obtain personal jurisdiction over the person of this answering Defendants.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

10. As a condition precedent and in order to maintain this action, Plaintiff pursuant to the mortgage documents was required to deliver a notice of acceleration of debt prior to the commencement of this action.

11. The Plaintiff cannot maintain this action because it did not send a notice of

SpA.308

271

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/10/2017 03:16 PM

NYSCEF DOC. NO. 18

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/10/2017

acceleration prior to the commencement of this action.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

12.  Plaintiff's complaint and request for relief is barred by the doctrine of unclean hands, laches, unconscionable conduct and/or estoppel.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

14.  Defendants, contrary to Plaintiff's allegations, has made partial or full payments of his/her obligations under the mortgage note, and as such Defendants were not and is not in default of his contractual obligations under the note, and as such there is no basis for Plaintiff to have commenced this action.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

15.  As Plaintiff, and/or anyone in the chain of title has been paid in full by third party entities, other than assignees of the note for consideration, in the form of monoline insurance, credit default swaps, reserves, over-collateralization, cross-collateralization and/or government bailout, Defendants do not owe any money on any debt to Plaintiff or any other entity.

### AS AND FOR A FIRST COUNTERCLAIM AGAINST THE PLAINTIFF

16.  That the Plaintiff failed to comply with the required NYS Disclosures concerning the commencement and prosecution of a mortgage foreclosure action. Compliance with said disclosures is a condition precedent to foreclosing on the subject mortgage loan. The Plaintiff's failure to comply with said disclosures should result in the dismissal of the instant action, setting aside, and refund to the Defendants, mortgagor of any mortgage interest paid.

17.  The Defendants have been damaged in the amount of the overpaid interest and is entitled to a refund or set-off of said amount which is excess of the jurisdictional limit of all lower courts.

3 of 7

SpA.309

272

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/10/2017 03:16 PM
NYSCEF DOC. NO. 18

INDEX NO. 850018/2017
RECEIVED NYSCEF: 04/10/2017

WHEREFORE, the Defendants, Joseph J. Ceccarelli, III and Susan K. Langholz, demand judgment dismissing the Complaint, together with a judgment on their counter-claims, together with attorney's fees and the costs and disbursements of this action.

Dated: Melville, New York
April 10, 2017

Steven W. Stutman
Attorney for Defendants
Joseph J. Ceccarelli, III and
Susan K. Langholz
535 Broad Hollow Road
Suite B-52
Melville, NY 11747

To:     PINCUS LAW GROUP, PLLC
        Attorneys for Plaintiff
        425 RXR Plaza
        Uniondale, NY 11556

4 of 7

SpA.310

273

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/10/2017 03:16 PM

NYSCEF DOC. NO. 18

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/10/2017

Index #: 2017-850018

## ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, hereby affirms:

That I am the attorney of record for the Defendant, Joseph J. Ceocarelli, III and Susan K. Langholz, in the within proceeding; that I have read the foregoing Answer and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, I believe same to be true. Your affirmant further states that the reason this verification is made by this affirmant and not by the Defendants, as the Defendants reside outside of Suffolk County wherein affirmant maintains his office. The grounds of affirmant's belief as to all matters not stated upon affirmant's knowledge are as follows: Communication with the Defendants; and Records and correspondence in affirmant's possession.

The undersigned affirms that the foregoing statements are true under the penalty of perjury.

Dated: Melville, NY
      April 10, 2017

Steven W. Stutman

SpA.311

274

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/10/2017 03:16 PM

NYSCEF DOC. NO. 18

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/10/2017

## AFFIDAVIT OF SERVICE

Allison Cammarasana, being duly sworn deposes and says:

1. Your deponent is over 18 years of age and works at 535 Broad Hollow Road, Melville, New York 11747

2. On April 10, 2017, deponent served by Mail a true copy of the Amended Answer on:

PINCUS LAW GROUP, PLLC
Attorneys for Plaintiff
425 RXR Plaza
Uniondale, NY 11556

by depositing a true copy of the Amended Answer into a postpaid wrapper first class mail and addressed as set forth above, being deposited in an official depository under the official care and custody of the United States Postal Service within the State of New York at Melville, New York 11747.

Allison Cammarasana

Sworn to before me this
10TH day of April, 2017

Notary Public
My commission expires on:

STEVEN W STUTMAN
Notary Public, State of New York
No. 02ST6687905
Qualified Nassau County
Commission Expires 2/28/20

SpA.312

275

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/10/2017 03:16 PM

NYSCEF DOC. NO. 18

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/10/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------X    Index #: 2017-850018

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

                                    Plaintiff,

-against-

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI ; SUSAN K. LANGHOLZ AKA
SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI ; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM ; RBS CITIZENS, N.A.,
and JOHN DOE AND JANE DOE #1 through #7, the
last seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the
tenants, occupants, persons or parties, if any, having or
claiming an interest in or lien upon the mortgaged
premises described in the Complaint,

                                    Defendants.

----------------------------------------X

**AMENDED ANSWER**

STEVEN W. STUTMAN, ESQ.
ATTORNEY FOR DEFENDANTS
JOSEPH J. CECCARELLI, III AND SUSAN K. LANGHOLZ
535 BROAD HOLLOW ROAD
SUITE B-52
MELVILLE, NEW YORK 11747
(631) 393-6001

Pursuant 22NYCRR130-1.1, the undersigned, an attorney, admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: April 10, 2017
Melville, NY

Signature: _____
            Steven W. Stutman, Esq.

276

## REPLY, DATED JUNE 30, 2017 [276 - 279]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 06/30/2017 04:00 PM
NYSCEF DOC. NO. 22

INDEX NO. 850018/2017
RECEIVED NYSCEF: 06/30/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____ X

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

    Plaintiff,

- against -

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI ; SUSAN K. LANGHOLZ AKA SUSAN L.
CECCARELLI AKA SUSAN LANGHOLZ CECCARELLI
; BOARD OF MANAGERS OF THE FUTURE
CONDOMINIUM ; RBS CITIZENS, N.A., and JOHN DOE
AND JANE DOE #1 through #7, the last seven (7) names
being fictitious and unknown to the Plaintiff, the persons or
parties intended being the tenants, occupants, persons or
parties, if any, having or claiming an interest in or lien upon
the mortgaged premises described in the Complaint, et al.

    Defendants.

_____ X

    **REPLY**

    Index No. 850018/2017

    The Plaintiff, Mortgage Stanley Private Bank, National Association, by its attorneys, Shapiro,

DiCaro & Barak, LLC, as and for its Reply to Defendant's Answer and Counterclaim in this action,

respectfully sets forth the following:

    1.  That it denies each and every allegation contained in the paragraphs numbered "16"

and "17" of Defendant's Answer and Counterclaim.

    2.  That it denies each and every allegation of the Answer and Counterclaim not

hereinbefore specifically admitted, denied or otherwise controverted in any way.

    **AS AND FOR A FIRST AFFIRMATIVE DEFENSE,
PLAINTIFF ALLEGES AS FOLLOWS:**

    3.  That Defendant's Answer and Counterclaim fail to state a cause of action upon which

relief may be granted as against n/a.

    **AS AND FOR A SECOND AFFIRMATIVE DEFENSE,
PLAINTIFF ALLEGES AS FOLLOWS:**

17-063874        Reply        Page 1 of 2

SpA.314

277

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

**FILED: NEW YORK COUNTY CLERK 06/30/2017 04:00 PM**
NYSCEF DOC. NO. 22

INDEX NO. 850018/2017
RECEIVED NYSCEF: 06/30/2017

4. That Plaintiff's defense is founded upon documentary evidence. See CPLR §3211(a)(1).

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE, PLAINTIFF ALLEGES AS FOLLOWS:

5. That Plaintiff asserts all affirmative defenses available pursuant to CPLR §3018(b).

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE, PLAINTIFF ALLEGES AS FOLLOWS:

6. That Defendant's claims are barred under the equitable doctrines of estoppel, waiver, ratification, laches and/or unclean hands.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE, PLAINTIFF ALLEGES AS FOLLOWS:

7. Defendant's claims are barred by the applicable Statute of Limitations.

WHEREFORE, Plaintiff respectfully requests that the Court dismiss the Defendant's Answer and Counterclaim and grant judgment to Plaintiff for the relief requested in its Complaint and for such other and further relief as the Court deems proper.

Date: 6/30/17

V. Melanie Rajaphoumy, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

To: Steven W. Stutman
*Attorney for Defendants, Joseph J. Ceccarelli, III and Susan K. Longholz*
535 Broad Hollow Road, Suite B-52
Melville, NY 11747

17-063874      Reply      Page 2 of 2

278

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 06/30/2017 07:00 PM
NYSCEF DOC. NO. 22

INDEX NO. 850018/2017
RECEIVED NYSCEF: 06/30/2017

## ATTORNEY'S CERTIFICATION

I, V. Melanie Rajaphoumy, am an attorney duly admitted to the practice of law in the State of New York. I am an associate of the firm of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, n/a, in the above captioned civil action.

I HEREBY CERTIFY, pursuant to § 130-1.1-a of the Rules of the Chief Administrator (22 NYCRR), to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the presentation of the papers in this action checked below, or the contentions therein, are not frivolous as defined in subsection (c) of § 130-1.1 of the Rules of the Chief Administrator (22NYCRR):

{ } Summons & Complaint

{ } Notice of Motion for Summary / Default Judgment

{ } Attorney's Affirmation

{X} Other: Reply

DATED: 6/30/17

V. Melanie Rajaphoumy, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

17-063874

3 of 3

SpA.316

279

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 06/30/2017 04:00 PM

NYSCEF DOC. NO. 23

INDEX NO. 850018/2017

RECEIVED NYSCEF: 06/30/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index # 850018/2017

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

PLAINTIFF

- against -

**AFFIDAVIT OF SERVICE BY MAIL**

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI;
SUSAN K. LANGHOLZ AKA SUSAN L. CECCARELLI AKA
SUSAN LANGHOLZ CECCARELLI ; BOARD OF
MANAGERS OF THE FUTURE CONDOMINIUM ; RBS
CITIZENS, N.A., and JOHN DOE AND JANE DOE #1 through
#7, the last seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the tenants,
occupants, persons or parties, if any, having or claiming an interest
in or lien upon the mortgaged premises described in the
Complaint, et al.

DEFENDANT(S)

STATE OF NEW YORK      )
COUNTY OF MONROE       ) ss:

I, Neil Van Dorn, being sworn, says:  I am not a party to this action; I am over 18 years of age, I reside

in Monroe County, New York.

On June __5g4__ , 2017, I served a copy of the Reply on the following:

Steven W. Stutman
*Attorney for Defendants, Joseph J. Ceccarelli, III and Susan K. Langholz*
535 Broad Hollow Road, Suite B-52
Melville, NY 11747

the address designated for that purpose by depositing a true copy of same enclosed in a postpaid, properly

addressed wrapper, in an official depository under, the exclusive care and custody of the United States Postal

Service within the State of New York.

Date: __6/30/19__

Neil Van Dorn
Litigation Supervisor
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

Sworn before me on this
__30__ day of June, 2017.

Notary Public

17-063574

MARY JANE MERICA
Notary Public, State of New York
No. 01ME61754; 1
Qualified in Monroe County
Commission Expires Oct. 29, 2019

Affidavit of Service by Mail

Page 1 of 1

1 of 1

SpA.317

280

## ADDITIONAL NOTICE OF PENDENCY, DATED MARCH 9, 2018 [280 - 289]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 86

NYSCEF DOC. NO. 24

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019
INDEX NO. 850018/201
RECEIVED NYSCEF: 03/09/201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No. 850018/2017

Mortgage Stanley Private Bank, National Association,

Plaintiff,

- against -

**ADDITIONAL NOTICE OF
PENDENCY OF ACTION**

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A., and JOHN DOE AND JANE DOE #1 through #7, the last seven (7) names being fictitious and unknown to the Plaintiff, the persons or parties intended being the tenants, occupants, persons or parties, if any, having or claiming an interest in or lien upon the mortgaged premises described in the Complaint,

Defendants.

**NOTICE IS HEREBY GIVEN**, that an action has been commenced and is now pending in this Court upon the Complaint of the above-named Plaintiff and against the above-named Defendants and filed herewith the Office of the New York County Clerk of the foreclosure of a Mortgage, dated February 7, 2000, executed by the Defendants, JOSEPH J. CECCARELLI and SUSAN K. LANGHOLZ as Mortgagors, to MERRILL LYNCH CREDIT CORPORATION, as Mortgagee, to secure the sum of $820,000.00, which Mortgage was duly recorded in the Office of the City Register of the City of New York on March 22, 2000 at Reel 3070, Page 2070. Thereafter, said mortgage was assigned on November 28, 2001 to CENDANT MORTGAGE CORPORATION and said assignment was recorded in the Office of the City Register of the City of New York on January 30, 2002 in Reel 3440, Page 0507. Said mortgage was further assigned on March 9, 2006 to MERRILL LYNCH CREDIT CORPORATION ITS SUCCESSORS AND

17-063874                    Additional Notice of Pendency of Action                    Page 1 of 5

1 of 10

SpA.318

281

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 86

NYSCEF DOC. NO. 24

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

INDEX NO. 850018/201

RECEIVED NYSCEF: 03/09/201!

ASSIGNS and said assignment was recorded in the Office of the City Register of the City of New York on June 16, 2006 in CRFN # 2006000342599. An additional Mortgage dated November 14, 2005, executed by the Defendants, JOSEPH J. CECCARELLI and SUSAN L. CECCARELLI, as Mortgagors, to MERRILL LYNCH CREDIT CORPORATION, as Mortgagee, to secure the sum of $457,500.00, which Mortgage was duly recorded in the Office of the City Register of the City of New York on June 16, 2006 in CRFN # 2006000342600. Thereafter, said Mortgages were combined and consolidated into a single lien in the amount of $1,277,500.00 by virtue of that Consolidation, Extension and Modification Agreement (hereinafter 2006 CEMA") dated November 14, 2005, which was recorded in the Office of the City Register of the city of New York on June 16, 2006 in CRFN # 2006000342601. Said 2006 CEMA was assigned on November 16, 2012 to MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION and said assignment was recorded in the Office of the City Register of the City of New York on October 27, 2014 in CRFN # 2014000356095. An additional Mortgage December 28, 2012, executed by the Defendants, JOSEPH J. CECCARELLI and SUSAN L. CECCARELLI, as Mortgagors, to MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION, as Mortgagee, to secure the sum of $9,500.00, which Mortgage was duly recorded in the Office of the City Register of the City of New York on October 27, 2014 in CRFN # 2014000356096. Thereafter, said Mortgages were combined and consolidated into a single lien in the amount of $1,287,000.00 by virtue of that Consolidation, Extension and Modification Agreement (hereinafter 2012 CEMA") dated December 28, 2012, which was recorded in the Office of the City Register of the city of New York on October 27, 2014 in CRFN # 2014000356097. Said 2012 CEMA was assigned on November 11, 2014 to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR

17-063874      Additional Notice of Pendency of Action      Page 2 of 5

282

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 86

NYSCEF DOC. NO. 24

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

INDEX NO. 850018/201

RECEIVED NYSCEF: 03/09/2011

MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION and said assignment was recorded in the Office of the City Register of the City of New York on February 20, 2015 in CRFN # 2015000058944. An additional Mortgage dated January 30, 2015, executed by the Defendants, JOSEPH J. CECCARELLI and SUSAN L. CECCARELLI, as Mortgagors, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION, as Mortgagee, to secure the sum of $253,001.62, which Mortgage was duly recorded in the Office of the City Register of the City of New York on February 20, 2015 in CRFN # 201500058945. Thereafter, said Mortgages were combined and consolidated into a single lien in the amount of $1,540,000.00 by virtue of that Consolidation, Extension and Modification Agreement (hereinafter 2015 CEMA") dated January 30, 2015, which was recorded in the Office of the City Register of the city of New York on February 20, 2015 in CRFN # 2015000058946. Said 2015 CEMA was assigned on August 3, 2016 to MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION and said assignment was recorded in the Office of the City Register of the City of New York on August 18, 2016 in CRFN # 2016000285133.

NOTICE IS FURTHER GIVEN that the mortgaged premises affected by the said foreclosure action, were at the time of the commencement of this action and at the time of the filing of this Notice situated in the County of New York and State of New York, designated as 200 East 32nd Street, Unit 28B, New York, NY 10016 designated as Block 912, Lot 1165, and are more fully described in Schedule A annexed hereto.

The New York County Clerk is directed to index this Notice to the name of Defendant, and against the following parcels of property shown on the official Tax Map of the County of New York, as follows:

17-063874      Additional Notice of Pendency of Action      Page 3 of 5

SpA.320

283

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 86

NYSCEF DOC. NO. 24

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

INDEX NO. 850018/201

RECEIVED NYSCEF: 03/09/201

**Block 912, Lot 1165**

The reason for filing this additional notice of pendency is that the previously filed notice of pendency in this action is either invalid or otherwise may expire prior to the completion of this action. The above is an action for the foreclosure of a mortgage and, as such, an additional notice of pendency may be filed herein pursuant to CPLR 6516.

Dated: March __9__, 2018

Ellis M. Oster, Esq.
Senior Associate, Director of Litigation
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380
Our File No. 17-063874

SpA.321

284

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 86

NYSCEF DOC. NO. 24

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

INDEX NO. 850018/201

RECEIVED NYSCEF: 03/09/201

TO: THE CLERK OF THE COUNTY OF NEW YORK:

You are hereby directed to index the within Notice of Pendency of Action to the name of all of the Defendant(s) herein and the number of each block on the land map which is affected by this Notice is hereby designated as follows:

Block 912 Lot 1165

200 East 32nd Street, New York City, NY 10016

Dated: _March 9, 2018_
Rochester, New York

Ellis M. Oster, Esq.
Senior Associate, Director of Litigation
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380
Our File No. 17-063874

SpA.322

# Schedule "A"

NYSCEF DOC. NO. 24

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/09/2018

NYSCEF DOC. NO. 86

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

285

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
INDEX NO. 850018/2017
NYSCEF DOC. NO. 86
RECEIVED NYSCEF: 10/23/2019

# Schedule A

Address: [illegible] East [illegible] Street Unit [illegible]
New York, NY [illegible]

## LEGAL DESCRIPTION

County: NEW YORK

Property Address: [illegible] East [illegible] Street Unit [illegible]
New York, NY [illegible]

THE CONDOMINIUM UNIT (HEREINAFTER REFERRED TO AS THE "UNIT") IN THE BUILDING (HEREINAFTER REFERRED TO AS THE "BUILDING") KNOWN AS THE FUTURE AND BY THE STREET NUMBER [illegible] EAST [illegible] STREET, BOROUGH OF MANHATTAN, CITY COUNTY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED AS UNIT NO. [illegible] IN THAT CERTAIN DECLARATION DATED MARCH [illegible], [illegible] MADE BY [illegible] STREET SOUTHEAST COMPANY L.P. PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (HEREINAFTER REFERRED TO AS THE "CONDOMINIUM ACT") ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND (HEREINAFTER REFERRED TO AS THE "LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HERETO AND BY THIS REFERENCE MADE A PART HEREOF) WHICH DECLARATION WAS RECORDED IN THE NEW YORK COUNTY OFFICE OF THE REGISTER OF THE CITY OF NEW YORK ON MAY [illegible], [illegible] IN REEL [illegible] PAGE [illegible] (AND HAS BEEN AMENDED AS SET FORTH ON EXHIBIT B ANNEXED HERETO AND BY THIS REFERENCE MADE A PART HEREOF) (WHICH DECLARATION AND ANY AMENDMENTS THERETO ARE HEREINAFTER COLLECTIVELY REFERRED TO A THE "DECLARATION") THIS UNIT IS ALSO DESIGNATED AS TAX LOT [illegible] IN BLOCK [illegible] OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY [illegible], ARCHITECTS, ON APRIL [illegible], [illegible] AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK ON MAY [illegible], [illegible] AND ALSO FILED IN THE CITY REGISTER'S OFFICE ON MAY [illegible], [illegible], AS CONDOMINIUM PLAN NO. [illegible];

TOGETHER WITH AN UNDIVIDED [illegible]% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION);

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST [illegible] STREET AND THE EASTERLY SIDE OF THIRD AVENUE;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF EAST [illegible] STREET, [illegible] FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, [illegible] FEET [illegible] INCHES;

THENCE EASTERLY AND PARALLEL WITH EAST [illegible] STREET AND [illegible] FEET;

RECEIVED NYSCEF: 03/09/2018
INDEX NO. 850018/2017
NYSCEF DOC. NO. 24

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, [illegible] FEET [illegible] INCHES;

THENCE WESTERLY AND PARALLEL WITH EAST [illegible] STREET, [illegible] FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, [illegible] FEET;

THENCE WESTERLY AND PARALLEL WITH EAST [illegible] STREET, [illegible] FEET TO THE EASTERLY SIDE OF THIRD AVENUE;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF THIRD AVENUE, [illegible] FEET [illegible] INCHES TO THE SOUTHERLY SIDE OF EAST 32ND STREET, THE POINT OR PLACE OF BEGINNING.

TAX ID #: BLOCK [illegible] LOT: [illegible]

For Information only: Property Address: [illegible] EAST 32TH STREET UNIT [illegible], NEW YORK, NY [illegible] AKA [illegible] AVENUE UNIT [illegible], NEW YORK, NY 10016

288

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 86

NYSCEF DOC. NO. 24

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

INDEX NO. 850018/201

RECEIVED NYSCEF: 03/09/201

## ATTORNEY'S CERTIFICATION

I, Ellis M. Oster, am an attorney duly admitted to the practice of law in the State of New York. I am an associate of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, Mortgage Stanley Private Bank, National Association, in the above captioned civil action.

I HEREBY CERTIFY, pursuant to §130-1.1-a of the Rules of the Chief Administrator (22 NYCRR), to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the presentation of the papers in this action checked below, or the contentions therein, are not frivolous as defined in subsection (c) of §130-1.1 of the Rules of the Chief Administrator (22 NYCRR):

{ }    Summons & Complaint

{ }    Answer or Reply

{ }    Attorney's Affirmation

{X}    Other: Additional Notice of Pendency

DATED: March __9__, 2018

Ellis M. Oster, Esq.
Senior Associate, Director of Litigation
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

17-063874

SpA.326

SpA.327

NYSCEF DOC. NO. 24

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 86
INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/09/2018

289

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

**SUPREME COURT**
**OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

**INDEX NO. 850018/2017**

Mortgage Stanley Private Bank, National Association,

Plaintiff,

-VS-

Joseph J. Ceccarelli and Susan L. Ceccarelli, et al.,

Defendant(s).

---

**ADDITIONAL NOTICE OF**
**PENDENCY**

---

**SHAPIRO, DICARO & BARAK, LLC**
ATTORNEYS FOR PLAINTIFF
175 MILE CROSSING BOULEVARD
ROCHESTER, NEW YORK 14624
(585) 247-9000

290

# NOTICE OF MOTION FOR JUDGMENT OF FORECLOSURE AND CONFIRMING REFEREE'S REPORT, DATED OCTOBER 23, 2019 (MS NO. 2) [290 - 291]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 73

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

Mortgage Stanley Private Bank, National Association

Plaintiff(s),

v.

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A.

Defendant(s).

---

INDEX NO. 850018/2017

**NOTICE OF MOTION TO CONFIRM REFEREE REPORT AND A JUDGMENT OF FORECLOSURE AND SALE**

MORTGAGED PROPERTY:
200 East 32nd Street
New York City, NY 10016

COUNTY: New York
SBL #: Block 912 Lot 1165

PLEASE TAKE NOTICE that, upon the affirmation of Patrick Gregorits dated _10/23/19_, the affidavit of Keithea Dennis sworn to February 16, 2018, the exhibits attached thereto, and all prior proceedings in this case, Plaintiff Mortgage Stanley Private Bank, National Association will move this court, at 22nd day of November, 2019 at 9:30 AM, at the Supreme Court, New York County, New York County Courthouse, 60 Centre Street, Room 130, New York, NY, or as soon thereafter as the parties may be heard, for an order:

1. Confirming the Referee's Report made in accordance with RPAPL §1321;

2. Granting a Judgment of Foreclosure and Sale pursuant to RPAPL §1351;

3. Directing the distribution of the sale proceeds pursuant to RPAPL §1354 and;

4. Such additional relief as this Court may deem just and proper.

1 of 2

SpA.328

291

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 73

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**PLEASE TAKE FURTHER NOTICE** that, pursuant to CPLR 2214 (b), answering papers and notice of cross-motion, with supporting papers, if any, must be served upon the undersigned at least seven (7) days prior to the return date of this motion.

Dated: 10/23/19
Monroe County, New York

Patrick Gregoris, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

To: Steven W. Stutman, Esq.
*Attorney for Defendants, Joseph Ceccarelli a/k/a Joseph J. Ceccarelli and Susan Ceccarelli a/k/a Susan L. Ceccarelli*
535 Broad Hollow Road
Suite B-52
Melville, NY 11747

Mark N. Axinn, Esq,
BRILL & MEISEL
*Attorney for Defendant Board of Managers of the Future Condominium*
845 Third Avenue
16th Floor
New York, NY 10022

Joshua Sherer, Esq.
Peter T. Roach & Associates, P.C.
*Attorney for Defendant RBS Citizens, N.A.*
6901 Jericho Turnpike
Suite 240
Syosset, NY 11791

SpA.329

292

## ATTORNEY AFFIRMATION IN SUPPORT OF MS NO. 2, DATED OCTOBER 23, 2019 [292 - 299]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 77

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff(s),

v.

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A.,

Defendant(s).

INDEX NO. 850018/2017

**ATTORNEY AFFIRMATION IN SUPPORT OF PLAINTIFF'S MOTION TO CONFIRM REFEREE REPORT AND FOR A JUDGMENT OF FORECLOSURE AND SALE**

MORTGAGED PROPERTY:
200 East 32nd Street
New York City, NY 10016
COUNTY: New York
SBL #: Block 912 Lot 1165

Patrick Gregorits, pursuant to CPLR 2106 and under penalties of perjury, hereby affirms as follows:

1. I am an attorney at law and an associate of Shapiro, DiCaro & Barak, LLC, the attorneys of record for Plaintiff Mortgage Stanley Private Bank, National Association. I am fully familiar with the facts, court papers, and proceedings of this action based upon a review of the file maintained by my office.

2. This is a foreclosure action. The Plaintiff is moving the court to confirm the Referee's Report made in accordance with RPAPL §1321 and for a Judgment of Foreclosure and Sale pursuant to RPAPL §1351 that directs the distribution of the proceeds of sale in accordance with RPAPL §1354.

17-063874         Affirmation         Page 1 of 8

SpA.330

293

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 77

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

3.    True and accurate copies of the following documents are attached hereto:

| Document | Tab |
| --- | --- |
| Certificate of Merit | Exhibit A |
| Note | Exhibit B |
| Mortgage | Exhibit C |
| Assignments | Exhibit D |
| Notice of Default | Exhibit E |
| RPAPL §1304 90-Day Notice | Exhibit F |
| Department of Defense Search results | Exhibit G |
| Summons and Complaint | Exhibit H |
| Notice of Pendency | Exhibit I |
| Affidavits of Service | Exhibit J |
| Affidavit of Service by Mail pursuant to CPLR 3215(g)(3)(iii) | Exhibit K |
| Affidavit of Merit and Amount Due | Exhibit L |
| Affirmation of Regularity | Exhibit M |
| Order of Reference | Exhibit N |
| Notice of Entry of Order Granting Summary Judgment | Exhibit O |
| Referee's Oath and Report of Amount Due | Exhibit P |
| Attorney Fee Affirmation | Exhibit Q |
| Power of Attorney | Exhibit R |
| Consent to Change Attorney | Exhibit S |
| Notices of Appearance, Answer or Notices of Return | Exhibit T |

Legalback No. 2 - filed contemporaneously with this application
Costs and Disbursements of Plaintiff with Supporting Invoices

Legalback No. 3 - filed contemporaneously with this application
Proposed Judgment of Foreclosure and Sale

### PROCEDURAL HISTORY

4.    This residential mortgage foreclosure action was commenced by filing the summons and complaint in the New York County Clerk's Office on January 13, 2017, the County where the mortgaged property is located.  The action was brought to foreclose a residential Consolidated and/or Modified mortgage executed by Joseph J. Ceccarelli and Susan L. Ceccarelli, as Mortgagor(s) to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank, National Association, as Mortgagee, to secure the sum of $1,540,000.00, dated January 30, 2015 and recorded in the New York County Office of the City Register on February 20, 2015 in CRFN 2015000058946.  The foregoing instrument

17-063874                      Affirmation                      **Page 2** of 8

294

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 77

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

consolidated and/or modified the following mortgage(s): The Mortgage given by joseph J. Ceccarelli and Susan. K. Langholz to Merill Lynch Credit Corporation to secure the sum of $820,000.00 dated February 7, 2000 and recorded on March 22, 2000 in Reel 3070, page 2071. The Note and Mortgage were transferred to Cendant Mortgage Corporation and said transfer was memorialized by an Assignment of Mortgage dated November 28, 2001 and recorded on January 30, 2002 in Reel 3440, page 0507. The Note and Mortgage were subsequently transferred to Merrill Lynch Credit Corporation and said transfer was memorialized by an Assignment of Mortgage dated March 9, 2006 and recorded on June 16, 2006 in CRFN 2006000342599. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $457,000.00 dated November 14, 2005 and recorded on June 16, 2006 in CRFN 2006000342600. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $1,277,500.00 dated November 14, 2005 and recorded on June 16, 2006 in CRFN 2006000342601. The Note and Mortgage were transferred to Morgan Stanley Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 16, 2012 and recorded on October 27, 2014 in CRFN 2014000356095. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association to secure the sum of $9,500.00 dated December 28, 2012 and recorded on October 27, 2014 in CRFN 2014000356096. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association to secure the sum of $1,287,000.00 dated December 28, 2012 and recorded on October 27, 2014 in CRFN 2014000356097. The Note and Mortgage were transferred to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley

17-063874 Affirmation Page 3 of 8

295

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 77

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 11, 2014 and recorded on February 20, 2015 in CRFN 2015000058944. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank National Association to secure the sum of $253,001.62 dated January 30, 2015 and recorded on February 20, 2015 in CRFN 2015000058945. The Mortgage was transferred to Morgan Stanley Private Bank, National Association, and said transfer was memorialized by an Assignment of Mortgage executed on August 3, 2016 and recorded August 18, 2016 in CRFN 2016000285133.

5.       On January 13, 2017, Plaintiff filed a notice of pendency in accordance with RPAPL §1331 and CPLR Article 65, a copy of which is attached hereto as **Exhibit "I"**. On March 9, 2018, Plaintiff re-filed the notice of pendency in accordance with RPAPL §1331 and CPLR Article 65.

6.       The summons, complaint, and notice of pendency are in the form prescribed by statute and contain all of the particulars required by law. The summons complies with the requirements of RPAPL §1320, contains the required notice in boldface type and is in the format required by statute.

7.       On January 13, 2017, Plaintiff was Holder of the subject note. See Affidavit of Keithea Dennis attached hereto as **Exhibit "L"**.

8.       The Certificate of Merit pursuant to CPLR 3012-b was filed with supporting documents and is attached hereto as **Exhibit "A"**.

9.       According to the affidavit of service filed in the New York County Clerk's Office, the summons was served with the complaint. Defendant(s) were served with the notice required by RPAPL §1303 printed on colored paper together with the summons and complaint printed on

17-063874                     Affirmation                     Page 4 of 8

296

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 77

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

white paper. The RPAPL §1303 notice complies with the requirements of that statute, with the title in bold, 20-point type and the text in bold, 14-point type. The RPAPL §1303 notice was delivered to the mortgagors on its own separate page, together with the summons and complaint. Defendant(s) were timely served with the 90-Day Pre-Foreclosure notice required by RPAPL §1304. Plaintiff filed the name, address and other pertinent information of the Defendant(s), the amount claimed to be due, and the type of loan at issue with the superintendent of banks within three business days of the mailing of the 90-day Pre-Foreclosure notice as required by RPAPL §1306. Copies of these notices and affidavits of service are attached hereto as **Exhibit "F" and Exhibit "J"**.

10. Plaintiff served defendants with copies of the summons in compliance with CPLR 3215(g)(3). The affidavit of service by mail pursuant to CPLR §3215(g)(3) is attached hereto as **Exhibit "K"**. Plaintiff served defendants with an additional copy of the summons in compliance with CPLR 3215(g)(3)(iii). Copies of the affidavits of service and mailing are attached hereto as **Exhibit "K" and Exhibit "J"**.

11. No defendant is an infant. No defendant is in the armed services of the United States of America. Upon information and belief, no defendant is incompetent. The following defendant was served out of state: RBS Citizens, N.A..

12. Per this Court's Order of Reference, defendant(s), the affirmative defenses and cross-motion of Defendants, Joseph Ceccarelli a/k/a Joseph J. Ceccarelli and Susan Ceccarelli, were stricken and dismissed.

13. Pursuant to CPLR 3408 the court held a mandatory settlement conference in this action. Plaintiff attended a settlement conference on January 31, 2018 but a settlement was not reached and the case was released from the settlement conference part.

17-063874                              Affirmation                              Page 5 of 8

297

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 77

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

14. On March 9, 2018, the Plaintiff moved for an Order Granting Summary Judgment. Plaintiff's motion was granted by the Court by Order dated March 29, 2019. A copy of the Order Granting Summary Judgment is attached hereto as **Exhibit "N"**.

15. Plaintiff mailed Notice of Entry of the Order Granting Summary Judgment to the defendant(s) or their attorney(s) on April 25, 2019 and filed the Notice of Entry with the New York County Clerk on April 26, 2019. A copy of the Notice of Entry is attached hereto as **Exhibit "O"**.

16. This court appointed Arthur Greig, Esq. as Referee, to compute the amount due the Plaintiff and to examine and report whether the mortgaged property can be sold in parcels.

17. On October 17, 2019, the Referee executed an Oath and Report of Amount Due which computed the amount due the Plaintiff to be $1,676,660.05 as of February 15, 2018, and determined that the property should be sold as one parcel. The Referee's Oath and Report are attached hereto as **Exhibit "P"**. Plaintiff is entitled to interest at the note rate until the Judgment of Foreclosure and Sale is entered and at the statutory default rate thereafter.

18. No previous motion for a Judgment of Foreclosure and Sale has been made.

**PLAINTIFF IS ENTITLED TO A JUDGMENT OF FORECLOSURE AND SALE**

19. In conjunction with the motion for an Order of Reference previously granted by this Court, Plaintiff established all the required elements for a foreclosure. Plaintiff now requests that the property be sold pursuant to RPAPL §1351 and that the sale proceeds be distributed in accordance with RPAPL §1354.

20. RPAPL §1354(2) requires the Referee conducting the sale to pay out of the proceeds all taxes, assessments, and water rates that are liens upon the property and to redeem the property from any sales for unpaid taxes, assessments, or water rates that have not become

17-063874             Affirmation             Page 6 of 8

SpA.335

298

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 77

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

absolute. At the time of sale, transfer tax is not a lien upon the property nor is it an expense of sale, as that term is used in RPAPL §1354(1). Rather, transfer tax is an expense of recording the deed. All expenses of recording the Referee's Deed, including real property transfer tax should be paid by the purchaser at the closing and not by the Referee from sale proceeds.

21. Plaintiff is entitled to a Judgment that includes reimbursement for Plaintiff's attorney fees for this action in accordance with the terms of the note and mortgage. A detailed affirmation regarding attorney fees is attached hereto as **Exhibit "Q"**.

22. Plaintiff is also entitled to a Judgment that includes reimbursement for Plaintiff's costs, allowances, and disbursements in this matter in accordance with the terms of the note and mortgage and CPLR Article 83. A detailed statement of Plaintiffs costs and disbursements with the supporting invoices was filed contemporaneously with this motion.

23. A Power of Attorney from Mortgage Stanley Private Bank, National Association to PHH Mortgage Corporation is attached hereto as **Exhibit "R"**.

24. Copies of Notices of Appearance, Answer or Notices of Return are attached hereto as **Exhibit "T"**.

25. A Department of Manpower Data Center search was conducted to determine the current military status of the Defendant(s), Joseph Ceccarelli a/k/a Joseph J. Ceccarelli and Susan Ceccarelli a/k/a Susan L. Ceccarelli, prior to submitting this application. The information generated from the search(es) indicated that the aforementioned Defendant(s) is/are not on active duty in the military service of either the United States or an ally. Copies of said search(es), together with the Affiant's Affidavit of Military Status for the defendant(s) herein, is/are attached hereto as **Exhibit "G"**.

17-063874        Affirmation        Page 7 of 8

SpA.336

299

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 77

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

26.     Shapiro, DiCaro & Barak, LLC have been substituted as the attorneys of record for the Plaintiff herein, as seen by Consent filed on June 14, 2017, and attached hereto as **Exhibit "S"**.

27.     A proposed Judgment of Foreclosure and Sale has been provided to the Court together with this motion.

WHEREFORE, Plaintiff requests an order from this Court:

A.     Confirming the Referee's Report;

B.     Granting a Judgment of Foreclosure and Sale which appoints a Referee to sell the property;

C.     Directing the distribution of the sale proceeds;

D.     Such additional relief as this court may deem just and proper.

Dated:     10/23/19
Monroe County, New York

Patrick Gregorits, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

Patrick Gregorits, Esq., an attorney at law licensed to practice in the State of New York, and the attorney for Plaintiff in this action hereby certifies that, to the best of his/her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of this pleading, affidavit (or motion if applicable), and the contentions contained herein are not frivolous as defined by 22 NYCRR 130-1.1(c).

Patrick Gregorits, Esq.

17-063874                    Affirmation                    Page 8 of 8

SpA.337

300

**EXHIBIT A TO GREGORITS AFFIRMATION -
CERTIFICATE OF MERIT, DATED JANUARY 5, 2017 [300 - 302]**

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 72

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 01/13/2017 03:57 PM
NYSCEF DOC. NO. 3

INDEX NO: 850018/201
RECEIVED NYSCEF: 01/13/201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

INDEX No:

CERTIFICATE OF MERIT
PURSUANT TO CPLR
3012-b

Mortgaged Premises Address:

200 East 32nd Street, Unit 28B
New York, NY 10016

Plaintiff,

-against-

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI; SUSAN K. LANGHOLZ AKA SUSAN
L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM; RBS CITIZENS, N.A., and
JOHN DOE AND JANE DOE #1 through #7, the last
seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the tenants,
occupants, persons or parties, if any, having or claiming
an interest in or lien upon the mortgaged premises
described in the Complaint,

Defendants.

1.     I am an attorney at law duly licensed to practice in the State of New York, and am affiliated with the law firm of Pincus Law Group, PLLC., attorney for Plaintiff in this action.

2.     This residential foreclosure action involves a home loan, as such term is defined in Real Property Actions and Proceedings Law § 1304. Upon information and belief, Defendant JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI; SUSAN K. LANGHOLZ AKA SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ CECCARELLI is a resident of the property subject to foreclosure.

3.     I have reviewed the facts of this case and reviewed pertinent documents, including the mortgage, security agreement and note or bond underlying the mortgage executed by defendant,

1 of 3

SpA.338

301

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 78

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

all instruments of assignment (if any), and all other instruments of indebtedness including any modification, extension, and consolidation.

4.    I have consulted about the facts of this case with Salissa Smith, a representative of Plaintiff.

5.    Upon this review and consultation, to the best of my knowledge, information, and belief, I certify that there is a reasonable basis for the commencement of this action, and that Plaintiff is the creditor entitled to enforce rights under these documents.

6.    Listed in Exhibit A and attached hereto are copies of the following documents not otherwise included as attachments to the summons and complaint: the mortgage, security agreement and note or bond underlying the mortgage executed by the Defendant; all instruments of assignment (if any); and any other instrument of indebtedness, including any modification, extension, and consolidation. (Check box if no documents are attached in Exhibit A: ☒.)

7.    Listed in Exhibit B and attached hereto are supplemental affidavits attesting that certain documents as described in paragraph 6 supra are lost, whether by destruction, theft, or otherwise. (Check box if no documents are attached in Exhibit B: ☒.)

8. I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130.

Dated: Uniondale, New York

1/5/, 2017

Respectfully submitted,

Pincus Law Group, PLLC.

By: _____
George J. Weissinger, Esq.
*Attorneys for Plaintiff*
425 RXR Plaza
Uniondale, NY 11556
516-699-8902

2 of 3

SpA.339

302

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 78

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Index No.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff,

— against —

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI, ET AL.,

Defendants.

## CERTIFICATE OF MERIT

PINCUS LAW GROUP, PLLC
*Attorneys for Plaintiff*
425 RXR Plaza
Uniondale, NY 11556
Phone 516-699-8902

*Pursuant to 22 NYCRR 130-1.1, the undersigned, and attorney admitted to practice in the courts of New York State, certified that, upon information and belief and reasonable inquiry, the contentions contained in the annexed documents are not frivolous.*

Dated: 1/5/ , 2017        Signed: _____
                                    George J. Weissinger, Esq.

3 of 3

SpA.340

303

**EXHIBIT B TO GREGORITS AFFIRMATION -
ADJUSTABLE RATE NOTE BASED ON ONE-MONTH LIBOR INDEX
PUBLISHED IN WALL STREET JOURNAL, DATED JANUARY 30, 2015 [303 - 307]**

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 70

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note

**ADJUSTABLE RATE NOTE**
(LIBOR Index - Rate Caps)

**THIS NOTE PROVIDES FOR INTEREST ONLY PAYMENTS FOR TEN (10) YEARS. THIS NOTE ALSO CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE MAXIMUM RATE I MUST PAY.**

January 30, 2015                    NEW YORK CITY                    New York
[Date]                              [City]                          [State]

200 EAST 32ND STREET 28B, NEW YORK CITY, NY 10016

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $1,540,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Morgan Stanley Private Bank, National Association

I will make all payments under this Note in the form of cash, check or money order
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 2.200%. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
Beginning on March 1st, 2015, I will pay interest only on the unpaid principal balance of the Note until 01/31/2025. Thereafter, I will pay principal and interest by making payments every month as provided below. I will make my monthly payments of principal and interest on the first day of each month beginning March, 2025. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1st, 2040 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".
I will make my monthly payments at c/o PHH Mortgage, 1 Mortgage Way Mount Laurel, NJ 08054, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $2,823.33. This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the interest rate and the unpaid principal of the Note that I must pay. The Note Holder will determine my new interest rate and the changed amount of any monthly payment in accordance with Section 4 of this Note

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
0832XC (05 01 09)                                                                    Initials
                                                                                    (Page 1 of 6)

304

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM** INDEX NO. 850018/2017
NYSCEF DOC. NO. 79 RECEIVED NYSCEF: 10/23/2019

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate I will pay will change on the first day of April, 2015, and on that day every month thereafter. Each date on which my adjustable rate could change is called a "Change Date"

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index"
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seventy-Five / Thousandths percentage point(s) (2.075%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

(i) **Interest-Only Period.** The "interest-only period" is the period from the date of this Note through 01/31/2025. For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

(ii) **Amortization Period.** The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
My interest rate will never be greater than 12.000%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. Depending on when a partial Prepayment is made, my partial Prepayment may reduce the amount of my monthly payment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials

(Page 2 of 4)

305

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 79

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender required immediate payment in full under this Section 18, Lender will give me a notice, which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

306

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 79

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

12. **OUR COPY** We/I acknowledge receipt of a signed copy of this Note.

CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE SIGNING.

WITNESS the hand(s) and seal(s) of the undersigned

_____ (Seal)
Joseph J Ceccarelli          -Borrower

_____ (Seal)
Susan L Ceccarelli           -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

[Sign Original Only]

Note: For Florida property only, the State Documentary Tax due on this Note has been paid on the mortgage securing this indebtedness

Loan origination organization  Morgan Stanley Private Bank, National Association
NMLS ID
Loan originator  Frank J Rivera
NMLS ID

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(Page 4 of 4)

SpA.344

307

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 79

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019


Merrill Lynch

**LOAN NUMBER:** ▮▮▮▮▮

### Consolidate Note and Gap Note AFFIDAVIT

My/our Note, which is dated November 14, 2005, is being amended to read as follows:

On the New Money Note:
Correcting the monthly payment amount to read: $2,649.22

On the Consolidate Note:
Correcting the monthly payment amount to read: $5722.14

Also, to correct the signature line to read:
Joseph J. Ceccarelli
Susan L. Ceccarelli, by Joseph J. Ceccarelli as her attorney in fact

I/we understand that this change will be made with my knowledge and approval.

_____     1.5.2006
Joseph J. Ceccarelli                                    (Borrower)

_____
Susan L. Ceccarelli, by Joseph J. Ceccarelli as her attorney in fact     (Borrower)

SpA.345

308

EXHIBIT C TO GREGORITS AFFIRMATION -
MORTGAGE SECURITY INSTRUMENT, INCLUDING ADJUSTABLE RATE
RIDER BY AND BETWEEN MORGAN STANLEY, AS MORTGAGEE,
AND JOSEPH J. CECCARELLI AND SUSAN L. CECCARELLI,
HUSBAND AND WIFE, AS MORTGAGORS, DATED JANUARY 30, 2015 [308 - 392]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM          INDEX NO. 850018/2017

NYSCEF DOC. NO. 80                                        RECEIVED NYSCEF: 10/23/2019

Return To:
Morgan Stanley Private Bank, National Association
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel NJ 08054

Prepared By:
Tammy Mosley
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel, NJ 08054

## Mortgage

MIN

### Words Used Often in This Document

(A) "Security Instrument." This document, which is dated    January 30, 2015    , together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower."
Joseph J. Ceccarelli and Susan L. Ceccarelli, husband and wife

whose address is 200 East 32nd Street, UNIT 28B New York City, NY 10016

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and telephone number of (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

The Premises are improved by a One or Two Family Dwelling.

Section:        Block: 912      Lot: 1161     Unit:

SpA.346

309

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

(D) "Lender."
Morgan Stanley Private Bank, National Association
will be called "Lender." Lender is a corporation or association which exists under the laws of
United States of America                        , Lender's address is 1 Mortgage Way, Mount Laurel,
NJ 08054

(E) "Note." The note signed by Borrower and dated   January 30, 2015      , will be called
the "Note." The Note shows that I owe Lender
Two Hundred Fifty-Three Thousand One Dollars and Sixty-Two Cents
                    Dollars (U.S. $253,001.62          ) plus interest and other amounts that
may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by
February 01, 2040      .

(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to
Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization will be called "Community Association Dues, Fees,
and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other
than by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial
institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are
point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated
teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated
clearinghouse transfers.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPA8(NY)(1302)
Page 2 of 17

SpA.347

310

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

### Borrower's Transfer To Lender Of Rights In The Property

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPA6A(NY) (1302)
Page 3 of 21

SpA.348

311

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

### Description Of The Property

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)  The Property which is located at
280 East 32nd Street, UNIT 2BB                                                [Street]
NEW YORK CITY                  [City, Town or Village], New York  10016    [Zip Code].
This Property is in NEW YORK                            County. It has the following
legal description:
See Attached Legal Description

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

### Borrower's Right To Mortgage The Property And Borrower's Obligation To Defend Ownership Of The Property

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPA6A(NY) (1302)
Page 2 of 21

SpA.349

312

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

#### Plain Language Security Instrument

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

#### Covenants

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

   Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

   Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
   First, to pay interest due under the Note;
   Next, to pay principal due under the Note; and
   Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
   Such payments will be applied to each Periodic Payment in the order in which it became due.
   Any remaining amounts will be applied as follows:
   First, to pay any late charges;
   Next, to pay any other amounts due under this Security Instrument; and
   Next, to reduce the principal balance of the Note.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPGA(NY)(1302)
Page 5 of 17

313

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.
   (a) Borrower's Obligations.
   
   I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loan Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
   
   (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
   (2) The leasehold payments or ground rents on the Property (if any);
   (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
   (4) The premium for Mortgage Insurance (if any);
   (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
   (6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.
   
   After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.
   
   I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.
   
   The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®

Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 6 of 21

314

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.**
Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds.**
Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPBA(NY) (1001)
Page 7 of 21

SpA.352

315

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.



NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VM P6A(NY) (1302)
Page 6 of 21

SpA.353

316

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 80

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019



If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance

Form 3033 1/01
Page 6 of 21

SpA.354

317

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
   (a) **Maintenance and Protection of the Property.**
   I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.
   (b) **Lender's Inspection of Property.**
   Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY)(1303)
Page 10 of 21

318

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage insurance coverage from an alternate mortgage insurer. However, the cost to me of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 11 of 21

SpA.356

319

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

New York Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPA(NY) (1302)
Page 12 of 11

320

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®

Wolters Kluwer Financial Services

Form 3033 1/01

VMPA3NY) (1302)

Page 13 of 21

321

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied to the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

New York Mortgage Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®

Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 14 of 27

SpA.359

322

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1002)
Page 10 of 17

323

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

 

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument

18. **Agreements about Lender's Rights If the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

    (a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

    (b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

    (c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

    (d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®
Wolters Kluwer Financial Services

Form 3035 1/01
VMPA6N(Y) (1302)
Page 14 of 17

324

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property

New York Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3033 1/01

VMP ®

VMPFA(NY) (1302)

Wolters Kluwer Financial Services

Page 17 of 21

325

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

### Non-Uniform Covenants

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS.

VMP ®

Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1009)
Page 16 of 21

326

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property** [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®

Wolters Kluwer Financial Services

Form 3033 1/01

VMPA(NY) (1305)

Page 16 of 17

327

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 21 of this Security Instrument and in any Rider signed by me and recorded with it.

**Borrower**

_____ 1/30/15
Joseph J Ceccardi                Date
                                 (Seal)

_____ 1.30.15
Susan L Ceccardi                 Date
                                 (Seal)

_____
                                 Date
                                 (Seal)

_____
                                 Date
                                 (Seal)

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®

Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1007)
Page 20 of 21

SpA.365

328

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Acknowledgment
State of New York
County of NEW YORK
On    January 30, 2015    before me, the undersigned, personally appeared
Joseph J Ceccarelli, Susan L Ceccarelli ; husband and wife.

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) upon behalf of which the individual(s) acted, executed the instrument.

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 0?S? ?7?123
Qualified in New York County
Commission Expires November 13, 2016

Notary Public

My commission expires:

Tax Map Information: STARS
c/o PHH Mortgage, P.O. Box 5455

Loan origination organization   Morgan Stanley Private Bank, National Association
NMLS ID
Loan originator   Frank J Rivera
NMLS ID

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPA(NY) (1302)
Page 22 of 21

329

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30th day of January, 2015 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Morgan Stanley Private Bank, National Association

("Lender") of the same date and covering the property described in the Security Instrument and located at:

200 East 32nd Street, UNIT 28B New York City, NY 10016
[Property Address].

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 2.200%  The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
   The interest rate I will pay will change on the first day of April, 2015 , and on that day every month thereafter. Each date on which my adjustable rate could change is called a "Change Date".

One Month Adjustable Rate Rider

(Page 1 of 3)

330

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seventy-Five / Thousandths percentage point(s) ( 2.075% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

(I) **Interest-Only Period.** The "interest-only period" is the period from the date of this Note through January 31, 2025 . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid Principal of my loan. The result of this calculation will be the new amount of my monthly payment.

(II) **Amortization Period.** The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

My interest rate will never be greater than 12.000%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

One Month Adjustable Rate Rider

*(Page 2 of 3)*

331

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Joseph J Ceccarelli                       -Borrower

_____ (Seal)
Nann L Ceccarelli                        -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

One Month Adjustable Rate Rider

Loan origination organization  Morgan Stanley Private Bank, National Association
NMLS ID ████

(Page 3 of 3)

SpA.369

332

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 30th day of January, 2015 . and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Morgan Stanley Private Bank, National Association

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 200 East 32nd Street, UNIT 28B New York City, NY 10016

[Property Address]
The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as: THE FUTURE CONDOMINUM

[Name of Condominium Project]
(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01
Wolters Kluwer Financial Services
VMP®-8R (0810)
Page 1 of 3     Initials: _____     Page 1 of 3

333

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 80

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-8R (0810)                    Page 2 of 3          Initials: _____          Form 3140 1/01

SpA.371

334

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
Joseph J Ciccardi          -Borrower

_____ (Seal)
Susan L Ciccardi          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-8R (0810)          Page 3 of 3          Form 3140 1/01

Loan origination organization Morgan Stanley Private Bank, National Association
NMLS ID ████

SpA.372

335

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Exhibit A

Address:       200 East 32nd Street Unit 28B
New York, NY 10016

## LEGAL DESCRIPTION

County:         NEW YORK

Property Address:   200  East 32nd Street Unit 28B
New York, NY 10016

THE CONDOMINIUM UNIT (HEREINAFTER TO AS THE "UNIT") IN THE BUILDING (HEREINAFTER REFERRED TO AS THE "BUILDING") KNOWN AS THE FUTURE AND BY THE STREET NUMBER 200 EAST 32ND STREET, BOROUGH OF MANHATTAN, CITY COUNTY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED AS UNIT NO. 28B IN THAT CERTAIN DECLARATION DATED MARCH 8, 1993 MADE BY 32ND STREET SOUTHEAST COMPANY L.P. PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (HEREINAFTER REFERRED TO AS THE "CONDOMINIUM ACT") ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND (HEREINAFTER REFERRED TO AS THE "LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HERETO AND BY THE REFERENCE MADE A PART HEREOF) WHICH DECLARATION WAS RECORDED IN THE NEW YORK COUNTY OFFICE OF THE REGISTER OF THE CITY OF NEW YORK ON MAY 20, 1993 IN REEL 1972 PAGE 166 (AND HAS BEEN AMENDED AS SET FORTH ON EXHIBIT B ANNEXED HERETO AND BY THIS REFERENCED MADE A PART HEREOF) (WHICH DECLARATION AND ANY AMENDMENTS THERETO ARE HEREINAFTER COLLECTIVELY REFERRED TO A THE "DECLARATION") THIS UNIT IS ALSO DESIGNATED AS TAX LOT 1165 IN BLOCK 912, OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY COSTAS KONDYLAS, ARCHITECTS, ON APRIL 8, 1993 AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW  YORK ON MAY 20, 1993 AND ALSO FILED IN THE CITY REGISTER'S OFFICE ON MAY 20, 1993, AS CONDOMINIUM PLAN NO. 844;

TOGETHER WITH AN UNDIVIDED .751143% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION);

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST 32ND STREET AND THE EASTERLY SIDE OF THIRD AVENUE;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF EAST 32ND STREET, 85 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 110 FEET 8 ¾ INCHES;

THENCE EASTERLY AND PARALLEL WITH EAST 32ND STREET AND 50 FEET;

SpA.373

336

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 35 FEET 9 ¾ INCHES;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 35 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 25 FEET;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 100 FEET TO THE EASTERLY SIDE OF THIRD AVENUE;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF THIRD AVENUE, 172 FEET 6 INCHES TO THE SOUTHERLY SIDE OF EAST 32ND STREET, THE POINT OR PLACE OF BEGINNING.

TAX ID #: BLOCK: 912 LOT: 1165

For information only: Property Address: 200/202 EAST 32TH STREET UNIT 28B, NEW YORK, NY 10016 A/K/A 453/457 3 AVENUE UNIT 28B, NEW YORK, NY 10016

337

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Return To:
Morgan Stanley Private Bank, National Association
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel NJ 08054

Prepared By:
Tammy Mosley
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel, NJ 08054

## EXHIBIT D CONSOLIDATED
## Mortgage

MIN ████████

### Words Used Often in This Document

(A) "Security Instrument." This document, which is dated **January 30, 2015**, together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower."
Joseph J. Ceccarelli and Susan L. Ceccarelli, husband and wife

whose address is 200 East 32nd Street, UNIT 28B New York City, NY 10016

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and telephone number of (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

The Premises are improved by a One or Two Family Dwelling.

| Section: | Block: 912 | Lot: 1161 | Unit: |
|----------|------------|-----------|-------|

NEW YORK- Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPA6A(NY) (1.302)
Page 1 of 17

SpA.375

338

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

(D) "Lender."
Morgan Stanley Private Bank, National Association
will be called "Lender." Lender is a corporation or association which exists under the laws of
United States of America                    . Lender's address is  1 Mortgage Way, Mount Laurel,
NJ 08054

(E) "Note." The note signed by Borrower and dated   January 30, 2015        , will be called
the "Note." The Note shows that I owe Lender
One Million Five Hundred Forty Thousand Dollars and Zero Cents
                    Dollars (U.S. $1,540,000.00         ) plus interest and other amounts that
may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by
February 01, 2040        .

(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to
Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [X] Condominium Rider           [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider   [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider        [ ] Other(s) [specify]

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization will be called "Community Association Dues, Fees,
and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other
than by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial
institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are
point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated
teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated
clearinghouse transfers.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3033  1/01
VMP ®                                                                         VMP6A(NY) (1302)
Wolters Kluwer Financial Services                                            Page 2 of 21

SpA.376

339

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

 

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

### Borrower's Transfer To Lender Of Rights In The Property

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPGA(NY)(1302)
Page 6 of 21

340

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

### Description Of The Property

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at
200 East 32nd Street, UNIT 28B
NEW YORK CITY                    [City, Town or Village], New York 10016    [Street]
This Property is in NEW YORK                                      [Zip Code].
legal description:                                  County. It has the following
See Attached Legal Description

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

### Borrower's Right To Mortgage The Property And Borrower's Obligation To Defend Ownership Of The Property

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 4 of 31

SpA.378

341

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### Plain Language Security Instrument

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

### Covenants

I promise and I agree with Lender as follows:

1.  **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

    Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.  **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
    First, to pay interest due under the Note;
    Next, to pay principal due under the Note; and
    Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
    Such payments will be applied to each Periodic Payment in the order in which it became due.
    Any remaining amounts will be applied as follows:
    First, to pay any late charges;
    Next, to pay any other amounts due under this Security Instrument; and
    Next, to reduce the principal balance of the Note.

NEW YORK Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®

Wolters Kluwer Financial Services

Form 3033 1/01

VMP6A(NY) (1302)

Page 6 of 21

342

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.
   (a) Borrower's Obligations.
      I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
      (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
      (2) The leasehold payments or ground rents on the Property (if any);
      (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
      (4) The premium for Mortgage Insurance (if any);
      (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
      (6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where

Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1002)
Page 6 of 21

343

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**
Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**
Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

NY FIXED/ARM Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Wolters Kluwer Financial Services

Form 3033 1/01
VMPRA(NY) (1302)
Page 7 of 21

344

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPSA(NY) (1302)
Page 4 of 27

345

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 80

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance

346

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfil Any Lease Obligations.**
   (a) **Maintenance and Protection of the Property.**
   I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.
   (b) **Lender's Inspection of Property.**
   Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
UNIF @
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 10 of 21

347

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9.  **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

    Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

    I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

    If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

    If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1202)
Page 11 of 21

SpA.385

348

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPFAA(NY)(1302)
Page 12 of 21

SpA.386

349

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services

Form 3033 1/01
VMP8A(NY) (1002)
Page 12 of 21

350

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

NEW YORK Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3833 1/01
VMPAD(NY)(1203)
Page 14 of 21

SpA.388

351

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPA(NY) (1302)
Page 10 of 21

352

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

SpA.390

353

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 80

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019



20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of those sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make any payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMPAA(NY) (1302)
Page 17 of 21

354

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

### Non-Uniform Covenants

I also promise and agree with Lender as follows:

22. **Lender's Rights if Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:



NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1307)
Page 15 of 21

SpA.392

355

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019





(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property** [check box as applicable].

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1307)
Page 18 of 21

356

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 21 of this Security Instrument and in any Rider signed by me and recorded with it.

**Borrower**

_____     1/30/15
Joseph J Cozzarelli                              Date
                                                          (Seal)

_____     1.30.15
Susan L Cozzarelli                               Date
                                                          (Seal)

_____     _____
                                                          Date
                                                          (Seal)

_____     _____
                                                          Date
                                                          (Seal)

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 20 of 21

357

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Acknowledgment

State of New York

County of NEW YORK

On January 30, 2015 before me, the undersigned, personally appeared Joseph J Ceccarelli, Susan L Ceccarelli ; husband and wife.

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) upon behalf of which the individual(s) acted, executed the instrument.

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 02SA6272123
Qualified in New York County
Commission Expires November 13, 2016

Notary Public

My commission expires:

Tax Map Information: STARS
c/o FHH Mortgage, P.O. Box 5455

Loan origination organization Morgan Stanley Private Bank, National Association
NMLS ID ████████

Loan originator Frank J Rivera
NMLS ID ████████

████ Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3033 1/01

VMP-8
Wolters Kluwer Financial Services

VMPBA(NY) (1302)
Page 21 of 21

SpA.395

358

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 80

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30th day of      January, 2015      and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to  Morgan Stanley Private Bank, National Association

("Lender") of the same date and covering the property described in the Security Instrument and located at:

200 East 32nd Street, UNIT 28B New York City, NY 10016
[Property Address].

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 2.200%     The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay will change on the first day of  April, 2015      , and on that day every month thereafter.  Each date on which my adjustable rate could change is called a "Change Date".

**One Month Adjustable Rate Rider**

(Page 1 of 3)

359

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seventy-Five / Thousandths percentage point(s) ( 2.075% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

(i) Interest-Only Period. The "interest-only period" is the period from the date of this Note through January 31, 2025 . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid Principal of my loan. The result of this calculation will be the new amount of my monthly payment.

(ii) Amortization Period. The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

My interest rate will never be greater than 12.000%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

One Month Adjustable Rate Rider

*(Page 2 of 3)*

360

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Joseph J Ceccarelli                -Borrower

_____ (Seal)
Susan L Ceccarelli                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

One Month Adjustable Rate Rider

Loan origination organization  Morgan Stanley Private Bank, National Association

NMLS ID ████

(Page 3 of 3)

361

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 30th day of January, 2015 . and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Morgan Stanley Private Bank, National Association

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 200 East 32nd Street, UNIT 28B New York City, NY 10016

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as: THE FUTURE CONDOMINUM

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3140 1/01

Wolters Kluwer Financial Services

VMP®-8R (0810)

Page 1 of 3          Initials:          Page 1 of 3

362

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-8R (0810)          Page 2 of 3          Initials ___          Form 3140 1/01

SpA.400

363

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
Joseph J Ceccarelli          -Borrower

_____ (Seal)
Susan L Ceccarelli           -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-8R (0810)                    Page 3 of 3                    Form 3140 1/01

Loan origination organization Morgan Stanley Private Bank, National Association
NMLS ID

SpA.401

364

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Exhibit A

Address:        200 East 32nd Street Unit 28B
New York, NY 10016

## LEGAL DESCRIPTION

County:            NEW YORK

Property Address:    200 East 32nd Street Unit 28B
New York, NY 10016

THE CONDOMINIUM UNIT (HEREINAFTER TO AS THE "UNIT") IN THE BUILDING (HEREINAFTER REFERRED TO AS THE "BUILDING") KNOWN AS THE FUTURE AND BY THE STREET NUMBER 200 EAST 32ND STREET, BOROUGH OF MANHATTAN, CITY COUNTY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED AS UNIT NO. 28B IN THAT CERTAIN DECLARATION DATED MARCH 8, 1993 MADE BY 32ND STREET SOUTHEAST COMPANY L.P. PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (HEREINAFTER REFERRED TO AS THE "CONDOMINIUM ACT") ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND (HEREINAFTER REFERRED TO AS THE "LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HERETO AND BY THE REFERENCE MADE A PART HEREOF) WHICH DECLARATION WAS RECORDED IN THE NEW YORK COUNTY OFFICE OF THE REGISTER OF THE CITY OF NEW YORK ON MAY 20, 1993 IN REEL 1972 PAGE 166 (AND HAS BEEN AMENDED AS SET FORTH ON EXHIBIT B ANNEXED HERETO AND BY THIS REFERENCED MADE A PART HEREOF) (WHICH DECLARATION AND ANY AMENDMENTS THERETO ARE HEREINAFTER COLLECTIVELY REFERRED TO A THE "DECLARATION") THIS UNIT IS ALSO DESIGNATED AS TAX LOT 1185 IN BLOCK 912, OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY COSTAS KONDEYLAS, ARCHITECTS, ON APRIL 8, 1993 AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK ON MAY 20, 1993 AND ALSO FILED IN THE CITY REGISTER'S OFFICE ON MAY 20, 1993, AS CONDOMINIUM PLAN NO. 844;

TOGETHER WITH AN UNDIVIDED .761143% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION);

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST 32ND STREET AND THE EASTERLY SIDE OF THIRD AVENUE;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF EAST 32ND STREET, 85 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 116 FEET 9 ¾ INCHES;

THENCE EASTERLY AND PARALLEL WITH EAST 32ND STREET AND 50 FEET;

SpA.402

365

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 36 FEET 9 ¼ INCHES;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 35 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 25 FEET;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 100 FEET TO THE EASTERLY SIDE OF THIRD AVENUE;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF THIRD AVENUE, 172 FEET 6 INCHES TO THE SOUTHERLY SIDE OF EAST 32ND STREET, THE POINT OR PLACE OF BEGINNING.

TAX ID #: BLOCK: 912 LOT: 1165

For information only: Property Address: 200/202 EAST 32TH STREET UNIT 28B, NEW YORK, NY 10016 A/K/A 453/457 3 AVENUE UNIT 28B, NEW YORK, NY 10016

366

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Return To:
Morgan Stanley Private Bank, National Association
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel NJ 08054

Prepared By:
Tammy Mosley
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel, NJ 08054

## Consolidation, Extension, and Modification Agreement

MIN

**Words Used Often in this Document.**

(A) "Agreement." This document, which is dated January 30, 2015 and exhibits and riders attached to this document will be called the "Agreement."

(B) "Borrower." Joseph J. Ceccarelli and Susan L. Ceccarelli, husband and wife

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 200 East 32nd Street, UNIT 28B New York City, NY 10016

(C) "Lender." Morgan Stanley Private Bank, National Association

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of United States of America
Lender's address is 1 Mortgage Way Mount Laurel, NJ 08054

(D) "Mortgages." The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

The Premises are improved by a One or Two Family Dwelling.

Section:          Block: 912          Lot: 1161          Unit:

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP566A(NY) (1302)
Page 1 of 8

367

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

(E) "MERS" is *Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a telephone number of (888) 679-MERS.* FOR PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.

(F) "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(G) "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(H) "Property." The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

200 East 32nd Street,     [Street]     UNIT 28B

NEW YORK CITY [City]     NEW YORK     [County]

NY 10016     [State and Zip Code]

I promise and I agree with Lender as follows:

I. **Borrower's Agreement About Obligation Under the Notes and Mortgages.** I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. **$1,540,000.00** of this amount, U.S. **$253,001.62** was advanced to me (or for my account) immediately prior to this consolidation.

II. **Agreement to Combine Notes and Mortgages.**

(A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
VMP485(NY) (1302)
Page 2 of 6



368

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages – including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages – have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

III. **Agreement to Change Terms of the Consolidated Note.** Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

IV. **Agreement to Change Terms of the Consolidated Mortgage.** Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

V. **No Set-Off, Defenses.** I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

VI. **Borrower's Interest in the Property.** I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

VII. **Written Termination or Change of this Agreement.** This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

VIII. **Obligations of Borrowers and of Persons Taking Over Borrower's or Lender's Rights or Obligations.** If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP515A(NY) (1302)
Page 3 of 8

SpA.406

369

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

IX. **Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

X. **Type of Property.** Check box(es) as applicable.

☐ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☒ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP315A(NY) (1342)
Page 4 of 5

SpA.407

370

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

By signing this Agreement, Lender and I agree to all of the above.

Morgan Stanley Private Bank, National

– Lender

By PHH Mortgage , its authorized agent

Mortgage Electronic Registration Systems, Inc.

- Mortgagee

By:

Borrower

Joseph J Cecearelli

Date
(Seal)

Susan L Cecearelli

1.30.15

Date
(Seal)

Date
(Seal)

Date
(Seal)

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 3/01
Rev. 4/01
VMP316A(NY) (1303)
Page 5 of 6

SpA.408

371

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 80

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

STATE OF NEW YORK, NEW YORK                                    County ss:
On the 30th day of January, 2015          before me, the undersigned, a notary public in and for
said state, personally appeared   Joseph J Ceccarelli, Susan L Ceccarelli ; husband and wife.

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

RONALD
NOTARY PUBLIC - STATE OF NEW YORK
No. 02SA8272123
Qualified in New York County
Commission Expires November 13, 2016

Notary Public

STATE OF NEW YORK, NEW YORK                                    County ss:
On the 30th day of January, 2015          before me, the undersigned, a notary public in and for
said state, personally appeared  Joseph J Ceccarelli, Susan L Ceccarelli

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

STATE OF NEW YORK, NEW YORK                                    County ss:
On the 30th day of January, 2015          before me, the undersigned, a notary public in and for
said state, personally appeared  Joseph J Ceccarelli, Susan L Ceccarelli

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information:
Loan origination organization  Morgan Stanley Private Bank, National Association
NMLS ID  ■■■■
Loan originator  Frank J Rivera
NMLS ID  ■■■■

372

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**EXHIBIT A**
(List of Mortgages, Notes, and Agreements)

☐ (1) This Mortgage given by  Joseph J. Ceccarelli and Susan L. Ceccarelli, husband and wife

and dated                                in favor of

securing the original principal amount of U.S. $253,001.62
This Mortgage is on a *Fannie Mae/Freddie Mac Security Instrument* and
☐ will be recorded together with this Agreement.
☐ was recorded on                               , in the                                      of
                                         , State of New York, at                                             .
☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $                         .
This Mortgage secures a Note dated
☐ This Mortgage was assigned to

by Assignment of Mortgage dated

☐ and recorded on                                        in the
of                                        , State of New York, at
☐ (2) This Mortgage given by

and dated                                in favor of  Morgan Stanley Private Bank, National Association

securing the original principal amount of U.S. $253,001.62
This Mortgage was recorded on                                     , in the
of                                        , State of New York, at
☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $
This Mortgage secures a Note dated
☐ This Mortgage was assigned to

by Assignment of Mortgage dated

☐ and recorded on                                        in the
of                                        , State of New York, at

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 9/01)
VMP6SA(NY) (1301)
Page 7 of 8

SpA.410

373

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

☐ (3) This Mortgage given by

and dated                          in favor of  Morgan Stanley Private Bank, National Association

securing the original principal amount of U.S. $1,540,000.00         .
This Mortgage was recorded on                          , in the
of                          , State of New York, at
☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $1,540,000.00         .
This Mortgage secures a Note dated                          .
☐ This Mortgage was assigned to
                                        by Assignment of Mortgage dated

☐ and recorded on                          in the
of                          , State of New York, at

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 0/01)
VMP654A(NY) (1.302)
Page 6 of 8

SpA.411

374

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1) All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement. The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i.e., new money note discussed in (6) below).

(2) The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3) The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section I of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4) The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section I of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5) For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6) If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section I of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section I of this Agreement should be zero. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 9/01)
VMP290A(NY) (1002)

SpA.412

375

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 80

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

**EXHIBIT B**
(Property Description)

Address: 200 East 32nd Street, UNIT 28B New York City, NY 10016

Legal Description:
See Attached Legal Description

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP856A(NY) (1005)

SpA.413

376

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**EXHIBIT C**
(Consolidated Note and Addenda)

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 5/01)
VMP6(NY) (1301)

377

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**EXHIBIT D**
(Consolidated Mortgage and Riders)

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP566A(NY) (1302)

378

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Exhibit A

Address: 200 East 32nd Street Unit 28B
New York, NY 10016

## LEGAL DESCRIPTION

County: NEW YORK

Property Address: 200 East 32nd Street Unit 28B
New York, NY 10016

THE CONDOMINIUM UNIT (HEREINAFTER TO AS THE "UNIT) IN THE BUILDING (HEREINAFTER REFERRED TO AS THE "BUILDING") KNOWN AS THE FUTURE AND BY THE STREET NUMBER 200 EAST 32ND STREET, BOROUGH OF MANHATTAN, CITY COUNTY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED AS UNIT NO. 28B IN THAT CERTAIN DECLARATION DATED MARCH 8, 1993 MADE BY 32ND STREET SOUTHEAST COMPANY L.P. PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (HEREINAFTER REFERRED TO AS THE "CONDOMINIUM ACT") ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND (HEREINAFTER REFERRED TO AS THE "LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HERETO AND BY THE REFERENCE MADE A PART HEREOF) WHICH DECLARATION WAS RECORDED IN THE NEW YORK COUNTY OFFICE OF THE REGISTER OF THE CITY OF NEW YORK ON MAY 20, 1993 IN REEL 1972 PAGE 166 (AND HAS BEEN AMENDED AS SET FORTH ON EXHIBIT B ANNEXED HERETO AND BY THIS REFERENCED MADE A PART HEREOF) (WHICH DECLARATION AND ANY AMENDMENTS THERETO ARE HEREINAFTER COLLECTIVELY REFERRED TO A THE "DECLARATION") THIS UNIT IS ALSO DESIGNATED AS TAX LOT 1165 IN BLOCK 912, OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY COSTAS KONDEYLAS, ARCHITECTS, ON APRIL 8, 1993 AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK ON MAY 20, 1993 AND ALSO FILED IN THE CITY REGISTER'S OFFICE ON MAY 20, 1993, AS CONDOMINIUM PLAN NO. 944;

TOGETHER WITH AN UNDIVIDED .761143% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION);

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST 32ND STREET AND THE EASTERLY SIDE OF THIRD AVENUE;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF EAST 32ND STREET, 85 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 110 FEET 8 ¾ INCHES;

THENCE EASTERLY AND PARALLEL WITH EAST 32ND STREET AND 50 FEET;

379

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 36 FEET 9 ½ INCHES;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 35 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 25 FEET;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 100 FEET TO THE EASTERLY SIDE OF THIRD AVENUE;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF THIRD AVENUE, 172 FEET 6 INCHES TO THE SOUTHERLY SIDE OF EAST 32ND STREET, THE POINT OR PLACE OF BEGINNING.

TAX ID #: BLOCK: 912 LOT: 1155

For information only: Property Address: 200/202 EAST 32TH STREET UNIT 28B, NEW YORK, NY 10016 A/K/A 453/457 3 AVENUE UNIT 28B, NEW YORK, NY 10016

380

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## EXHIBIT A

1. Mortgage made by Joseph J. Ceccarelli and Susan K. Langholz to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 02/07/2000, recorded 03/22/2000 in Reel 3070 Page 2071 in the original amount of $820,000.00 of the Public Record of New York County, NY, (Mortgage tax paid $17,400.00);

1a. Assignment of Mortgage from Merrill Lynch Credit Corporation to Cendant Mortgage Corporation, dated 11/28/2001, recorded 1/30/2002 in Reel 3440 Page 507;

1b. Assignment of Mortgage from PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation to Merrill Lynch Credit Corporation, dated 03/09/2006, recorded 06/16/2006 in CRFN 2006000342599;

2. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 11/14/2005, recorded 06/16/2006 in CRFN 2006000342600 in the original amount of $457,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $9,348.75);

2a. The above Mortgages were consolidated to form a single lien of $1,277,500.00 by Agreement dated 11/14/2005 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Merrill Lynch Credit Corporation, which said Agreement was recorded on 06/16/2006 in CRFN 2006000342601;

2b. Assignment of Mortgage from PHH Mortgage Corporation, attorney in fact for Bank of America, N.A., as successor in interest by merger to Merrill Lynch Credit Corporation to Morgan Stanley Private Bank, National Association, dated 11/16/2012, recorded 10/27/2014 in CRFN 2014000356095;

3. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association, as Mortgagee(s) dated 12/28/2012, recorded 10/27/2014 in CRF 2014000356096 in the original amount of $9,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $166.25);

3a. The above Mortgages were consolidated to form a single lien of $1,287,000.00 by Agreement dated 12/28/2012 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Morgan Stanley Private Bank, National Association, which said Agreement was recorded on 10/27/2014 in CRFN 2014000356097, having an unpaid principal balance of $1,286,998.38;

3b. Assignment of Mortgage dated 01/07/2015 made by Morgan Stanley Private Bank, National Association to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association, , its successors and assigns, which Assignment of Mortgage is intended to be recorded simultaneously herewith;

SpA.418

381

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

4. Mortgage dated January 30, 2015 made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association in the amount of $253,001.62, with mortgage tax in the amount of $5,156.50 to be recorded simultaneously herewith;

4a. The above Mortgages are consolidated by Consolidation, Extension, and Modification Agreement dated January 30, 2015 between Joseph J. Ceccarelli and Susan L. Ceccarelli and Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association to form a single lien in the amount of $1,540,000.00 and to be duly recorded in the Office of the Register of New York County, NY.

382

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## SECTION 255 AFFIDAVIT

State of New York   )
          )
ss.: County of New
york )

Joseph J. Ceccarelli and Susan L. Ceccarelli , being duly sworn, depose and say that:

I/We are the owner(s) of property situate at 200 East 32nd Street, Unit 28B, New York, NY 10016 and the borrowers of the mortgages hereinafter described:

1. Mortgage made by Joseph J. Ceccarelli and Susan K. Langholz to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 02/07/2000, recorded 03/22/2000 in Reel 3070 Page 2071 in the original amount of $820,000.00 of the Public Record of New York County, NY, (Mortgage tax paid $17,400.00);

1a. Assignment of Mortgage from Merrill Lynch Credit Corporation to Cendant Mortgage Corporation, dated 11/28/2001, recorded 1/30/2002 in Reel 3440 Page 507;

1b. Assignment of Mortgage from PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation to Merrill Lynch Credit Corporation, dated 03/09/2006, recorded 06/16/2006 in CRFN 2006000342599;

2. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 11/14/2005, recorded 06/16/2006 in CRFN 2006000342600 in the original amount of $457,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $9,348.75);

2a. The above Mortgages were consolidated to form a single lien of $1,277,500.00 by Agreement dated 11/14/2005 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Merrill Lynch Credit Corporation, which said Agreement was recorded on 06/16/2006 in CRFN 2006000342601;

2b. Assignment of Mortgage from PHH Mortgage Corporation, attorney in fact for Bank of America, N.A., as successor in interest by merger to Merrill Lynch Credit Corporation to Morgan Stanley Private Bank, National Association, dated 11/16/2012, recorded 10/27/2014 in CRFN 2014000356095;

383

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



3.Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association, as Mortgagee(s) dated 12/28/2012, recorded 10/27/2014 in CRF 2014000356096 in the original amount of $9,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $166.25);

3a.The above Mortgages were consolidated to form a single lien of $1,287,000.00 by Agreement dated 12/28/2012 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Morgan Stanley Private Bank, National Association, which said Agreement was recorded on 10/27/2014 in CRFN 2014000356097, having an unpaid principal balance of $1,286,998.38;

3b.Assignment of Mortgage dated 01/07/2015 made by Morgan Stanley Private Bank, National Association to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association, its successors and assigns, which Assignment of Mortgage is intended to be recorded simultaneously herewith;

4.Mortgage dated January 30, 2015 made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association in the amount of $253,001.62 with mortgage tax in the amount of $5,156.50 to be recorded simultaneously herewith;

4a.The above Mortgages are consolidated by Consolidation, Extension, and Modification Agreement dated January 30, 2015 between Joseph J. Ceccarelli and Susan L. Ceccarelli and Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association to form a single lien in the amount of $1,540,000.00 and to be duly recorded in the Office of the Register of New York County, NY;

Consolidation, Extension, and Modification Agreement herewith dated January 30, 2015 executed by Owner and mortgagee tendered for recording is given for the purpose of further securing the same principal indebtedness as reduced and said consolidation and/or extension does not create or secure any now or further indebtedness or obligation other than the principal indebtedness secured by said mortgage. That there have been no re-loans or re-advances on said mortgages. The maximum amount secured by all mortgages here is $1,540,000.00.

384

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

WHEREFORE, deponent(s) respectfully request that the Modification Agreement tendered therewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York. .

Joseph J Ceccarelli

Susan L. Ceccarelli

Subscribed and sworn to _____

this _____ 3 . ᴍ day of _ JANUARY _, 2015

Notary Public

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 025A6272123
Qualified in New York County
Commission Expires November 13, 2016

SpA.422

385

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## EXHIBIT A

1. Mortgage made by Joseph J. Ceccarelli and Susan K. Langholz to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 02/07/2000, recorded 03/22/2000 in Reel 3070 Page 2071 in the original amount of $820,000.00 of the Public Record of New York County, NY, (Mortgage tax paid $17,400.00);

1a. Assignment of Mortgage from Merrill Lynch Credit Corporation to Cendant Mortgage Corporation, dated 11/28/2001, recorded 1/30/2002 in Reel 3440 Page 507;

1b. Assignment of Mortgage from PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation to Merrill Lynch Credit Corporation, dated 03/09/2006, recorded 06/16/2006 in CRFN 2006000342599;

2. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 11/14/2005, recorded 06/16/2006 in CRFN 2006000342600 in the original amount of $457,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $9,348.75);

2a. The above Mortgages were consolidated to form a single lien of $1,277,500.00 by Agreement dated 11/14/2005 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Merrill Lynch Credit Corporation, which said Agreement was recorded on 06/16/2006 in CRFN 2006000342601;

2b. Assignment of Mortgage from PHH Mortgage Corporation, attorney in fact for Bank of America, N.A., as successor in interest by merger to Merrill Lynch Credit Corporation to Morgan Stanley Private Bank, National Association, dated 11/16/2012, recorded 10/27/2014 in CRFN 2014000356095;

3. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association, as Mortgagee(s) dated 12/28/2012, recorded 10/27/2014 in CRF 2014000356096 in the original amount of $9,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $166.25);

3a. The above Mortgages were consolidated to form a single lien of $1,287,000.00 by Agreement dated 12/28/2012 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Morgan Stanley Private Bank, National Association, which said Agreement was recorded on 10/27/2014 in CRFN 2014000356097, having an unpaid principal balance of $1,286,998.38;

3b. Assignment of Mortgage dated 01/07/2015 made by Morgan Stanley Private Bank, National Association to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association, , its successors and assigns, which Assignment of Mortgage is intended to be recorded simultaneously herewith;

SpA.423

386

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

4. Mortgage dated January 30, 2015 made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association in the amount of $253,001.62, with mortgage tax in the amount of $5,156.50 to be recorded simultaneously herewith;

4a. The above Mortgages are consolidated by Consolidation, Extension, and Modification Agreement dated January 30, 2015 between Joseph J. Ceccarelli and Susan L. Ceccarelli and Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association to form a single lien in the amount of $1,540,000.00 and to be duly recorded in the Office of the Register of New York County, NY.

387

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**SECTION 255 AFFIDAVIT**

State of New York )
)
ss.: County of New
york )

Joseph J. Ceccarelli and Susan L. Ceccarelli , being duly sworn, depose and say that:

I/We are the owner(s) of property situate at 200 East 32nd Street, Unit 28B, New York, NY 10016 and the borrowers of the mortgages hereinafter described:

1. Mortgage made by Joseph J. Ceccarelli and Susan K. Langholz to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 02/07/2000, recorded 03/22/2000 in Reel 3070 Page 2071 in the original amount of $820,000.00 of the Public Record of New York County, NY, (Mortgage tax paid $17,400.00);

1a. Assignment of Mortgage from Merrill Lynch Credit Corporation to Cendant Mortgage Corporation, dated 11/28/2001, recorded 1/30/2002 in Reel 3440 Page 507;

1b. Assignment of Mortgage from PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation to Merrill Lynch Credit Corporation, dated 03/09/2006, recorded 06/16/2006 in CRFN 2006000342599;

2. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 11/14/2005, recorded 06/16/2006 in CRFN 2006000342600 in the original amount of $457,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $9,348.75);

2a. The above Mortgages were consolidated to form a single lien of $1,277,500.00 by Agreement dated 11/14/2005 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Merrill Lynch Credit Corporation, which said Agreement was recorded on 06/16/2006 in CRFN 2006000342601;

2b. Assignment of Mortgage from PHH Mortgage Corporation, attorney in fact for Bank of America, N.A., as successor in interest by merger to Merrill Lynch Credit Corporation to Morgan Stanley Private Bank, National Association, dated 11/16/2012, recorded 10/27/2014 in CRFN 2014000356095;

388

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

3. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association, as Mortgagee(s) dated 12/28/2012, recorded 10/27/2014 in CRF 2014000356096 in the original amount of $9,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $166.25);

3a. The above Mortgages were consolidated to form a single lien of $1,287,000.00 by Agreement dated 12/28/2012 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Morgan Stanley Private Bank, National Association, which said Agreement was recorded on 10/27/2014 in CRFN 2014000356097, having an unpaid principal balance of $1,286,998.38;

3b. Assignment of Mortgage dated 01/07/2015 made by Morgan Stanley Private Bank, National Association to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association, its successors and assigns, which Assignment of Mortgage is intended to be recorded simultaneously herewith;

4. Mortgage dated January 30, 2015 made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association in the amount of $253,001.62 with mortgage tax in the amount of $5,156.50 to be recorded simultaneously herewith;

4a. The above Mortgages are consolidated by Consolidation, Extension, and Modification Agreement dated January 30, 2015 between Joseph J. Ceccarelli and Susan L. Ceccarelli and Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association to form a single lien in the amount of $1,540,000.00 and to be duly recorded in the Office of the Register of New York County, NY;

Consolidation, Extension, and Modification Agreement herewith dated January 30, 2015 executed by Owner and mortgagee tendered for recording is given for the purpose of further securing the same principal indebtedness as reduced and said consolidation and/or extension does not create or secure any now or further indebtedness or obligation other than the principal indebtedness secured by said mortgage. That there have been no re-loans or re-advances on said mortgages. The maximum amount secured by all mortgages here is $1,540,000.00.

389

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

WHEREFORE, deponent(s) respectfully request that the Modification Agreement tendered therewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York.

Joseph J Ceccarelli

Susan L Ceccarelli

Subscribed and sworn to _____

this ____20th____ day of ___January___, 2015

Notary Public _____

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 02SA6272123
Qualified in New York County
Commission Expires November 13, 2016

SpA.427

390

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## CORRECTION AGREEMENT

Each undersigned borrower, owner, trustee or member (individually and collectively "Borrower") authorize TRGC ("Settlement Agent") to make the corrections authorized by this Agreement in Borrower's documents that Borrower signed in connection with the closing of Borrower's mortgage loan(s) with Morgan Stanley Private Bank, N.A. on January 30, 2015

Settlement Agent is authorized, on Borrower's behalf, to take the following corrective actions on documents received in connection with the closing of the mortgage loan above

1   Place Borrower's initials on any page delivered to Borrower at closing but that Borrower failed to initial;

2.  Add a missing legal description or other attachment that was inadvertently not attached to the document Borrower signed;

3.  Fill in blanks on the document that were inadvertently not filled in, add the name of Borrower's condominium or planned urban development (PUD) project, add recording information, and/or add tax exemption codes;

4.  Include information requiring document to be returned to Settlement Agent following closing.

5.  On subordinations, assignments and similar document, include the exact loan amount in place of a "not to exceed" loan amount so long as the exact loan amount is equal to or less than the amount listed on the document;

6.  Correct typographical or scrivener's errors;

7.  Any other change Borrower and Lender authorize in advance.

In no event shall this Correction Agreement be used to change in any way the terms of Borrower's loan including (but not limited to) the interest rate, loan amount, monthly payment or closing fees. If Settlement Agent exercises the authorization granted by this Correction Agreement, Borrower will be notified in advance and be provided a copy of the corrected document

This authority granted under this Correction Agreement shall automatically terminate and expire upon successful completion of recording of any and all documents required in relation to the mortgage loan made to Lender

Joseph Ceccarelli                           Date   1/30/2015

Susan Ceccarelli                            Date   1.30.15

_____            Date: _____

_____            Date: _____



391

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## SIGNATURE/NAME AFFIDAVIT

DATE: **January 30, 2015**

LOAN #: ▮▮▮▮▮

BORROWER: Joseph Ceccarelli

**THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.**
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

Joseph Ceccarelli
(Print or Type Name) — Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

Joseph J Ceccarelli
(Print or Type Name) — Signature

(Print or Type Name) — Signature

(Print or Type Name) — Signature

(Print or Type Name) — Signature

and that

and the same person.

are one

State/Commonwealth of New York
County/Parish of NEW YORK

Subscribed and sworn (affirmed) before me
this 30ᵗʰ day of JANUARY 2015.

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 02SA6272123
Qualified in New York County
Commission Expires November 13, 2016

Notary Public
State/Commonwealth of New York
Acting in the County/Parish of NEW YORK
My Commission Expires:

▮▮▮-364 (8466)   VMP Mortgage Solutions, Inc (800)521-7291   6/04

Loan origination organization  Morgan Stanley Private Bank, National Association
NMLS ID ▮▮▮▮

SpA.429

392

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 80

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## SIGNATURE/NAME AFFIDAVIT

DATE: January 30, 2015

LOAN #: ████████

BORROWER: Susan Ceccarelli

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Mortgage or Deed of Trust.)

Susan Ceccarelli
(Print or Type Name)

Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

Susan L Ceccarelli
(Print or Type Name)

Signature

(Print or Type Name)

Signature

(Print or Type Name)

Signature

(Print or Type Name)

Signature

and that

are one

and the same person.

State/Commonwealth of New York
County/Parish of NEW YORK

Subscribed and sworn (affirmed) before me
this ____ day of JANUARY 2015

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No 02SA5172123
Qualified in New York County
Commission Expires November 13, 2016

Notary Public
State/Commonwealth of New York
Acting in the County/Parish of NEW YORK

My Commission Expires:

████-104 (0405)

VMP Mortgage Solutions, Inc. (800)521-7291

8/04

Loan origination organization Morgan Stanley Private Bank, National Association
NMLS ID ████

SpA.430

FILED: APPELLATE DIVISION - 1ST DEPT 04/28/2022 04:59 PM
NYSCEF DOC. NO. 7

2021-04118
RECEIVED NYSCEF: 04/28/2022

# New York Supreme Court

## Appellate Division—First Department

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

*Plaintiff-Respondent,*

**Appellate Case No.: 2021-04118**

– against –

JOSEPH J. CECCARELLI, III AKA Joseph J. Ceccarelli and SUSAN K. LANGHOLZ AKA Susan L. Ceccarelli AKA Susan Langholz Ceccarelli,

*Defendants-Appellants,*

– and –

BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM,
RBS CITIZENS, N.A. and JOHN DOE AND JANE DOE #1 through #7,
the last seven (7) names being fictitious and unknown to the Plaintiff, the persons
or parties intended being the tenants, occupants, persons or parties, if any,
having or claiming an interest in or lien upon the mortgaged premises
described in the Complaint,

*Defendants.*

## RECORD ON APPEAL
### Volume 2 of 2 (Pages 393 to 740)

LOGS LEGAL GROUP LLP
*Attorneys for Plaintiff-Respondent*
175 Mile Crossing Boulevard
Rochester, New York 14625
(585) 247-9000
roce-filing@logs.com

CECCARELLI LAW FIRM PLLC
*Attorneys for Defendants-Appellants*
1345 Avenue of the Americas, 2nd Floor
New York, New York 10105
(212) 889-3675
jceccarelli@ceccarellilaw.com

New York County Clerk's Index No. 850018/17

i

## TABLE OF CONTENTS

**Page**

Statement Pursuant to CPLR § 5531 ......................... 1

Notice of Appeal, by Defendants Joseph J.
   Ceccarelli and Susan L. Ceccarelli, dated
   July 28, 2021............................................ 3

Decisions and Orders and Final Judgment of
   Foreclosure and Sale of the Honorable Francis A.
   Kahn, III, dated April 23, 2021, Appealed From,
   with Notice of Entry
   (Motion Sequences 002 and 003) ......................... 7

DOCUMENTS FOR REVIEW

Interim Orders (Bluth, J.), dated February 25, 2020
   and February 4, 2022, scheduling oral argument
   on April 21, 2020 regarding two pending motions
   MS no. 2 (Plaintiff's motion for final judgment),
   and MS. no. 3 (Defendants-Mortgagors' motion
   for summary judgment), and granting leave
   pursuant to CPLR 2201, 2004 and 2215: a) to
   Plaintiff to oppose Defendants-Mortgagors'
   pending Cross-Motion under MS no. 2; and b)
   consolidating MS no. 2 for disposition pending
   submission of Defendants-Mortgagors' motion
   for summary judgment rebutting Plaintiff's prima
   facie case of standing and related relief
   (MS no. 3)............................................... 19

SpA.432

**ii**

**Page**

Order (Bluth, J.) following adjourned conference incorporating NYSCEF nos. 104 and 98 by reference, dated October 24, 2019, granting leave to Defendants-Mortgagors to move for affirmative relief regarding MS nos. 2 and 3 and setting control date for oral argument for both motions on February 4, 2021 ................................. 21

Withdrawal of Interlocutory Appeal from MS no. 1, dated November 22, 2019, granting Plaintiff's summary judgment to Plaintiff and denying Defendants-Mortgagors' cross-motion for discovery and related relief without prejudice....... 32

Order (Bluth, J.), dated June 27, 2019 directing Plaintiff to furnish to Defendants-Mortgagors copies of all documents submitted to Referee to hear and report on May 10, immediately, and vacating Defendants' ex parte "stipulation" conditionally granting leave to Plaintiff to re-file Motion for Final Judgment of Foreclosure, and adjourning conference compliance date to October 22, 2019; and Defendants-Mortgagors' Accompanying Request for Plaintiff's Supporting Reference Documents and Other Proofs, and to Participate in Reference Hearing pursuant to RPAPL 1321 and CPLR 4313................................. 40

PLEADINGS

Summons and Complaint, dated January 5, 2017 and e-filed on January 17, 2017............................. 48

SpA.433

iii

**Page**

Exhibit A to Complaint -
(i) Adjustable Rate Note and Mortgage
Agreement between Joseph J. Ceccarelli, Susan
K. Langholz and Merrill Lynch Credit
Corporation, dated February 7, 2000, with Rider.. 59

(ii) Legal Description of 200 East 32nd Street,
Unit 28B, New York, NY 10018............................. 87

Exhibit B to Complaint -
Legal Description of 200 East 32nd Street,
Unit 28B, New York, NY 10018
(Reproduced herein at pp. 87-88) .......................... 89

Exhibit C to Complaint -
Assignments of Mortgage...................................... 90

Exhibit D to Complaint -
Adjustable Rate Note and Mortgage Agreement
between Joseph J. Ceccarelli, Susan L. Ceccarelli
and Merrill Lynch Credit Corporation, dated
November 14, 2005, with Riders........................... 95

Exhibit E to Complaint -
Consolidation, Extension and Modification
Agreement between Joseph J. Ceccarelli, Susan
L. Ceccarelli and Merrill Lynch Credit
Corporation, dated November 14, 2005, with
Exhibits A and B ..................................................... 126

Exhibit F to Complaint -
Assignment of Mortgage by Joseph J. Ceccarelli
and Susan K. Langholz to Merrill Lynch Credit
Corporation, dated November 16, 2012 ................ 135

SpA.434

**iv**

**Page**

Exhibit G to Complaint -
Adjustable Rate Note and Mortgage Agreement
between Joseph J. Ceccarelli, Susan L. Ceccarelli
and Morgan Stanley Private Bank, N.A., dated
December 28, 2012, with Exhibit A ...................... 139

Exhibit H to Complaint -
Consolidation, Extension and Modification
Agreement between Joseph J. Ceccarelli, Susan
L. Ceccarelli and Morgan Stanley Private Bank,
N.A., dated December 28, 2012, with Exhibit A ... 163

Exhibit I to Complaint -
Corporate Assignment of Mortgage by Joseph J.
Ceccarelli, Susan K. Langholz and Mortgage
Stanley Private Bank, N.A., dated
November 11, 2014 ................................................. 175

Exhibit J to Complaint -
Adjustable Rate Note and Mortgage Agreement
between Joseph J. Ceccarelli, Susan L. Ceccarelli
and Morgan Stanley Private Bank, N.A., dated
January 30, 2015, with Riders ............................... 179

Exhibit K to Complaint -
Consolidation, Extension and Modification
Agreement between Joseph J. Ceccarelli, Susan
L. Ceccarelli and Morgan Stanley Private Bank,
N.A., dated January 30, 2015, with
Exhibits A and B .................................................... 214

Exhibit L to Complaint -
(i) Corporate Assignment of Mortgage by Joseph
J. Ceccarelli, Susan L. Ceccarelli and Morgan
Stanley Private Bank, N.A., dated
August 3, 2016 ....................................................... 230

v

**Page**

(ii) Adjustable Rate Note, dated
January 30, 2015 ................................................... 234

Exhibit M to Complaint -
Demand Letter, dated April 20, 2016 ..................... 238

Exhibit N to Complaint -
90-Day Letters with Proof of Service .................... 242

Exhibit O to Complaint -
Credit Line Mortgage Agreement between Joseph
J. Ceccarelli, Susan L. Ceccarelli and RBS
Citizens NA, dated May 29, 2015, with
Exhibit A ............................................................... 260

Notice of Pendency, dated January 5, 2017
(Reproduced herein at pp. 34-39) .......................... 268

Defendants-Mortgagors' Amended Answer, dated
April 10, 2017 ....................................................... 269

Reply, dated June 30, 2017 ....................................... 276

Additional Notice of Pendency, dated
March 9, 2018 ....................................................... 280

MOTION SEQUENCE 002

Notice of Motion for Judgment of Foreclosure and
Confirming Referee's Report, dated October 23,
2019 (MS no. 2) .................................................... 290

Attorney Affirmation in Support of MS no. 2, dated
October 23, 2019 .................................................. 292

Exhibit A to Gregorits Affirmation -
Certificate of Merit, dated January 5, 2017 ........... 300

vi

**Page**

Exhibit B to Gregorits Affirmation -
Adjustable Rate Note Based on One-Month Libor
Index Published in Wall Street Journal, dated
January 30, 2015 ..................................................... 303

Exhibit C to Gregorits Affirmation -
Mortgage Security Instrument, including
Adjustable Rate Rider by and between Morgan
Stanley, as Mortgagee, and Joseph J. Ceccarelli
and Susan L. Ceccarelli, husband and wife, as
Mortgagors, dated January 30, 2015 ....................... 308

Exhibit D to Gregorits Affirmation -
Assignment of Consolidated and Refinanced
Mortgages from Merrill Lynch dating back to
February 7, 2000 .................................................... 393

Exhibit E to Gregorits Affirmation -
Demand Letter, dated April 20, 2016
(Reproduced herein at pp. 238-241) ....................... 410

Exhibit F to Gregorits Affirmation -
90-Day Letters
(Reproduced herein at pp. 242-259) ....................... 410

Exhibit G to Gregorits Affirmation -
Non-Military Affidavit, dated October 23, 2019 ... 411

Exhibit H to Gregorits Affirmation -
Summons and Complaint, dated January 5, 2017
and e-filed on January 17, 2017, with Exhibits A
through O attached thereto
(Reproduced herein at pp. 48-267) ......................... 420

Exhibit I to Gregorits Affirmation -
(i) Notice of Pendency, dated January 5, 2017
(Reproduced herein at pp. 34-39) ........................... 420

SpA.437

**vii**

Page

(ii) Additional Notice of Pendency, dated
March 9, 2018
(Reproduced herein at pp. 280-289) ....................... 420

Exhibit J to Gregorits Affirmation -
Affidavits of Service.............................................. 421

Exhibit K to Gregorits Affirmation -
Affidavit of Mailing Copy of Summons................ 428

Exhibit L to Gregorits Affirmation -
Affidavit by Servicing Agent re Total Amount
Claimed Due Under Morgan Stanley 1-month
Libor Adjustable Rate Note, sworn to
February 16, 2018 ................................................... 429

Exhibit M to Gregorits Affirmation -
Affirmation of Regularity, dated March 9, 2018 ... 433

Exhibit N to Gregorits Affirmation -
Decision and Order Granting Summary Judgment
under MS no. 1, dated March 29, 2019 ................. 448

Exhibit O to Gregorits Affirmation -
Notice of Entry, dated April 25, 2019.................... 454

Exhibit P to Gregorits Affirmation -
(i) Oath of Referee and Referee Report, dated
October 17, 2019 ................................................... 458

(ii) Affidavit by Servicing Agent re Total Amount
Claimed Due Under Morgan Stanley 1-month
Libor Adjustable Rate Note, sworn to
February 16, 2018
(Reproduced herein at pp. 429-432) ....................... 465

Exhibit Q to Gregorits Affirmation -
Affirmation of Affirmation of Services Rendered,
dated October 23, 2019.......................................... 466

SpA.438

viii

**Page**

Exhibit R to Gregorits Affirmation -
Power of Attorney, sworn to June 5, 2012 ............. 470

Exhibit S to Gregorits Affirmation -
Consent to Change Attorney, dated
May 26, 2017 ........................................... 474

Exhibit T to Gregorits Affirmation -
(i) Notice of Appearance, dated March 29, 2018 ... 477

(ii) Notice of Appearance and Waiver in
Foreclosure, dated January 27, 2017 ..................... 479

(iii) Defendants-Mortgagors' Amended Answer,
dated April 10, 2017
(Reproduced herein at pp. 269-275) ...................... 481

(iv) Defendants-Mortgagors' Notice of Discovery
and Inspection, dated March 30, 2017 ................... 482

(v) Defendants-Mortgagors' Notice to Take
Deposition, dated April 5, 2017 ............................. 487

(vi) Reply, dated June 30, 2017
(Reproduced herein at pp. 276-279) ...................... 490

Notice of Cross-Motion (MS no.2), dated
November 19, 2019 ............................................. 491

Exhibit 1 to Notice -
Notice of Rejection of Plaintiff's MS no. 2 based
on violation of court order and misleading
statements to Referee, dated October 23, 2019
(Reproduced herein at pp. 22-25) .......................... 495

ix

**Page**

Exhibit 2 to Notice -
Affirmation of Non-Compliance with Court
Order Directing Document Production for
Reference, dated October 23, 2019
(Reproduced herein at pp. 26-31) .......................... 495

Exhibit 3 to Notice -
Left Blank
(Omitted in Original Filed Document) .................. 496

Exhibit A to Affirmation -
Order (Bluth, J.), dated June 27, 2019,
directing Plaintiff to comply with Defendants-
Mortgagors' Document Production under
pending Reference
(Reproduced herein pp. 40-43) .......................... 497

Exhibit B to Affirmation -
Defendants-Mortgagors' Request for Plaintiff's
Supporting Reference Documents and Other
Proofs, and to Participate in Reference Hearing
pursuant to RPAPL 1321 and CPLR 4313,
dated June 26, 2019
(Reproduced herein at pp. 44-47) ....................... 497

Exhibit C to Affirmation -
First Letter, dated June 28, 2019......................... 498

Exhibit D to Affirmation -
Second Letter, dated September 27, 2019.......... 499

Exhibit E to Affirmation -
Third Letter, dated October 4, 2019................... 500

x

**Page**

Exhibit 4 to Notice -
Order of Court Granting Leave to Defendants to
File Motion for Summary Judgment before
Next Scheduled Court Conference, dated
October 24, 2019
(Reproduced herein at p. 21) ................................. 501

MOTION SEQUENCE 003

Notice of Motion for Summary Judgment and
Related Relief (MS no. 3), dated
February 24, 2020................................................... 502

Affirmation in Support (1 of 2) of Defendants'
Motion for Summary Judgment and Related
Relief, dated February 24, 2020 ............................ 505

Affidavit in Support (2 of 2) of Defendants' Motion
for Summary Judgment and Related Relief,
sworn to February 20, 2020, and filed on
February 24, 2020................................................... 519

Exhibit 1 to Foregoing Documents -
Morgan Stanley Notice of Sale of Defendants'
Mortgage Note to Investors, dated
September 26, 2016 ............................................... 524

Exhibit 2 to Foregoing Documents -
Morgan Stanley's right to sell Mortgage Note or
interest in it to investors one or more times
pursuant to Section 20 of Mortgage Security
Instrument., dated January 30, 2015
(Reproduced herein at pp. 308-392) ...................... 528

Exhibit 3 to Foregoing Documents -
NY Times Investigative Report regarding Bank
Sales of Pooled Notes to Hedge Funds and other
Investors, dated September 28, 2015 ..................... 529

SpA.441

xi

**Page**

Exhibit 4 to Foregoing Documents -
Summons and Complaint, dated January 5, 2017
and e-filed on January 17, 2017, with Exhibits A
through O attached thereto
(Reproduced herein at pp. 48-267) ......................... 537

Exhibit 5 to Foregoing Documents -
Defendants-Mortgagors' Amended Answer, dated
April 10, 2017
(Reproduced herein at pp. 269-275) ...................... 537

Exhibit 6 to Foregoing Documents -
Defendants-Mortgagors' Notice of Discovery and
Inspection, dated March 30, 2017
(Reproduced herein at pp. 482-486) ...................... 537

Exhibit 7 to Foregoing Documents -
Defendants-Mortgagors' Notice to Take
Deposition, dated April 5, 2017
(Reproduced herein at pp. 487-489) ...................... 537

Exhibit 8 to Foregoing Documents -
Decision and Order Granting Summary Judgment
under MS no. 1, dated March 29, 2019
(Reproduced herein at pp. 448-453) ...................... 537

Exhibit 9 to Foregoing Documents -
Order (Bluth, J.), dated June 27, 2019, directing
Plaintiff to comply with Defendants-Mortgagors'
Document Production under pending Reference
(Reproduced herein pp. 40-43) .............................. 538

**xii**

Page

Exhibit 10 to Foregoing Documents -
Defendants-Mortgagors' Request for Plaintiff's
Supporting Reference Documents and Other
Proofs, and to Participate in Reference Hearing
pursuant to RPAPL 1321 and CPLR 4313, dated
June 26, 2019
(Reproduced herein at pp. 44-47) .......................... 538

Exhibit 11 to Foregoing Documents -
Order (Bluth, J.), dated October 24, 2019,
following adjourned conference incorporating
NYSCEF nos. 104 and 98 by reference, granting
leave to Defendants-Mortgagors to move for
affirmative relief regarding MS nos. 2 and 3 and
setting control date for oral argument for both
motions on February 4, 2021
(Reproduced herein at p. 21) ................................. 538

Exhibit 12 to Foregoing Documents -
Notice of Cross-Motion by Defendants-
Mortgagors under MS no. 2, dated November 19,
2019, with Exhibits 1 through 4 attached thereto
(Reproduced herein at pp. 491-494) ...................... 538

Exhibit 13 to Foregoing Documents -
Order (Bluth, J.), dated February 4, 2022, setting
control date of oral argument of April 21, 2020
upon submission of complete set of motion
papers, both sides, for MS nos. 2 and 3
(Reproduced herein at p. 20) ................................. 538

Memorandum of Law, dated February 24, 2020, in
Support of Defendants-Mortgagors' Notice of
Motion for Summary Judgment and related relief
under MS no. 3 ...................................................... 539

xiii

|  | Page |
|---|---|
| Plaintiff's Affirmation in Opposition, dated March 4, 2020 | 563 |
| Exhibit A to De Bow Affirmation - Defendant "Packet" sent to Counsel for Defendants-Mortgagors | 573 |
| Defendants-Mortgagors' Reply Affirmation in Further Support of Summary Judgment and Related Relief, dated March 10, 2020 | 701 |
| Exhibit 1 to Ceccarelli Reply Affirmation - Summons and Complaint, dated January 5, 2017 and e-filed on January 17, 2017 (Reproduced herein at pp. 48-267) | 709 |
| Exhibit 2 to Ceccarelli Reply Affirmation - Affidavit of Plaintiff's sub-servicing agent regarding transfer of Mortgage Security Instrument to agent, dated August 20, 2019 | 710 |
| Exhibit 3 to Ceccarelli Reply Affirmation - Plaintiff Attorney Affirmation, dated September 25, 2019, regarding documents furnished to Referee | 720 |
| Reply Memorandum of Law by Defendants-Mortgagors, dated March 10, 2020, in Further Support of Summary Judgment and Related Relief | 726 |
| Certification Pursuant to CPLR § 2105 | 740 |

SpA.444

393

# EXHIBIT D TO GREGORITS AFFIRMATION - ASSIGNMENT OF CONSOLIDATED AND REFINANCED MORTGAGES FROM MERRILL LYNCH DATING BACK TO FEBRUARY 7, 2000 [393 - 409]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



46 of 246



394

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 81

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

47 of 246

SpA.446

395

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



48 of 246

SpA.447

396

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



49 of 246

SpA.448

397

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



50 of 246

SpA.449

398

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2013050200352001002E186B

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2013050200352001 | Document Date: 11-16-2012 | Preparation Date: 10-15-2014 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| JOYCE PETTIT<br>3001 LEADENHALL ROAD<br>MOUNT LAUREL, NJ 08054<br>866-600-2567<br>JOYCE.PETTIT@TRGC.COM | JOYCE PETTIT<br>3001 LEADENHALL ROAD<br>MOUNT LAUREL, NJ 08054<br>866-600-2567<br>JOYCE.PETTIT@TRGC.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 912 | 1165 Entire Lot | 28B | 200 EAST 32ND STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

MANHATTAN    Year: 2000    Reel: 3070    Page: 2071
☒ Additional Cross References on Continuation Page

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| PHH MORTGAGE CORP<br>4001 LEADENHALL RD<br>MOUNT LAUREL, NJ 08054 | MORGAN STANLEY PRIVATE BANK NA<br>2000 WESTCHESTER AVENUE<br>PURCHASE, NY 10577 |

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 50.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    10-27-2014 07:39
City Register File No.(CRFN):
2014000356095

*City Register Official Signature*

SpA.450

399

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| | 2013050200352001002C1AEB |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
|---|---|---|
| Document ID: 2013050200352001 | Document Date: 11-16-2012 | Preparation Date: 10-15-2014 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**

CRFN: 2006000342600

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNOR/OLD LENDER: |
|---|---|
| BANK OF AMERICA, N.A. | MERRILL LYNCH CREDIT CORPORATION |
| 2000 MIDLANTIC DRIVE STE 300-SV03 | 2000 MIDLANTIC DRIVE STE 300-SV03 |
| MOUNT LAUREL, NJ 08054 | MOUNT LAUREL, NJ 08054 |

SpA.451

400

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

ASSIGNMENT OF MORTGAGE

Record and Return to:
Mortgage Service Center
Speedy Title & Appraisal Review Services
2000 Midlantic Drive, Suite 300-SV03
Mt. Laurel, NJ 08054

LOAN #
STATE OF New York
COUNTY OF NEW YORK

KNOW ALL MEN BY THESE PRESENTS, THAT

**PHH MORTGAGE CORPORATION ATTORNEY IN FACT FOR BANK OF AMERICA,
NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION, AS SUCCESSOR IN
INTEREST BY MERGER TO MERRILL LYNCH CREDIT CORPORATION
2000 MIDLANTIC DRIVE, SUITE 300-SV03
MOUNT LAUREL, NJ 08054**

# 4001 Leedenhall Rd Mt Laurel NS 38054

A Corporation existing under the laws of the State of New Jersey for valuable consideration, the receipt
of which hereby acknowledged, does hereby grant, bargain, sell, assign, and transfer to:

**MORGAN STANLEY PRIVATE BANK NATIONAL ASSOCIATION
ITS' SUCCESSORS AND/OR ASSIGNS
2000 WESTCHESTER AVENUE
PURCHASE, NY 10577**

That certain Promissory Note and Deed of Trust or Mortgage described as follows:
Note and Deed of Trust or Mortgage dated 02/07/2000 for the amount of $ 820,000
Executed by: **JOSEPH J. CECCARELLI / SUSAN K. LANGHOLZ / /**
To: **MERRILL LYNCH CREDIT CORPORATION**
Recorded on **03/22/2000** Book/Page/Inst.# **3070 / 2071 / -**
Property Address: **200 EAST 32 STREET 28B NEW YORK, New York 10016**

BLOCK: 912 LOT: 1165

POWER OF ATTORNEY DOCUMENT RECORDED 09/28/2011 IN CRFN# 2011000344161.

THIS MORTGAGE WAS ASSIGNED FROM MERRILL LYNCH CREDIT CORPORATION TO
CENDANT MORTGAGE CORPORATION RECORDED 01/30/2002 IN REEL 3440, PAGE 507 AND
FURTHER ASSIGNED FROM PHH MORTGAGE CORPORATION FKA CENDANT MORTGAGE
CORPORATION TO MERRILL LYNCH CREDIT CORPORATION RECORDED 06/1/2006 IN
CRFN# 2006000342599.

A NEW MONEY MORTGAGE IN THE AMOUNT OF $457,500.00 MADE BY JOSEPH J.
CECCARELLI AND SUSAN L. CECCARELLI TO MERRILL LYNCH CREDIT CORPORATION
WAS DATED 11/14/2005 AND RECORDED 06/16/2006 IN CRFN# 2006000342600.

A CONSOLIDATION, EXTENSION AND MODIFICATION AGREEMENT BETWEEN JOSEPH J.
CECCARELLI AND SUSAN L. CECCARELLI AND MERRILL LYNCH CREDIT CORPORATION
WAS DATED 11/14/2005 AND RECORDED 06/16/2006 IN CRFN# 2006000342601 WITH THE
ABOVE TWO MORTGAGES TO FORM A SINGLE LIEN IN THE AMOUNT OF $1,277,500.00.

This assignment is not subject to Requirements of sections 275 of the Real Property Law because it is an
Assignment within the secondary mortgage market.

Together with the Note therein or referred to, the money due and to become due thereon with interest and
all rights accrued or to accrue under said Deed of Trust or Mortgage.

Gwendolyn Hawkins

SpA.452

401

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 81

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

Dated 11/16/2012

PHH MORTGAGE CORPORATION ATTORNEY IN FACT FOR BANK OF AMERICA,
NATIONAL ASSOCIATION, A NATIONAL BANKING ASSOCIATION, AS SUCCESSOR IN
INTEREST BY MERGER TO MERRILL LYNCH CREDIT CORPORATION

Witness - GWENDOLYN HAWKINS

MICHELLE ELIZARDO-YOUNG - ASSISTANT
SECRETARY

State, District of Columbia, Territory, Possession or Foreign Country
State of NEW JERSEY County of BURLINGTON
On this 11/16/2012 before me, the undersigned, personally appeared MICHELLE ELIZARDO-YOUNG,
personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose
name is subscribed to the within instrument and acknowledged to me that he/she executed the same in
his/her capacity, that by his/her signature on the instrument, the individual, or the person upon behalf of
which the individual acted, executed the instrument, and that such individual made such appearance
before the undersigned in the City of Mt. Laurel, County of Burlington, State of New Jersey.

ROBERTA J. O'DRAIN - Notary Public

Roberta J. O'Drain
Notary Public of New Jersey
My Commission Expires April 6, 2014

SEAL

Gwendolyn Hawkins

402

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Exhibit A

Address:  200 East 32nd Street 28B
          NEW YORK, NY 10016

LEGAL DESCRIPTION

ALL RIGHT TITLE AND INTEREST IN THE REAL PROPERTY MORE PARTICULARLY DESCRIBED IN THE ATTACHED LEGAL DESCRIPTION AND WHICH IS LOCATED AT 200 EAST 32, STREET 28B, NEW YORK.

THE CONDOMINIUM UNIT (HEREINAFTER TO AS THE "UNIT") IN THE BUILDING (HEREINAFTER REFERRED TO AS THE "BUILDING") KNOWN AS THE FUTURE AND BY THE STREET NUMBER 200 EAST 32ND STREET, BOROUGH OF MANHATTAN, CITY, COUNTY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED AS UNIT NO. 28B IN THAT CERTAIN DECLARATION DATED MARCH 8, 1993 MADE BY 32ND STREET SOUTHEAST COMPANY L.P. PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (HEREINAFTER REFERRED TO AS THE "LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HEREIN AND BY THE REFERENCE MADE A PART HEREOF) WHICH DECLARATION WAS RECORDED IN THE NEW YORK COUNTY OFFICE OF THE REGISTER OF THE CITY OF NEW YORK ON MAY 20, 1993 IN REEL 1972 PAGE 166 (ANDHAS BEEN AMENDED AS SET FORTH IN EXHIBIT B ANNEXED HERETO AND BY THIS REFERENCED MADE A PART HEREOF) (WHICH DECLARATION AND ANY AMENDMENTS THERETO ARE HEREINAFTER COLLECTIVELY REFERRED TO A THE "DECLARATION"). THIS UNIT IS ALSO DESIGNATED AS TAX LOT 1165 IN BLOCK 912, OF THE BOROUGH OF NAHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY COSTAS KONDEYLAS, ARCHITECTS, ON APRIL 8, 1993, AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK ON MAY 20, 1993 AND ALSO FILED IN THE CITY REGISTER'S OFFICE ON MAY 20, 1993, AS CONDOMINIUM PLAN NO. 844;

TOGETHER WITH AN UNDIVIDED .781143% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION):

TOGETHER WITH ALL RIGHT, TITLE AND INTEREST, IF ANY OF THE PARTY OF THE FIRST PART, IN AND TO ANY STREETS AND ROADS ABUTTING THE ABOVE-DESCRIBED PREMISES TO THE CENTER LINES THEREOF; TOGETHER WITH THE APPURTENANCES AND ALL THE ESTATE AND RIGHTS OF THE PARTY OF THE FIRST PART IN AND TO SAID PREMISES

Purported Address: 200 East 32nd Street 28B, NEW YORK NY 10016

SpA.454

403

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2015021301103001001EA196

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2015021301103001 | Document Date: 11-11-2014 | Preparation Date: 02-13-2015 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

**PRESENTER:**
TITLE RESOURCE GROUP - CCB
3001 LEADENHALL ROAD
MT LAUREL, NJ 08054
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
STARS/MORTGAGE SERVICE CENTER
2000 MIDLANTIC DRIVE, SUITE 300, MAILSTOP SV03
MOUNT LAUREL, NJ 08054
SUPPORT@SIMPLIFILE.COM

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 912 | 1165 | Entire Lot 283 | 200 EAST 32ND STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

MANHATTAN    Year: 2009    Reel: 3070    Page: 2871
☑ Additional Cross References on Continuation Page

**PARTIES**

ASSIGNOR/OLD LENDER:
MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION
1 MORTGAGE WAY
MOUNT LAUREL, NJ 08054

ASSIGNEE/NEW LENDER:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC
1901 E VOORHEES STREET, SUITE C
DANVILLE, IL 61834

☑ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage: | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 53.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed    02-20-2015 14:12
City Register File No.(CRFN):
2015000258444

*City Register Official Signature*

137 of 246

SpA.455

Case: 25-443, 05/13/2025, DktEntry: 39.1, Page 158 of 302

404

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



405

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Recording Requested By:
Greedy Title & Appraisal Review Services LLC (GTARS)
Michele Richards

When Recorded Return To:
STARS Mortgage Service Center
1200 Midlantic Drive, Suite 300, Mailstop 8V06
Mount Laurel, NJ 08054

CORPORATE ASSIGNMENT OF MORTGAGE

County of New York, State of New York
Loan Number:
MIN: MERS Phone: 1-888-679-6377

Date of Assignment: 11/18/2014

Assignor: Morgan Stanley Private Bank National Association at 1 Mortgage Way, Mount Laurel, NJ 08054

Assignee: Mortgage Electronic Registration Systems, Inc. ("MERS") as Nominee for Morgan Stanley Private Bank National Association, its successors and assigns at P.O. Box 2026, Flint, MI 48501-2026 and 1901 E. Voorhees Street, Suite C, Danville, IL 61834 (*) at 1 Mortgage Way, Mount Laurel, NJ 08054)

Mortgage Executed By: Joseph J. Cecoarell & Susan K. Langish

To: Merrill Lynch Credit Corporation

Date of Mortgage: 8/7/2000 and Recorded: 8/22/2000 in Book/Reel/Liber: 3079 Page/Folio: 2071 in the County of New York, State of New York in the amount of $630,000.00

-Assigned Wholly by Merrill Lynch Credit Corporation to Cendant Mortgage Corporation Dated: 11/29/2001 and Recorded: 12/20/2002 in Book/Reel/Liber: 3446 Page/Folio: 697

-Assigned Wholly by PHH Mortgage Corporation FKA Cendant Mortgage Corporation to Merrill Lynch Credit Corporation Dated: 8/4/2008 and Recorded: 8/15/2008 as CRFN 2008000325591

-New Mortgage, Dated: 11/14/2005 and Recorded: 8/15/2008 as CRFN 2008000325590 between Joseph J. Cecoarell & Susan L. Cecoarell and Merrill Lynch Credit Corporation (in the amount of $457,500.00)

-Mortgage Consolidation, consolidating original Mortgage and the above referenced Mortgage, constituting a consolidated Mortgage Dated: 11/14/2005 and Recorded: 8/15/2008 as CRFN 2008000325591 between Joseph J. Cecoarell & Susan L. Cecoarell and Merrill Lynch Credit Corporation to form a single lien in the amount of $1,277,500.00

-Assigned Wholly by PHH Mortgage Corporation Attorney in fact for Bank of America, N.A. a National Banking Association as successor in interest by merger to Merrill Lynch Credit Corporation to Morgan Stanley Private Bank National Association Dated: 11/18/2014 and Recorded: 10/27/2014 as CRFN 2014000395034

-New Mortgage, Dated: 12/20/2012 and Recorded: 10/27/2014 as CRFN 2014000395096 between Joseph J. Cecoarell & Susan L. Cecoarell and Morgan Stanley Private Bank National Association (in the amount of $9,500.00)

-Mortgage Consolidation, consolidating original Mortgage and the above referenced Mortgage, constituting a consolidated Mortgage Dated: 12/20/2012 and Recorded: 10/27/2014 as CRFN 2014000395097 between Joseph J. Cecoarell & Susan L. Cecoarell and Morgan Stanley Private Bank National Association to form a single lien in the amount of $1,287,000.00

Block/Lot: 918 / 1196

Property Address: 300 East 33rd Street 2BH, New York, NY 10016

This Assignment is not subject to Requirements of Section 275 of the Real Property Law because it is an Assignment within the Secondary Mortgage Market.

1

SpA.457

**406**

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



195 of 246

SpA.458

407

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019



NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

2016081500432001001C42A4

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 4

Document ID: 2016081500432001    Document Date: 08-03-2016    Preparation Date: 08-15-2016
Document Type: ASSIGNMENT, MORTGAGE

CROSS REFERENCE DATA
MANHATTAN   Year: 2002   Reel: 3440   Page: 507
CRFN: 2006000542600
CRFN: 2006000542601
CRFN: 2006000542599
CRFN: 2014000356096
CRFN: 2014000356106
CRFN: 2014000356107
CRFN: 2016000058944
CRFN: 2015000058945
CRFN: 2016000058946

PARTIES
ASSIGNOR/OLD LENDER:
MORGAN STANLEY PRIVATE BANK NATIONAL
ASSOCIATION
1991 N VOORHEES STREET SUITE C
DANVILLE, IL 61834

196 of 246

SpA.459

408

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

197 of 246

SpA.460

409

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 81

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

SpA.461

410

**EXHIBIT E TO GREGORITS AFFIRMATION -
DEMAND LETTER, DATED APRIL 20, 2016
(REPRODUCED HEREIN AT PP. 238-241)**

**EXHIBIT F TO GREGORITS AFFIRMATION -
90-DAY LETTERS
(REPRODUCED HEREIN AT PP. 242-259)**

SpA.462

411

EXHIBIT G TO GREGORITS AFFIRMATION -
NON-MILITARY AFFIDAVIT, DATED OCTOBER 23, 2019 [411 - 419]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM          INDEX NO. 850018/2017

NYSCEF DOC. NO. 84                                        RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff,

-vs-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A.,

Defendants.

**AFFIDAVIT OF MILITARY STATUS**

Index No. 850018/2017

Mortgaged Premises:
200 East 32nd Street, New York City, NY 10016

Block 912 Lot 1165

**AFFIDAVIT OF MILITARY STATUS**

I, Patrick Gregorits, an attorney duly admitted to the practice of law in the State of New York, hereby affirm under penalty of perjury pursuant to CPLR 2106 that:

1. I am an associate of Shapiro, DiCaro & Barak, LLC, the attorneys of record for Plaintiff in this action.

2. I am fully familiar with the facts and circumstances underlying the proceeding herein.

3. Upon reviewing a search of the Department of Defense manpower database executed on _October 25_, 2019, Defendants Joseph Ceccarelli a/k/a Joseph J. Ceccarelli and Susan Ceccarelli a/k/a Susan L. Ceccarelli, are not active members of the armed services of the United States of America, and I am attaching certificates stating that said Defendants are not in the armed services at this time.

FURTHER AFFIANT SAYETH NAUGHT.

Date: _10/23/19_

By: _____
Patrick Gregorits, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

17-063874                    Military Affidavit                    Page 1 of 1

SpA.463

412

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 84

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## Department of Defense Manpower Data Center

Results as of : Oct-25-2019 11:08:04 AM

SCRA 5.1



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX-████ |
| Birth Date: | |
| Last Name: | CECCARELLI |
| First Name: | JOSEPH |
| Middle Name: | |
| Status As Of: | Oct-23-2019 |
| Certificate ID: | HRNQ73128C8C29T |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

413

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 84

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

SpA.465

414

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 84

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

## Department of Defense Manpower Data Center

Results as of : Oct-23-2019 11:08:50 AM

SCRA 5.1



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX-■■■ |
| Birth Date: | |
| Last Name: | CECCARELLI |
| First Name: | JOSEPH |
| Middle Name: | J |
| Status As Of: | Oct-23-2019 |
| Certificate ID: | FZ1XV8XVGBQT398 |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

SpA.466

415

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 84

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

SpA.467

416

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 84

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

Department of Defense Manpower Data Center

Results as of : Oct-23-2019 11:07:58 AM

SCRA 5.1



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX-▒▒ |
| Birth Date: | |
| Last Name: | CECCARELLI |
| First Name: | SUSAN |
| Middle Name: | |
| Status As Of: | Oct-23-2019 |
| Certificate ID: | QGN3RZZSSFT1KD6 |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

417

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 84

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

SpA.469

418

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 84

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

Department of Defense Manpower Data Center

Results as of : Oct-23-2019 11:10:23 AM

SCRA 5.1



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX-███
Birth Date:
Last Name: CECCARELLI
First Name: SUSAN
Middle Name: L
Status As Of: Oct-23-2019
Certificate ID: K05MSL5V72Z2FQ2

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

SpA.470

419

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 84

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. ? 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q33) via this URL: https://scra.dmdc.osd.mil/faq.xhtml#Q33. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. ? 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC ? 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC ? 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC ? 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

SpA.471

420

EXHIBIT H TO GREGORITS AFFIRMATION -
SUMMONS AND COMPLAINT, DATED JANUARY 5, 2017 AND
E-FILED ON JANUARY 17, 2017, WITH EXHIBITS A
THROUGH O ATTACHED THERETO
(REPRODUCED HEREIN AT PP. 48-267)

EXHIBIT I TO GREGORITS AFFIRMATION -
(I) NOTICE OF PENDENCY, DATED JANUARY 5, 2017
(REPRODUCED HEREIN AT PP. 34-39)

(II) ADDITIONAL NOTICE OF PENDENCY, DATED MARCH 9, 2018
(REPRODUCED HEREIN AT PP. 280-289)

421

## EXHIBIT J TO GREGORITS AFFIRMATION - AFFIDAVITS OF SERVICE [421 - 427]

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 87

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 02/22/2017 11:26 AM
NYSCEF DOC. NO. 12

INDEX NO. 850018/2017
RECEIVED NYSCEF: 02/22/2017



PROVEST LLC
320 CARLETON AVE, STE.2600
CENTRAL ISLIP, NY, 11722
(631) 666-6168

PINCUS LAW GROUP, PLLC
425 RXR PLAZA
UNIONDALE, NEW YORK 11556

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX # 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff,

Against

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI, ET AL

Defendants.

**AFFIDAVIT OF SERVICE**

I, William Cancroft, being first duly sworn, depose and say as follows:

I am not a party to this action, I am over 18 years of age and I reside in the State of New York.

On 2/11/2017 at 9:40 AM at 200 EAST 32ND STREET APT 28B NEW YORK, New York 10016, I served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING & SUMMONS & COMPLAINT which contains the additional notice requirements in accordance with RPAPL §1320, along with a copy of the Homeowner's Foreclosure Notice as required by RPAPL §1303, which notice was printed on a colored piece of paper, which color differed from that of the color of the NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING & SUMMONS & COMPLAINT and the notice was in bold, fourteen-point type, with the title of the action in bold, twenty-point type, bearing index #850018/2017, filed 1/13/2017 on JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI, defendant therein named,

(X) SUITABLE AGE PERSON: By delivering thereat a copy of each to, Matthew "Doe" (refused name), concierge, a person of suitable age and discretion. I also asked this person whether said premises was the defendant's dwelling place/usual place of abode and the reply was affirmative. I then asked this person whether he or she resided at said premises with the defendant and the reply was also affirmative.

(X) MAILING: On 02/17/207 I also enclosed a copy of same, in a prepaid sealed, first class wrapper marked personal and confidential, properly addressed to defendant and mailed to defendant at 200 EAST 32ND STREET APT 28B NEW YORK, New York 10016 by depositing said wrapper in a post office of the United States Postal Service within the state of New York.

Description of Person Served:
AGE: 32  SKIN TONE: WHITE  GENDER: MALE  WEIGHT: 160  HEIGHT: 5'10"  HAIR: BROWN

MILITARY SERVICE

[X]

I asked the person spoken to whether the defendant was in active military service of the United States or of the State of New York in any capacity whatsoever and received a NEGATIVE reply. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York or of the United States as that term is defined in either the State or Federal statutes.

LICENSE # 2037440
FILE # NY6007007393
CASE ID # 4788550

STATE OF NEW YORK
COUNTY OF NASSAU

Sworn to and subscribed before me this 21 day of FEB, 2017, by, William Cancroft (affiant name).

Signature of Notary Public

Kevin McCarthy
Print, Type or Stamp Notary's Commissioned Name

Personally known  X   OR   Produced Identification _____
Type of Identification Produced _____

KEVIN MCCARTHY
NOTARY PUBLIC, State of New York
No. 01MC6193005
Qualified in Nassau County
Commission Expires 05/03/2019

HO 8.16

1 of 1

SpA.473

422

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 87

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 02/22/2017 11:26 AM

NYSCEF DOC. NO. 13

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/22/2017



PROVEST LLC
320 CARLETON AVE, STE.2600
CENTRAL ISLIP, NY, 11722
(631) 666-6168

PINCUS LAW GROUP, PLLC
425 RXR PLAZA
UNIONDALE, NEW YORK 11556

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX # 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff,

Against

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI, ET AL

Defendant,

AFFIDAVIT OF SERVICE

I, William Cancroft, being first duly sworn, depose and say as follows:

I am not a party to this action, I am over 18 years of age and I reside in the State of New York.

On 2/11/2017 at 9:40 AM at 200 EAST 32ND STREET APT 28B NEW YORK, New York 10016, I served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING & SUMMONS & COMPLAINT which contains the additional notice requirements in accordance with RPAPL §1320, along with a copy of the Homeowner's Foreclosure Notice as required by RPAPL §1303, which notice was printed on a colored piece of paper, which color differed from that of the color of the NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING & SUMMONS & COMPLAINT and the notice was in bold, fourteen-point type, with the title of the notice in bold, twenty-point type, bearing index #850018/2017, filed 1/13/2017 on SUSAN K. LANGHOLZ AKA SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ CECCARELLI, defendant therein named,

(X) SUITABLE AGE PERSON: By delivering thereat a copy of each to, Mathew "Doe" (refused last name), concierge, a person of suitable age and discretion. I also asked this person whether said premises was the defendant's dwelling place/usual place of abode and the reply was affirmative. I then asked this person whether he or she resided at said premises with the defendant and the reply was also affirmative.

(X) MAILING: On 02/17/207 I also enclosed a copy of same, in a prepaid sealed, first class wrapper marked personal and confidential, properly addressed to defendant and mailed to defendant at 200 EAST 32ND STREET APT 28B NEW YORK, New York 10016 by depositing said wrapper in a post office of the United States Postal Service within the state of New York.

Description of Person Served:
AGE: 32  SKIN TONE: WHITE  GENDER: MALE  WEIGHT: 160  HEIGHT: 5'10"  HAIR: BROWN

MILITARY SERVICE  I asked the person spoken to whether the defendant was in active military service of the United States or of the State of New York in any capacity whatsoever and received a NEGATIVE reply. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York or of the United States as that term is defined in either the State or Federal statutes.

[X]

LICENSE # 2032440
FILE # NY6007007393
CASE ID # 4788550

STATE OF NEW YORK
COUNTY OF NASSAU

Sworn to and subscribed before me this 21 day of FEB, 2017 by, William Cancroft (affiant name).

Signature of Notary Public

KEVIN MCCARTHY
Print, Type or Stamp Notary's Commissioned Name

Personally known  X  OR  Produced Identification _____
Type of Identification Produced _____

KEVIN MCCARTHY
NOTARY PUBLIC, State of New York
No. 01MC6163920
Qualified in Nassau County
Commission Expires 06/05/2019

HO 8.16

1 of 1

SpA.474

423

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 87

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 01/27/2017 04:42 PM

NYSCEF DOC. NO. 5

INDEX NO. 850018/2017

RECEIVED NYSCEF: 01/27/2017



PROVEST LLC
320 CARLETON AVE, STE 2600
CENTRAL ISLIP, NY, 11722
(631) 666-6168

CLARFIELD, OKON & SALOMONE, P.L. (NY)
1701 W. HILLSBORO BLVD SUITE 202
DEERFIELD BEACH, FLORIDA 33422

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX # 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff,

Against

**AFFIDAVIT OF NON-SERVICE**

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI, ET AL

Defendants,

I, William Cancroft, being first duly sworn, depose and say as follows:

I am not a party to this action, I am over 18 years of age, and I reside in the State of New York.

On 1/20/2017 at 1:13 PM, I went to the address at 200 EAST 32ND STREET NEW YORK, New York 10016 to serve process. The defendant, BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM, could not be served at this address as per MATTHEW "DOE" (REFUSED LAST NAME; m/white/brown/34/5'10/170), Doorman, who advised that service must be made at the building's management company, AKAM ASSOCIATES, located at 260 MADISON AVE 12TH FLOOR, NEW YORK NY 10006.

FILE # NY007007393
CASE ID # 4788550

STATE OF NEW YORK
COUNTY OF _____ NASSAU _____

Sworn to and subscribed before me this 26 day of Jan, 20 17 by William Cancroft (affiant name).

Signature of Notary Public

KEVIN MCCARTHY
Print, Type or Stamp Notary's Commissioned Name

Personally known X   OR   Produced Identification _____

Type of Identification Produced _____

KEVIN MCCARTHY
NOTARY PUBLIC, State of New York
No. 01MC6163088
Qualified in Nassau County
Commission Expires 09/08/2018

GNS 1.16

1 of 1

SpA.475

424

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 87

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 01/30/2017 04:38 PM
NYSCEF DOC. NO. 8

INDEX NO. 850018/2017
RECEIVED NYSCEF: 01/30/2017

PROVEST LLC
320 CARLETON AVE, STE.2600
CENTRAL ISLIP, NY, 11722
(631) 665-6168

CLARFIELD, OKON & SALOMONE, P.L. (NY)
1701 W. HILLSBORO BLVD SUITE 202
DEERFIELD BEACH, FL 33442

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX # 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff,

Against

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI, ET AL

Defendants,

AFFIDAVIT OF SERVICE

STATE OF RHODE ISLAND COUNTY OF BRISTOL Providence

Paul G Hughes being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the State of Rhode Island.

That on 1/24/17 at 2:00 P at 1 CITIZENS PLAZA, PROVIDENCE, RI, 02903 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING & SUMMONS & COMPLAINT and Certification with exhibits as required by CPLR §3012-B bearing index #850018/2017, filed 1/13/2017 on RBS CITIZENS, N.A., defendant therein named,

CORPORATION [X] A corporation, by delivering thereat a true copy of each to, Victoria Montalvo, Banker personally; deponent knew said so served to be the corporation described as the named defendant and knew said individual to be the AUTHORIZED AGENT thereof.

DESCRIPTION Deponent describes the individual served to the best of deponent's ability at the time and circumstances of service as follows:

| Sex | Skin Color | Hair Color | Age (Aprx) | Height (Aprx) | Weight (Aprx) |
|-----|-----------|-----------|-----------|--------------|--------------|
| F | BLK | BLK | 27 | 5'5" | 126# |

RI033

LICENSE #
FILE # NY6007007393
CASE ID # 4788550

RI Constable #40
Paul G Hughes

STATE OF Providence
COUNTY OF Providence

Sworn to and subscribed before me this 24 day of January, 2017 by Paul G Hughes (print name).

Signature of Notary Public

STEPHANIE PAOLINO
NOTARY PUBLIC ID 50283
STATE OF RHODE ISLAND
MY COMMISSION EXPIRES APRIL 23, 2019

Print, Type or Stamp Notary's Commissioned Name

Personally known ✓ OR Produced Identification ____
Type of Identification Produced _____

PRE CO 08.16

1 of 1

SpA.476

425

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**

NYSCEF DOC. NO. 87

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 02/08/2017 02:55 PM

NYSCEF DOC. NO. 9

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/08/2017

PROVEST LLC
320 CARLETON AVE, STE.2600
CENTRAL ISLIP, NY, 11722
(631) 666-6168

PINCUS LAW GROUP, PLLC
425 RXR PLAZA
UNIONDALE, NEW YORK 11556 -.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX # 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL
ASSOCIATION,

Plaintiff,

Against

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI, ET AL

Defendants,

AFFIDAVIT OF SERVICE

I, William Cancroft, being first duly sworn, depose and say as follows:

I am not a party to this action, I am over 18 years of age and I reside in the State of New York.

On 1/26/2017 at 11:38 AM at 260 Madison Ave, 12th Floor NEW YORK, New York 10006, I served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING & SUMMONS & COMPLAINT bearing index # 850018/2017, filed 1/13/2017 on BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM, defendant therein named,

(X) CORPORATION: A corporation, by personally delivering thereat a true copy of each to Elvin Vega , mailroom clerk. I knew said so served to be the corporation described as the named defendant and knew said individual to be the AUTHORIZED AGENT thereof.

DESCRIPTION
The following is a description of the individual I served to the best of my ability at the time and circumstances of service:
AGE: 46  SKIN TONE: TAN  GENDER: MALE  WEIGHT: 161-200 LBS.  HEIGHT: 5FT8IN-5FT11IN  HAIR: BLACK

LICENSE # 2032440
FILE # NY6007007393
CASE ID # 4788550

STATE OF NEW YORK
COUNTY OF NASSAU

Sworn to and subscribed before me this 7 day of FEB , 2017, by William Cancroft (affiant name).

_____
Signature of Notary Public

KEVIN McCARTHY
Print, Type or Stamp Notary's Commissioned Name

Personally known ✓  OR  Produced Identification _____
Type of Identification Produced _____

KEVIN MCCARTHY
NOTARY PUBLIC, State of New York
No. 01MC6102039
Qualified in Nassau County
Commission Expires 00/00/0000

CORP 8.16

1 of 1

SpA.477

426

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 87

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 02/20/2017 04:10 PM

NYSCEF DOC. NO. 11

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/20/2017

PROVEST LLC
320 CARLETON AVE, STE.2600
CENTRAL ISLIP, NY, 11722
(631) 666-6168

PINCUS LAW GROUP, PLLC
425 RXR PLAZA
UNIONDALE, NY 11556

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX # 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff,

Against

AFFIDAVIT
OF MAILING

JOSEPH J. CECCARELLI, III AKA JOSEPH
J. CECCARELLI, ET AL

Defendants,

STATE OF NEW YORK COUNTY OF SUFFOLK

Kevin Colbert, being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in Nassau County, New York.

On 02/17/2017, deponent served the within RPAPL §1303 Tenant Foreclosure Notice, which notice was printed on a colored paper other than that of the NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING & SUMMONS & COMPLAINT pursuant to RPAPL §1303 on Any and All Occupants at 260 EAST 32ND STREET APT 28B NEW YORK, NY 10016, which building consists of less than five dwelling units.

by depositing a true copy of same enclosed in a post-paid first class properly addressed wrapper, in a post office-official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

SWORN TO BEFORE ME ON 2/20/17

FILE # NY6007007393
CASE ID # 4788550

CARLA SOEVIN
Notary Public, State of New York
No. 01SO6135693
Qualified in Suffolk county
Commission Expires Oct. 24, 20 17

1 of 1

SpA.478

427

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 87

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

**FILED: NEW YORK COUNTY CLERK 02/22/2017 11:26 AM**
NYSCEF DOC. NO. 14

INDEX NO. 850018/2017
RECEIVED NYSCEF: 02/22/2017

PROVEST LLC
320 CARLETON AVE, STE.2600
CENTRAL ISLIP, NY, 11722
(631) 666-6168

PINCUS LAW GROUP, PLLC
425 RXR PLAZA
UNIONDALE, NY, 11556

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX # 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL
ASSOCIATION,

Plaintiff,

Against

AFFIDAVIT
OF SERVICE

JOSEPH J. CECCARELLI, III AKA JOSEPH
J. CECCARELLI, ET AL

Defendants,

STATE OF NY   COUNTY OF SUFFOLK

William Cancroft being duly sworn, deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the State of NY.

That on February 11, 2017 at 9:40AM, I went to 200 East 32nd Street Apt 28B, New York, NY 10016. I was told by concierge Matthew "Doe" (refused last name, M, white, brown hair, 32, 5'0", 160) that no persons (John/Jane Does), are living at the residence.

SWORN TO BEFORE ME ON

KEVIN MCCARTHY
NOTARY PUBLIC, State of New York
No. 01MC6169425
Qualified in Nassau County
Commission Expires: 99/00/0000

LICENSE # 2032440
FILE # NY6007007399
CASE ID # 4788550
E-FILE

1 of 1

SpA.479

428

**EXHIBIT K TO GREGORITS AFFIRMATION -
AFFIDAVIT OF MAILING COPY OF SUMMONS**

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 88

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

NOT APPLICABLE

SpA.480

429

EXHIBIT L TO GREGORITS AFFIRMATION -
AFFIDAVIT BY SERVICING AGENT RE TOTAL AMOUNT CLAIMED
DUE UNDER MORGAN STANLEY 1-MONTH LIBOR ADJUSTABLE
RATE NOTE, SWORN TO FEBRUARY 16, 2018 [429 - 432]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM     INDEX NO. 850018/2017

NYSCEF DOC. NO. 89                RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff,

-against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A., et al,

Defendants.

**AFFIDAVIT IN SUPPORT**
Index No. 850018/2017

Property Address:

200 East 32nd Street
New York City, NY 10016

Block 912 Lot 1165

STATE OF _____New Jersey_____ )
                    ) ss.     Mt. Laurel
COUNTY OF _____Burlington_____ )

_____Kelthea Dennis_____, being duly sworn, deposes and says:

1. I am the _____Assistant Vice President_____ of PHH Mortgage Corporation, the mortgage loan servicing agent and attorney-in-fact of the Plaintiff, Mortgage Stanley Private Bank, National Association, and have personal knowledge of the facts of this matter. The source of my knowledge is my review of the electronic records of PHH Mortgage Corporation, regarding the delinquent account of the Defendant and my own knowledge of how those electronic records are kept and maintained. Those records include, but are not limited to, electronic images of the note and electronic records maintained by PHH Mortgage Corporation, to track payments received and advances made in connection with the Defendant's mortgage account. As a loan servicer, PHH Mortgage Corporation collects payments from borrowers and maintains up-to-date electronic records concerning the loan it services in its electronic record keeping system. The electronic record keeping system is updated contemporaneously with the receipt of payments and the payment of advances so that those items are reflected at or very near the time they occur. These computer records are made and kept in the regular course of the business of PHH Mortgage Corporation as loan servicer. To the extent that those records include the business records of a

17-063874             Affidavit             Page 1 of 5

430

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 89

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

prior servicer, those records have been uploaded and boarded into the computer records of PHH Mortgage Corporation in the regular course of business and are maintained in connection with the servicing of this loan and have been reviewed in making this affidavit. A Power of Attorney from Mortgage Stanley Private Bank, National Association authorizing PHH Mortgage Corporation to act as its agent is included with this application.

2. I make this Affidavit in support of the appointment of a Referee and to aid said Referee in computing the sums due on the Note and Mortgage.

3. That Mortgage Stanley Private Bank, National Association is the mortgagee of a consolidated and/or modified Mortgage dated January 30, 2015, in the original principal balance of $1,540,000.00, executed by Joseph J. Ceccarelli and Susan L. Ceccarelli, as Mortgagor(s) to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank, National Association, as Mortgagee, to secure the sum of $1,540,000.00, and recorded in the New York County Office of the City Register, State of New York on February 20, 2015, at CRFN 2015000058946. The foregoing instrument consolidated and/or modified the following mortgage(s): The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank, National Association to secure the sum of $253,001.62 dated January 30, 2015 and recorded on February 20, 2015, at CRFN 2015000058945. The Note and Mortgage were transferred to Morgan Stanley Private Bank, National Association, and said transfer was memorialized by an Assignment of Mortgage executed on August 3, 2016 and recorded August 16, 2016 in CRFN 2016000285133.

4. The servicing records further show that in accordance with the provisions of the mortgage, a notice of default was mailed to the Borrower on April 20, 2016 at the last known address, which is 200 East 32nd Street Unit 28B, New York City, NY 10016.

5. I reviewed the notice of default and confirm that it complied with the terms of the mortgage, including the time and content requirements contained therein. The default stated in said notice was not cured. A complete copy of the notice(s) of default is attached to this application.

17-063874                                    Affidavit                                    Page 2 of 5

SpA.482

431

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 89

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

6. The servicing records further show that a ninety (90) day pre-foreclosure notice ("90 Day Notice") with a list of at least five (5) housing counseling agencies was sent, in its own separate envelope, by registered or certified and first class mail to Joseph Ceccarelli and Susan Ceccarelli on June 2, 2016, to the address of the property, at 200 East 32nd Street Apt 28B, New York City, NY 10016. The text of the 90 Day Notice is typed in fourteen (14) point font. A complete copy of the 90 Day Notice(s) is attached to this application. In addition, within three (3) business days of the mailing of the 90 Day Notice, a notice was electronically filed with the Superintendent of Banks (now known as the Superintendent of Financial Services), as required by both RPAPL § 1306(2) and the Superintendent. A copy of the Proof of Filing Statement is attached to this application.

7. The instant loan is due for the March 1, 2016 installment and all subsequent installments, and by reason thereof, the Note and Mortgage are in default. The amount due upon said Note and Mortgage as of February 15, 2018, is as follows:

| | |
|---|---|
| PRINCIPAL DUE ON NOTE AND MORTGAGE | $1,540,000.00 |
| INTEREST due from 2/1/2016 through 2/15/2018 at variable rates | 90,209.95 |
| LATE CHARGES from 3/16/2016 through 12/16/2016 | 320.65 |
| LATE CHARGES prior to 3/1/2016 | 0.00 |

ADVANCES

| | |
|---|---|
| Taxes | 45,944.45 |
| Inspections | 165.00 |
| NSF Charges | 20.00 |

| | |
|---|---|
| TOTAL ADVANCES | $46,129.45 |
| TOTAL: | $1,676,660.05 |

Plus per diem interest from February 16, 2018

8. Due to the default in payments as described hereinabove, the Plaintiff has the right, pursuant to the Mortgage, to commence foreclosure proceedings.

9. This Affidavit is also being submitted in support of Plaintiff's Motion for Summary Judgment. The Defendants Joseph J. Ceccarelli, III and Susan K. Langholz interposed an answer dated, April 10, 2017, alleging 8 (eight) purported affirmative defenses and 1 (one) counterclaim. All of the Defendant's

17-063874                                    Affidavit                                    Page 3 of 5

432

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 89

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

allegations raised in the answer are addressed above and/or in the supporting affirmation by Plaintiff's

counsel.

Keithea Dennis
Assistant Vice President

PHH Mortgage Corporation, servicer and
attorney-in-fact for Mortgage Stanley Private
Bank, National Association

Subscribed and sworn to before me
this 16th day of Feb 2018.
_____ Notary Public
(Signature required) Justine M Stevens

State of **New Jersey**
My Commission expires:     **January 22, 2023**
*(Notary Stamp/Seal or expiration date required)*

JUSTINE M STEVENS
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JANUARY 22, 2023
No. 2106715

**TO BE COMPLETED, IN ADDITION TO JURAT (ABOVE), IF EXECUTING OUTSIDE OF NEW YORK STATE**

STATE OF _____ **New Jersey**           )
                                           ) ss.    **Mt. Laurel**
COUNTY OF _____ **Burlington**           )

On the 16th day of February in the year 2018 before me, the undersigned personally appeared _____ Keithea Dennis _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person on behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the _____ Mt. Laurel _____, New Jersey office.

Justine M Stevens
(Type or print name below signature)
Notary Public, State of _____ **New Jersey**
Commission No.: 2106715
My Commission Expires: _____ **January 22, 2023**

JUSTINE M STEVENS
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES JANUARY 22, 2023
No. 2106715

17-063874                    Affidavit                    Page 4 of 5

433

EXHIBIT M TO GREGORITS AFFIRMATION -
AFFIRMATION OF REGULARITY, DATED MARCH 9, 2018 [433 - 447]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff,

-against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A., and JOHN DOE AND JANE DOE #1 through #7, the last seven (7) names being fictitious and unknown to the Plaintiff, the persons or parties intended being the tenants, occupants, persons or parties, if any, having or claiming an interest in or lien upon the mortgaged premises described in the Complaint,

Defendants.

**AFFIRMATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND ORDER OF REFERENCE**

Index No.850018/2017

Premises:
200 East 32nd Street
New York City, NY 10016

I, Ellis M. Oster, an attorney duly admitted to the practice of law in the State of New York, hereby affirm under penalty of perjury pursuant to CPLR § 2106 that:

1. I am an associate of Shapiro, DiCaro & Barak, LLC, the attorneys of record for the Plaintiff in this action, and I am fully familiar with the facts and circumstances underlying this application. I make this affirmation in support of this motion, pursuant to CPLR § 3212 and RPAPL § 1321, for summary judgment and order appointing a referee to compute.

2. This action was brought to foreclose a Consolidated Mortgage for failure of Defendants, Joseph J. Ceccarelli and Susan L. Ceccarelli, to make said Mortgage payments to Plaintiff, pursuant to the terms of the Consolidation, Extension, and Modification Agreement ("CEMA"). Said CEMA was made by Defendants to Mortgage Electronic Registration Systems, Inc., ("MERS") as nominee for Plaintiff, Morgan Stanley Private Bank, National Association on January 30, 2015, in the original amount of $1,540,000.00, and was recorded in the New York County Office of the City Register on February 20, 2015 in CRFN 2015000058946. The CEMA

17-063874                    Affirmation in Support                    Page 1 of 15

SpA.485

434

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 90

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

encumbers the property known as 200 East 32nd Street, New York City, NY 10016 and Block 912 Lot 1165 (herein "Premises").

3. Plaintiff is the holder of the Consolidated Note and CEMA as demonstrated by its continuous possession of the Note. To remove MERS as the "mortgagee of record" an Assignment of Mortgage to Plaintiff was executed on August 3, 2016 and recorded August 18, 2016 in CRFN 2016000285133. Copies of the Consolidated Note, CEMA, and Assignment of Mortgage are annexed hereto as **Exhibit "A"**.

4. Joseph J. Ceccarelli and Susan L. Ceccarelli are named as necessary party Defendants in the foreclosure action, in that said Defendants are the fee owners of the premises as well as the mortgagors under the aforementioned CEMA.

5. Pursuant to the terms of the CEMA, a Notice of Default was sent to the mortgagors on April 20, 2016. A copy of the Notice of Default is annexed hereto as **Exhibit "B"**. The Affidavit of Keithea Dennis, sworn to on February 16, 2018 and submitted herewith speaks to the mailing of the Notice of Default.

6. To comply fully with the provisions of RPAPL § 1304, on June 2, 2016, a 90-day notice was properly enclosed in a first class mail, postage paid, sealed envelope properly addressed to Joseph J. Ceccarelli and Susan L. Ceccarelli and was deposited in an official depository in the exclusive care and custody of the United States Postal Service, to be transmitted to said borrowers via certified and first-class mail, as referenced in the Affidavit of Mailing of Sharon Feeley, Assistant Vice President for PHH Mortgage Corporation, servicer and attorney-in-fact for Plaintiff, dated March 5, 2018. A copy of said Affidavit of Mailing, Notice, Plaintiff's servicer's business records regarding the mailing of said Notice and proof of filing

17-063874                            Affirmation in Support                            Page 2 of 15

SpA.486

435

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

pursuant to RPAPL§ 1306 are annexed hereto as Exhibit "C" and incorporated herein by reference.

7. On January 13, 2017, the Summons, Complaint and Notice of Pendency were filed in the office of the Clerk of this Court. Copies of the Summons, Complaint and Notice of Pendency are annexed hereto as Exhibit "D".

8. The Defendants have been duly served with the Summons and Complaint in this action as appears by the Affidavits of Service on file in this action and as annexed hereto as Exhibit "E". The Summons contained both the index number of the case and the date of filing thereof. Upon information and belief, our process service company inscribed the filing date on all Affidavits of Service before filing. The following Defendants have appeared:

a. Board of Managers of the Future Condominium

A copy of the Notice(s) of Appearance is annexed hereto as Exhibit "F".

9. Your deponent has reviewed the Summons and Complaint, and the Affidavits of Service thereof, filed in this case. Per the Affidavits of Service, a notice, in full compliance with the provisions of § 1303 of the New York Real Property Actions and Proceedings Law (RPAPL), was served upon the Defendants along with the said Summons and Complaint. Additionally, the Summons served on the Defendants was in full compliance with the provisions of § 1320 of the RPAPL.

10. The Defendants are not infants, and are not incompetents or absentees.

11. In addition, Plaintiff's process server, William Crancroft affirmed that the Defendants, Joseph Ceccarelli and Susan Ceccarelli, were not in the military at the time of service of process, as shown on the Affidavits of Service attached hereto as set forth above.

17-063874                               Affirmation in Support                               Page 3 of 15

436

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

12. The time to answer or move with respect to the Complaint has expired. None of the Defendants have made a motion with respect to the Complaint or served an answer except the Defendants, Joseph Ceccarelli and Susan Ceccarelli.

13. On or about April 10, 2017, Defendants, Joseph Ceccarelli and Susan Ceccarelli duly appeared in the above entitled action by their attorney, Steven W. Stutman, Esq., by mailing electronically filing an Answer. A copy of said Answer and a copy of Plaintiff's Reply to same are annexed hereto as Exhibit "G" and incorporated herein by reference.

14. The Answer of Defendants Joseph Ceccarelli and Susan Ceccarelli Ceccarelli, consists largely of general denials of the material facts of the Complaint with eight (8) purported affirmative defenses and one (1) counterclaims. Defendants deny allegations contained in paragraphs enumerated "2," "3," "4," "5," "6," "7," "8," "9," "10," "11," "12," "13," "14," "15," "16," "17," "18," "19," "20," "21," "22," "23," "24," "25," "26," "27" and "28" of Plaintiff's Complaint, except that Defendants admit having executed a Note and Mortgage. Defendants further deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs enumerated "1," "29," "30," "31" and "32" of Plaintiff's Complaint. Defendants deny these allegations but do not affirmatively assert that the payments required by the Bond/Note and mortgage have been made. Such unsubstantiated denials are insufficient to defeat a motion for summary judgment and serve to illustrate the frivolous nature of Defendants' pleadings. *See* Hellyer v. Law Capitol, Inc., 124 AD2d 782, 508 NYS2d 501 (2d Dept. 1986).

15. Monies claimed due to the Plaintiff will be determined by an officer of this Court. Defendants' denials create no triable issues of fact and are unsupported by any evidentiary showing. Bald, conclusory assertions will not defeat summary judgment. *See* Shaw v. Time-Life

17-063874                        Affirmation in Support                        Page 4 of 15

SpA.488

437

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Records, 38 NY2d 201, 379 NYS2d 390, 396 (1975); Capelin Assoc. v. Globe Mfg. Corp., 34 NY2d 338, 357 NYS2d 478 (1974).

16.     In accordance with the mortgage, Plaintiff has the right to foreclose the Mortgage in the event of non-payment. Defendants have failed to make the required payments and as a result, Plaintiff commenced this foreclosure proceeding. Plaintiff is simply exercising its rights pursuant to said Mortgage.

17.     The Summons and Complaint specifically state a good cause of action. Submitted herewith is an Affidavit executed by Keithea Dennis, Assistant Vice President of PHH Mortgage Corporation. A power of attorney from Mortgage Stanley Private Bank, National Association to PHH Mortgage Corporation is annexed hereto as Exhibit "H".

18.     As set forth in the Affidavit, the Defendants have breached and violated the provisions of the Note and Mortgage and neglected and failed to pay the installments of principal and interest when due, despite due demand therefore and by failing to make payment of real property and taxes when due, thus making it necessary for the Plaintiff to pay the same to protect its interest.

19.     Plaintiff believes that the cause of action set forth in its Complaint is established sufficiently so as to warrant the Court, as a matter of law, to direct judgment in its favor. Further, the said cause of action is unrefuted by any material facts provided by Defendants.

20.     Defendants' *first* purported affirmative defense alleges that Plaintiff failed to comply with RPAPL § 1302 and failed to state a cause of action upon which relief can be granted. This is clearly not true.

21.     The Complaint clearly sets out a proper and complete cause of action for breach of the mortgage contract. The Complaint included the dates and details of the execution and

17-063874                    Affirmation in Support                    Page 5 of 15

SpA.489

438

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

delivery of the Mortgage and Note. It further outlined the defendant-mortgagor's promise to pay and breach of that promise. A Plaintiff may establish a *prima facie* right to foreclosure by producing the mortgage documents underlying the transaction and undisputed evidence of nonpayment. *See* U.S. Bank Natl. Assn. v. Denaro, 98 A.D.3d 964, 950 N.Y.S.2d 581 (2d Dept. 2012); Wash. Mut. Bank v. O'Connor, 63 A.D.3d 832, 880 N.Y.S.2d 696 (2d Dept. 2009); Red Tulip, LLC v. Neiva, 44 A.D.3d 204, 842 N.Y.S.2d 1, 5 (1st Dept. 2007). Additionally, the Affidavit of Keithea Dennis provides the specific details of the default. Therefore, the Plaintiff has established a valid cause of action for a mortgage foreclosure, as a matter of

22. Moreover, as the Court can see in Paragraph "25" of the above referenced Complaint, Plaintiff asserts that it is the owner of both the Note and Mortgage, or has been delegated the authority to institute a mortgage foreclosure action by the holder of the subject Note and Mortgage.

23. In addition, Paragraph "26" and "27" of Plaintiff's Complaint state that Plaintiff complied with, "...all the provisions of Banking Law and any rules promulgated thereunder, section six-l or six-m of the New York State Banking Law §§ 595-a, 6-l and 6-m, and any rules and regulations promulgated thereunder, if applicable," and "...Real Property Actions and Proceedings Law §§ 1304 and 1306, if applicable," respectively. A copy of the Complaint is annexed hereto as Exhibit "D". As such, Plaintiff fully complied with RPAPL § 1302. Defendants' allegations on this matter are completely without merit.

24. Regardless, RPAPL § 1302 is inapplicable to this action as the mortgage loan is not a high-cost or subprime home loan as defined by Banking Law §§ 6-l and 6-m, as the loan amount of $1,540,000.00 exceeds the conforming loan limit of the Federal National Mortgage Association.

17-063874                          Affirmation in Support                          Page 6 of 15

SpA.490

439

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

25. Defendants' *second* purported affirmative defense alleges Plaintiff lacks standing. Such is clearly untenable.

26. Plaintiff is the original lender of the Consolidated Note and Mortgage being foreclosed herein, and remained in possession of the Note at the time this action commenced. Therefore, Plaintiff has requisite standing as the current holder of the instant Note as its standing is "established by the lending documents themselves." *See* LaSalle Bank Natl. Assn. v. Lamy, 12 Misc. 3d 1191A, 824 N.Y.S.2d 769 (Sup. Ct., Suffolk Cty. 2006).

27. Defendants' *third* purported affirmative defense alleges that Plaintiff failed to contract in "good faith." Such bare and conclusory allegations cannot be credited as a defense to this action.

28. Defendant provides no information or evidence to support how the Plaintiff is not in good faith or fair dealing. In addition, the submitted answer fails to provide any definition for the "good faith standard." Further, there is no valid legal defense of a breach of "good faith" in a mortgage foreclosure outside of settlement conferencing, and this matter was released from such conferencing on January 31, 2018 without any finding of bad faith on the part of Plaintiff. Therefore, the Defendant is not entitled to any relief under either standard and any such allegations are insufficient to defeat summary judgment.

29. Defendants' *fourth* purported affirmative defense alleges that the Court lacks personal jurisdiction over the matter. This is evidently incorrect.

30. The Affidavit of Service obtaining personal jurisdiction over the Defendants are included herein at Exhibit "E". The Affidavits of Service are proper in all respects. The Defendants have failed to represent the specific ways which service is defective. Therefore, the

17-063874                               Affirmation in Support                               Page 7 of 15

SpA.491

440

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

claims of the Defendants are insufficient to raise a genuine issue of material fact and cannot defeat summary judgment.

31. Aside from valid service, the claims of the Defendants still must fail. According to CPLR § 3211(e), an objection to the service of a Summons and Complaint is waived unless the party moves for judgment based on lack of personal jurisdiction within sixty (60) days after service of the Answer. Defendants have not moved for judgment based on lack of personal jurisdiction within the statutory period. Therefore, since Defendants have not claimed a lack of service within the statutory time frame, Defendants have waived any right to claim lack of personal jurisdiction.

32. Defendants' *fifth* purported affirmative defense alleges that Plaintiff failed to provide a "notice of acceleration."

33. However, in the absence of a provision in the mortgage contract to the contrary, a notice of intention to accelerate is simply not required, as a matter of law. *See* Hudson City Sav. Inst. v. Burton, 88 A.D.2d 728, 451 N.Y.S.2d 855 (3rd Dept. 1982). Therefore, the Defendants does not have a valid affirmative defense of lack of notice of acceleration.

34. To the extent Defendants' allegations refer to the Notice of Default provision of the subject Mortgage, such a Notice was sent to the mortgagors on April 20, 2016. A copy of the Notice of Default is annexed hereto as Exhibit "B". The Affidavit of Keithea Dennis, sworn to on February 16, 2018 and submitted herewith speaks to the mailing of the Notice of Default.

35. Case law confirms that a "defendant's mere denial of receipt by mail at his home, without further probative facts, is insufficient to overcome the presumption of delivery which attaches to a properly mailed letter." *See* Public Administrator of the County of New

17-063874                      Affirmation in Support                      Page 8 of 15

SpA.492

441

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

York v. Markowitz, 557 N.Y.S.2d 348, 348 (1st Dept. 1990). As a result, this defense should be dismissed.

36.     Also, as Plaintiff has evinced its compliance with RPAPL § 1304 with respect to the mailing of the 90-day pre-foreclosure notice, such also demonstrates compliance with the 30-day demand notice requirement in the mortgage per the "Applicable Law requirement" concerning notices contained in paragraph 15 of the Mortgage. See Wachovia Bank, N.A. v. Carcano, 106 A.D.3d 724, 725 (2d Dept 2013) (holding that the RPAPL § 1304 90-day notice can act as a substitute for the 30-day notice requirement in the mortgage).

37.     Defendants' sixth purported affirmative defense lists a number of legal principles (doctrines unclean hands, laches, unconscionable conduct and/or estoppel) any or all of which allegedly bar Plaintiff's claim. Such a list of legal doctrines is valueless in and of itself as a bar to summary judgment.

38.     As an initial matter, it should be noted that Defendants' affirmative defense fails to plead with specificity and is unsupported by any evidentiary showing. Therefore, the claims of the Defendants are insufficient to raise a genuine issue of material fact and cannot defeat summary judgment, pursuant to CPLR § 3013. Because Defendants' allegations are purely conclusory, they should be stricken from the record. See Aurora Loan Services v. Grant, 17 Misc. 3d 1102(A), 851 N.Y.S.2d 56 (Sup. Ct. 2007).

39.     Nonetheless, as a general principle, per the Court of Appeals, the affirmative defense of unclean hands is not recognized as a valid defense to a mortgage foreclosure. See Jo Ann Homes at Bellmore, Inc. v. Dworetz, 25 N.Y. 2d 112, 302 N.Y.S.2d 799 (1969); First Family Mortg. Corp. v. Lubliner, 493 N.Y.S.2d 598, 113 A.D.2d 868, 868 (2d Dept. 1988).

SpA.493

442

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

40.     Further, as a matter of law, an allegation of unclean hands fails without a claim of resultant damage or injury. *See* Security Pacific Mortg. & Real Estate Services, Inc. v. Canadian Land Co. of America, 690 F. Supp. 1214, 1224 (S.D.N.Y 1988). Therefore, even if the defense applied to foreclosures, Defendants have not established an injury in order to invoke the "unclean hands" doctrine. Moreover, Defendants fail to provide any incident of inequitable activity by Plaintiff which could remotely justify this claim.

41.     In addition, in order to successfully allege the affirmative defense of unconscionability, the conduct relied on must be directly related to Defendants' default, the subject matter of the litigation. *See* Trustco Bank, N.A. v. Allison Assocs., 249 A.D.2d 911, 671 N.Y.S.2d 379 (4th Dept. 1998). Defendants here have not presented any evidence to establish a direct link between any conduct of Plaintiff and Defendants' default under the terms of the Note and Mortgage.

42.     Further, Defendants failed to demonstrate that no reasonable person would enter into this agreement and the terms would "shock the conscience." *See* LaSalle Bank N.A. v. Kossrovich, 31 A.D.3d 904, 820 N.Y.S.2d 144, 146 (3d Dept. 2006). The mere fact that a contract entered into is unfavorable to the Defendants is not cause for equitable relief. Id. Therefore, the Defendants fail to establish that this Mortgage and Note were unconscionable.

43.     Furthermore, it is well-founded law that laches is unavailable when a statute of limitations applies, as it does in a mortgage foreclosure action. *See* New York State Mortgage Loan Enforcement & Admin. Corp. v. North Town Phase II Houses, Inc., 191 A.D.2d 151, 594 N.Y.S.2d 183 (1st Dept. 1993); First Fed. Sav. & Loan Ass'n of Rochester v. Capalongo, 152 A.D.2d 833, 544 N.Y.S.2d 44 (3d Dept. 1989). In that regard, where a Plaintiff waited seventeen (17) years before commencing a foreclosure action, when the statute of limitations at

17-063874                      Affirmation in Support                      Page 10 of 15

SpA.494

443

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

the time was twenty (20) years, the Court still held that the action was timely commenced, and not subject to a laches defense. *See* Wesselman v. Engel Co., 309 N.Y. 27, 309 N.Y. (N.Y.S.) 27, 127 N.E.2d 736 (1955).

44.     It is clear that this foreclosure action was commenced within the applicable statute of limitations period of six (6) years. *See* CPLR § 213(4). Therefore, the Defendant's laches defense fails, as a matter of law.

45.     Defendants' bare and conclusory attempt to invoke an estoppel defense is equally unavailing. "Collateral estoppel precludes a party from relitigating in a subsequent action or preceding an issue raised in a prior action or proceeding and decided against that party or those in privity". *See* Huntington Natl. Bank v. Cornelius, 80 A.D.3d 245, 914 N.Y.S.2d 327 (3d Dept. 2010), *quoting* Buechel v. Bain, 97 N.Y.2d 295, 303 (2001). In that regard, Defendants completely fail to allege that there has been any prior action or proceeding between the parties herein, that was ever decided against Plaintiff, whereby Plaintiff would be collaterally estopped from bringing the instant mortgage foreclosure action. As a result, this defense fails as a matter of law and fact and should be dismissed in its entirety.

46.     Defendants' *seventh* purported affirmative defense alleges that Defendants have made full or partial payments under their obligations in the subject Note and Mortgage and that there was no basis for Plaintiff to have commenced this action. Such bare and conclusory allegations cannot bar Plaintiff from summary judgment.

47.     As shown in paragraph 7 of Keithea Dennis' Affidavit in Support, the amount due is clear. The Defendant does not furnish any specific facts to support this allegation nor does they suggest the correct amount due. Defendants' allegations must be dismissed as they are

17-063874                          Affirmation in Support                          Page 11 of 15

SpA.495

444

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

bereft of any factual detail, conclusory, fail to adequately state or plead with specificity and are unsupported by any form of evidence. *See* CPLR § 3013.

48.     Furthermore, the amount due Plaintiff is an issue not needing determination at this time, as the aggregate amount need not be considered by the Court until Plaintiff brings an application for a final Judgment of Foreclosure and Sale. *See* Shufelt v. Bulfamante, 92 A.D.3d 936, 940 N.Y.S.2d 108 (2d Dept. 2012) ("Moreover, the existence of a dispute as to the exact amount owed by [the defendant] to the plaintiff does not preclude the award of summary judgment to the plaintiff on the issue of foreclosure").

49.     While it is submitted that tender is a valid affirmative defense, it remains clear that Defendant has the full burden of proving tender or redemption. *See* European American Bank v. Harper, 163 A.D.2d 458, 558 N.Y.S.2d 155 (2d Dept 1990); *see also* Call v. LaBrie, 116 A.D.2d 1034, 498 N.Y.S.2d 652 (4th Dept 1986). Cancelled checks demonstrating acceptance by a foreclosing plaintiff of sums corresponding to the amount due on the mortgage establishes proof of tender. *See* Emphanque Capital Corp. v. Geathers, 224 A.D.2d 238, 637 N.Y.S.2d 413 (1st Dept. 1996). In this case, however, Defendants have not met his burden of proving any evidence of tender to show that he may have a meritorious defense herein.

50.     Defendants' *eighth* purported affirmative defense alleges that Defendant's debt has been paid in full to Plaintiff by some third-party entity. Once again, Defendants' allegations must be dismissed as they are bereft of any factual detail, conclusory, fail to adequately state or plead with specificity and are unsupported by any form of evidence. *See* CPLR § 3013.

SpA.496

445

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

51. As state *supra*, A Plaintiff may establish a *prima facie* right to foreclosure by producing the mortgage documents underlying the transaction and undisputed evidence of nonpayment. *See* Denaro, *supra*; O'Connor, *supra*; Neiva, *supra*.

52. Furthermore, it is well established law that the availability of insurance proceeds is coextensive with the relief available under the terms of a mortgage, and there is "no New York authority for the novel position that plaintiff was required to pursue one of these coextensive interests before the other". *See* Crossland Mortg. Corp. v. Douglas, 271 A.D.2d 933, 706 N.Y.S.2d 273 (3d Dept. 2000). Moreover, the mere fact that mortgage insurance is available does not mean that the mortgage insurer would freely pay Plaintiff for any loss realized in this matter if Plaintiff does not mitigate such losses by pursuing this foreclosure action; such would be entirely nonsensical and defeats the entire purpose of mortgage insurance. As such this affirmative defense fails as a matter of law.

53. Defendants' *first* purported counterclaim alleges Plaintiff failed to comply with the required NYS Disclosures concerning the commencement and prosecution of a mortgage foreclosure action.

54. The Defendants do not indicate what disclosures were allegedly undelivered nor do Defendants provide any evidence to support their claim. Such unsubstantial and conclusory allegations cannot form the basis for a denial of summary judgment or a valid cause of action against Plaintiff. *See* CPLR § 3013. As such, this counterclaim should be dismissed out of hand by the Court for failing to state a cause of action against Plaintiff.

55. From the foregoing, it is apparent that the Answer created no issues of fact which require a trial. It is readily apparent that the Defendants have interposed same in this proceeding for no other purpose than to delay the foreclosure of the mortgage on said premises. No issue of

17-063874                          Affirmation in Support                          Page 13 of 15

SpA.497

446

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

fact or law has been raised and therefore, summary judgment should be granted striking out the Answer of the Defendants. See U.S. Bank Natl. Assn. v. Denaro, 98 A.D.3d 964, 950 N.Y.S.2d 581 (2d Dept. 2012).

56.      Subsequent to the commencement of this action, it has been determined that the Defendant "JOHN DOE" and "JANE DOE" #1 through is not a necessary party to this action.

57.      CPLR § 3215(g)(3) is not applicable in the instant matter as the answering Defendants are the only natural person parties herein.

58.      Plaintiff is entitled to a default judgment in this action as to all other Defendants herein either in default in appearing or, even if having appeared, having not interposed an Answer or raised an objection to the complaint. These Defendants have either defaulted herein or waived notice of this application.

59.      Shapiro, DiCaro & Barak, LLC have been substituted as the attorneys of record for the Plaintiff herein, as seen by the Consent filed on June 14, 2017 and attached as **Exhibit "I"**.

60.      The Certificate of Merit as required by Administrative Order 208/13 is annexed hereto as **Exhibit "J"**.

61.      A Department of Defense Manpower Data Center search was conducted to determine the current military status of Defendants, Joseph Ceccarelli a/k/a Joseph J. Ceccarelli and Susan Ceccarelli a/k/a Susan L. Ceccarelli, prior to bringing this application. The information generated from the search indicated that the aforementioned Defendants are not on active duty in the military service of either the United States or an ally. The search was conducted on a date after the default in answering or appearing had occurred for all Defendants and a date shortly before the submission of this Order of Reference application. Copies of said searches, together with

17-063874                          Affirmation in Support                          Page 14 of 15

SpA.498

447

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 90

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Affirmant's Affidavit of Military Status for each Defendant herein, are attached hereto as Exhibit "K"

62. All parties entitled to notice have been or will be given notice of this application.

63. All of the proceedings herein have been regular and in conformity with the rules and practices of this Court.

64. No previous application has been made for the appointment of a referee.

WHEREFORE, it is prayed that an order be entered:

a. appointing a Referee to compute; and

b. granting summary judgment in favor of Plaintiff and against Defendants, Joseph Ceccarelli a/k/a Joseph J. Ceccarelli and Susan Ceccarelli a/k/a Susan L. Ceccarelli, and default judgment in favor of the Plaintiff against all other Defendants as to all of the facts and issues described in the Plaintiff's Complaint herein; and

c. amending the caption by dropping the Defendant "JOHN DOE" since he is not a necessary party to this action; and

d. for such other and further relief as to the Court may seem just and proper.

Date: March 9, 2018

Ellis M. Oster, Esq.
Senior Associate, Director of Litigation
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

17-063874                    Affirmation in Support                    Page 15 of 15

SpA.499

448

EXHIBIT N TO GREGORITS AFFIRMATION -
DECISION AND ORDER GRANTING SUMMARY JUDGMENT
UNDER MS NO. 1, DATED MARCH 29, 2019 [448 - 453]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 91

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: HON. ARLENE P. BLUTH
Justice

PART: IAS MOTION 32

| | |
|---|---|
| INDEX NO. | 850018/2017 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff,

- v -

JOSEPH J. CECCARELLI III aka JOSEPH J. CECCARELLI; SUSAN LANGHOLZ aka SUSAN L. CECCARELLI aka SUSAN LANGHOLZ CECCARELLI, BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM, RBS CITIZENS, N.A., JOHN DOE AND JANE DOE #1 THROUGH #7, THE LAST SEVEN 7 NAMES BEING FICTITIOUS OR UNKNOWN TO THE PLAINTIFF, THE PERSONS OR PARTIES INTENDED BEING THE TENANTS, OCCUPANTS, PERSONS OR PARTIES, IF ANY, HAVING OR CLAIMING AN INTEREST IN OR LIEN UPON THE MORTGAGED PREMISES DESCRIBED IN THE COMPLAINT,

Defendants.

**DECISION AND ORDER OF REFERENCE**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 48, 49, 53, 54, 55, 56, 57, 58, 59, 61, 62

were read on this motion to/for _____ JUDGMENT - SUMMARY _____.

The motion by plaintiff for summary judgment against defendants Joseph Ceccarelli and Susan Ceccarelli, a default judgment against the remaining defendants, and for an order of reference is granted. The cross-motion to *inter alia* compel discovery by the Ceccarellis ("defendants") is denied.

**Background**

Plaintiff seeks to foreclose a property located at 200 East 32nd Street, Apt. 28B in Manhattan. Defendants raise three issues in opposition to plaintiff's motion and in support of their cross-motion: (1) discovery is required, (2) the affidavit of merit and amount due is

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI, III, JOSEPH J
Motion No. 001

Page 1 of 6

449

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 91

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

insufficient because it was signed outside of New York and lacks a certificate of conformity, and (3) plaintiff is not entitled to summary judgment under the doctrine equitable estoppel.

**Discovery**

"A grant of summary judgment cannot be avoided by a claimed need for discovery unless some evidentiary basis is offered to suggest that discovery may lead to relevant evidence" (*Bailey v New York City Tr. Auth.*, 270 AD2d 156, 157, 704 NYS2d 582 [1st Dept 2000]). Here, defendant Ceccarelli claims in opposition and in support of his cross-motion that discovery is necessary to explore whether plaintiff has standing. Defendant complains that the note was sold to an unknown-third party investor.

"Nevertheless, if the note is affixed to the summons and complaint at the time the action is commenced, it is unnecessary to give factual details of the delivery to establish that possession was obtained prior to a particular date" (*Bank of New York Mellon v Knowles*, 151 AD3d 596, 596-97, 57 NYS3d 473 [1st Dept 2017] [internal quotations and citations omitted]). "[I]t is the note, and not the mortgage, that is the dispositive instrument that conveys standing to foreclose" (*Wells Fargo Bank, N.A. v Lawson Ho-Shing*, 168 AD3d 126, 131, 92 NYS3d 194 [1st Dept 2019]).

Here, plaintiff attached the note to the complaint and met its prima facie burden to establish standing (NYSCEF Doc. No. 1, exh D). Defendants failed to raise an issue of fact as to why the Court should question the note attached to the complaint. There is no reason for discovery where plaintiff has established standing and defendants admit that they defaulted on the mortgage. Put simply, there is no question that plaintiff has standing and that defendants fell behind on the payments. Discovery for the sake of discovery is not necessary.

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI, III, JOSEPH J
Motion No. 001

Page 2 of 6

SpA.501

450

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 91

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM
NYSCEF DOC. NO. 63

INDEX NO. 850018/2017
RECEIVED NYSCEF: 04/05/2019

**Out-of-State Affidavit**

The Court finds that the affidavit from plaintiff's loan servicing agent (NYSCEF Doc. No. 30) is admissible despite the fact that the affiant was in New Jersey and the affidavit lacks a certificate of conformity (*see Midfirst Bank v Agho*, 121 AD3d 343, 991 NYS2d 623 [2d Dept 2014] [finding that an out-of-state affidavit in a foreclosure action was admissible because it was sworn to in a manner rendering it admissible under New York law]).

**Equitable Estoppel**

"The party invoking a defense of equitable estoppel must establish: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than and inconsistent with, those which the party subsequently seeks to assert; (2) intention, or at least expectation, that such conduct will be acted upon by the other party; (3) and, in some situations, knowledge, actual or constructive, of the real facts ... The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted.... Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position" (757 3rd Ave Assocs., LLC v Patel, 117 AD3d 451, 453-54, 985 NYS2d 57 [1st Dept 2014]).

Defendant Joseph Ceccarelli claims that while he was negotiating with plaintiff about a potential loan modification, plaintiff suggested that a condition for getting a loan modification for the Manhattan property was paying off the mortgage on a separate property in North Carolina (both loans were apparently held by plaintiff). He complains that he was not given a loan modification after making the payments on the North Carolina property.

This does not establish an issue of fact compelling the Court to deny plaintiff's motion nor does it substantiate defendants' affirmative defense. The fact that a bank representative recommended that defendants pay off another loan to be in a better position for a loan

SpA.502

451

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 91

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM
NYSCEF DOC. NO. 63

INDEX NO. 850018/2017
RECEIVED NYSCEF: 04/05/2019

modification for the Manhattan property does not support a claim for equitable estoppel. Defendants do not argue that plaintiff promised to forgive the entire mortgage on his Manhattan property if he paid off the North Carolina property. Instead, they claim that they should have received a loan modification—that does not justify dismissing the case. In other words, defendants want the Court to wipe away an outstanding debt of $1,676,660.05 (according to plaintiff) because they made a large payment on another loan. A loan modification is a business judgment made by plaintiff to reach a settlement rather than pursue a foreclosure action. This Court will not let negotiations about a possible settlement be used as a justification for giving a defaulting defendant a house free and clear.

Accordingly, it is hereby

ORDERED that plaintiff's motion is granted, the affirmative defenses asserted in the Ceccarellis' amended answer (NYSCEF Doc. No. 18) are severed and dismissed, and plaintiff is granted a default judgment against the non-appearing defendants, and the cross-motion by the Ceccarellis is denied, and it is further

ORDERED that ___Arthur Greig, Esq._____, with an address at __401 Broadway Suite 1902 NY NY 10013 212-941-0230__ is hereby appointed Referee in accordance with RPAPL § 1321 to compute the amount due to Plaintiff for principal, interest and other disbursements advanced as provided for in the note and mortgage upon which this action is brought, and to examine whether the mortgaged property can be sold in parcels; and it is further

ORDERED that the Referee may take testimony pursuant to RPAPL § 1321; and it is further

ORDERED that by accepting this appointment the Referee certifies that he is in

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI, III, JOSEPH J
Motion No. 001

Page 4 of 6

SpA.503

452

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 91

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2 (c) ("Disqualifications from appointment"), and §36.2 (d) ("Limitations on appointments based upon compensation"), and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

ORDERED that, pursuant to CPLR 8003(a), and in the discretion of the court, a fee of $350 shall be paid to the Referee for the computation of the amount due and upon the filing of her/his report and the Referee shall not request or accept additional compensation for the computation unless it has been fixed by the court in accordance with CPLR 8003(b); and it is further;

ORDERED that the Referee is prohibited from accepting or retaining any funds for himself or paying funds to himself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED that plaintiff shall forward all necessary documents to the Referee within 30 days of the date of this order and shall *promptly* respond to every inquiry made by the referee (promptly means within two business days); and it is further

ORDERED that plaintiff must bring a motion for a judgment of foreclosure and sale within 30 days of receipt of the referee's report; and it is further

ORDERED that if plaintiff fails to meet these deadlines, then the Court may *sua sponte* vacate this order and direct plaintiff to move again for an order of reference and the Court may *sua sponte* toll interest depending on whether the delays are due to plaintiff's failure to move this litigation forward; and it further

ORDERED that "JOHN DOE" and "JANE DOE" #1 through 7 be removed as

850018/2017 MORTGAGE STANLEY PRIVATE vs. GROGANELLI II, JOSEPH J
Motion No. 001

Page 5 of 6

453

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 91

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

defendants, that the caption of this action be amended to reflect the removal of these defendants, and that the Clerk of the Court amend the docket and electronic docket accordingly; and it is further; and it is further

ORDERED that counsel for plaintiff shall serve a copy of this order with notice of entry upon the County Clerk (60 Centre Street, Room 141B) and the General Clerk's Office (60 Centre Street, Room 119), who are directed to mark the court's records to reflect the parties being removed; and it is further

ORDERED that such service upon the County Clerk and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address (ww.nycourts.gov/supctmanh)]; and it is further

ORDERED that Plaintiff shall serve a copy of this Order with notice of entry on all parties and persons entitled to notice, including the Referee appointed herein.

Next Conference: June 27, 2019 at 10 am.

3/29/19
DATE

HON. ARLENE P. BLUTH
ARLENE P. BLUTH, J.S.C.

CHECK ONE:
CASE DISPOSED
[X] GRANTED  [ ] DENIED
[X] NON-FINAL DISPOSITION
GRANTED IN PART  [ ] OTHER

APPLICATION:
SETTLE ORDER
SUBMIT ORDER

CHECK IF APPROPRIATE
INCLUDES TRANSFER/REASSIGN
FIDUCIARY APPOINTMENT  [ ] REFERENCE

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI, III, JOSEPH J
Motion No. 001

Page 6 of 6

6, of 6

SpA.505

454

EXHIBIT O TO GREGORITS AFFIRMATION -
NOTICE OF ENTRY, DATED APRIL 25, 2019 [454 - 457]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 92

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/26/2019 02:21 PM

NYSCEF DOC. NO. 64

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/26/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
_____

Mortgage Stanley Private Bank, National Association,

Plaintiff,

-against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K.
Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future
Condominium; RBS Citizens, N.A.,

Defendants.
_____

**NOTICE OF ENTRY**

Index No. 850018/2017

SIRS:

    PLEASE TAKE NOTICE that the within is a true copy of an Order of Reference, duly
entered in the office of the clerk of the within named court on April 5, 2019.

DATED: _April 25, 2019_

Ellis M. Oster, Esq.
Senior Associate, Director of Litigation
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

TO:
Steven W. Stutman, Esq.
*Attorney for Defendant, Joseph J. Ceccarelli, III and Susan K. Langholz*
535 Broad Hollow Road, Suite B-52
Melville, NY 11747

Mark N. Axinn, Esq,
BRILL & MEISEL
*Attorney for Defendant Board of Managers of the Future Condominium*
845 Third Avenue
16th Floor
New York, NY 10022

17-063874

Notice of Entry

Page 1 of 2

1 of 9

SpA.506

455

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 92

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/26/2019 02:21 PM

NYSCEF DOC. NO. 64

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/26/2019

RBS Citizens, N.A.
1 Citizens Plaza
Providence, RI 02903

New York County Clerk
60 Centre Street, Room 141B
New York, NY 10007

General Clerk's Office
60 Centre Street, Room 119
New York, NY 10007

Arthur Greig, Esq.
*Referee*
401 Broadway, Suite 1902
New York, NY 10013

17-063874                    Notice of Entry                    Page 2 of 2

456

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 92

FILED: NEW YORK COUNTY CLERK 04/26/2019 02:21 PM

NYSCEF DOC. NO. 65

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

INDEX NO. 850018/201

RECEIVED NYSCEF: 04/26/201

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**AFFIDAVIT OF SERVICE BY MAIL**

Mortgage Stanley Private Bank, National Association,

                    Plaintiff,

      -against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A.,

                    Defendants.

Index No. 850018/2017

STATE OF NEW YORK    )
COUNTY OF MONROE    ) SS

    I, Christy Jamieson, being sworn, say: I am not a party to this action; I am over 18 years of age, I reside in Rochester, New York.

    On April 25, 2019, I served the Notice of Entry and Order of Reference on the following:

Steven W. Stutman, Esq.
*Attorney for Defendant, Joseph J. Ceccarelli, III and Susan K. Langholz*
535 Broad Hollow Road, Suite B-52
Melville, NY 11747

Mark N. Axinn, Esq,
BRILL & MEISEL
*Attorney for Defendant Board of Managers of the Future Condominium*
845 Third Avenue, 16th Floor
New York, NY 10022

RBS Citizens, N.A.
1 Citizens Plaza
Providence, RI 02903

New York County Clerk
60 Centre Street, Room 141B
New York, NY 10007

17-063874                Affidavit of Service              Page 1 of 2

SpA.508

457

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 92

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/26/2019 02:21 PM

NYSCEF DOC. NO. 65

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/26/2019

**General Clerk's Office**
**60 Centre Street, Room 119**
**New York, NY 10007**

**Arthur Greig, Esq.**
*Referee*
**401 Broadway, Suite 1902**
**New York, NY 10013**

the address designated for that purpose by depositing a true copy of same enclosed in a postpaid,

properly addressed wrapper, in an official depository under, the exclusive care and custody of the

United States Postal Service within the State of New York.

Date: 4/25/19

Christy Jamieson
Litigation Assistant
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

Sworn to before me this

25 day of April , 20 19

Notary Public

BRETT KELLENBERGER
Notary Public, State of New York
No. 01BR6368585
Qualified in Monroe County
Commission Expires Dec. 18, 20 21

17-063874

Affidavit of Service

Page 2 of 2

2 of 2

SpA.509

458

EXHIBIT P TO GREGORITS AFFIRMATION -
(I) OATH OF REFEREE AND REFEREE REPORT,
DATED OCTOBER 17, 2019 [458 - 464]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 93

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

      Plaintiff,

  -against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K.
Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future Condominium;
RBS Citizens, N.A.

      Defendants.

**OATH OF REFEREE**

17- 063874

Index No. 850018/2017

STATE OF NEW YORK          )
                            )   SS.:
COUNTY OF NEW YORK   )

I, Arthur Greig, Esq., the Referee appointed by an order of this Court, granted in the above captioned action on March 29, 2019, to ascertain and compute the amount due to the Plaintiff for principal and interest and otherwise under the Note and Mortgage which this action was brought to foreclose, and to examine and report whether the mortgaged premises should be sold in one or more parcels, **DO SOLEMNLY SWEAR**, that I will faithfully and fairly determine the questions so referred to me, and make a just and true report thereon according to the best of my understanding and as said order requires.

Arthur Greig, Esq.
Referee

Sworn to before me this OCT. 17, 2019

_____ day of _____, 20 19

Notary Public

MICHAEL ROBERTS
Notary Public, State of New York
Reg. No. 02RO4732346
Qualified in New York County
Commission Expires 6/30/2022

**MUST BE NOTARIZED BEFORE THE REPORT IS SIGNED AND DATED**

SpA.510

459

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 93

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

                           Plaintiff,

    -against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K.
Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future Condominium;
RBS Citizens, N.A.

                         Defendants.

**REPORT OF AMOUNT
DUE TO THE PLAINTIFF**

Index No. 850018/2017

TO THE SUPREME COURT, NEW YORK COUNTY:

PURSUANT TO an order of this Court, granted in this action on March 29, 2019,
whereby it was referred to the undersigned Arthur Greig, Esq., as Referee, to ascertain and
compute the amount due to the Plaintiff for principal and interest and otherwise under the Note
and Mortgage which this action was brought to foreclose, and to examine and report whether in
my opinion the mortgaged premises should be sold in one or more parcels, I, Arthur Greig, Esq.,
an attorney duly admitted to the practice of law in the State of New York, hereby affirm under
penalty of perjury pursuant to CPLR §2106 report that:

1.     Before proceeding to hear the testimony I first was duly sworn faithfully and
fairly to determine the questions referred to me, and to make a just and true report thereon,
according to the best of my understanding.

2.     Based upon the documentary evidence introduced before me, I have computed
and ascertained the amount due to the Plaintiff under said Note and Mortgage, and I find, and
accordingly report, that there is due to the Plaintiff for principal, interest and advances on said

SpA.511

460

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 93

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Note and Mortgage, as of February 15, 2018, the sum of $1,676,660.05, plus a per diem for each day thereafter.

3. Annexed hereto and made a part hereof is Schedule A of the documentary evidence introduced before me, Schedule B showing the amounts due for principal and interest respectively, and the period of the computation of the interest and its rate, and Schedule C, the affidavit of Keithea Dennis, the Assistant Vice President of Plaintiff/Plaintiff's servicing agent, containing information regarding the amount due Plaintiff herein.

4. I have reviewed a description of the mortgaged premises, and I find that the mortgaged premises should be sold in one parcel.

This report is respectfully submitted,

OCT. 17

_____, 2019
Date

Arthur Greig, Esq.
Referee

**\*\*MUST BE SIGNED AND DATED AFTER THE OATH\*\***

SpA.512

461

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 93

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## SCHEDULE A

1. Consolidation, Extension, Modification Agreement dated January 30, 2015 made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank, National Association, recorded on February 20, 2015 in the New York County Office of the City Register in CRFN 2015000058946. The foregoing instrument consolidated and/or modified the following mortgage(s): The Mortgage given by joseph J. Ceccarelli and Susan. K. Langholz to Merill Lynch Credit Corporation to secure the sum of $820,000.00 dated February 7, 2000 and recorded on March 22, 2000 in Reel 3070, page 2071. The Note and Mortgage were transferred to Cendant Mortgage Corporation and said transfer was memorialized by an Assignment of Mortgage dated November 28, 2001 and recorded on January 30, 2002 in Reel 3440, page 0507. The Note and Mortgage were subsequently transferred to Merrill Lynch Credit Corporation and said transfer was memorialized by an Assignment of Mortgage dated March 9, 2006 and recorded on June 16, 2006 in CRFN 2006000342599. the Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $457,000.00 dated November 14, 2005 and recorded on June 16, 2006 in CRFN 2006000342600. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $1,277,500.00 dated November 14, 2005 and recorded on june 16, 2006 in CRFN 2006000342601. The Note and Mortgage were transferred to Morgan Stanley Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 16, 2012 and recorded on October 27, 2014 in CRFN 2014000356095. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan

SpA.513

462

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 93

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Stanley Private Bank, National Association to secure the sum of $9,500.00 dated December 28, 2012 and recorded on october 27, 2014 in CRFN 2014000356096. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association to secure the sum of $1,287,000.00 dated December 28, 2012 and recorded on October 27, 2014 in CRFN 2014000356097. The Note and Mortgage were transferred to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 11, 2014 and recorded on February 20, 2015 in CRFN 2015000058944. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank National Association to secure the sum of $253,001.62 dated January 30, 2015 and recorded on February 20, 2015 in CRFN 2015000058945. The Mortgage was transferred to Morgan Stanley Private Bank, National Association, and said transfer was memorialized by an Assignment of Mortgage executed on August 3, 2016 and recorded August 18, 2016 in CRFN 2016000285133.

SpA.514

463

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 93

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## SCHEDULE B

| | | |
|---|---|---|
| PRINCIPAL DUE ON NOTE AND MORTGAGE | | $1,540,000.00 |
| INTEREST at variable rates due from 2/1/2016 through 2/15/2018 | | 90,209.95 |
| LATE CHARGES | | 320.65 |
| ADVANCES | | |
| Taxes | 45,944.45 | |
| Inspections | 165.00 | |
| NSF Charges | 20.00 | |
| TOTAL ADVANCES | | $46,129.45 |
| TOTAL: | | $1,676,660.05 |

Plus per diem interest from February 16, 2018

SpA.515

464

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 93

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## SCHEDULE C

The affidavit of debt by Plaintiff is attached hereto.

SpA.516

465

EXHIBIT P TO GREGORITS AFFIRMATION -
(II) AFFIDAVIT BY SERVICING AGENT RE TOTAL AMOUNT CLAIMED
DUE UNDER MORGAN STANLEY 1-MONTH LIBOR ADJUSTABLE
RATE NOTE, SWORN TO FEBRUARY 16, 2018
(REPRODUCED HEREIN AT PP. 429-432)

SpA.517

466

EXHIBIT Q TO GREGORITS AFFIRMATION -
AFFIRMATION OF AFFIRMATION OF SERVICES RENDERED,
DATED OCTOBER 23, 2019 [466 - 469]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 94

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff(s),

v.

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan
K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future
Condominium; RBS Citizens, N.A.,

Defendant(s).

**AFFIRMATION OF SERVICES
RENDERED**

INDEX NO. 850018/2017

MORTGAGED PROPERTY: 200
East 32nd Street
New York City, NY 10016
COUNTY: New York
SBL #: Block 912 Lot 1165

I, Patrick Gregorits, an attorney duly admitted to the practice of law in the State of New York, hereby affirm pursuant to CPLR § 2106 that:

1. I am an associate of Shapiro, DiCaro & Barak, LLC, the attorneys of record for Mortgage Stanley Private Bank, National Association, the plaintiff in the above captioned action and, as such, am fully familiar with the facts of this case and the proceedings heretofore had herein. I make this affirmation in support of plaintiff's order confirming referee report and judgement of foreclosure and sale and to apprise the Court of the attorneys' fees incurred by the plaintiff herein.

2. Attorneys' fees are chargeable to the defendant pursuant to paragraph(s) 22 of the mortgage, upon which this foreclosure action is based.

3. With reference to the fixing of attorneys' fees, this matter has required considerable expertise, and considerable effort has been expended in evaluating and discussing with our client the best procedure and tracking to use in order to most effectively protect its rights in this difficult and technical process.

17-063874                              Affirmation                              Page 1 of 4

SpA.518

467

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 94

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

4. The amount due to Shapiro, DiCaro & Barak, LLC for the instant foreclosure is based upon the amount of time and work performed in this matter.

5. The foreclosure action commenced on January 13, 2017 by the Law Office of Pincus Law Group, PLLC. Our office received this file on May 25, 2017. A breakdown of the services rendered by our firm and the law Office of Pincus Law Group, PLLC in connection with this matter is attached hereto as Schedule A. I have estimated the time spent on this matter by the Law Office of Pincus Law Group, PLLC based upon a review of this file and my own knowledge of the foreclosure process.

6. Our fee schedule is based upon each stage of the foreclosure and not hours actually spent. The fee schedule was devised in such a manner so as to accurately reflect the hours our firm would spend on the foreclosure. The total hours expended equals forty-one and one quarter (41.25) hours. At an hourly rate of $250.00/hour for attorneys and $100.00/hour for paralegals, a reasonable estimated fee for these services would be $7,837.50. However, we would request that our fee be set at $5,225.00, which are the legal fees billed to and recoverable by our client in an uncontested foreclosure action. In this case, however, this firm spent an additional 14.50 hours in responding to defendant's Answer (including Court appearances), if required. That additional time amounts to $2,537.50. Accordingly, we request that our total fee be set at $7,762.50, which are the legal fees billed to and recoverable by our client in this action. **Further, no fees, other than these requested herein, have been paid in this matter.**

7. Your affirmant respectfully submits that counsel for plaintiff is entitled to such award of legal fees as requested herein and in the original complaint, said fee being fair and reasonable based upon the facts set forth in this affirmation.

17-063874                     Affirmation                     Page 2 of 4

468

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 94

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

**WHEREFORE,** it is prayed that the Plaintiff be awarded the aforementioned

attorneys' fees herein.

Dated: _____10/23/19_____

_____
Patrick Gregorius, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

SpA.520

469

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 94

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

## SCHEDULE A

| SERVICES RENDERED | PARALEGAL TIME | ATTORNEY TIME |
|---|---|---|
| Received and reviewed client's referral package, verify validity of pre-foreclosure notices, run/review SCRA Searches | 1.50 | 1.00 |
| Open File, Obtain foreclosure Search & copies of necessary documents in chain of title, etc. | 1.50 | 0.00 |
| Draft and send pre complaint notices such as Fair Debt Notices and/or Pre-Foreclosure Solicitation letters | 1.00 | 0.50 |
| Review foreclosure search, bankruptcy search, prior title policy, mortgage, note & Assignments of same; clear title problems; determine necessary parties | 1.00 | 2.00 |
| Various telephone conversations with client, attorneys, interested parties, written correspondence, preparation of quotes, letters and loss mitigation requests, update client and case management systems etc. | 2.00 | 2.00 |
| Review statement of review, prepare Certificate of Merit; update system(s); run searches | 0.50 | 0.50 |
| Prepare Summons, Complaint, notice of pendency of action, letter to title company, and assignment, if necessary | 2.00 | 0.00 |
| Review summons, complaint & notice of pendency; verify facts and figures; sign pleadings | 0.00 | 1.00 |
| Prepare and Review Statement of Review for Certificate of Merit; send to client for signatures | 0.50 | 0.00 |
| Review Signed Statement of Review, Prepare/Review Certificate of Merit, Prepare for and file complaint, etc. with County Clerk | 0.50 | 0.50 |
| Prepare and forward Summons and Complaint to process server for service upon defendants; determine addresses for defendants, etc. | 1.50 | 0.00 |
| Prepare and execute RJI, send to process server for filing | 0.50 | 0.25 |
| Review affidavits of Service upon defendants, notices of appearance & answers; 120 rule; validity of lis pendens; requests for 1354 hearings, etc. | 1.00 | 7.0 |
| Prepare and obtain client affidavit | 1.00 | 0.00 |
| Prepare Order Granting Summary Judgment and Affirmation in Support | 1.50 | 0.00 |
| Review Order and Affirmation; sign Affirmation | 0.00 | 1.00 |
| Prepare proposed Referee's Oath & Report, documentary evidence, and exhibits for Referee and delivered same to Referee | 2.0 | 0.00 |
| Review Referee's Report; compute amount due with client; review history | 0.00 | 0.50 |
| Prepare Judgment of Foreclosure and Sale, affirmation, affidavits, costs & disbursements, etc. | 1.00 | 0.00 |
| Review Judgment, affirmation, costs, etc.; sign affirmation, serve and submit to court | 0.50 | 1.00 |
| Various telephone conversations with client, attorneys, interested parties, written correspondence, court follow up, update client and case management systems, etc. | 3.00 | 1.50 |
| SUBTOTAL | 22.50 | 18.75 |
| SERVICES NECESSARY TO COMPLETE FORECLOSURE: Enter Judgment; Run SCRA and Bankruptcy Searches, order tax search, Coordinate with publication & posting company to Contact Referee to set a Sale date; prepare notice of sale & send to newspaper for publication & posting; send notice to appearing attorneys and owners of property. Compute upset bid, prepare terms of sale, prepare surplus money form, Prepare Sale Certifications, memorandum of sale; various telephone calls from interested parties; attend sale and necessary tax forms; prepare Referee's Report of Sale and Referee's Deed; record Deed and file Referee's Report; send copies to appearing attorneys; obtain final title | 4.00 | 2.00 |
| TOTAL HOURS | 26.50 | 20.75 |

COMPUTATION OF FEES:

| | | |
|---|---|---|
| ATTORNEY TIME: $250.00/hr. | | $5,187.50 |
| PARALEGAL TIME: $100.00/hr. | $2,650.00 | |
| **TOTAL FEES:** | | $7,837.50 |

17-063874                    Affirmation                    Page 4 of 4

SpA.521

470

EXHIBIT R TO GREGORITS AFFIRMATION -
POWER OF ATTORNEY, SWORN TO JUNE 5, 2012 [470 - 473]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 95

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

PREPARED BY AND RECORD AND RETURN TO:

PHH Mortgage Corporation
One Mortgage Way
Mt. Laurel, New Jersey 08054

Attn:  Michael Danlag, Vice President

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Morgan Stanley Private Bank, National Association, a national banking association (the "Owner"), having its principal place of business at 1221 Avenue of the Americas, New York, New York 10020, hereby constitutes and appoints PHH Mortgage Corporation (the "Subservicer"), a New Jersey corporation, having its principal place of business at One Mortgage Way, Mount Laurel, New Jersey 08054, by and through  its Vice Presidents or more senior officers, involved in the performance of activities contemplated by the Subservicing Agreement, its true and lawful Attorney-in-Fact, in its name, place and stead and for its benefit, in connection with all residential mortgage loans serviced by the Subservicer for the Owner pursuant to that certain Flow Subservicing Agreement, dated November 4, 2011 (the "Subservicing Agreement"), between the Owner and the Subservicer, for the purposes of performing all acts and executing all documents in the name of the Owner necessary and incidental to servicing said mortgage loans pursuant to the Subservicing Agreement, including but not limited to:

(1)     Executing such deeds and other documents as are necessary to sell or convey real and personal property securing the Mortgage Loans, including, but not limited to, signing deeds to convey real property acquired through foreclosure of a Mortgage Loan;

(2)     Executing documents and instruments necessary to release any and all mortgages, security instruments, liens, security interests or related documents with respect to the Mortgage Loans;

(3)     Executing documents and instruments necessary to release all obligations under any promissory note or related documents with respect to the Mortgage Loans;

(4)     Executing documents and instruments necessary to sign subordination agreements and consent to easements related to the Mortgage Loans;

(5)     Modifying or re-recording a Mortgage, where the modification or re-recording is solely for the purpose of correcting the Mortgage to conform it to the

SpA.522

471

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 95

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided, that (I) the modification or re-recording does not adversely affect the lien of the Mortgage as insured and (II) otherwise conforms to the provisions of the Subservicing Agreement;

(6)     Modifying or amending escrow agreements established for repairs to the Mortgaged Property or reserves for replacement of personal property;

(7)     Executing such documents as are necessary to assign the Mortgage Loans;

(8)     Endorsing checks and other payment instruments that are payable to the order of the Owner and that have been received by the Subservicer from Mortgagors or any insurer in respect of insurance proceeds related to any Mortgage Loan;

(9)     Filing suit and prosecuting legal actions against all parties liable for amounts due under a Mortgage Loan, including, but not limited to, any deficiency amounts due following foreclosure;

(10)     Filing any claim or taking any action or proceeding in any court of law or equity for the purpose of collecting any and all such moneys due under any mortgage insurance payable on a Mortgage Loan;

(11)     Paying or discharge taxes and liens levied, placed on or threatened against the Mortgage Loans; and

(12)     Taking any other action necessary or appropriate to enable the Subservicer to carry out its servicing and administrative duties under the Subservicing Agreement.

This Limited Power of Attorney shall be effective as of November 4, 2011.

The execution and delivery of this Limited Power of Attorney by the Owner shall not be (or be deemed) a waiver or discharge of any representation, warranty, covenant or agreement of the Owner or the Subservicer in or under the Subservicing Agreement (other than a discharge of the obligations of the Owner under the Subservicing Agreement to execute and deliver this Limited Power of Attorney), and such execution and delivery shall not be (or be deemed) a modification or amendment of any provision of the Subservicing Agreement in any respect.

This Limited Power of Attorney may be amended, modified, supplemented or restated only by a written instrument executed by the Owner and the Subservicer. The terms of this Limited Power of Attorney may be waived only by a written instrument executed by the party waiving compliance.

This Limited Power of Attorney shall inure to the benefit of, and be binding upon, the Owner and the Subservicer and their respective successors and assigns;

SpA.523

472

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 95

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

provided, however, that the Subservicer shall not assign any of the rights under this Limited Power of Attorney (except by merger or other operation of law) without the prior written consent of the Owner, and any such purported assignment without such consent shall be void and of no effect.

Nothing contained herein shall (i) limit in any manner any indemnification provided by the Subservicer to the Owner under the Subservicing Agreement, or (ii) be construed to grant the Subservicer the power to initiate or defend any suit, litigation or proceeding in the name of the Owner except as specifically provided for herein. If the Subservicer receives any notice of suit, litigation or proceeding in the name of the Owner, then the Subservicer shall promptly forward a copy of same to the Owner.

This Limited Power of Attorney shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to any conflicts of law rules that might apply the Laws of any other jurisdiction.

The Subservicer hereby agrees to indemnify and hold the Owner and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Subservicer of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Subservicing Agreement or the earlier resignation or removal of the Owner under the Subservicing Agreement.

Until a properly executed revocation of this Limited Power of Attorney is duly executed and delivered, all parties dealing with said attorney-in-fact (individually or collectively) in connection with the above described matters may fully rely upon the power and authority of said attorney-in-fact to act for and on behalf of the undersigned, and in its name, place and stead, and may accept and rely on all documents and agreements entered into by said attorney-in-fact pursuant to the powers listed herein.

As between the Owner and the Subservicer, this Limited Power of Attorney shall be effective as of the date set forth above and shall remain in full force and effect thereafter until a written notice of revocation hereof shall have been executed by the Owner, or upon termination of the Subservicing Agreement. The expiration or revocation of the period of agency hereunder shall in no way affect the validity of any actions of said attorney-in-fact during said period.

Nothing in this Limited Power of Attorney shall be construed to prevent the Owner from acting on its own behalf as the owner of the Mortgage Loans.

Capitalized terms used but not defined in this Limited Power of Attorney shall have the meaning given to such terms in the Subservicing Agreement.

[signature page follows]

SpA.524

473

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 95

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

IN WITNESS WHEREOF, the undersigned has executed and delivered this Limited Power of Attorney.

Morgan Stanley Private Bank, National Association

By: _Laura E. LoCasa_

Name: Laura E. LoCasa

Title: CAO

State of New York
County of New York )
　　　　　　　　　 ) SS.
　　　　　　　　　 )

On 5th, before me, June 2012, personally appeared Laura E. LoCasa, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her authorized capacity, and that by his or her signature on the instrument the entity, on behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Lisa Martell_
Notary Public in and for said
County and State

LISA MARTELL
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MA6045403
Qualified in Dutchess County
My Commission Expires June 1st, 2015
[SEAL]

SpA.525

474

## EXHIBIT S TO GREGORITS AFFIRMATION - CONSENT TO CHANGE ATTORNEY, DATED MAY 26, 2017 [474 - 476]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 96

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 06/14/2017 04:07 PM

NYSCEF DOC. NO. 21

INDEX NO. 850018/2017

RECEIVED NYSCEF: 06/14/2017

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

---

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

INDEX NO: 850018/2017

**CONSENT TO CHANGE ATTORNEY**

Plaintiff,

-against-

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI; SUSAN K. LANGHOLZ AKA SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ CECCARELLI; BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM; RBS CITIZENS, N.A., et.al.

Defendants.

---

PLEASE TAKE NOTICE THAT SHAPIRO, DICARO & BARAK, LLC, is hereby substituted as attorneys for Plaintiff herein in place and stead of PINCUS LAW GROUP, PLLC. as the date hereof.

PLEASE TAKE FURTHER NOTICE that this consent may be signed in counterparts and that a fully executed facsimile, copy, or copy of PDF image of the Consent to Change Attorney shall have the same force and effect as an original.

Dated: May 26, 2017
Uniondale, New York

PINCUS LAW GROUP, PLLC.

By: _____

Name: George J Weissinger
425 RXR Plaza
Uniondale, New York 11556
(516) 699-8902

1 of 5

SpA.526

475

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 96

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 06/14/2017 04:07 PM

NYSCEF DOC. NO. 21

INDEX NO. 850018/2017

RECEIVED NYSCEF: 06/14/2017

dated: _____June 2__, 2017

BPH MORTGAGE CORPORATION

By: _____
    Jessica Rosenberg

Title: _____
       Assistant Vice President

Return Address

Pincus Law Group, PLLC
425 RXR Plaza
Uniondale, New York 11556

STATE OF    New Jersey    )
COUNTY OF   Burlington    )

On the **2nd** day of **June**, 20**17**, before me the undersigned, , personally appeared _____Jessica Rosenberg_____, personally known to be or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within the instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
NOTARY PUBLIC

Index No. 850018/2017
Consent to change Attorney

Sharonne Davis
Notary Public
New Jersey
My Commission Expires 01-09-2022
No. 50091917

2 of 5

SpA.527

476

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 96

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 06/14/2017 04:07 PM

NYSCEF DOC. NO. 21

INDEX NO. 850018/2017

RECEIVED NYSCEF: 06/14/2017

Index No.:850018/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION,

Plaintiff

Against

JOSEPH J. CECCARELLI, III AKA JOSEPH J. CECCARELLI; SUSAN K. LANGHOLZ AKA SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ CECCARELLI; BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM; RBS CITIZENS, N.A., et.al.,

Defendants

CONSENT TO CHANGE ATTORNEY

PINCUS LAW GROUP, PLLC.
*Attorneys for Plaintiff*
425 RXR Plaza
Uniondale, New York 11556
Phone (516) 699-8902

3 of 5

477

## EXHIBIT T TO GREGORITS AFFIRMATION - (I) NOTICE OF APPEARANCE, DATED MARCH 29, 2018 [477 - 478]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

FILED: NEW YORK COUNTY CLERK 04/02/2018 11:37 AM

NYSCEF DOC. NO. 43

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/02/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------X    Index No.: 850018/2017

MORTGAGE STANLEY PRIVATE BANK, NATIONAL
ASSOCIATION

                         Plaintiff,

-against-

                                    NOTICE OF APPEARANCE

JOSPEH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI; SUSAN K. LANGHOLZ AKA SUSAN
L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM; RBS CITIZENS, N.A.,
and JOHN DOE AND JANE DOE #1, through
#(7) names being fictitious and unknown
to the Plaintiff, the persons or parties
intended being the tenants, occupants,
persons or parties, if any, having or
claiming an interest in or lien upon the
mortgaged premises described in the
complaint,

                         Defendants.

------------------------------------------X

S I R S :

          PLEASE TAKE NOTICE, that defendant CITIZENS BANK, N.A.

S/H/A RBS CITIZENS, N.A. hereby appear(s) in the above-entitled

action, that the undersigned has been retained as attorney for said

defendant(s) and said defendant(s) hereby demand(s) service of the

following:

      1.    Notice of application and Notice of Motion for Judgment
           and Proposed Judgment of Foreclosure and Sale with
           Referee's Oath and Report and all other documents and
           exhibits submitted in connection therewith.
      2.    Notice of Entry of Judgment of Foreclosure and Sale with

1 of 4

SpA.529

478

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/02/2018 11:37 AM

NYSCEF DOC. NO. 43

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/02/2018

copy of entered Judgment.

3. Notice of Sale to be served at least thirty (30) days before the scheduled date of sale.

4. Referee's Report of Sale.

5. Notice of any and all proceedings to discontinue action.

Dated:    Syosset, New York
          March 29, 2018

Peter T. Roach and Associates, P.C.

_____
BY:   JOSHUA SHERER
Attorneys for Defendant
CITIZENS BANK, N.A. S/H/A RBS CITIZENS, N.A.
6901 Jericho Turnpike, Suite 240
Syosset, New York 11753
516-938-3100

TO:

PINCUS LAW GROUP, PLLC
GEORGE J. WESSINGER, ESQ.
ATTORNEYS FOR PLAINTIFF
425 RXR PLAZA
UNIONDALE, NEW YORK 11556

| 479 |

### EXHIBIT T TO GREGORITS AFFIRMATION -
### (II) NOTICE OF APPEARANCE AND WAIVER
### IN FORECLOSURE, DATED JANUARY 27, 2017 [479 - 480]

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 01/27/2017 05:56 PM
NYSCEF DOC. NO. 7

INDEX NO. 850018/2017
RECEIVED NYSCEF: 01/27/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------x

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

                                 Plaintiff,

             - against -

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI; SUSAN K. LANGHOLZ AKA SUSAN
L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM, et. al.,

                             Defendants.

-------------------------------------------------------------x

Index No. 850018/2017

**NOTICE OF APPEARANCE
AND WAIVER IN
FORECLOSURE**

Mortgaged Premises:
200 East 32nd Street
Unit 28B
New York, NY 10016

S I R S/MADAMS:

    **PLEASE TAKE NOTICE,** that defendant, BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM, hereby appears in this action and that the undersigned, Brill & Meisel, has been retained as attorneys for said defendant and on behalf of said defendant waives service of all papers in this action, except amended complaint, notice of discontinuance of action, proposed judgment, motion for default or summary judgment, notice of sale, order of reference, Referee's report of sale and notice of proceedings to obtain surplus monies, which may be served on the undersigned at the address stated below.

1 of 2

SpA.531

480

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 01/27/2017 05:56 PM

NYSCEF DOC. NO. 7

INDEX NO. 850018/2017

RECEIVED NYSCEF: 01/27/2017

Dated:     January 27, 2017
           New York, New York

                              Yours, etc.

                              BRILL & MEISEL
                              Attorneys for Defendant
                              Board of Managers of The Future
                              Condominium

                              By: _____
                                   Mark N. Axinn
                              845 Third Avenue, 16th Floor
                              New York, New York 10022
                              (212) 753-5599

TO:    PINCUS LAW GROUP, PLLC
       Attorneys for Plaintiff
       425 RXR Plaza
       Uniondale, New York 11556
       (516) 699-8902

       JOSEPH CECCARELLI, III
       Defendant
       200 East 32nd Street, Apt. 28B
       New York, New York 10016

              PLEASE SERVE ALL PAPERS UPON:

                   BRILL & MEISEL
              845 Third Avenue, 16th Floor
               New York, New York 10022
               Attn: Mark N. Axinn, Esq.

G:\Water\Ceccarelli Foreclosure,NYC-of-Appear-Waive Foreclosure -1 27 17.doc

2 of 2

SpA.532

481

EXHIBIT T TO GREGORITS AFFIRMATION -
(III) DEFENDANTS-MORTGAGORS' AMENDED ANSWER,
DATED APRIL 10, 2017
(REPRODUCED HEREIN AT PP. 269-275)

SpA.533

482

# EXHIBIT T TO GREGORITS AFFIRMATION -
## (IV) DEFENDANTS-MORTGAGORS' NOTICE OF DISCOVERY
## AND INSPECTION, DATED MARCH 30, 2017 [482 - 486]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM
NYSCEF DOC. NO. 16

INDEX NO. 850018/2017
RECEIVED NYSCEF: 04/05/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------X

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

                        Plaintiff,

   -against-

Index #: 2017-850018

NOTICE OF DISCOVERY
AND INSPECTION

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI ; SUSAN K. LANGHOLZ AKA
SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI ; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM ; RBS CITIZENS, N.A.,
and JOHN DOE AND JANE DOE #1 through #7, the
last seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the
tenants, occupants, persons or parties, if any, having or
claiming an interest in or lien upon the mortgaged
premises described in the Complaint,

                     Defendants.
------------------------------------------X

       You are required to provide the following materials pursuant to the provisions of the CPLR and the Rules of this Court, returnable at the offices of Steven W. Stutman, Esq., at 10AM on May 1, 2017, as per the enumerated sub-divisions below:

       (A) You are required to produce for inspection, reproduction and/or copying the following papers as and for any alleged mortgage loan made to the Defendant, Joseph J. Ceccarelli, III;

   Initial Loan Application and Final Loan Application (Forms 1003)

   Executed Notice of Right to Cancel (if refinance)

   Copies of Executed Mortgage/Deed of Trust and all Riders (reflecting of copies of original executed all parties)

   A True and Correct Copy of the Original Mortgage Note and All Addendums/Riders

   Initial and Final Truth-in-Lending Statement

   Initial Good Faith Estimates

   True and correct copy (ies) of any assignments/allonges of the Original Mortgage Note and Mortgage

   Any all Federal & state disclosures that required a borrower(s) signature

   Final Closing Statements (HUD-1)

1 of 5

SpA.534

483

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM

NYSCEF DOC. NO. 16

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2017

True and Correct Copy of the signed Appraisal

Credit Report used to qualify for loan

Grant/Warranty Deed(s)

Any and all income documents provided by borrower to corroborate their income

Copy of all title commitments and closing documents, include the PMI-Title Gap Insurance policy if any

Copy of Loan Payment History – This must include all payments made and all fees incurred along with all legends and codes used in respect to record keeping and accounting regarding accounts to subject loan by lender or servicing agent

A copy of proposed Escrow amounts and actual Escrow amounts.

List of Escrow Credits and Disbursements and a reason for every entry and the date each such entry was made

Certified Copy of Original Assignment of Mortgage and any subsequent Assignments of Mortgage

Location of Original Mortgage Note and original Executed Mortgage

(B) Names and addresses of any co-applicants.

(C) Please also supply the following information as required under 15 USC 1641(f)(2) requires that *"Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of this obligation."*

Any and all Trust Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying note and mortgage

Any Pooling Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying note and mortgage

Any Servicing Agreements between the closing lender and/or any other lender or funding source and party or parties who could claim an interest instant in the subject loan and underlying note and mortgage

Master Purchasing Agreements

Any Special Purpose Vehicle or SPE Agreements

Copies of the Executed Pooling and Servicing Agreements Dated for Asset Backed Pass-Through Certificate Series

The exact name of the Asset Backed Security Trust that this mortgage was sold into

The name of the Trustee of the asset-backed mortgage Security trust which bought this mortgage

SpA.535

484

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM

NYSCEF DOC. NO. 16

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2017

(D) As to the Demand for "Party Statements":

Pursuant to CPLR 3101(e) and 3120, you are required to reproduce any and all statements in the possession, custody or control of any party you represent in this action and/or on whose behalf statements were taken from Defendants whom we represent, or from any agent, servant or employee of Plaintiff, whether the statements were oral, written, or electronically recorded, irrespective of whether or not the statements have been transcribed or reduced to written or typed form.

(E) As to the Demand for Expert Witness Disclosure:

Pursuant to CPLR 3101(d)(1) et seq., a statement disclosing in reasonable detail the following:

(1) The identity of each expert (name and address) whom each Plaintiff intends to call at the trial of this action;

(2) The subject matter on which each expert is expected to testify;

(3) The substance of the facts and opinions on which each expert is expected to testify;

(4) A summary of the grounds of each expert's opinion; and

(5) The qualifications of each expert witness whom Plaintiff intend(s) to call at the trial of this action.

(F) As to the Demand for Addresses:

The Plaintiff is required to furnish a verified statement setting forth the post office address and/or residence of each and every party who has held or had assigned to it, the original note allegedly made by the Defendant, Joseph J. Ceccarelli, III, to the Plaintiff or its predecessor in interest.

Dated: Melville, NY
March 30, 2017

Yours, etc.,
Steven W. Stutman
Attorney for Defendant
Joseph J. Ceccarelli, III
535 Broad Hollow Road
Suite B-52
Melville, NY 11747

To:     PINCUS LAW GROUP, PLLC
        Attorneys for Plaintiff
        425 RXR Plaza
        Uniondale, NY 11556

3 of 5

SpA.536

485

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM

NYSCEF DOC. NO. 16

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2017

## AFFIDAVIT OF SERVICE

Allison Cammarasana, being duly sworn deposes and says:

1. Your deponent is over 18 years of age and works at 535 Broad Hollow Road, Melville, New York 11747

2. On April 5, 2017, deponent served by Mail a true copy of the Notice of Discovery and Inspection on:

PINCUS LAW GROUP, PLLC
Attorneys for Plaintiff
425 RXR Plaza
Uniondale, NY 11556

by depositing a true copy of the Notice of Discovery and Inspection into a postpaid wrapper first class mail and addressed as set forth above, being deposited in an official depository under the official care and custody of the United States Postal Service within the State of New York at Melville, New York 11747.

Allison Cammarasana

Sworn to before me this
5ᴴ day of April, 2017

Notary Public
My commission expires on:

STEVEN W STUTMAN
Notary Public, State of New York
No. 02ST4627608
Qualified Nassau County
Commission Expires 2/28/20

4 of 5

SpA.537

486

**FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM**
NYSCEF DOC. NO. 97

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM
NYSCEF DOC. NO. 16

INDEX NO. 850018/2017
RECEIVED NYSCEF: 04/05/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------X    Index #: 2017-850018

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

                                        Plaintiff,

-against-

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI ; SUSAN K. LANGHOLZ AKA
SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI ; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM ; RBS CITIZENS, N.A.,
and JOHN DOE AND JANE DOE #1 through #7, the
last seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the
tenants, occupants, persons or parties, if any, having or
claiming an interest in or lien upon the mortgaged
premises described in the Complaint,

                                        Defendants.

-----------------------------------------------X

### NOTICE OF DISCOVERY AND INSPECTION

STEVEN W. STUTMAN, ESQ.
ATTORNEY FOR DEFENDANT
JOSEPH J. CECCARELLI, III
535 BROAD HOLLOW ROAD
SUITE B-52
MELVILLE, NEW YORK 11747
(631) 393-6001

Pursuant 22NYCRR130-1.1, the undersigned, an attorney, admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: March 30, 2017
       Melville, NY

Signature: _____
           Steven W. Stutman, Esq.

5 of 5

SpA.538

487

EXHIBIT T TO GREGORITS AFFIRMATION -
(V) DEFENDANTS-MORTGAGORS' NOTICE TO
TAKE DEPOSITION, DATED APRIL 5, 2017 [487 - 489]

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM

NYSCEF DOC. NO. 17

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

——————————————————X     Index #: 2017-850018

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

                                    Plaintiff,

  -against-

                                                          NOTICE TO TAKE
                                                          DEPOSITION

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI ; SUSAN K. LANGHOLZ AKA
SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI ; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM ; RBS CITIZENS, N.A.,
and JOHN DOE AND JANE DOE #1 through #7, the
last seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the
tenants, occupants, persons or parties, if any, having or
claiming an interest in or lien upon the mortgaged
premises described in the Complaint,

                                    Defendants.

——————————————————X

SIR:

    PLEASE TAKE NOTICE, that pursuant to Article 31 of the Civil Practice Law and
Rules the testimony, upon oral examination, plaintiff as an adverse party will be taken before a
Notary Public who is not an attorney, or employee of an attorney, for any party or prospective
party herein at the office of STEVEN W. STUTMAN, ESQ., 535 Broad Hollow Road, Suite B-
52, Melville, NY 11747 on May 1, 2017, 10:00 am of that day with respect to evidence material
and necessary in the -prosecution-defense-of this action; and they should produce the discovery
demanded in the Defendants' Notice for Discovery and Inspection dated March 30, 2017.

                                        Steven W. Stutman
                                        Attorney for Defendant
                                        Joseph J. Ceccarelli, III
                                        535 Broad Hollow Road
                                        Suite B-52
                                        Melville, NY 11747

To:    PINCUS LAW GROUP, PLLC
       Attorneys for Plaintiff
       425 RXR Plaza
       Uniondale, NY 11556

1 of 3

SpA.539

488

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM

NYSCEF DOC. NO. 17

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2017

## AFFIDAVIT OF SERVICE

Allison Cammarasana, being duly sworn deposes and says:

1. Your deponent is over 18 years of age and works at 535 Broad Hollow Road, Melville, New York 11747

2. On April 5, 2017, deponent served by Mail a true copy of the Notice to Take Deposition on:

PINCUS LAW GROUP, PLLC
Attorneys for Plaintiff
425 RXR Plaza
Uniondale, NY 11556

by depositing a true copy of the Notice to Take Deposition into a postpaid wrapper first class mail and addressed as set forth above, being deposited in an official depository under the official care and custody of the United States Postal Service within the State of New York at Melville, New York 11747.

Allison Cammarasana

Sworn to before me this
5TH day of April, 2017

Notary Public
My commission expires on:

STEVEN W STUTMAN
Notary Public, State of New York
No. 02ST6027808
Qualified Nassau County
Commission Expires

2 of 3

SpA.540

489

FILED: NEW YORK COUNTY CLERK 10/23/2019 04:23 PM

NYSCEF DOC. NO. 97

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

FILED: NEW YORK COUNTY CLERK 04/05/2017 03:57 PM

NYSCEF DOC. NO. 17

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------X   Index #: 2017-850018

MORTGAGE STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION,

Plaintiff,

-against-

JOSEPH J. CECCARELLI, III AKA JOSEPH J.
CECCARELLI; SUSAN K. LANGHOLZ AKA
SUSAN L. CECCARELLI AKA SUSAN LANGHOLZ
CECCARELLI; BOARD OF MANAGERS OF THE
FUTURE CONDOMINIUM; RBS CITIZENS, N.A.,
and JOHN DOE AND JANE DOE #1 through #7, the
last seven (7) names being fictitious and unknown to the
Plaintiff, the persons or parties intended being the
tenants, occupants, persons or parties, if any, having or
claiming an interest in or lien upon the mortgaged
premises described in the Complaint,

Defendants.

------------------------------------------------X

**NOTICE TO TAKE DEPOSITION**

STEVEN W. STUTMAN, ESQ.
ATTORNEY FOR DEFENDANT
JOSEPH J. CECCARELLI, III
535 BROAD HOLLOW ROAD
SUITE B-52
MELVILLE, NEW YORK 11747
(631) 393-6001

*Pursuant 22NYCRR130-1.1, the undersigned, an attorney, admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

Dated: March 30, 2017
Melville, NY

Signature: _____
Steven W. Stutman, Esq.

SpA.541

490

EXHIBIT T TO GREGORITS AFFIRMATION -
(VI) REPLY, DATED JUNE 30, 2017
(REPRODUCED HEREIN AT PP. 276-279)

491

## NOTICE OF CROSS-MOTION (MS NO.2), DATED NOVEMBER 19, 2019 [491 - 494]

FILED: NEW YORK COUNTY CLERK 11/22/2019 08:47 AM

NYSCEF DOC. NO. 111

INDEX NO. 850018/2017

RECEIVED NYSCEF: 11/22/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)

----------------------------------------------------------------X

Mortgage Stanley Private Bank, National
Association,

               Plaintiff,

-against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

               Defendants.

----------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)

Motion Sequence No. 2
OralArgument Requested

**NOTICE OF CROSS-MOTION BY DEFENDANTS-MORTGAGORS PURSUANT TO CPLR 2201. 2004 AND 2215 FOR STAY PENDING SUBMISSION OF MOTION PURSUANT TO LEAVE GRANTED BY COURT BEFORE NEXT SCHEDULED CONFERENCE**

1

1 of 4

SpA.543

492

FILED: NEW YORK COUNTY CLERK 11/22/2019 08:47 AM          INDEX NO. 850018/2017

NYSCEF DOC. NO. 111                                       RECEIVED NYSCEF: 11/22/2019

PLEASE TAKE NOTICE that upon the accompanying: 1) Notice of Rejection of Plaintiff's Notice of Motion and Other Papers for Judgment, dated October 23, 2019 (NYSCEF no. 104) (Exhibit 1, attached; 2) Defendants-Mortgagors' Affirmation of Non-Compliance with Order of Court Directing Document Production for Reference, dated October 23, 2019, Exhibit 2, attached (NYSCEF no. 98) with Supporting Exhibits A through D, collectively attached as Exhibit 3 (NYSCEF nos. 99-103; and 3) Order of the Court, entered October 24, 2019 granting leave to Defendants-Mortgagors before the next scheduled conference before the Court, attached as Exhibit 4 (NYSCEF no. 105); Defendants-Mortgagors will cross-move pursuant to CPLR 2201, 2204, and 2215 on November 22, 2019 for a stay of Plaintiff-Mortgagee's pending Motion for Final Judgment pending a full and fair opportunity for Defendants-Mortgagors to be heard, and bring on its own motion for affirmative relief before the next scheduled conference before the Court (NYSCEF no. 105); for determination and consolidation with Plaintiff's pending Motion under MS no. 2, together with such other, further and different relief as is just and proper.

[The Balance of This Page is Intentionally Left Blank]

2

493

FILED: NEW YORK COUNTY CLERK 11/22/2019 08:47 AM

NYSCEF DOC. NO. 111

INDEX NO. 850018/2017

RECEIVED NYSCEF: 11/22/2019

Dated: New York, New York
November 19, 2019

Ceccarelli Law Firm PLLC

By: _____
Joseph J. Ceccarelli
48 Wall Street, 11th Floor
New York, New York10005
Tel. (212) 889-3675

*Attorneys and Co-Counsel for*
*Defendants-Mortgagors*
*Susan L. Ceccarelli and*
*Joseph J. Ceccarelli*

To: STEVEN W. STUTMAN, PLLC
*Attorneys and Co-Counsel for*
*Defendants-Mortgagors*
*Joseph J. Ceccarelli and*
*Susan L.Ceccarelli*
533 Broad Hollow Road
Suite B-52
Melville, New York 11747
(631) 393-6001

John A. DiCaro
SHAPIRO, DICARO & BARAK, LLP
*Attorneys for Plaintiff*
175 Mile Crossing Boulevard
Rochester, New York 14625
(516) 247-9000

3

SpA.545

494

FILED: NEW YORK COUNTY CLERK 11/22/2019 08:47 AM

NYSCEF DOC. NO. 111

INDEX NO. 850018/2017

RECEIVED NYSCEF: 11/22/2019

Joshua Alan Sherer
ROACH & LIN, P.C.
*Attorneys for Defendant*
*Citizens Bank, N.A. S/H/A*
*RBS Citizens, N.A.*
6901 Jericho Turnpike, Suite 240
Syosset, New York 11753
(516) 938-3100

Mark A. Axinn
BRILL & MEISEL
*Attorneys for Defendant*
*Board of Managers of*
*The Future Condominium*
845 Third Avenue, 16th floor
New York, New York 10022
(212) 753-5599

4

SpA.546

495

EXHIBIT 1 TO NOTICE -
NOTICE OF REJECTION OF PLAINTIFF'S MS NO. 2 BASED ON
VIOLATION OF COURT ORDER AND MISLEADING
STATEMENTS TO REFEREE, DATED OCTOBER 23, 2019
(REPRODUCED HEREIN AT PP. 22-25)

EXHIBIT 2 TO NOTICE -
AFFIRMATION OF NON-COMPLIANCE WITH COURT ORDER DIRECTING DOCUMENT
PRODUCTION FOR REFERENCE, DATED OCTOBER 23, 2019
(REPRODUCED HEREIN AT PP. 26-31)

SpA.547

496

**EXHIBIT 3 TO NOTICE -**
**LEFT BLANK**
**(OMITTED IN ORIGINAL FILED DOCUMENT)**

497

EXHIBIT A TO AFFIRMATION -
ORDER (BLUTH, J.), DATED JUNE 27, 2019, DIRECTING PLAINTIFF
TO COMPLY WITH DEFENDANTS-MORTGAGORS' DOCUMENT
PRODUCTION UNDER PENDING REFERENCE
(REPRODUCED HEREIN PP. 40-43)

EXHIBIT B TO AFFIRMATION -
DEFENDANTS-MORTGAGORS' REQUEST FOR PLAINTIFF'S
SUPPORTING REFERENCE DOCUMENTS AND OTHER PROOFS,
AND TO PARTICIPATE IN REFERENCE HEARING PURSUANT TO
RPAPL 1321 AND CPLR 4313, DATED JUNE 26, 2019
(REPRODUCED HEREIN AT PP. 44-47)

SpA.549

498

## EXHIBIT C TO AFFIRMATION -
## FIRST LETTER, DATED JUNE 28, 2019

**FILED: NEW YORK COUNTY CLERK 10/23/2019 10:12 PM**
NYSCEF DOC. NO. 101

INDEX NO. 850018/2017

RECEIVED NYSCEF: 10/23/2019

Law Offices of

## Shapiro, DiCaro & Barak, LLC

175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
FAX (585) 247-7380

June 28, 2019

Arthur Greig, Esq.
Referee
401 Broadway; Suite 1902
New York, NY 10013

RE:     Mortgage Stanley Private Bank, National Association vs. Joseph J. Ceccarelli and Susan
        L. Ceccarelli, et al.
        Index No.: 850018/2017
        Our File Number: 17-063874

Dear Mr. Greig:

We are in receipt of the objections to computations received from the defendant in this matter.
We have requested additional proofs and documentation from our client in order to respond to
those objections and will forward the additional documentation to your office and to the
defendant's counsel as soon as it is received.

Thank you for your assistance in this matter. If you have any questions, please do not hesitate to
contact the undersigned.

Very truly yours,

Mercedece Love
FC Paralegal & Team Lead, Affidavits
mlove@logs.com

cc:     Joseph Ceccarelli, Esq.
        CECCARELLI LAW FIRM PLLC
        Attorneys and Co-Counsel for Defendants Joseph J. Ceccarelli and Susan L. Ceccarelli
        48 Wall Street, 11th floor
        New York, New York 10005

        Steven W. Stutman, Esq.
        STEVEN W. STUTMAN, PLLC
        Attorney & Co-Counsel for Defendants Joseph Ceccarelli and Susan Ceccarelli
        535 Broad Hollow Road Suite B-52
        Melville, NY 11747

ATTORNEYS AT LAW

LONG ISLAND OFFICE    One Huntington Quadrangle, Suite 3N05    Melville, NY 11747    PHONE (631) 844-9611    FAX (631) 844-9525

SpA.550

499

## EXHIBIT D TO AFFIRMATION -
## SECOND LETTER, DATED SEPTEMBER 27, 2019

**FILED: NEW YORK COUNTY CLERK 10/23/2019 10:12 PM**
NYSCEF DOC. NO. 102

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

Law Offices of

### Shapiro, DiCaro & Barak, LLC

175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
FAX (585) 247-7380

September 27, 2019

Arthur Greig, Esq.
Referee
401 Broadway; Suite 1902
New York, NY 10013

RE:   Mortgage Stanley Private Bank, National Association vs. Joseph J. Ceccarelli, III aka
Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A.
Index No.: 850018/2017
Our File Number: 17-063874

Dear Mr. Greig:

Please see the enclosed attorney affirmation with exhibits in response to your inquiry regarding
this matter. After reviewing all documentation provided, please advise if you will be scheduling
a hearing in connection with the above-referenced matter, so that we may plan accordingly. If
you find that a computation hearing is not necessary, we ask that you please proceed with
execution of the Referee's Oath and Report at your earliest convenience, as **we have a court
deadline of October 22, 2019 to submit our Judgment for Sale to Court**.

Should you have any further questions, please don't hesitate to contact the undersigned. Thank
you for your attention in this urgent manner.

Very truly yours,

Mercedece Love
FC Paralegal & Team Lead, Affidavits
mlove@logs.com

cc:   Steven W. Stutman, Esq.
Attorneys and Co-Counsel for Defendants Joseph Ceccarelli and Susan Ceccarelli
535 Broad Hollow Road; Suite B-52
Melville, NY 11747

Ceccarelli Law Firm, PLLC
Attorneys and Co-Counsel for Defendants Joseph Ceccarelli and Susan Ceccarelli
48 Wall Street; 11th Floor
New York, NY 10005

ATTORNEYS AT LAW

Bridget M. Dehmler, Associate Attorney   Direct (585) 770-2137   bdehmler@logs.com

LONG ISLAND OFFICE   One Huntington Quadrangle, Suite 3N05   Melville, NY 11747   PHONE (631) 844-9611   FAX (631) 844-9525

SpA.551

500

# EXHIBIT E TO AFFIRMATION -
# THIRD LETTER, DATED OCTOBER 4, 2019

**FILED: NEW YORK COUNTY CLERK 10/23/2019 10:12 PM**
NYSCEF DOC. NO. 103

INDEX NO. 850018/2017
RECEIVED NYSCEF: 10/23/2019

Law Offices of

## Shapiro, DiCaro & Barak, LLC

175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
FAX (585) 247-7380

October 4, 2019

Arthur Greig, Esq.
Referee
401 Broadway; Suite 1902
New York, NY 10013

RE:     Mortgage Stanley Private Bank, National Association vs. Joseph J. Ceccarelli and Susan L.
        Ceccarelli, et al.
        Index No.: 850018/2017
        Our File No.: 17-063874

Dear Sir/Madam

An Attorney's Affirmation with supporting documentation was sent to your address, and the address of
Defendants' Counsel on September 27, 2019 for review. Please advise if you will be scheduling a
computation hearing regarding this matter. If a hearing is not required, we ask that you please proceed
with execution of the Referee's Oath and Report at your earliest convenience, as <u>our Judgment for Sale
was due to Court on September 10, 2019</u>.

As you are aware, we are bound to meet the deadlines and standards as expected by our client. We've
now missed our court deadline, and the Court may now be tolling interest. In order to expedite the return
of the documents, please contact our office as soon as possible if you have any questions or need
additional information.

If you have not received a copy of the Referee's Oath and Report, please notify our office and we will
send one to your attention immediately.  Your cooperation in this matter is appreciated.

Very truly yours,

Mercedece Love
FC Paralegal & Team Lead, Affidavits
mlove@logs.com

cc:
Joseph Ceccarelli, Esq.
CECCARELLI LAW FIRM PLLC
Attorneys and Co-Counsel for Defendants Joseph J. Ceccarelli and Susan L. Ceccarelli
48 Wall Street, 11th floor
New York, New York 10005

Steven W. Stutman, Esq.
STEVEN W. STUTMAN, PLLC
Attorney & Co-Counsel for Defendants Joseph Ceccarelli and Susan Ceccarelli
535 Broad Hollow Road Suite B-52 Melville, NY 11747

ATTORNEYS AT LAW
———

LONG ISLAND OFFICE   One Huntington Quadrangle, Suite 3N05   Melville, NY 11747   PHONE (631) 844-9611   FAX (631) 844-9525

SpA.552

501

**EXHIBIT 4 TO NOTICE -
ORDER OF COURT GRANTING LEAVE TO DEFENDANTS TO FILE
MOTION FOR SUMMARY JUDGMENT BEFORE NEXT SCHEDULED
COURT CONFERENCE, DATED OCTOBER 24, 2019
(REPRODUCED HEREIN AT P. 21)**

502

## NOTICE OF MOTION FOR SUMMARY JUDGMENT AND RELATED RELIEF (MS NO. 3), DATED FEBRUARY 24, 2020 [502 - 504]

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 124

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
-----------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)

Motion Sequence No. 3
Oral Argument Requested

Mortgage Stanley Private Bank, National
Association,

Plaintiff,

**NOTICE OF MOTION BY
DEFENDANTS-
MORTGAGORS
PURSUANT TO
CPLR §§ 3212, 3211(a) (7),
3126, 2004, 2201 FOR
SUMMARY JUDGMENT
AND RELATED RELIEF**

-against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

Defendants.
-----------------------------------------------------------X

PLEASE TAKE NOTICE that upon the attached Affirmation of Joseph J. Ceccarelli, dated February 24, 2020, the Affidavit of Michael A. Pellegrino sworn to on the 20th day of February 2020, together with Exhibits 1 through 13, and Memorandum of Law in Support, Defendants-Mortgagors Joseph J. Ceccarelli and Susan L. Ceccarelli will move at the Courthouse located at 60 Centre Street, New York, New York, Motion Support Courtroom, Room 130, on March 11, 2020 at 9:30 a.m., or as soon thereafter as counsel may be heard, for an order pursuant to CPLR § § 3212, 3211 (a) (7), 3126, 2004, and 2201: 1) granting summary

1

SpA.554

503

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 124

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

judgment on Defendants-Mortgagors' Second Affirmative Defense for lack of standing, consolidating the present MS no. 3 with Plaintiff's pending motion for judgment of foreclosure and Defendants-Mortgagors' cross-motion (MS no. 2) for disposition, and upon consolidation; 2) denying MS no. 2, and dismissing this action in equity, together with such other, further and different relief as is just and proper.

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR 2214(b), answering affidavits, and any notice of cross-motion with supporting papers, if any, shall be served at least seven days before the return date.

Dated: New York, New York
February 24, 2020

Ceccarelli Law Firm PLLC

By: _____
Joseph J. Ceccarelli
48 Wall Street, 11th Floor
New York, New York 10005
(212) 889-3675

*Attorneys for Defendants
Mortgagors Joseph J.
Ceccarelli and Susan L.
Ceccarelli*

To:     STEVEN W. STUTMAN, PLLC
        *Attorneys and Co-Counsel for
        Defendants-Mortgagors
        Joseph J. Ceccarelli and
        Susan L. Ceccarelli*
        533 Broad Hollow Road
        Suite B-52
        Melville, New York 11747
        (631) 393-6001

2

SpA.555

504

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 124

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

John A. DiCaro
SHAPIRO, DICARO & BARAK, LLP
*Attorneys for Plaintiff*
175 Mile Crossing Boulevard
Rochester, New York 14625
(516) 247-9000

Joshua Alan Sherer
ROACH & LIN, P.C.
*Attorneys for Defendant*
*Citizens Bank, N.A. S/H/A*
*RBS Citizens, N.A.*
6901 Jericho Turnpike, Suite 240
Syosset, New York 11753
(516) 938-3100

Mark A. Axinn
BRILL & MEISEL
*Attorneys for Defendant*
*Board of Managers of*
*The Future Condominium*
845 Third Avenue, 16th floor
New York, New York 10022
(212) 753-5599

3

SpA.556

505

## AFFIRMATION IN SUPPORT (1 OF 2) OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RELATED RELIEF, DATED FEBRUARY 24, 2020 [505 - 518]

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
-----------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)
Motion Sequence no. 3

Mortgage Stanley Private Bank, National Association,

             Plaintiff,

                                  **DEFENDANTS-MORTGAGORS' AFFIRMATION IN SUPPORT OF SUMMARY JUDGMENT AND FOR RELATED RELIEF (1 of 2)**

       -against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

             Defendants.

-----------------------------------------------------------------X

Joseph J. Ceccarelli, affirms the following to be true pursuant to CPLR 2106:

1. I am a party Defendant-mortgagor in this action in equity to foreclose on my condominium apartment 28B, located at 200 East 32nd Street, New York, New York ("Apt. 28B"). Having resided in Apt. 28B with my wife, Susan L. Ceccarelli who is a named co-defendant mortgagor in this action since 2000 (hereinafter the "Ceccarellis" or "Mortgagors"), where we are raising our thirteen-year old son, Giacomo. I am fully familiar with the facts and circumstances set forth below.

1

506

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

2. I am also an attorney duly admitted to practice before the Courts of the State of New York, and managing member of Ceccarelli Law Firm PLLC, ("CFL) attorneys for Mortgagors in this action. I recently reconstituted CFL after recovery from a long illness and am able to practice full time again.

3. This Affirmation is submitted in support of the Ceccarellis' Motion for Summary Judgment on their Second Affirmative Defense for an order pursuant to CPLR §§ 3212, 3211 (a) (7), 3126, 2004, and 2201: 1) granting summary judgment on Defendants-Mortgagors' Second Affirmative Defense for lack of standing, consolidating the present MS no. 3 with Plaintiff's pending motion for judgment of foreclosure, and Mortgagors' cross-motion (MS no. 2) for disposition, and upon consolidation; 2) denying MS no. 2, and dismissing this action in equity, together with such other, further and different relief as is just and proper.

**A. PLAINTIFF DOES NOT COMPLETE PRE-APPROVED WORKOUT AGREMENT AND INSTEAD SELLS THE CECCARELLIS' NOTE FOR THEIR APARTMENT TO HEDGE FUND, PRIVATE EQUITY OR OTHER INVESTORS PURSUANT TO SECTION 20 OF THE MORTGAGE BEFORE THE COMMENCEMENT OF THE PRESENT ACTION IN EQUITY**

4. As more fully set forth below, and in the accompanying Affidavit of Michael A. Pellegrino:

5. Plaintiff Mortgage Stanley Private Bank, National Association (at times, "Morgan Stanley" or "MS") is the assignee and successor-in-interest to Merrill Lynch Credit Corp. beginning in 2012, of the mortgage and re-financing for Apt. 28B, which date back to February 2000 until the sale of their Note, dated January 30, 2015 (the "Note") to a third-party private equity, hedge fund or other investors no later than September 2016. This action in equity was commenced by the filing

2

SpA.558

507

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

of Plaintiff's Complaint *five months later* in January 2017 (Complaint, NYSCEF no. 1).

6. Pending my full recovery from medical challenges which forced me to close my prior law firm, Ceccarelli Weprin PLLC , I called the financial advisor at Morgan Stanley for our mortgage account for Apt. 28B, Michael A. Pellegrino, and asked for an appointment to discuss a suitable workout agreement based on my own and my wife Susan's otherwise strong work and payment history and financials dating back to 1980, including the Great Recession and last three economic recessions before then.

7. After meeting at our home, Apt. 28B, and discussing and reviewing pertinent financial documents regarding our then current financial condition in June and July 2016 with Mr. Pellegrino, he said that he saw no reason why we would not qualify for temporary forbearance and interest only workout agreement. This he explained is consistent with the policy and practice of Morgan Stanley Home loan department ("MS Home Loans") approving other similarly situated MS clients whose families were experiencing temporary medical or financial hardship, and based on the re-financings we had fully qualified for in the past. He said he would help us as necessary to finish the completion of the documents required for the MS Home Loans workout application that we began completing at the meeting at our apartment.

8. On or about August 12, 2016, I joined a telephone conference with Mr. Pellegrino, the recipient of the Morgan Stanley Mortgage Champion and Lending Bonus Awards with "Douglas" from MS Home Loans. After a detailed discussion

3

508

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

of my financials and supporting hardship documentation, Douglas informed me that I was more than qualified for the workout agreement that Mr. Pellegrino advised would be most suitable for the Ceccarellis. receive the forbearance and reduced interest option. Mr. Pellegrino again agreed after Douglas weighed in that this was the best way to proceed with the Ceccarellis.

9. On or about August 15, 2016, I called MS Home Loans to confirm my completed workout application was received.

10. To show our good faith and further ability to pay and qualify for a workout agreement with Plaintiff MS, the Ceccarellis arranged to pay off their other mortgage in full with the same Plaintiff bank in the sum of $135,000. This mortgage was for the home held in an irrevocable trust in North Carolina where my retired elderly parents resided, and was used to pay for their long-term care.

11. A month and half later on or about September 26, 2016, without any prior notice, I received a letter alarmingly giving the Ceccarellis notice, among other things, that we had a right to learn the name of the investor who bought the Note for Apt. 28B. A copy this letter from MS Home Loans addressed to my wife and me appears attached as Exhibit 1 (the "Notice of Note Sale"). It provides in pertinent part on p. 2:

> "we will provide you with the following information about your loan...The name of the investor that holds your loan."

12. I immediately then called the MS FA for our mortgage loan for Apt. 28B, Mr. Pellegrino and asked whether this indeed means that our Note was sold to third-party investors under Section 20 of our mortgage (at times, the "Investors"). He said he was

4

509

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

sorry but that the MS has the right to do this under Section 20 of our mortgage. A copy of our mortgage for Apt. 28B appears attached as Exhibit 2 (part of NYSCEF no. 80) (the "Mortgage"). Section 20 of the Note, entitled "Note Holders's Right to Sell the Note or an Interest in the Note," provides in pertinent part:

> "*The Note, or an interest in the Note together with this Security Instrument may be sold one or more times. I may not receive prior notice of these sales.*

13. What Plaintiff MS' own representatives, Mr. Pellegrino, Lyold Hunt and Nicole Torres independently corroborated as more fully discussed below, is consistent with what banks like Plaintiff MS have been doing in the marketplace for selling notes in bulk or as part of a large pool at a discount that are packaged and securitized into bonds that yield as much as 4% under private offerings, They are then sold to private equity, hedge funds, mutual funds and other investors (collectively, the "Investors") as more fully set forth in the New York Times ("NY Times") investigative report by Matthew Goldstein. The NY Times report sheds light on these surreptitious marketplace and business practices to the detriment of homeowners throughout the United States. A copy of the New York Times investigative report in this regard, dated September 28, 2015, appears attached as Exhibit 3 (the "Investigative Report").

14. The short-term securities generate further substantial income with a large mark-ups for investors from the discount they purchased the bundled notes based on the proceeds derived from foreclosing on the mortgagees and then squeezing profits out of them by selling or "flipping" the homes to their affliates or other private equity, hedge funds, mutual funds or other investors on the open market. (Exhibit 3, attached, unnumbered pages 1-3)

5

510

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

15. Mr. Goldstein was able to corroborate his reporting for the Investigative Report thanks to the Legal Aid Society which served a Freedom of Information Request, and obtaining a copy of a private securities offering from the foregoing covert marketplace. (Exhibit 3, attached)

16. Mr. Pellegrino advised me that, while MS Home loans does not give out the names of the investors who bought the Note to their FAs, if I contact them directly, they are required by law [15 USC 1641(f)(2)] to identify who the investors are who bought our Note as the Notice of Note Sale provides (Exhibit 1, attached). From there, he further advised that there was no reason the Ceccarellis could not go to the re-finance marketplace and negotiate directly with the third-party investors for best workout terms and conditions, not unlike what Morgan Stanley had offered to the Ceccarellis before selling their Note to Plaintiff MS' Investors.

17. After several attempts to get the name of the Investors who bought our Note on the telephone number furnished in the Notice of Note Sale, I was finally able to get through to MS Home Loans on November 30, 2016, and I spoke to a Lyold Hunt and asked for the name of the Investors who bought our Note. He responded that he was not at liberty to give out this information.

18. I then tried calling the service provider for Plaintiff, PHH Mortgage services several times to see if I would be able to get the information through them. I finally was able to get through and spoke with Nicole Torres on about December 21, 2016. I asked her who to identify the Investors that bought the Note that Mr. Lloyd from MS Home Loan Dept. was referring to. She responded by saying that she cannot give that information out. I

6

SpA.562

511

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

asked who can and she said someone will have to get back to me on this and no one ever did to this day.

19. Five months *after* the Ceccarellis received the Notice of Note Sale from Plaintiff MS, Plaintiff MS commenced this action by the filing of a Summons and Complaint in January 2017, and completed service on or about February 22, 2017 (NYSCEF nos. 1 and 12) .

## B.  CASE BACKGROUND AND PLAINTIFF'S EXTENDED HISTORY OF WILLFUL DISCOVERY DEFAULTS AND VIOLATION OF COURT DIRECTIVE  ON ISSUE OF STANDING

20. The Complaint alleges at ¶ 25 that Plaintiff MS "*is the now* (January 13, 2017 efiling date) *and was at the commencement of the within action the sole, true and lawful owner of.. (the) Mortgage..* (emphasis furnished). A copy of the Complaint appears attached as Exhibit 4 (NYSCEF no. 1).

21. Issue was joined on the threshold issue of standing by Amended Answer, dated April 10, 2017, denying ¶ 25 and asserting the Second Affirmative Defense of  lack of standing to bring this action in equity on the grounds that Plaintiff MS did not own the Note and the Mortgage, or the rights and interest to them, at the time of commencement of the action. A copy of the Amended Answer is attached as Exhibit 5.

22. By Notice of Discovery and Inspection, dated April 5, 2017, ("Document Production Notice"), the Ceccarellis called for the production of the following documents under Section C of the Document Production Notice directly pertaining to the issue of the

7

SpA.563

512

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

standing under the Second Affirmative Defense pursuant to 15 U.S.C.1641 (f) (2):[1] A

copy the Document Production Notice appears attached as Exhibit 6.

> a. The name, address and telephone number of the Investor that holds the Ceccarellis' loan in accordance with letter from MS Home loans, dated September 26, 2016 (Exhibit 1, attached), which predates the commencement of this action in equity by five months.
>
> b. Trust agreements between Plaintiff MS as the original closing lender for the Ceccarellis, and any subsequent other lender or funding source and any party that can subsequently claim an interest in the Ceccarellis' Note and Mortgage.
>
> c. Any pooling agreements between Plaintiff MS as the original closing lender and any subsequent other lender or funding source and any party that can subsequently claim an interest in the Ceccarellis' Note and Mortgage.
>
> d. Any servicing agreement between Plaintiff MS as the original closing lender and any party that can subsequently claim an interest in the Ceccarellis' Note and Mortgage.
>
> e. Master Purchasing Agreements.
>
> f. Any Special Purpose Vehicle or SPE agreements

---

[1] Under 15 U.S.C. 1641 (f) (2), Plaintiff MS may not be treated as the owner of the Ceccarellis' Note obligation on the basis of mere delegation or assignment from the real parties in interest, the true owners, Investors, when the bank is acting in the capacity of a mere servicer to pursue the present foreclosure action for the administrative convenience of the Investors who bought the Note and mortgage security in interest in it before the commencement of this action.

Therefore, so much of Plaintiff MS Complaint which alleges that it is "has been delegated the authority to institute a mortgage foreclosure action against the homeowner by the owner and holder of the subject Mortgage and Note" must fail as a matter of law (Ex. 4, Complaint ¶ 25, NYSCEF no. 1) with regard to proving the essential element of the MS' present action in equity as a threshold issue in order to move forward with it:

that it was it was in fact the true owner of the rights and interests the Note *and* the mortgage security interest in it at the time of the commencement of this action in January 2017.

8

SpA.564

513

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

g. Executed Pooling and Servicing Agreements dated for asset-backed pass-through certificate series.

23. Plaintiff MS has a long history of repeatedly failing to produce any of the foregoing documents directly relevant to issue of the Second Affirmative Defense of standing as further discussed below, and similarly defaulted in producing any witness with personal knowledge that could testify with respect to the exercise of its Section 20 rights under the Mortgage (Ex.2, attached), or the Notice of Note Sale (Ex. 1, attached) at its scheduled deposition. A copy of the Ceccarellis' Notice of Deposition scheduled for May 1, 2017 is attached as Exhibit 7.

24. By Decision and Order, entered April 5, 2019, the Court granted Plaintiff MS' motion for summary judgment, and denied Mortgagors' cross-motion for discovery with respect to the Sixth Affirmative Defense of equitable estoppel and certain procedural defenses, and directed a reference to compute the alleged outstanding amount due under the Ceccarelli Note. A copy of the Decision and Order of Reference is attached as Exhibit 8.

25. At a status conference held by the Court on June 27, 2019, Plantiff's attorneys completed an *ex parte* order for the Court to sign although I was in the Court's Part 32 on time for the conference at 9:30 a.m. For the first time I learned from the Court, not from Plaintiff's attorneys, who never bothered to give me the courtesy of a call or to speak with me before its *ex parte* submission that it had also sent documents to the Referee appointed by the Court without prior notice, and neglected to serve copies of its submission to the Referee so the Ceccarellis would have a full and fair opportunity to

9

SpA.565

514

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

review the documents submitted and prepare for a hearing as the Referee may consider helpful or necessary with regard to any matters that may be contested on the merits.

26. The *ex parte* order, dated June 27, 2019, submitted by Plaintiff's counsel made representations that Plaintiff submitted documentation in support of the Reference to the Referee and that as soon as the Referee signs his "oath," Plaintiff will proceed to move for judgment of foreclosure and sale. The Court signed this proposed order by Plaintiff's counsel, unaware that I was on time and ready to proceed at 9:30 a.m.

27. The Court then vacated Plaintiff's *ex parte* order for a full and fair opportunity for Defendants-Mortgagors to be heard in opposition by further order of the Court. The subsequent Order directed that "Plaintiff must provide all documents (previously submitted to the Referee) to defendant *immediately*" (emphasis furnished) by further order of the Court when this case was called on the calendar for June 27, 2019 dated the same date, June 27, 2019. A copy of the Court's Order of June 27, 2019 vacating the prior *ex parte* order submitted by Plaintiff is attached as Exhibit 9 (NYSCEF no. 72). ("Order Directing Reference Document Production")

28. In connection with the Order Directing Reference Document Production of previously served documents to the Referee, and in preparation to be heard in opposition on the merits of the Reference, Mortgagors immediately served Plaintiff with the Ceccarellis' document production request for the Reference pursuant to RPAPL § 1321 and CPLR § 4313, dated June 27, 2019 (NYSCEF no. 70). A copy of the Reference Document Production Notice requiring at least 20 days prior notice before any further submissions to the Referee appears attached as Exhibit 10.

10

SpA.566

515

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

29. Importantly, for the purposes of the present motion, MS no. 3, Mortgagors requested supporting documents, regarding how Plaintiff MS intended to prove to the Referee, the threshold issue of how it was the real party in interest that had standing to go forward with the reference in the first place given the prior sale of the Ceccarellis' Note five months before the commencement of this action as discussed above.

30. In addition to the relevant document production regarding the threshold standing issue, Defendants-Mortgagors sought the documents the Court directed to be furnished *immediately* and every document it relies on or refers to in computing the alleged outstanding amounts due under the Notes.

31. The time for Plaintiff MS to respond to Mortgagors' Reference Document Production Notice has long since expired in July 2019.

32. Moreover, *not once but three times*, Plaintiff intentionally and willfully violated the Court's Order to produce documents originally submitted to the Referred as of June 27, 2019, and false and misleading represented to the Referee that Plaintiff was under court deadline to submit a motion for judgment of foreclosure to the Court by September 10, 2019, and again on October 22, 2019 when Plaintiff knew that this was in fact not the case because the Court had vacated the prior order in this regard (NYSCEF nos. 72 and 99), and inquired of the Referee if he intended to hold a hearing *before* the Ceccarellis had a full and fair opportunity to submit opposing papers on the merits to the "*additional*" Reference documents submitted by Plaintiff to the Referee.

33. "Additional proofs and documentation" from Plaintiff were not received by Defendants-Mortgagors until after the passage of more than three months' time on or about October 1, 2019. They conspicuously omitted the original documents submitted

11

SpA.567

516

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

that Plaintiff was directed by the Court to immediately furnish to the Ceccarellis so that they did not have a full and fair opportunity to review all prior proofs and documentation submitted to the Referee in preparation to be heard on the merits in opposing papers and a hearing as may be required by the Referee in his discretion. (*see* NYSCEF no. 101, Plaintiff's letter to Referee dated, June 28, 2019; NYSCEF no. 102, Plaintiff's letter to the Referee, dated September 27, 2019; and NYSCEF no. 103, Plaintiff's letter to the Referee, dated October 4, 2019)

34. Despite the forgoing non-compliance with the Court's prior Reference document production directive, and the long-standing history by Plaintiff MS of willful document production and other discovery defaults particularly with respect to the issue of standing, Plaintiff MS nevertheless decided to bull ahead and file a motion for judgment of foreclosure on October 23, 2019 (MS no.2), which is presently returnable in Room 130 on February 25, 2020.

35. When I objected to the at best premature filing of MS no. 2 at the status conference before the Court on October 24, 2019 after a four-month delay as set forth in Mortgagors' Notice of Rejection of MS no. 2 (NYSCEF no. 104), and the Affirmation of Non-compliance by Plaintiff with the Order of the Court directing Reference Document Production (NYSCEF no. 98), the Court granted leave to Defendants-Mortgagors to bring on the present application for affirmative relief, MS no. 3, by Order dated October 24, 2019 (NYSCEF no. 105). A copy of the Court's Order is attached as Exhibit 11.

36. In this regard, pending the bringing on of the present motion, Defendants-Mortgagors cross-moved under MS no. 2 (NYSCEF no. 111) pursuant to CPLR §§ 2201, 2004 and 2215 for a stay of Plaintiff's motion, MS no. 2, pending the bringing on of the present

12

517

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

motion, MS no. 3 for affirmative relief pursuant to leave granted by the Court (NYSCEF no. 105). The cross-motion more fully sets forth the predicate irregularities and procedural due process deficiencies in having brought on MS no. 2 in the first place. A complete set of the Defendants-Mortgagors' cross-moving papers appear attached as Exhibit 12.

37. The current control date for oral argument is April 21, 2020 on the parties' pending motions pursuant to Order of the Court, dated February 4, 2020 pending completing the submissions of their papers in Room 130 on this MS no. 3. A copy of the Court's order in this regard is attached as Exhibit 13.

[ The Balance of This Page Is Intentionally Left Blank]

13

SpA.569

518

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 125

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

38. In light of the foregoing, and as more fully set forth in the accompanying Memorandum of Law, the Investors who bought the rights and interests to the Ceccarellis' Note well before the commencement of the present action in equity, are properly limited under the circumstances to a subsequent action on the alleged extent of the mortgage debt.

WHEREFORE, Mortgagors Ceccarellis' motion for summary judgment on the Second Affirmative Defense of Plaintiff's lack of standing and related relief should be granted in all respects, together with such other, further and different relief as is just and proper.

Dated: February 24, 2020
New York, New York

Joseph J. Ceccarelli

14

14 of 14

SpA.570

<div style="border: 1px solid black; display: inline-block;">519</div>

## AFFIDAVIT IN SUPPORT (2 OF 2) OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RELATED RELIEF, SWORN TO FEBRUARY 20, 2020, AND FILED ON FEBRUARY 24, 2020 [519 - 523]

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM
NYSCEF DOC. NO. 126

INDEX NO. 850018/2017
RECEIVED NYSCEF: 02/24/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
----------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)

Mortgage Stanley Private Bank, National
Association,

                Plaintiff,

            **AFFIDAVIT IN SUPPORT OF**
            **DEFENDANTS-MORTGAGORS**
            **MOTION FOR SUMMARY**
            **JUDGMENT AND FOR**
            **<u>RELATED RELIEF</u>**
            **(2 OF 2)**

            -against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

               Defendants.

----------------------------------------------------------------X

STATE OF NEW YORK    )
                   )  ss.:
COUNTY OF NEW YORK )

Michael A. Pellegrino, being duly sworn, deposes and says:

1. As the financial advisor for Plaintiff regarding advising and procuring the mortgage for Joseph and Susan Ceccarelli (husband and wife) ( the "<u>Ceccarellis</u>") for their condominium apartment 28B, located at 200 East 32nd Street, New York, New York ("<u>Apt. 28B</u>"), and the subsequent workout application for the Morgan Stanley forbearance and reduced interest option

1

SpA.571

520

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 126

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

by them regarding Apt. 28B, I am fully familiar with the facts and circumstances involved in this residential mortgage foreclosure action at all relevant times discussed below.

**Background and Qualifications**

2. I have been a financial advisor ("FA") in the finance industry since March 2005 and in the financial services business since 2000. I became registered in 2004 and became an FA in 2005. Prior to my career as an FA, I was a practice group specialist in the mergers and acquisitions department of Shearman & Sterling for nearly three years.

3. My credentials as an FA include the following: 1) qualifications as an investment adviser and securities agent, for general industry and products under Series 7 and 66 exams; 2) SRO registrations with NYSE, NASDAQ, FINRA and NYSE American LLC; and 3) New York State Department of Insurance license no. 1021077 authorizing me to sell insurance products and services as an FA, including life insurance and annuities.

4. I began my career in the financial industry at Merrill Lynch where I managed over $100 million in assets as a senior financial advisor at the Staten Island branch office of Merrill Lynch ("ML") in New York until I was recruited by Morgan Stanley to work in the Morgan Stanley Wealth Management division (at times, "MS"), in 2012. I was the first person in the history of the Staten Island Merrill Lynch branch to graduate successfully from the financial advisor training program in 12 months.

6. The awards and recognitions I received while at Morgan Stanley for being a top performing FA include MS Mortgage Champion 2014-2015: MS Prudential Annuity Sales Award; and the recipient of the MS Lending Bonus Award.

2

SpA.572

521

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 126

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

7. I am currently employed as an FA for Westpark Capital, Inc. , an investment bank headquartered in Los Angeles with offices in New York.

**The Failure by MS to Complete a Pre-Approved Workout Application for the Ceccarellis' mortgage and subsequent sale by MS of the Ceccarellis Notes to Private Equity or Hedge Fund Investors before the Commencement of this Action under MS Standard Mortgage, Section 20**

8. As the file in this case shows, Plaintiff Mortgage Stanley Private Bank, National Association is the assignee and successor-in-Interest to Merrill Lynch Credit Corp. beginning in 2012, of the mortgage and re-financings for Apt. 28B, which date back to February 2000.

9. When Mr. Ceccarelli faced medical challenges in 2014, he was forced to shut down his firm,. Ceccarelli Weprin PLLC, and worked a reduced schedule pending his full recovery, including working as a self-employed attorney for his own account.

10. When his medical challenges returned in 2016, he consulted with me regarding his financial options and what Morgan Stanley can do for his wife and his family. The Ceccarellis have always been considered "priority clients" for MS based on the strength of their financials dating back to 1980 for which they qualified for MS' most competitive interest rates at at approximately 2%.

11. After reviewing the Ceccarellis financials with them, I said I saw no reason why they would not qualify for an MS forbearance and reduced interest option consistent with what the MS Home loan department ("MS Home Loans") had approved for the bank's other clients experiencing temporary hardship and having comparable financials documenting an ability to pay after a reasonable period of forbearance, typically for one year and then interest only for five years with the rest amortized over the balance of the life of the original mortgage loan term. Consistent with MS company policy and practice, I was happy to help them complete the

3

SpA.573

522

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 126

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

documents required for our sister MS Home Loans department's workout application review as we have successfully done for our other MS clients.

12. To this end, on or about August 12, 2016, I initiated a telephone conference with Mr. Ceccarelli and an analyst "Douglas" from the PHH Service Provider for MS Home Loans. After a discussion of Mr. Ceccarelli's submitted financials and supporting hardship documentation for their workout agreement, Douglas informed Mr. Ceccarelli on the conference call that he pre-qualified for a workout agreement with MS based on the completed workout application submitted pending final approval. In this regard, they further showed their ability to qualify for a workout agreement with forbearance and interest only period followed by amortization over the balance of the term by offering, and then following through on paying off their other mortgage with MS in full for a North Carolina home in the sum of $135,000 being held in trust for Mr. Ceccarelli's elderly parents who resided there.

13. Before the final approval for the workout agreement could be received, however, the Ceccarellis received notice by letter, dated September 26, 2016 that their notes for the mortgage had been sold and that MS would furnish the name of the investor (typically a private equity or hedge fund) that holds the loan debt, copy attached as Exhibit 1.

14. What had happened consistent with the New York Times Investigative Report, dated September 28, 2015, by Matthew Goldstein, copy attached as Exhibit 3, was that MS had exercised its right to sell the Ceccarellis' Notes to private equity or hedge fund investors as part of a package or bundle at a discount pursuant to MS standard mortgage, Section 20, entitled "Note Holder's Right to Sell the Note or an Interest in the Note." which provides that the Note or an interest in it may be sold one or more times. (*see* Exhibits 1 and 2 , attached)

4

SpA.574

523

**FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM**
NYSCEF DOC. NO. 126

INDEX NO. 850018/2017
RECEIVED NYSCEF: 02/24/2020

15. MS at this point no longer had any business interest in negotiating the previously pre-approved workout agreement with the Cecarellis in good faith. On the flip side, the Investors who purchased can trade and sell the package of distressed debt notes, including the Ceccarellis Notes, for a further mark-up on the discount they acquired them for on the strength of the end note-bundler realizing an enormous profit between the discount they bought the note for and a sale at foreclosure. This comes at the expense of not only the Ceccarelli family home, but the hard-earned equity they had built up by paying their mortgages the last 25 years before Mr. Ceccarelli had a temporary medical hardship.

16. Further, not at least divulging who the actual private equity or hedge fund firm or other investors are, as MS agreed to do in the September 2016 letter, puts them at an unfair disadvantage when applying and negotiating best market terms to refinance their home with competing lenders who wants to know who the real party in interest that they are taking the note and having a new mortgage secured against it is.

Michael A. Pellegrino

Sworn to before this
20 day of February 2020

Notary Public

KAREN LYON
COMMISSIONER OF DEEDS
CITY OF NEW YORK #5-569
CERTIFICATE FILED IN: NEW YORK COUNTY
COMMISSION EXPIRES 07/01/20 20

5

SpA.575

524

EXHIBIT 1 TO FOREGOING DOCUMENTS -
MORGAN STANLEY NOTICE OF SALE OF DEFENDANTS' MORTGAGE
NOTE TO INVESTORS, DATED SEPTEMBER 26, 2016 [524 - 527]

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 127

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

**Morgan Stanley Home Loans**

Made by Morgan Stanley Private Bank, N.A.

1 Mortgage Way
Mt. Laurel NJ 08054

Tel 800-750-2518
Fax 856-917-2848

September 26, 2016

Loan Number: 6007007393
Property Address:
200 East 32nd St
Unit/Apt: 28B
New York City NY 10016

Joseph J Ceccarelli
Susan L Ceccarelli
200 E 32nd St Unt 28b
New York City NY 10016

Attorney Name       : CLARFIELD, OKON,
Attorney Phone No.: (561)713-1400

FORECLOSURE

Dear Customer(s):

As your Case Manager I, ASHLEY BOWENS remain committed to working with you. Please contact me with any questions that you have regarding your account or the information contained within this letter. My direct contact number is 800-750-2518, extension 88321. If you cannot reach me and do not wish to leave a message, you may press 0 and another Case Manager will assist you.

PLEASE NOTE THE FOLLOWING IMPORTANT COMMUNICATION REGARDING YOUR ACCOUNT.

At this time your mortgage account is paid through 02-01-16, with the last full payment received 02-15-16.

Your mortgage account has been referred to an attorney to begin the foreclosure process. If you would like to payoff or reinstate your account you must contact the attorney's office handling the foreclosure proceeding for the most current amount due. If you need information regarding the attorney assigned to your loan, please contact your Single Point of Contact. You may have previously received one or more communications from us regarding assistance opportunities. We are sending this letter as an additional attempt to assist you while your account is in foreclosure proceedings. Even if you have not inquired previously or your prior attempts at a Homeowners Assistance Program were unsuccessful, you can still be evaluated for alternatives to foreclosure. These programs were implemented in order to provide assistance and to help cure any delinquencies that may be due to unexpected hardships you have experienced.

I am available to review any of these programs with you and will be able to provide a loss mitigation application package to get you started.

Again, it is imperative you realize that your account has been sent to an attorney to begin the foreclosure process. If you are approved for, and accept an offer of a Homeowners Assistance Program, then we will postpone and/or cancel the foreclosure process. However, you must submit a complete loss mitigation application package to request consideration for available foreclosure prevention alternatives. Please call us as soon as possible so that we may assist you in saving your home from foreclosure.

Morgan Stanley Home Loans is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. If you are currently in a bankruptcy proceeding or have received a discharge of the debt that is the subject of this notice, this notice is being sent for information purposes only and should not be construed as an attempt to collect against you personally. We will not attempt to collect from you personally, or against the property securing this loan while the bankruptcy's automatic stay remains in effect. If you are in bankruptcy, we intend only to enforce and collect the debt against the property securing the loan as permitted by applicable state law, in the event there is a Default under the terms of the loan documents.

*Log in to www.morganstanleyhomeloans.com --- your servicing website connection.*

525

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 127

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

Morgan Stanley Home Loans

Made by Morgan Stanley Private Bank, N.A.

1 Mortgage Way
Mt. Laurel NJ 08054

Tel 800-750-2518
Fax 856-917-2848

Additionally, upon written request we will provide you with the following information about your loan:
* A copy of your payment history since you were last less than 60 days past due
* A copy of your note
* Copies of assignments of mortgage or deed of trust to demonstrate that the foreclosing party has the right to foreclose
* The name of the investor that holds your loan
* The total amount needed to reinstate or bring your loan current, and the amount of the principal obligation under the mortgage
* The date through which your loan is paid
* The date of the last full payment
* The current interest rate in effect for your loan
* The date on which the interest rate may next reset or adjust
* The amount of any prepayment fees to be charged (if applicable)
* A description of any late payment fees
* The names, addresses, telephone numbers and Internet addresses of one or more counseling agencies or programs approved by HUD
* A statement outlining assistance efforts undertaken prior to the foreclosure referral; including contact or attempted contact attempts as well as information on why you were ineligible for a Homeowners Assistance Program (if applicable).

Requests can be sent to the below address:

    Mortgage Service Center
    1 Mortgage Way
    Mt Laurel NJ 08054
    Mailstop SV-01
    Attention: Documentation Requests

As always, we value your business and would appreciate your attention to this matter.

Sincerely,

ASHLEY BOWENS
Case Manager

If you have any questions, please contact our office at the number provided above between the hours of 8:30am - 8:30pm Monday through Thursday and Friday from 8:30am - 5:00pm EST.

Esta carta contiene informacion importante sobre su cuenta y podria requerir su atencion. Si tiene alguna pregunta y desea hablar en espanol con un empleado, sirvase comunicarse con nosotros al 800-750-2518 durante nuestras horas de oficina normales. Nosotros tenemos representantes cuales hablan en Espanol. Estos representantes estan disponibles las horas de la Lunes a Jueves 8:30am a 8:30pm y Viernes de 8:30am a 5:00pm EST.

FC017 5GE

Morgan Stanley Home Loans is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. If you are currently in a bankruptcy proceeding or have received a discharge of the debt that is the subject of this notice, this notice is being sent for information purposes only and should not be construed as an attempt to collect against you personally. We will not attempt to collect from you personally, or against the property securing this loan while the bankruptcy's automatic stay remains in effect. If you are in bankruptcy, we intend only to enforce and collect the debt against the property securing the loan as permitted by applicable state law, in the event there is a Default under the terms of the loan documents.

*Log in to www.morganstanleyhomeloans.com --- your servicing website connection.*

SpA.577

526

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 127

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

Morgan Stanley Home Loans

Made by Morgan Stanley Private Bank, N.A.

1 Mortgage Way
Mt. Laurel NJ 08054

Tel 800-750-2518
Fax 856-917-2848

Important Messages

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

However, to the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

HUD Counseling

For additional assistance, the United States Department of Housing and Urban Development ("HUD"), which is a government agency, sponsors housing counseling agencies throughout the country that can provide you advice on foreclosure alternatives, budgetary issues, and even assistance with understanding this notice. There is no fee for this service. If you would like assistance, you can contact a HUD-approved housing counselor by calling 1-800-569-4287 or you can reach the HOPE Hotline number at 1-888-995-HOPE. You may also visit the HUD website at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

HUD Consejeria

Para obtener ayuda adicional, el Departamento de Vivienda y Desarrollo Urbano ("HUD") de Estados Unidos, que es una agencia del gobierno, patrocina agencias de asesoria de vivienda en todo el pais que le puede proporcionar asesoramiento sobre las alternativas de ejecucion hipotecaria, las cuestiones presupuestarias, e incluso la asistencia con la comprension de este aviso. No hay que pagar por este servicio. Si desea ayuda, puede ponerse en contacto con un asesor de vivienda aprobado por HUD llamando al 1-800-569-4287 o puede llegar a la Linea Directa de HOPE al 1-888-995-HOPE. Tambien puede visitar el sitio web de HUD en http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Requests for Information and Notices of Error, including Qualified Written Requests

If you wish to request information or assert an error relating to the servicing of your mortgage loan, including any Qualified Written Requests, you must use the address below and include your name, your mortgage loan account number, property address and a statement of either the information you are requesting or the error you believe has occurred:

Mortgage Service Center
Post Office Box 830
Bowie, MD 20718

Attention Servicemembers and Dependents

Servicemember on "active duty" or "active service", or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. 501-597b) (SCRA). If you are entitled to or have

Morgan Stanley Home Loans is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. If you are currently in a bankruptcy proceeding or have received a discharge of the debt that is the subject of this notice, this notice is being sent for information purposes only and should not be construed as an attempt to collect against you personally. We will not attempt to collect from you personally, or against the property securing this loan while the bankruptcy's automatic stay remains in effect. If you are in bankruptcy, we intend only to enforce and collect the debt against the property securing the loan as permitted by applicable state law, in the event there is a Default under the terms of the loan documents.

*Log in to www.morganstanleyhomeloans.com --- your servicing website connection.*

SpA.578

527

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 127

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

Morgan Stanley Home Loans

Made by Morgan Stanley Private Bank, N.A.

1 Mortgage Way
Mt. Laurel NJ 08054

Tel 800-750-2518
Fax 856-917-2848

questions as to whether you are entitled to legal protections under the SCRA, please go to www.militaryonesource.com/scra or call 1-800-342-9647 to find out more information. You can also contact us at 800-750-2518, extension 88321 if you have any questions about your rights under SCRA.

Morgan Stanley Home Loans is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. If you are currently in a bankruptcy proceeding or have received a discharge of the debt that is the subject of this notice, this notice is being sent for information purposes only and should not be construed as an attempt to collect against you personally. We will not attempt to collect from you personally, or against the property securing this loan while the bankruptcy's automatic stay remains in effect. If you are in bankruptcy, we intend only to enforce and collect the debt against the property securing the loan as permitted by applicable state law, in the event there is a Default under the terms of the loan documents.

*Log in to www.morganstanleyhomeloans.com — your servicing website connection.*

SpA.579

528

**EXHIBIT 2 TO FOREGOING DOCUMENTS -
MORGAN STANLEY'S RIGHT TO SELL MORTGAGE NOTE OR INTEREST
IN IT TO INVESTORS ONE OR MORE TIMES PURSUANT TO SECTION 20
OF MORTGAGE SECURITY INSTRUMENT., DATED JANUARY 30, 2015
(REPRODUCED HEREIN AT PP. 308-392)**

529

EXHIBIT 3 TO FOREGOING DOCUMENTS -
NY TIMES INVESTIGATIVE REPORT REGARDING BANK SALES
OF POOLED NOTES TO HEDGE FUNDS AND OTHER INVESTORS,
DATED SEPTEMBER 28, 2015 [529 - 536]

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

### The New York Times

# As Banks Retreat, Private Equity Rushes to Buy Troubled Home Mortgages

By Matthew Goldstein

Sept. 28, 2015

Private equity and hedge fund firms have bought more than 100,000 troubled mortgages at a discount from banks and federal housing agencies, emerging as aggressive liquidators for the remains of the mortgage crisis that erupted nearly a decade ago.

As the housing market nationwide recovers, this is a dark corner from which banks, stung by hefty penalties for bungling mortgage modifications and foreclosures, have retreated. Federal housing officials, for the most part, have welcomed the new financial players as being more nimble and creative than banks with terms for delinquent borrowers.

But the firms are now drawing fire. Housing advocates and lawyers for borrowers contend that the private equity firms and hedge funds are too quick to push homes into foreclosure and are even less helpful than the banks had been in negotiating loan modifications with borrowers. Federal and state lawmakers are taking up the issue, questioning why federal agencies are selling loans at a discount of as much as 30 percent to such firms.

One company has emerged as a lightning rod, criticized by housing advocates and lawyers for borrowers, but admired by investors: Lone Star Funds, a $60 billion private equity firm founded in 1995 by John Grayken. In just a few years, Lone Star's mortgage servicing firm, Caliber Home Loans, has grown from a bit player to a major force in the market for distressed mortgages.

An examination by The New York Times of housing data and court filings, as well as interviews with borrowers, lawyers and housing advocates, revealed a pattern of complaints that Lone Star was quick to begin foreclosure proceedings, whether the firm had bought a delinquent mortgage at a federal auction or directly from a bank.

Take Charles and Pamela Hubbard of Sacramento. They briefly lost their home when Lone Star's Caliber subsidiary dealt harshly with their request for a loan modification. The couple said they had submitted the application to reduce their monthly mortgage payments four

SpA.581

530

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

days before a planned foreclosure sale, but the Lone Star subsidiary said the Hubbards had been late in completing the application and pushed ahead with the sale.

Within a month, the three-bedroom house that the Hubbards had lived in for two decades was auctioned off to another affiliate of Lone Star with the right to resell it later. The foreclosure was rescinded only after the couple went to court.

Caliber declined to comment on individual borrowers, but it said that in general, it was "committed to providing the best possible service to all borrowers, and identifying solutions that allow troubled borrowers to continue to pay their mortgages and stay in their homes is our top priority." It said it had one of the highest loan modification rates in the industry.

Another window into how Caliber and Lone Star operate can be seen in a rare look into one of Lone Star's biggest deals — a bundle of 17,000 distressed mortgages that had an unpaid balance of $2.96 billion.

With money from public pension funds, Lone Star bought those mortgages in the summer of 2014 at an auction held by the Department of Housing and Urban Development. The loans were originally underwritten before the financial crisis by banks like JPMorgan Chase and Bank of America, with insurance guarantees from the Federal Housing Administration.

The list of those mortgages was provided to The Times by the Legal Aid Society of Southwest Ohio, which obtained them through a Freedom of Information Act request.

HUD rules barred Lone Star from foreclosing on most of the mortgages it had acquired until early March. But since then, the firm has picked up the pace of foreclosures, an analysis showed.

As of the end of August, Lone Star and Caliber had foreclosed on at least 1,500 of those formerly F.H.A.-guaranteed mortgages — or 9 percent of the pool, according to an analysis of the home addresses performed by RealtyTrac, a foreclosure tracking service. Many of the foreclosed homes are clustered in Florida, Ohio, New Jersey, California and Texas.

A majority of the homes foreclosed on by Caliber have been bought back by another Lone Star affiliate at either a trustee or sheriff's auction. The private equity firm is looking to resell the homes, and many can be found on Zillow, an online real estate listing service.

**Moving Fast in Ohio**

This foreclosure push was felt by John P. Glynn and his wife, Tammy, of Gahanna, Ohio. They were working with JPMorgan Chase on a loan modification when their mortgage was sold to Lone Star in last summer's HUD auction.

SpA.582

531

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

After Caliber took over the handling of the Glynns' mortgage, the talks that had been going on with JPMorgan over a modification ended. Caliber filed a lawsuit in February seeking to foreclose on the loan.

"I got the impression they didn't want to work anything out," said Mr. Glynn, an industrial engineer.

Caliber is now working toward reaching a settlement with the Glynns.

The firm said it had modified or restructured loans for 2,300 delinquent borrowers in the HUD pool. It noted that modifications were outpacing foreclosures and that it expected "the number of successful modifications to continue to increase over time."

The number of foreclosures can be expected to rise as well.

In February, a HUD report analyzing the status of some of the 79,000 soured mortgages it sold over the last five years — including those bought by Lone Star — reported that 20 percent of the mortgages had been foreclosed, 9 percent had been restructured and 6.4 percent had been resold to other firms or investors. Borrowers remained delinquent on about half the loans.

In addition to Lone Star, other private equity firms have emerged as big buyers of troubled mortgages from federal agencies and banks. They include Bayview Asset Management, an affiliate of Blackstone Group, and Selene Investment Partners.

These firms have swarmed into troubled mortgages because they can squeeze profits from these loans by either restructuring them or by foreclosing on them and then repackaging the distressed loans into bonds that are sold to mutual funds and hedge funds.

Private equity's push into the distressed mortgage market has produced some benefits. Thousands of homes that were abandoned by borrowers are now back on the market. In the HUD sales, about 10 percent of homes were vacant, according to the February report.

Still, housing advocates argue that federal housing agencies should make it easier for nonprofit organizations to have a better chance to compete for troubled mortgages, believing that these groups would work harder to avoid foreclosures.

Representative Michael E. Capuano, a Massachusetts Democrat, wrote this year to Julian Castro, the HUD secretary, expressing concern that nonprofit housing groups were too often losing out to private equity firms in the bidding for distressed mortgages.

In his letter, Mr. Capuano, who singled out Lone Star, said the HUD sales "may turn out to be an efficient new mechanism for increasing evictions."

The tendency to act quickly on foreclosures is, in part, by design.

SpA.583

532

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

The acquisition of distressed mortgages by Lone Star is the engine in a well-oiled securitization machine that assumes that foreclosure and resale of the homes are inevitable components of the process. In these securitizations, many of the soured loans are bundled into bonds that yield up to 4 percent. They are then sold to hedge funds and mutual funds.

The short-term securities generate income for investors from the proceeds derived from foreclosing on the mortgages and then selling the homes on the open market. Last year, Lone Star sold 17 such securitizations, with a combined unpaid loan balance of $10 billion, and the firm is on pace to complete a similar number of deals this year, according to Intex Solutions, a securitization deal tracking service.

A confidential offering document for one of these Lone Star deals — named VOLT 2015 NPL, a transaction backed by 4,895 delinquent mortgages — indicates that the firm considers foreclosure and sale of the homes the most likely outcome for a majority of the loans.

The offering statement, reviewed by The Times, says "payments on the notes are expected to largely come from liquidation and sale proceeds, although there are expected to be collections each month from monthly payments by mortgagors."

The document notes that about 9 percent of the mortgages were part of the pool of loans purchased from HUD.

Lone Star and other private equity buyers contend that many of the foreclosures involve homes that have been abandoned by borrowers, or loans beyond hope. The private equity firms also maintain that foreclosures are less profitable than modifications because the process is costly and time-consuming, and the homeowners are not making any payments for years at a time.

Federal housing officials reject much of the criticism of their sales of loans to firms like Lone Star, noting that many of the borrowers have not made a mortgage payment in three years. The private buyers, officials say, often represent borrowers' last, best hope of striking a deal that can keep them in their homes. HUD officials also point out that the loan sales have reduced the obligation of the F.H.A. insurance program to guarantee mortgages against default, saving billions in the process.

In a letter in May responding to the criticism from Mr. Capuano, the Massachusetts congressman, Erika L. Moritsugu, a HUD assistant secretary, said the program was "putting the loans in the hands of purchasers motivated to help a borrower reperform."

She said the private buyers were expected to reduce the principal owed by a borrower because "that is often the best way to help someone who is multiple years in arrears" and "headed for foreclosure."

533

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

Nonetheless, in response to the criticism, HUD recently increased the period during which a private buyer cannot foreclose on homes to 12 months from six months, and it sought to create smaller pools of loans to give nonprofits a better chance at submitting winning bids.

While HUD has hoped that buyers of its loans will seek to reduce permanently the principal or debt owed by a borrower, Caliber tends not to do so.

In the first half of 2015, Fitch Ratings said of the loans it had reviewed, Caliber had not completed any modifications that included permanent principal reductions.

Instead, Caliber generally offers to modify loans for five years, during which a borrower makes either reduced monthly payments or simply pays interest on the loan. But those modifications revert to their original payment terms in the sixth year, sometimes with any deferred unpaid principal or unpaid interest added to the back end of the loan.

**Short-Term Relief**

Such deals provide short-term relief to borrowers but do not provide a permanent remedy for homeowners short of cash.

George Velazquez, 51, an auto appraiser who lives on Staten Island with his wife, Evelyn, said there was no room to negotiate with Caliber when it presented him with a five-year interest-only mortgage modification after Lone Star bought their loan from HSBC.

Diane Cipollone, a lawyer and a consultant to the National Fair Housing Alliance, said these kinds of modifications simply delay the inevitable and do not present "good odds for any of these borrowers to keep their homes when the temporary modifications expire."

SpA.585

534

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020



Phillip Harris, 62, who has black lung disease, has lived for more than 40 years in a three-story building in San Francisco that doubles as his home and a boardinghouse.
Jason Henry for The New York Times

Phillip Harris, 62, who has black lung disease, has lived for more than 40 years in a three-story building in San Francisco that doubles as his home and a boardinghouse. Caliber threatened to foreclose on the mortgage a few months after Lone Star bought the loan from Bank of America and scheduled a sale of the property for March 19.

Mr. Harris sent in an application for a loan modification — a move that under California law would stop the foreclosure process. But because the documents were not yet in Caliber's computer system, the firm said it intended to go ahead with the foreclosure and sale of the house.

About a week before the trustee sale, Mr. Harris and his lawyer, Tiffany Norman, said they called Caliber and spoke with an employee who identified herself only as Katrina. On the recorded call, Mr. Harris and his lawyer repeatedly told the Caliber employee that the application had been submitted.

"We definitely don't doubt you guys sent that in," the Caliber employee said during the phone call, a recording of which was produced in litigation. But the employee said there was nothing she could do to stop the sale because it took five to seven days for an application to

535

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

be "uploaded into" Caliber's system.

Ms. Norman went to court and got a temporary restraining order against Caliber. A few weeks ago, a Caliber lawyer approached Ms. Norman about a potential settlement.

Formerly known as Vericrest Financial, Caliber has grown rapidly. Today it manages more than 327,465 mortgages with a combined value of just over $71 billion. Some of Caliber's growth has come from Lone Star's steering of standard mortgage origination business to the firm by requiring prospective buyers of the foreclosed homes it puts up for sale to be prequalified for a mortgage from Caliber.

As Caliber has grown, so have the customer complaints. More than 1,000 complaints have been lodged with the federal Consumer Financial Protection Bureau, with complaints running 54 percent higher than a year ago, the agency reports. Caliber said in an email that the modifications it had made had reduced the average borrower's monthly payments more than 20 percent.

"A collaborative solution that turns a nonperforming loan into a performing loan is not only the best outcome for homeowners, but it is the most attractive economic outcome for the long-term oriented investors who own the mortgages," Caliber said.

**Help From the Court**

In the case of the Hubbards, it took court action to get Lone Star and Caliber to work with them.

Lone Star bought the loan on their three-bedroom home in Sacramento from Beneficial Financial, a division of HSBC, in the summer of 2014 for an undisclosed sum.

Soon after buying the mortgage, which had an unpaid balance of $300,000, Caliber and Lone Star moved to foreclose. The sale of the home on Jan. 20 sent the couple running to court. They argued that the sale took place even as Caliber employees said they were trying to "find a way to escalate the submission."

After the Hubbards sued, Caliber and the couple began negotiating. In May, they agreed to a short-term modification that would reduce the Hubbards' monthly payments on the mortgage by several hundred dollars, to $1,953 for the next five years.

Caliber filed a formal notice with county officials on May 29 that rescinded the sale of the home to Lone Star. While the matter was resolved, it could have turned out differently if a buyer not affiliated with Lone Star had stepped in to buy the home.

SpA.587

536

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 129

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

"I don't know why they went through with it because it just didn't make any sense," said Mr. Hubbard, 64, a civilian employee with the Army. "Maybe people who get into these situations are categorized as no good, and they simply don't want to deal with them."

A version of this article appears in print on Sept. 29, 2015, Section A, Page 1 of the New York edition with the headline: More Foreclosures, This Time by Hedge Funds

SpA.588

537

EXHIBIT 4 TO FOREGOING DOCUMENTS -
SUMMONS AND COMPLAINT, DATED JANUARY 5, 2017 AND
E-FILED ON JANUARY 17, 2017, WITH EXHIBITS A
THROUGH O ATTACHED THERETO
(REPRODUCED HEREIN AT PP. 48-267)

EXHIBIT 5 TO FOREGOING DOCUMENTS -
DEFENDANTS-MORTGAGORS' AMENDED ANSWER,
DATED APRIL 10, 2017
(REPRODUCED HEREIN AT PP. 269-275)

EXHIBIT 6 TO FOREGOING DOCUMENTS -
DEFENDANTS-MORTGAGORS' NOTICE OF DISCOVERY AND
INSPECTION, DATED MARCH 30, 2017
(REPRODUCED HEREIN AT PP. 482-486)

EXHIBIT 7 TO FOREGOING DOCUMENTS -
DEFENDANTS-MORTGAGORS' NOTICE TO TAKE DEPOSITION,
DATED APRIL 5, 2017
(REPRODUCED HEREIN AT PP. 487-489)

EXHIBIT 8 TO FOREGOING DOCUMENTS -
DECISION AND ORDER GRANTING SUMMARY JUDGMENT
UNDER MS NO. 1, DATED MARCH 29, 2019
(REPRODUCED HEREIN AT PP. 448-453)

SpA.589

538

EXHIBIT 9 TO FOREGOING DOCUMENTS -
ORDER (BLUTH, J.), DATED JUNE 27, 2019, DIRECTING PLAINTIFF TO COMPLY WITH
DEFENDANTS-MORTGAGORS' DOCUMENT PRODUCTION UNDER PENDING
REFERENCE
(REPRODUCED HEREIN PP. 40-43)

EXHIBIT 10 TO FOREGOING DOCUMENTS -
DEFENDANTS-MORTGAGORS' REQUEST FOR PLAINTIFF'S SUPPORTING
REFERENCE DOCUMENTS AND OTHER PROOFS, AND TO PARTICIPATE IN
REFERENCE HEARING PURSUANT TO RPAPL 1321 AND CPLR 4313, DATED JUNE 26,
2019
(REPRODUCED HEREIN AT PP. 44-47)

EXHIBIT 11 TO FOREGOING DOCUMENTS -
ORDER (BLUTH, J.), DATED OCTOBER 24, 2019, FOLLOWING ADJOURNED
CONFERENCE INCORPORATING NYSCEF NOS. 104 AND 98 BY REFERENCE,
GRANTING LEAVE TO DEFENDANTS-MORTGAGORS TO MOVE FOR AFFIRMATIVE
RELIEF REGARDING MS NOS. 2 AND 3 AND SETTING CONTROL DATE FOR ORAL
ARGUMENT FOR BOTH MOTIONS ON FEBRUARY 4, 2021
(REPRODUCED HEREIN AT P. 21)

EXHIBIT 12 TO FOREGOING DOCUMENTS -
NOTICE OF CROSS-MOTION BY DEFENDANTS-MORTGAGORS UNDER MS NO. 2,
DATED NOVEMBER 19, 2019, WITH EXHIBITS 1 THROUGH 4 ATTACHED THERETO
(REPRODUCED HEREIN AT PP. 491-494)

EXHIBIT 13 TO FOREGOING DOCUMENTS -
ORDER (BLUTH, J.), DATED FEBRUARY 4, 2022, SETTING CONTROL DATE OF ORAL
ARGUMENT OF APRIL 21, 2020 UPON SUBMISSION OF COMPLETE SET OF MOTION
PAPERS, BOTH SIDES, FOR MS NOS. 2 AND 3
(REPRODUCED HEREIN AT P. 20)

SpA.590

539

MEMORANDUM OF LAW, DATED FEBRUARY 24, 2020, IN SUPPORT
OF DEFENDANTS-MORTGAGORS' NOTICE OF MOTION FOR
SUMMARY JUDGMENT AND RELATED RELIEF UNDER MS NO. 3 [539 - 562]

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM
NYSCEF DOC. NO. 140

INDEX NO. 850018/2017
RECEIVED NYSCEF: 02/24/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
-------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)

Motion Sequence No. 3
Oral Argument Requested

Mortgage Stanley Private Bank, National
Association,

         Plaintiff,

     -against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

        Defendants.

-------------------------------------------------------------x

**MEMORANDUM OF LAW BY DEFENDANTS-MORTGAGORS
FOR SUMMARY JUDGMENT AND RELATED RELIEF**

Ceccarelli Law Firm PLLC
48 Wall Street, 11th Floor
New York, New York 10005
Tel. (212) 889-3675

*Attorneys for Defendants-Mortgagors
Joseph J. Ceccarelli and
Susan L. Ceccarelli*

Of Counsel:
   Joseph J. Ceccarelli

SpA.591

540

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

STATEMENT OF FACTS

    A. PLAINTIFF DOES NOT COMPLETE PRE-APPROVED WORKOUT
       AGREMENT AND INSTEAD SELLS THE CECCARELLIS' NOTE FOR
       THEIR APARTMENT TO HEDGE FUND, PRIVATE EQUITY OR OTHER
       INVESTORS PURSUANT TO SECTION 20 OF THE MORTGAGE BEFORE
       THE COMMENCEMENT OF THE PRESENT ACTION IN EQUITY.................2

    B. CASE BACKGROUND AND PLAINTIFF'S EXTENDED HISTORY OF
       WILLFUL DISCOVERY DEFAULTS AND VIOLATION OF COURT
       DIRECTIVE ON ISSUE OF STANDING.......................................................6

POINT I

PLAINTIFF DOES NOT HAVE STANDING TO SUE BECAUSE IT SOLD
THE NOTE BEFORE THE COMMENCMENT OF THIS ACTION TO
PRIVATE EQUITY, HEDGE FUND OR OTHER INVESTORS
PURSUANT TO SECTION 20 OF THE MORTGAGE..............................................12

POINT II

AN AWARD OF SUMMARY JUDGMENT DISMISSING THE
PRESENT ACTION IN EQUITY IS WHOLLY JUST AND WARRANTED

A. THE REAL PARTY IN INTEREST WHO BOUGHT THE NOTE
    BEFORE COMMENCEMENT OF THIS ACTION IN EQUITY IS
    PROPERLY LIMITED TO A SUBSEQUENT ACTION
    ON THE ALLEGED EXTENT OF THE MORTGAGE DEBT..............................15

POINT III

IN THE ALTERNATIVE, AN AWARD OF SUMMARY JUDGMENT TO
THE CECCARELLIS IS WHOLLY WARRANTED GIVEN THE PLAINTIFF'S
NUMEROUS AND UNEXPLAINED FAILURES AND STILL OUTSTANDING
DISCOVERY OBLIGATIONS ON THE THRESHOLD ISSUE OF STANDING
AND JUSTICIABILITY OF THE PRESENT ACTION...........................................17

CONCLUSION...................................................................................................19

i

SpA.592

541

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

## TABLE OF AUTHORITIES

### CASES

BDS Copy Links. Inc. v. International Paper,
    123 AD3d 1255............................................................17

Caprer v. Nussbaum,
    36 AD2d 176............................................................12

Carpentar v. Longan,
    83 U.S. 271............................................................12

Community Board 7 of the Borough of Manhattan v. Schaffer,
    84 NY2d 148............................................................12

Deutsche Bank National Trust Company v. Barnett,
    88 AD2d 636............................................................12

Dudley v. Congregation of Third Order of St. Francis,
    138 NY 451............................................................16, 17

Federal National Mortgage Association v. Youkelsone,
    303 AD2d 546............................................................12

Franz v. Nigri,
    232 AD 150 (1st Dept.)............................................................15, 16

Fujah v. V-M Auto Refinishing Corp.,
    192 Misc.2d 170 (Sup. Ct.)............................................................18

Green v. Green,
    32 AD2d 898............................................................17

Ivy Hill Commodies Corp. v. Beekharry,
    106 AD3d 912............................................................16

Katz v Eastville Realty Co.,
    248 AD2d 243 (1st Dept.)............................................................12

Kluge v. Fugazy,
    145 AD2d 537............................................................12

ii

542

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

## TABLE OF AUTHORITIES (cont'd)

*Lubonty v. U.S. Bank National Association,*
    159 AD3d 962.................................................................13

*Miller v. Xiao Mei,*
    295 AD2d 144 (1st Dept.)........................................ 17

*Mines v. American Honda Motors, Inc.,*
    305 AD2d 271 (1st Dept.)........................................17

*O'Brien v. Clarke Equipment Co.,*
    25 AD3d 958..................................................17

*Osterhoudt v. Wal-Mart Stores, Inc.,*
    273 AD 2d 673................................................18

*Rubin v. Yedlin,*
    224 AD 768....................................................15

*Ryan, Inc. v. New York State Dept. of Taxation and Fin.,*
    26 Misc.3d 563 (Sup.Ct. N.Y. County)...........................13

*Sanchez v. City of New York,*
    266 AD2d 127 (1st Dept.)........................................17

*Saratoga County Chamber of Commerce v. Pataki,*
    100 NY 2d 801.................................................13

*Silver v. Pataki,*
    96 NY 2d 532.................................................13

*Society of Plastics Indus. v. County of Suffolk,*
    77 NY2d 76....................................................13

*Tempforce Inc. ex rel.Anton Wood Associates
v Municipal Housing Authority of City of Schenectady,*
    263 AD2d 926.................................................18

*TPZ Corp. v. Dabbs,*
    25 AD3d 787.................................................12

*U.S. Bank, N.A. v Collymore,*
    68 AD3d 752.................................................12

iii

SpA.594

543

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

## TABLE OF AUTHORITIES (cont'd)

*Vilas & Bacon v. Jones & Piercy*,
1 NY 274............................................................................15

### CPLR Sections

2004...............................................................................1,11,19
2201...............................................................................1,11,19
2215................................................................................11
3103(a)............................................................................17
3122(a)............................................................................17
3126..............................................................................1,17,19
3133(a)............................................................................17
3211(a)(7).........................................................................1,13,19
3211(e)............................................................................13
3212...............................................................................1,19
4313...............................................................................9
5236(b)............................................................................16

### Statutes

RPAPL §1321........................................................................9
15 U.S.C. 1641 (f)(2)..............................................................5, 7, 15

iv

544

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)

Motion Sequence No. 3
Oral Argument Requested

Mortgage Stanley Private Bank, National
Association,

                              Plaintiff,

            -against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

                              Defendants.

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BY DEFENDANTS-MORTGAGORS ON THE SECOND AFFIRMATIVE DEFENSE OF
STANDING PURSUANT TO CPLR §§ 3212, 3211(a)(7), 3126,
2004 AND 2201, AND FOR RELATED RELIEF**

This Memorandum of Law is submitted in support of Defendants-Mortgagors Joseph J.

Ceccarelli and Susan L. Ceccarelli (the "Ceccarellis" or "Mortgagors") motion for an order

pursuant to CPLR § § 3212, 3211 (a) (7), 3126, 2004, and 2201: 1) granting summary judgment

on Defendants-Mortgagors' Second Affirmative Defense for lack of standing, consolidating the

present MS no. 3 with Plaintiff Bank's pending motion for judgment of foreclosure and

Defendants-Mortgagors' cross-motion under MS no. 2 for disposition, and upon consolidation; 2)

1

SpA.596

545

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

denying MS no. 2, and dismissing the present action in equity, together with such other, further and different relief as is just and proper.

## STATEMENT OF FACTS

### A. PLAINTIFF DOES NOT COMPLETE PRE-APPROVED WORKOUT AGREMENT AND INSTEAD SELLS THE CECCARELLIS' NOTE FOR THEIR APARTMENT TO HEDGE FUND, PRIVATE EQUITY OR OTHER INVESTORS PURSUANT TO SECTION 20 OF THE MORTGAGE BEFORE THE COMMENCEMENT OF THE PRESENT ACTION IN EQUITY

As more fully discussed below, Plaintiff Mortgage Stanley Private Bank, National Association (at times, "Morgan Stanley" or "MS") is the assignee and successor-in-interest to Merrill Lynch Credit Corp. beginning in 2012, of the mortgage and re-financing for Apt. 28B, which date back to February 2000 until the sale of their Note, dated January 30, 2015 (the "Note") to a third-party private equity, hedge fund or other investors no later than September 2016. This action in equity was commenced by the filing of Plaintiff's Complaint *five months later* in January 2017 (Ex. 4, Complaint, NYSCEF no. 1). (Pellegrino Aff. ¶¶ 8, 13-14, Ex. 3)

Pending Mr. Ceccarelli's full recovery from medical challenges which forced him to close his prior law firm, Ceccarelli Weprin PLLC , he called the Ceccarellis' financial advisor at Morgan Stanley for their mortgage account for Apt. 28B, Michael A. Pellegrino, and asked for an appointment to discuss a suitable workout agreement based on his wife Susan's and his otherwise strong work and payment history and financials dating back to 1980, including the Great Recession and last three economic recessions before then. (Ceccarelli Affirm. ¶¶ 5-6)

After meeting at our home, Apt. 28B, Mr. Pellegrino discussed and reviewed pertinent financial documents regarding the Ceccarellis financial condition in June and July 2016 with them, he said that he saw no reason why we would not qualify for temporary forbearance and interest

2

SpA.597

546

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

only workout agreement. This Mr. Pellegrino explained is consistent with the policy and practice of Morgan Stanley Home loan department of Plaintiff bank ("MS Home Loans") approving other similarly situated MS clients whose families were experiencing temporary medical or financial hardship, and based on the re-financings the Ceccarellis had fully qualified for in the past. Mr. Pellegrino said he would the Ceccarellis as necessary to finish the completion of the documents required for the MS Home Loans workout application that they had begun completing at the meeting at their apartment. (Ceccarelli Affirm., ¶¶ 9-11)

On or about August 12, 2016, I joined a telephone conference with Mr. Pellegrino, the recipient of the Morgan Stanley Mortgage Champion and Lending Bonus Awards with "Douglas" from MS Home Loans. After a detailed discussion of Mr. Ceccarelli's financials and supporting hardship documentation, Douglas informed him that he was more than qualified for the workout agreement that Mr. Pellegrino advised would be most suitable for the Ceccarellis. Mr. Pellegrino again agreed after Douglas weighed in that this was the best way to proceed with the Ceccarellis. ( Ceccarelli Affirm. ¶ 8; Pellegrino Aff. ¶¶ 9-11)

On or about August 15, 2016, Mr. Ceccarelli called MS Home Loans to confirm my completed workout application was received. (Ceccarelli Affirm. ¶9)

To show their good faith and further ability to pay and qualify for a workout agreement with Plaintiff MS, the Ceccarellis arranged to pay off their other mortgage in full with the same Plaintiff bank in the sum of $135,000. This mortgage was for the home held in an irrevocable trust in North Carolina where Mr. Ceccarelli's retired elderly parents resided, and which had been used to pay for their long-term care. (ibid., ¶ 10)

A month and half later on or about September 26, 2016, without any prior notice, the Ceccarellis received a letter alarmingly giving them notice, among other things, that they had a

3

SpA.598

547

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

right to learn the name of the investor who bought the Note for Apt. 28B. (Ex. 1) It provides in pertinent part on p. 2:

> "we will provide you with the following information about your loan...The name of the investor that holds your loan."

Mr. Ceccarelli then immediately called Mr. Pellegrino, the MS FA for our mortgage loan for Apt. 28B, Mr. Pellegrino and asked whether this indeed means that our Note was sold to third-party investors under Section 20 of our mortgage (at times, the "Investors"). He said he was sorry but that the MS has the right to do this under Section 20 of our mortgage (the "Mortgage"). (Ex 2, part of NYSCEF no. 80) Section 20 of the Note, entitled "Note Holders's Right to Sell the Note or an Interest in the Note," provides in pertinent part:

> "The Note, or an interest in the Note together with this Security Instrument may be sold one or more times. I may not receive prior notice of these sales.

What Plaintiff MS' own representatives, Mr. Pellegrino, Lyold Hunt and Nicole Torres independently corroborated as more fully discussed below, is consistent with what banks like Plaintiff MS have been doing in the marketplace for selling notes in bulk or as part of a large pool at a discount that are packaged and securitized into bonds that yield as much as 4% under private offerings. They are then sold to private equity, hedge funds, mutual funds or other investors (collectively, the "Investors") as more fully set forth in the New York Times ("NY Times") investigative repory, dated September 28, 2015 by Matthew Goldstein (Ex. 3) (Ceccarelli Affirm. ¶¶ 11-13; Pellegrino Aff. ¶ 14).

The NY Times report sheds light on these surreptitious marketplace and business practices to the detriment of homeowners throughout the United States. The short-term securities generate

4

SpA.599

548

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

further substantial income with large margins or mark-ups for investors from the discount they purchase the bundled notes based on the proceeds derived from foreclosing on the mortgagees and then squeezing profits out of them by selling or "flipping" the homes to their affliates or other private equity, hedge funds, mutual funds or other investors. (Exhibit 3, attached, unnumbered pages 1-3)

Mr. Goldstein was able to corroborate his reporting for the Investigative Report thanks to the Legal Aid Society which served a Freedom of Information Request, and obtaining a copy of a private securities offering from the foregoing covert marketplace. (Ex. 3)

Mr. Pellegrino advised the Ceccarellis that while MS Home loans does not give out the names of the investors who bought the Note to their FAs, if I contact them directly, they are required by law [15 USC 1641(f)(2)] to identify who the investors are who bought our Note as the Notice of Note Sale provides (Ex. 1). From there, he further advised that there was no reason the Ceccarellis could not go to the re-finance marketplace and negotiate directly with the third-party investors for best workout terms and conditions, not unlike what Morgan Stanley had offered to the Ceccarellis before selling their Note to Plaintiff MS' Investors. (Ceccarelli Affirm. ¶ 16; Pellegrino Aff. ¶¶ 14-16)

After several attempts to get the name of the Investors who bought the Ceccarellis' Note on the telephone number furnished in the Notice of Note Sale, Mr. Ceccarelli was finally able to get through to MS Home Loans on November 30, 2016, and spoke to a Lyold Hunt and asked for the name of the Investors who bought the Ceccarellis' Note. He responded that he was not at liberty to give out this information.

Mr. Ceccarelli then tried calling the service provider for Plaintiff, PHH Mortgage services several times to see if he would be able to get the information through them. He finally was able

5

SpA.600