**Volume III of III**
**[pp. SpA.601-SpA.793]**

# 25-443

## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

JOSEPH J. CECCARELLI, SUSAN L. CECCARELLI,

*Plaintiffs-Appellants,*

-against-

MORGAN STANLEY PRIVATE BANK, N.A., AS ORIGINAL HOLDER OF CECCARELLI NOTE AND AS SUCCESSOR-IN-INTEREST SERVICING AGENT FOR PRESENTLY UNKNOWN PURCHASERS DOES OF CECCARELLI NOTE AS PART OF SECURITIZED POOL OF RESIDENTIAL MORTGAGE NOTES, AND

PURCHASER DOES IN THE CHAIN OF TITLE AFTER SALE OF CECCARELLI NOTE BEING UNKNOWN TO PLAINTIFFS, PRINCIPALS-NEW CREDITORS, SUCCESSORS-IN INTEREST TO DEFENDANT ORIGINAL HOLDER OF CECCARELLI NOTE UNDER MORTGAGE ELECTRONIC RECORDING SYSTEM, INC. FOR MEMBER BANKS (MERS),

*Defendants-Appellees.*

*On appeal from Orders and Judgment of the U.S. District Court for the Southern District of New York*

## SPECIAL APPENDIX

**CECCARELLI LAW FIRM PLLC**
12 East 49th Street, 11th Floor
New York, New York 10017
(917) 710-6231
jceccarelli@ceccarellilaw.com
*Attorneys for Plaintiffs-Appellants*

TABLE OF CONTENTS        Page

SECTION 1

RELEVANT OPINION AND ORDERS, OPINIONS AND JUDGMENT
BEING APPEALED:

Opinion and Order of SDNY (New York City) (Oetken, J.), filed
January 24, 2025, granting Defendant-Appellee's Motion to Dismiss
Complaint pursuant to Amended Complaint for lack of subject matter
jurisdiction under F.R.C.P. 12(b)(1), and failure to state a claim, and
denying Plaintiffs-Appellants' motion for preliminary injunction as
moot ........................................................................................... SpA.1

Clerk's Judgment in accordance with Opinion and Order of the Court,
filed January 24, 2025 ................................................................. SpA.16

Order of the Court denying Plaintiffs-Appellants Motion to Reconsider
the Opinion and Order of the Court, filed March 25, 2025 ...................... SpA.17

SECTION 2

APPLICABLE STATUTORY LAW:

Provisions Under Federal Truth-in-Lending Act Pertaining to Mortgage
Loan Transactions ...................................................................... SpA.22

NY CPLR 5015(a)(3) .................................................................. SpA.24

SECTION 3

FULLY REPRODUCED RECORD ON APPEAL TO NEW YORK
SUPREME COURT, APPELLATE DIVISION, FIRST DEPARMENT (Case
no. 2012-04118) ........................................................................ SpA.25

RECORD ON APPEAL Volume 1 of 2 (Pages 1 to 392) ......................... SpA.25

RECORD ON APPEAL Volume 2 of 2 (Pages 393-740) ....................... SpA.431

ORDER AUTHORIZING OVERSIZE SPECIAL APPENDIX (Apr.
18, 2025) ................................................................................. SpA.793

549

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

to get through and spoke with Nicole Torres on or about December 21, 2016. He asked her who to identify the Investors that bought the Note that Mr. Lloyd from MS Home Loan Dept. was referring to. She responded by saying that she cannot give that information out. I asked who can and she said someone will have to get back to me on this and no one ever did to this day. (Ceccarelli Affirm. ¶¶ 17-18)

Five months *after* the Ceccarellis received the Notice of Note Sale to Investors from Plaintiff MS, Plaintiff MS commenced this action by the filing of a Summons and Complaint in January 2017, and completed service on or about February 22, 2017 (Complaint, Ex. 4, NYSCEF nos. 1 and 12) .

## B. CASE BACKGROUND AND PLAINTIFF'S EXTENDED HISTORY OF WILLFUL DISCOVERY DEFAULTS AND VIOLATION OF COURT DIRECTIVE ON ISSUE OF STANDING

The Complaint alleges at ¶ 25 that Plaintiff MS "*is the now* (January 13, 2017 efiling date) *and was at the commencement of the within action the sole, true and lawful owner of.. (the) Mortgage..* (emphasis furnished). (Complaint, Ex. 4, NYSCEF no. 1).

Issue was joined on the threshold issue of standing by Amended Answer, dated April 10, 2017, denying ¶ 25 and asserting the Second Affirmative Defense of lack of standing to bring this action in equity on the grounds that Plaintiff MS did not own the Note and the Mortgage, or the rights and interest to them, at the time of commencement of the action. (Amended Answer , Ex. 5, NYSCEF no.18)

By Notice of Discovery and Inspection, dated April 5, 2017, ("Document Production Notice"), the Ceccarellis called for the production of the following documents under Section C of

6

SpA.601

550

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

the Document Production Notice directly pertaining to the issue of the standing under the Second Affirmative Defense pursuant to 15 U.S.C.1641 (f) (2)[1] (Ex. 6, NYSCEF no. 16):

> a. The name, address and telephone number of the Investor that holds the Ceccarellis' loan in accordance with letter from MS Home loans, dated September 26, 2016 (Exhibit 1, attached), which predates the commencement of this action in equity by five months.
>
> b. Trust agreements between Plaintiff MS as the original closing lender for the Ceccarellis, and any subsequent other lender or funding source and any party that can subsequently claim an interest in the Ceccarellis' Note and Mortgage.
>
> c. Any pooling agreements between Plaintiff MS as the original closing lender and any subsequent other lender or funding source and any party that can subsequently claim an interest in the Ceccarellis' Note and Mortgage.
>
> d. Any servicing agreement between Plaintiff MS as the original closing lender and any party that can subsequently claim an interest in the Ceccarellis' Note and Mortgage.
>
> e. Master Purchasing Agreements.
>
> f. Any Special Purpose Vehicle or SPE agreements
>
> g. Executed Pooling and Servicing Agreements dated for asset-backed pass-through certificate series.

---

[1] Under 15 U.S.C. 1641 (f) (2), Plaintiff MS may not be treated as the owner of the Ceccarellis' Note obligation on the basis of mere delegation or assignment from the real parties in interest, the Investors who are true owners of the rights and interests to the Note, when, as here, the bank is acting in sum or substance in the capacity of a mere servicer to pursue the present foreclosure action for the administrative convenience of the Investors who bought the Note before the commencement of this action.

Therefore, so much of Plaintiff MS Complaint which alleges that it is "has been delegated the authority to institute a mortgage foreclosure action against the homeowner by the owner and holder of the subject Mortgage and Note" must fail as a matter of law (Ex. 4, Complaint ¶ 25, NYSCEF no. 1) with regard to proving the essential element of the MS' present action in equity on the threshold issue of standing and justiciability in order to have commenced it in the first place.

7

SpA.602

551

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

Plaintiff MS has a long history of repeatedly failing to produce any of the foregoing documents directly relevant to issue of the Second Affirmative Defense of standing as further discussed below, and similarly defaulted in producing any witness with personal knowledge that could testify with respect to the exercise of its Section 20 rights under the Mortgage (Ex.2, part of NYSCEF no. 80), or the Notice of Note Sale (Ex. 1) at its scheduled deposition scheduled in May 2017. (Ex. 7, NYSCEF no. 17)

By Decision and Order, entered April 5, 2019, the Court granted Plaintiff MS' motion for summary judgment, and denied Mortgagors' cross-motion for discovery with respect to the Sixth Affirmative Defense of equitable estoppel and certain procedural defenses, and directed a reference to compute the alleged outstanding amount due under the Ceccarelli Note. (Ex. 8, NYSCEF no. 63)

At a status conference held by the Court on June 27, 2019, Plantiff's attorneys completed an *ex parte* order for the Court to sign although Mr. Ceccarelli was in the Court's Part 32 on time for the conference at 9:30 a.m. For the first time I learned from the Court, not from Plaintiff's attorneys, who never bothered to give me the courtesy of a call or to speak with me before its *ex parte* submission that it had also sent documents to the Referee appointed by the Court without prior notice, and neglected to serve copies of its submission to the Referee so the Ceccarellis would have a full and fair opportunity to review the documents submitted and prepare for a hearing as the Referee may consider helpful or necessary with regard to any matters that may be contested on the merits.

The *ex parte* order, dated June 27, 2019, submitted by Plaintiff's counsel made representations that Plaintiff submitted documentation in support of the Reference to the Referee and that as soon as the Referee signs his "oath," Plaintiff will proceed to move for judgment of

8

SpA.603

552

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

foreclosure and sale. The Court signed this proposed order by Plaintiff's counsel, unaware that I was on time and ready to proceed at 9:30 a.m.

The Court then vacated Plaintiff's *ex parte* order for a full and fair opportunity for Defendants-Mortgagors to be heard in opposition by further order of the Court. The subsequent Order directed that "Plaintiff must provide all documents (previously submitted to the Referee) to defendant *immediately*" (emphasis furnished) by further order of the Court when this case was called on the calendar for June 27, 2019 dated the same date, June 27, 2019. ("Order Directing Reference Document Production") (Ex. 9, NYSCEF no. 72)

In connection with the Order Directing Reference Document Production of previously served documents to the Referee, and in preparation to be heard in opposition on the merits of the Reference, Mortgagors immediately served Plaintiff with the Ceccarellis' document production request for the Reference pursuant to RPAPL § 1321 and CPLR § 4313, dated June 27, 2019 (Ex. 10, NYSCEF no. 70). The Reference Document Production Notice requires at least 20 days prior notice before any further submissions.

Importantly, for the purposes of the present motion, MS no. 3, Mortgagors requested supporting documents, regarding how Plaintiff MS intended to prove to the Referee, the threshold issue of how it was the real party in interest that had standing to go forward with the Reference in the first place given the prior sale of the Ceccarellis' Note *five months before* the commencement of this action.

In addition to the relevant document production regarding the threshold standing issue, Defendants-Mortgagors sought the documents the Court directed to be furnished *immediately* and every document it relies on or refers to in computing the alleged outstanding amounts due under the Notes.

9

SpA.604

553

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

The time for Plaintiff MS to respond to Mortgagors' Reference Document Production Notice has long since expired in July 2019.

Moreover, *not once but three times*, Plaintiff intentionally and willfully violated the Court's Order to produce documents originally submitted to the Referred as of June 27, 2019, and falsely and misleading represented to the Referee that Plaintiff was under court deadline to submit a motion for judgment of foreclosure to the Court by September 10, 2019, and again on October 22, 2019 when Plaintiff knew that this was in fact not the case because the Court had vacated the prior order in this regard (NYSCEF nos. 72 and 99), and inquired of the Referee if he intended to hold a hearing *before* the Ceccarellis had a full and fair opportunity to submit opposing papers on the merits to the "*additional*" Reference documents submitted by Plaintiff to the Referee.

"Additional proofs and documentation" from Plaintiff MS were not received by the Ceccarellis until after the passage of more than three months' time on or about October 1, 2019. They conspicuously omitted the original documents submitted that Plaintiff was directed by the Court to immediately furnish to the Ceccarellis so that they did not have a full and fair opportunity to review all prior proofs and documentation submitted to the Referee in preparation to be heard on the merits in opposing papers, and a hearing as may be required by the Referee in his discretion. (*see* NYSCEF no. 101, Plaintiff's letter to Referee dated, June 28, 2019; NYSCEF no. 102, Plaintiff's letter to the Referee, dated September 27, 2019; and NYSCEF no. 103, Plaintiff's letter to the Referee, dated October 4, 2019).

Despite the forgoing non-compliance with the Court's prior Reference document production directive, and the long-standing history by Plaintiff MS of willful document production and other discovery defaults particularly with respect to the issue of standing, Plaintiff MS

10

SpA.605

554

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

nevertheless decided to bull ahead and file a motion for judgment of foreclosure on October 23, 2019 (MS no.2), which is presently returnable in Room 130 on February 25, 2020.

When Mr. Ceccarelli objected to the at best premature filing of MS no. 2 at the status conference before the Court on October 24, 2019 after a four-month delay as set forth in Mortgagors' Notice of Rejection of MS no. 2 (NYSCEF no. 104), and the Affirmation of Non-compliance by Plaintiff with the Order of the Court directing Reference Document Production (NYSCEF no. 98), the Court granted leave to Defendants-Mortgagors to bring on the present application for affirmative relief, MS no. 3, by Order dated October 24, 2019 (Ex. 11, NYSCEF no. 105). (Ceccarellli Affirm. ¶ 35)

In this regard, pending the bringing on of the present motion, Defendants-Mortgagors cross-moved under MS no. 2 (NYSCEF no. 111) pursuant to CPLR §§ 2201, 2004 and 2215 for a stay of Plaintiff's motion, MS no. 2, pending the bringing on of the present motion, MS no. 3 for affirmative relief pursuant to leave granted by the Court (NYSCEF no. 105). The cross-motion more fully sets forth the predicate irregularities and procedural due process deficiencies in having brought on MS no. 2 in the first place. (Ex. 12)

The current control date for oral argument is April 21, 2020 on the parties' pending motions pursuant to Order of the Court, dated February 4, 2020 pending completing the submissions of their papers in Room 130 on this MS no. 3. (Ex. 13)

11

SpA.606

555

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

## POINT I

### PLAINTIFF DOES NOT HAVE STANDING TO SUE BECAUSE IT SOLD THE NOTE BEFORE THE COMMENCMENT OF THIS ACTION TO PRIVATE EQUITY, HEDGE FUND OR OTHER INVESTORS PURSUANT TO SECTION 20 OF THE MORTGAGE

To bring a foreclosure action in New York, plaintiff must own both the mortgage and note at the inception of the action; Deutsche Bank National Trust Company v. Barnett, 88 AD2d 636 ("plaintiff has standing where it is the holder or assignee of both the subject mortgage and of the underlying note at the time the action is commenced"). Kluge v. Fugazy, 145 AD2d 537 (absent the transfer of the debt (the note), assignment of the mortgage is a nullity); Katz v Eastville Realty Co., 248 AD2d 243 (1st Dept.); see also Federal National Mortgage Association v. Youkelsone, 303 AD2d 546 (mortgage is merely incident to and collateral security for the debt; assignment of the mortgage alone does not pass the debt itself); U.S. Bank, N.A. v Collymore, 68 AD3d 752 (incomplete and conflicting evidence insufficient to establish that MERS effectively transferred the note to plaintiff prior to the commencement of the action). The note and the mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Carpentar v. Longan, 83 U.S. 271

A plaintiff lacks standing if it does not have a sufficiently cognizable stake in the outcome of the litigation. (Community Board 7 of the Borough of Manhattan v. Schaffer, 84 NY2d 148)

Standing requires an inquiry into whether the litigant has "an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request" (Caprer v. Nussbaum, 36 AD2d 176, 182). Where standing is put into issue, a plaintiff must prove its standing if it is to be entitled to relief (see TPZ Corp. v. Dabbs, 25 AD3d

12

SpA.607

556

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

787, 789; see also Society of Plastics Indus. v. County of Suffolk, 77 NY2d 761 (standing is an aspect of justiciability which, when challenged, must be considered in any litigation).

In New York, "a plaintiff may not proceed with an action in the absence of standing" (Ryan, Inc. v. New York State Dept. of Taxation and Fin., 26 Misc.3d 563, 567 [Sup.Ct. N.Y. County]). The plaintiff must have an injury in fact in order to bring a cause of action against a particular defendant (see Silver v. Pataki, 96 NY 2d 532, 539) (see Saratoga County Chamber of Commerce v. Pataki, 100 NY 2d 801, 812 [Standing to sue is ... a threshold issue. If standing is denied, the pathway to the courthouse is blocked."]).

Under CPLR 3211(a)(7), for failure to state a cause of action, dismissal can eventuate for either a pleading defect or because an allegation material to a facially-sufficient complaint has been bested by evidence. (See Lubonty v. U.S. Bank National Association, 159 AD3d 962) ("By showing [with evidence] that a material fact as claimed by the plaintiff was not a fact at all, [the defendant] established its entitlement to dismissal of the action pursuant to CPLR 3211(a)(7)"). A motion for lack of standing under CPLR 3211(a)(7) may be made "at any subsequent time." CPLR 3211 (e).

In the matter at hand, it is plain that Plaintiff MS never had standing to commence the present action in equity from day one based on party admissions, declarations against interest and irrefutable documentary proof furnished to the Ceccarellis.

First, Plaintiff MS concedes that it sold its interests and rights to the Ceccarellis' Note and the mortgage security interest regarding under Section 20 of the Mortgage (Ex. 2) to third-party Investors *five months before* this action was ever commenced through its own highly credentialed financial analyst ("FA"), Mr. Pellegrino who has direct knowledge of the Ceccarellis' mortgage

13

SpA.608

557

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

account in this case as the FA who opened and managed the Ceccarelli mortgage account on behalf of Plaintiff MS.

What Mr. Pellegrino has to say about the Ceccarellis' mortgage account in this regard is especially important, because he separately qualifies as a highly credentialed expert witness on the subject, including being the recipient of Plaintiff MS' mortgage champion and lending bonus awards (Pellegrino Aff. ¶¶ 2-6).

As Mr. Pellegrino points out it should come as no surprise that Plaintitiff MS is an active participant in the marketplace for the bundling and securitization of the Notes, including the Ceccarellis' Note, for subsequent sale to private equity firms, hedge funds or mutual fund investors (Pellegrino Aff. 14-16) consistent with the investigative report by the NY Times on the subject (Ex.3).

Second, the September 2016 letter from the MS Home Loan Dept (Ex.1, p.2) could not be more explicit: *"we will provide you with the following information about your loan...The name of the investor that holds your loan."* This was five months before this action was commenced in January 2017.

Third, additional Plaintiff MS representatives Lyold Hunt and Nicole Torres independently corroborate what Mr. Pellegrino's affidavit and the September 2016 letter that the Ceccarellis' Note was indeed sold to a third-party investor who *"holds your loan"* well before the commencement of this action. (Ceccarelli Affirm. ¶¶ 17-18)

Fourth, the September 2016 was plainly sent in accordance with the 15 USC 1641 (f)(2) which provides the Ceccarellis are entitled to receive notice about the sale of their loan identifying who precisely the Investor is. As Mr. Pellegrino pointed out the Ceccarellis are entitled to receive this information by law and Plaintiff MS continuing to withhold or suppress this information puts.

14

19 of 24

SpA.609

558

**FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM**

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

them an unfair disadvantage when applying and negotiating best market terms to refinance their home with competing lenders who want to know who the real party in interest that they are refinancing the Note from and having a mortgage secured against it.

Fifth, under 15 U.S.C. 1641 (f) (2), Plaintiff MS may not be treated as the owner of the Ceccarellis' Note obligation on the basis of mere delegation or assignment from the real parties in interest, the Investors, who are true owners of the rights and interests to the Note, where, as here, the bank is acting directly or in sum or substance in the capacity of a mere servicer to pursue the present foreclosure action for the administrative convenience of the Investors who bought the rights and interests to the Ceccarellis' Note before the commencement of this action.

---

## POINT II

**AN AWARD OF SUMMARY JUDGMENT DISMISSING THE PRESENT ACTION IN EQUITY IS WHOLLY JUST AND WARRANTED**

**A. THE REAL PARTY IN INTEREST WHO BOUGHT THE NOTE BEFORE COMMENCEMENT OF THIS ACTION IN EQUITY IS PROPERLY LIMITED TO A SUBSEQUENT ACTION ON THE ALLEGED EXTENT OF THE MORTGAGE DEBT**

Actions for equitable relief from judgments are, like other suits in equity subject to the rules that an applicant for relief in equity must come into court with "clean hands" Franz v. Nigri, 232 AD 150 (1st Dept.); Rubin v. Yedlin, 224 AD 768 and that "he who seeks equity must do equity." Vilas & Bacon v. Jones & Piercy, 1 NY 274. Equity will not come to the aid of a party who seeks relief from the court pursuant to an irregular arrangement (See Franz v. Nigri, supra).

A mortgagee has the choice of two remedies: one at law in a suit on debt as evidenced by

15

559

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

the note, and the other in equity to foreclose the mortgage. [McKinney's CPLR 5236(b). Ivy Hill Commodies Corp. v. Beekharry, 106 AD3d 912.]

Although a mortgagee ordinarily has available the alternative remedies of an action on the debt or an action to foreclose the mortgage, it is well-settled that a court of equity may limit the choice of remedies given the circumstances of a specific case to an action for the debt. Where the extent of the debt is alleged to be valid, but there are grounds to void or stay enforcement of the original mortgage security, recovery will be limited to an action for the debt *See* Dudley v. Congregation of Third Order of St. Francis, 138 NY 451.

In the action at bar, aside from Plaintiff MS not having standing as a matter of law as discussed under Point 1 above, this Court sitting in equity may properly limit the real parties in interest, Investors to an action at law on the debt under the doctrine of unclean hands and that he who seeks equity must do equity.

First, Plaintiff MS failed to disclose that he has already profited on the sale of the Ceccarellis' Note and is acting as nothing more than a mere servicer for which it must be it is drawing yet an additional fee at the expense of the Ceccarellis losing their family home and the hard-earned equity they built over the last 25 years. (Pellegrino Aff. ¶ 15)

Second, the foregoing "irregular arrangement" (Franz v. Nigri, *supra*), the Ceccarelliis were entitled to receive this information by law and Plaintiff MS continuing to withhold or suppress this information puts. them an unfair disadvantage when applying and negotiating best market terms to refinance their home with competing lenders who want to know who the real party in interest that they are refinancing the Note from and having a mortgage secured against it.

Under these circumstances, it is wholly just and warranted for the Court to direct Plaintiff MS as servicing agent for the real parties in interest who bought the Ceccarellis' Note well before

16

SpA.611

560

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

the commencement of this action in equity, is properly limited to a subsequent action on the alleged extent of the mortgage debt. *See* Dudley v. Congregation of Third Order of St. Francis, 138 NY 451.

## POINT III

IN THE ALTERNATIVE, AN AWARD OF SUMMARY JUDGMENT TO DEFENDANTS IS WHOLLY WARRANTED GIVEN THE PLAINTIFF'S NUMEROUS AND UNEXPLAINED FAILURES AND STILL OUTSTANDING DISCOVERY OBLIGATIONS ON THE THRESHOLD ISSUE OF STANDING AND JUSTICIABILITY OF THE PRESENT ACTION

A party resisting disclosure must raise all relevant objections to a disclosure device promptly. See e.g. CPLR 3122(a), 3133(a). If the disclosure is unwarranted or unfeasible, the resisting party must timely serve objections or promptly move for a protective order under CPLR 3103(a). *See* BDS Copy Links. Inc. v. International Paper, 123 AD3d, 1255,1257 [ affirming order striking plaintiff's complaint under CPLR 3126(3) where, among other things, the plaintiffs argued that Plaintiffs demand was overly-broad, but failed to assert timely objections to the demand required under CPLR 3122 (a)].

Repeated failure to comply with discovery requests and discovery orders is grounds for a preclusion order. Green v. Green, 32 AD2d 898; Miller v. Xiao Mei, 295 AD2d 144 (1st Dept.).

A preclusion order is warranted, where a party repeatedly fails to respond to discovery requests and offers no excuse for its behavior. *See* O'Brien v. Clarke Equipment Co., 25 AD3d 958; Mines v. American Honda Motors, Inc., 305 AD2d 271 (1st Dept.). Plaintiff's numerous and unexplained failures to comply with longstanding and still outstanding discovery obligations justified the inference that the noncompliance with discovery was willful and contumacious, and supported an order of preclusion against Plaintiff. *See* Sanchez v. City of New York, 266 AD2d

17

SpA.612

561

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

127 (1st Dept.).

Likewise, a party's blatant disregard of repeated requests for information readily available constituted sufficient evidence to find willfulness and bad faith giving rise to a preclusion order that bars the offending party from raising any issue with respect to its pleading. *See* Osterhoudt v. Wal-Mart Stores, Inc., 273 AD 2d 673.

A preclusion order should be tailored to the issues for which the particulars have not been produced such as limiting the offending party to certain particular allegations in a pleading. *See* Tempforce Inc. ex rel.Anton Wood Associates v Municipal Housing Authority of City of Schenectady, 263 AD2d 926.

Where, as a result of a preclusion order, the plaintiff cannot prove the essential allegations of its complaint, summary judgment is appropriate. Fujah v. V-M Auto Refinishing Corp., 192 Misc.2d 170 (Sup. Ct.).

In the case at bar, the Court should draw the strongest of negative inferences against Plaintiff MS on the issue of whether it has standing to sue and whether the present action is a justiciable controversy properly before this Court, given the Plantiff's numerous and unexplained failures and still outstanding discovery obligations on the threshold issue of standing. As discussed above, these include: 1) the Notice of Document Production (NYSCEF no. 16); 2) Notice of Deposition (NYSCEF no. 17); and 3) most recently Notice of Reference Document Production in accordance with leave granted by the Court (Exs. 9, 10)

18

562

FILED: NEW YORK COUNTY CLERK 02/24/2020 09:56 PM

NYSCEF DOC. NO. 140

INDEX NO. 850018/2017

RECEIVED NYSCEF: 02/24/2020

## CONCLUSION

For the reasons and upon the authorities set forth above Mortgagor Ceccarellis motion for an order pursuant to CPLR § § 3212, 3211 (a) (7), 3126, 2004, and 2201: 1) granting summary judgment on Defendants-Mortgagors' Second Affirmative Defense for lack of standing, consolidating the present MS no. 3 with Plaintiff Bank's pending motion for judgment of foreclosure and Defendants-Mortgagors' cross-motion under MS no. 2 for disposition, and upon consolidation; 2) denying MS no. 2, and dismissing the present action in equity, together with such other, further and different relief as is just and proper.

Dated: New York, New York
February 24, 2020

Respectfully submitted,

Ceccarelli Law Firm PLLC

By: _____

Joseph J. Ceccarelli
48 Wall Street
11th Floor
New York, New York 10005
Tel. (212) 889-3675
jceccarelli@ceccarellilaw.com

*Attorneys for Defendant*
*Julio A. Marquez*

19

24 of 24

SpA.614

563

## PLAINTIFF'S AFFIRMATION IN OPPOSITION, DATED MARCH 4, 2020 [563 - 572]

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff,

- against -

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K.
Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future Condominium;
RBS Citizens, N.A.,

Defendants.

**AFFIRMATION IN
OPPOSITION**

Index No. 850018/2017

Thomas De Bow, Esq., an attorney at law, duly admitted to practice before the Courts of the State of New York, hereby affirms pursuant to CPLR § 2106 that:

1.      I am an associate of Shapiro, DiCaro & Barak, LLC the attorneys of record for Plaintiff in this action, and as such, I am fully familiar with the facts and circumstances underlying this action.

2.      I bring this present action in opposition to the Notice of Motion of Joseph J. Ceccarelli and Susan L. Ceccarelli (hereinafter "Defendants") seeking, among other relief, summary judgment based on an alleged lack of standing.

3.      For the reasons set forth *infra*, Defendant's motion should be denied as a matter of law and fact and in its entirety.

4.      At the forefront, Plaintiff fully complied with the court's Order from June 27, 2019, by sending the required documents to borrower on or about September 25, 2019. Annexed hereto as **Exhibit "A"** is a copy of the packet sent to The Ceccarelli Law Firm as well as the Stutman Law Firm. Additionally, after a review of our records, we have located the USPS

17-063874

1 of 9

SpA.615

564

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

tracking numbers of each package, confirming that same were indeed delivered. The tracking number of the package sent to the Ceccarelli Law Firm is 7763 5542 8311, and the tracking number of the package sent to the Stutman Law Firm is 7763 5541 9913.

### MORTGAGE STANLEY PRIVATE BANK EVINCED ITS STANDING BY EXHIBITING A COPY OF THE INDORSED NOTE TO THE COMPLAINT, THEREBY ESTABLISHING ITS POSSESSION OF SAME AT COMMENCEMENT

5. When the defense of standing is timely raised by an adverse party against a foreclosing Plaintiff who is an assignee, evidence of the transfer of the note and mortgage to the foreclosing Plaintiff can be demonstrated in one of two ways: either (1) a written assignment of mortgage, which memorializes the transfer of both the note and mortgage, executed prior to the commencement of the action, or (2) possession of the indorsed note. See LaSalle Bank Natl. Assn. v. Lamy, 12 Misc. 3d 1191A, 824 N.Y.S.2d 769 (Sup. Ct., Suffolk Cty. 2006), citing Fannie Mae v. Youkelsone, 303 A.D.2d 546, 755 N.Y.S.2d 730 (2d Dept. 2003); see also Deutsche Bank Nat'l Trust Co. v. McRae, 27 Misc. 3d 247, 894 N.Y.S.2d 720 (Sup. Ct., Allegany Cty. 2010), citing Mortgage Elec. Registration Sys., Inc. v. Coakley, 41 A.D.3d 674, 838 N.Y.S.2d 622 (2d Dept. 2007); Fryer v. Rockefeller, 63 N.Y. 268 (1875); Curtis v. Moore, 152 N.Y. 159 (1897).

6. In that regard, and contrary to Ceccarellie's assertions, the Appellate Division has now consistently and repeatedly held that, by attaching the indorsed note to the complaint when filed, a plaintiff that is an assignee presents sufficient evidence to establish a *prima facie* showing that it held the note at the time of commencement, which, in turn, proves that the plaintiff is the assignee of the note and mortgage, and has the requisite standing to bring the mortgage foreclosure action. U.S. Bank Natl. Assn. v Cox, 148 AD3d 962 (2d Dept. 2017); JP

17-063874

SpA.616

565

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Morgan Chase Bank. Natl. Assn. v Venture, 148 AD3d 1269 (3d Dept. 2017); Deutsche Bank Trust Co. Ams. v Garrison, 147 AD3d 725, 726 (2d Dept. 2017); U.S. Bank N.A. v Saravanan, 146 AD3d 1010 (2d Dept. 2017); Deutsche Bank Natl. Trust Co. v. Logan, 146 AD3d 861 (2d Dept. 2017); Deutsche Bank Natl. Trust Co. v Umeh, 145 AD3d 497 (1st Dept. 2016); PennyMac Corp. v Chavez, 144 AD3d 1006, 1007 (2d Dept. 2016); Nationstar Mtge., LLC v Weisblum, 143 AD3d 866, 868 (2d Dept. 2016); JPMorgan Chase Bank, National Association v. Weinberger, 142 AD3d 643 (2d Dept. 2016); JPMorgan Chase Bank, N.A. v Roseman, 137 AD3d 1222, 1223 (2d Dept. 2016); Deutsche Bank Natl. Trust Co. v Leigh, 137 AD3d 841, 842 (2d Dept. 2016); Emigrant Bank v Larizza, 129 AD3d 904, 904-905 (2d Dept. 2015); Nationstar Mtge., LLC v Catizone, 127 AD3d 1151, 1152 (2d Dept. 2015).

7. Moreover, "[t]here is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into possession of the instrument in order to be able to enforce it. Further, where the note is affixed to the complaint, it is unnecessary to give factual details of the delivery in order to establish that possession was obtained prior to a particular date." Wells Fargo Bank, N.A. v Thomas, 150 A.D.3d 1312, 52 N.Y.S.3d 894 (2d Dept. 2017) (internal quotation marks and citations omitted; emphasis added).

8. "Here, the plaintiff established, prima facie, that it had standing by demonstrating that it had physical possession of the note prior to the commencement of the action, as evidenced by its attachment of the note to the summons and complaint at the time the action was commenced." Logan, 146 AD3d at 862 (internal citations omitted).

17-063874

566

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

9.    In the case at bar, the Court will find that Plaintiff's complaint likewise exhibited a true copy of the indorsed note and the written assignment of mortgage, establishing that Mortgage Stanley Private Bank was the holder and assignee of the note and mortgage on the day it commenced this action. The Complaint is duly filed with the Clerk of this Court at NYSCEF Doc No. 1.[1]

10.    Plaintiff's demonstration of possession of same at the time of commencement (shown *ipso facto* by attaching the indorsed copy of same to its complaint) suffices, as a matter of law, to establish Mortgage Stanley Private Bank's standing to bring the case at bar. Aurora Loan Servs. v. Taylor, 114 A.D.3d 627, 629 (2d Dept. 2014), *aff'd* 25 N.Y.3d 355 (2015); Catizone, *supra*; PHH Mortgage Corp. v. Israel, 120 A.D.3d 1329 (2d Dept. 2014); Deutsche Bank Natl. Trust Co. v. Whalen, 107 A.D.3d 931, 932 (2d Dept. 2013); *contra* Deutsche Bank Natl. Trust Co. v. Haller, 100 A.D.3d 680, 682-683 (2d Dept. 2012) (denying summary judgment to the foreclosing plaintiff due to a triable issue of fact regarding standing, as it was "not clear whether the endorsement was effectuated prior to the commencement of this action," because the indorsement "was not included in the copy of the note which was annexed to the plaintiff's complaint").

11.    "Since [Mortgage Stanley Private Bank] established its standing by physical delivery, [the Court] need not address the validity of the… document assigning the mortgage and

---

[1] "NYSCEF Doc. No." refers to the document numbers assigned by the Court's electronic docket for this action. Of course, this Court can take judicial notice of its computerized records. See, e.g., Perez v. New York City Hous. Auth., 47 A.D.3d 505 (1st Dept. 2008); see also CPLR 2214(c) ("Except when the rules of the court provide otherwise, in an e-filed action, a party that files papers in connection with a motion need not include copies of papers that were filed previously electronically with the court, but may make reference to them, giving the docket numbers on the e-filing system").

17-063874

SpA.618

567

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

note". Deutsche Bank Natl. Trust Co. v. Whalen, 107 A.D.3d 931, 932 (2d Dept. 2013); Israel, *supra*.

12.     As a result, Mortgage Stanley Private Bank had the requisite standing to bring its action and capacity to sue. Ceccarelli's allegations on this issue are clearly without merit. See Taylor, *supra* 25 N.Y.3d 355 (Court of Appeals finding that the holder of the note has standing to bring a foreclosure action even where a MERS assignment is involved.

### PLAINTIFF UNDER NO OBLIGATION TO MODIFY DEFAULTED LOAN

13.     Ceccarelli next asserts that summary judgment should be granted in his favor because Mortgage Stanley Private Bank sold the note instead of giving him a loan modification.

14.     To begin, pursuant to the terms of the Note, Mortgage Stanley Private Bank had every right to sell the note. Section 20 of said note explicitly tells that "the Note, or an interest in the Note together with this Security Instrument may be sold one or many times. [Mortgagee] may not receive prior notice of these sales." Defendants' objection to the sale of the Note is baseless, as they fully consented to such a sale when they signed said Note.

15.     Further, Plaintiff is under no obligation to offer a loan modification to Defendants. The simple fact remains that a foreclosing "plaintiff has no duty to modify the defendant mortgagors' mortgage obligation". U.S. Bank National Assoc. v. Fields, 2012 NY Slip Op 32204U (Sup. Ct., Suffolk Cty. 2012), *citing* JP Morgan Chase Bank. N.A. v. Ilardo, 36 Misc. 3d 359, 940 N.Y.S.2d 829 (Sup. Ct., Suffolk Cty. 2012) (holding that "there is no entitlement to a loan modification under HAMP" and that "there is no duty on the part of HAMP servicers to modify mortgages").

17-063874

SpA.619

568

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM
NYSCEF DOC. NO. 142

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

16. In fact, the Court of Appeals has definitively held that when a mortgage contract or the mortgagee's acts are "neither oppressive nor unconscionable", then "[i]n the absence of some act by the mortgagee which a court of equity would be justified in considering unconscionable, he is entitled to the benefit of the covenant. The contract is definite and no reason appears for its reformation by the courts...[The Courts] are not at liberty to revise while professing to construe..." Graf v. Hope Bldg. Corp., 254 N.Y. 1, 4 (1930), citing Abrams v. Thompson, 251 N.Y. 79, 86 (1929); Sun P. & P. Assn. v. Remington P. & P. Co., 235 N.Y. 338, 346 (1923). Plaintiff's rejection of an application for a loan modification is not an example of "bad faith" as Defendants seem to purport, but rather is well within Plaintiff's contractual right as the mortgagor.

17. The Court of Appeals further held in Graf, supra, that the "[s]tability of contract obligations must not be undermined by judicial sympathy." Id. at 5.

18. This long-established legal principal was recently reiterated by the Appellate Division. Wells Fargo Bank. N.A. v Meyers, 108 A.D.3d 9, 21-23 (2d Dept. 2013), quoting Emigrant Mortg. Co.. Inc. v. Fisher, 90 A.D.3d 823, 935 N.Y.S.2d 313 (2d Dept. 2011), quoting Graf, supra.; IndyMac Bank. F.S.B. v. Yano-Horoski, 78 A.D.3d 895, 912 N.Y.S.2d 239 (2d Dept. 2010) ("The reasoning of the Supreme Court that its equitable powers included the authority to cancel the mortgage and note was erroneous, since there was no acceptable basis for relieving the homeowner of her contractual obligations to the bank". )

19. At the present time, Defendants have not made Plaintiff whole, and therefore, Plaintiff is entitled to proceed, as a matter of law. Defendants' desire to avoid the foreclosure in favor of a loan modification does not constitute a valid defense to this action. Simply put, a

17-063874

SpA.620

569

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

holder of a mortgage is not required to modify the express terms of the mortgage contract, or forbear on the enforcement of same.. See Graf, *supra*; Meyers, *supra*; Fisher, *supra*; Yano-Horoski, *supra*; Ilardo, *supra*; Fields, *supra* (Sup. Ct., Suffolk Cty. 2012) (finding that the foreclosing plaintiff has no duty to modify the defendant mortgagors' mortgage obligation).

## DISCOVERY

20. Defendants next alleges Plaintiff has violated a court directive requiring discovery on the issue of standing. At the forefront, your affiant invites the Court to observe that the sole purported question of fact relating to the case at bar targeted within Defendants' discovery demands consists of his inquiry into Plaintiff's standing, presumably in furtherance of his defense objecting to same.

21. Notwithstanding the many blatant defects and insufficiencies found within Defendants' motion, your affiant must call to the Court's attention binding precedent which conclusively answers the question of Plaintiff's standing.

22. "Here, the plaintiff established, prima facie, that it had standing by demonstrating that it had physical possession of the note prior to the commencement of the action, as evidenced by its attachment of the note to the summons and complaint at the time the action was commenced (*see JPMorgan Chase Bank, N.A. v Weinberger*, 142 AD3d at 645; *Deutsche Bank Natl. Trust Co. v Leigh*, 137 AD3d 841, 842; *Emigrant Bank v Larizza*, 129 AD3d 904, 905; *Nationstar Mtge., LLC v Catizone*, 127 AD3d 1151, 1152) . ... [W]here the note is affixed to the complaint, 'it is unnecessary to give factual details of the delivery in order to establish that possession was obtained prior to a particular date' (*JPMorgan Chase Bank, N.A. v Weinberger*,

17-063874

SpA.621

570

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

142 AD3d at 645; *see Aurora Loan Servs., LLC v Taylor*, 25 NY3d at 362)." Deutsche Bank Natl. Trust Co. v Logan, ___AD3d___, 2017 NY Slip Op 00289, *2 (2d Dept. 2017).

23. A copy of Plaintiff's complaint, with all attachments, is filed with the Clerk of this Court as NYSCEF Doc. No. 1, as set forth above, wherein which the Court will find a copy of the duly indorsed note, which the subject mortgage secures.

24. As such, Defendants' desire for further disclosure can be nothing more than an aspiration for academic inquiry, given that binding case law leaves no question as to the propriety of this Court's determination that Plaintiff demonstrated its standing herein, as made within its prior decision to grant summary judgment.

## CONCLUSION

25. Based upon the foregoing, Defendants' Motion should be stricken in all respects and in its entirety, as a matter of law and fact.

17-063874

571

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 142

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

WHEREFORE, it is respectfully requested that Defendants' pending Motion be stricken in all respects and in its entirety; and such other and further relief as to the Court may seem just and proper.

Dated: March 4, 2020

Thomas De Bow, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorney for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

To:    Steven W. Stutman, Esq.
*Attorneys and Co-Counsel for*
*Defendants-Mortgagors Joseph*
*Ceccarelli and Susan Ceccarelli*
535 Broad Hollow Road
Suite B-2
Melville, NY 11747

      Ceccarelli Law Firm, PLLC
*Attorneys and Co-Counsel for*
*Defendants-Mortgagors Joseph*
*Ceccarelli and Susan Ceccarelli*
48 Wall Street, 11th Floor
New York, New York 10005

Type of Service:
SERVED VIA FIRST CLASS MAIL

Type of Service:
SERVED VIA FIRST CLASS MAIL

17-063874

9 of 9

SpA.623

572

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

## ATTORNEY'S CERTIFICATION

I, Thomas De Bow, am an attorney duly admitted to the practice of law in the State of New York. I am an associate of Shapiro, DiCaro & Barak, LLC, the attorneys for the Plaintiff, Mortgage Stanley Private Bank, National Association, in the above captioned civil action.

I HEREBY CERTIFY, pursuant to § 130-1.1-a of the Rules of the Chief Administrator (22 NYCRR), to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the presentation of the papers in this action checked below, or the contentions therein, are not frivolous as defined in subsection (c) of § 130-1.1 of the Rules of the Chief Administrator (22 NYCRR):

{ }   Summons & Complaint

{ }   Answer or Reply

{ }   Attorney Affirmation

{X}   Other: Affirmation in Opposition

DATED: _March 4, 2020_

Thomas De Bow, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
*Attorneys for Plaintiff*
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

SpA.624

573

EXHIBIT A TO DE BOW AFFIRMATION -
DEFENDANT "PACKET" SENT TO COUNSEL
FOR DEFENDANTS-MORTGAGORS [573 - 700]



FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

# EXHIBIT A

SpA.625

574

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Law Offices of

# Shapiro, DiCaro & Barak, LLC

175 Mile Crossing Boulevard
Rochester, New York 14621
(585) 247-9000
FAX (585) 247-7880

September 25, 2019

Arthur Greig, Esq.
Referee
401 Broadway; Suite 1902
New York, NY 10013

RE:     Mortgage Stanley Private Bank, National Association vs. Joseph J. Ceccarelli, III aka
        Joseph J. Ceccarelli; Susan K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz
        Ceccarelli; Board of Managers of the Future Condominium; RBS Citizens, N.A.
        Index No.: 850018/2017
        Our File Number: 17-063874

Dear Mr. Greig:

Please see the enclosed attorney affirmation with exhibits in response to your inquiry regarding
this matter. After reviewing all documentation provided, please advise if you will be scheduling
a hearing in connection with the above-referenced matter, so that we may plan accordingly.
Should you have any further questions, please don't hesitate to contact the undersigned.


Very truly yours,

Mercedece Love
FC Paralegal & Team Lead, Affidavits
mlove@logs.com

cc:     Steven W. Stutman, Esq.
        *Attorneys and Co-Counsel for Defendants-Mortgagors Joseph Ceccarelli and Susan
        Ceccarelli*
        535 Broad Hollow Road
        Suite B-52
        Melville, NY 11747

        Ceccarelli Law Firm, PLLC
        *Attorneys and Co-Counsel for Defendants-Mortgagors Joseph Ceccarelli and Susan
        Ceccarelli*
        48 Wall Street, 11th Floor
        New York, New York 10005

ATTORNEYS AT LAW
_____

Bridget M. Delumler, Associate Attorney   Direct (585) 770-2187   bdelumler@logs.com
_____

LONG ISLAND OFFICE   One Huntington Quadrangle Suite 3N09   Melville, NY 11747   PHONE (631) 841-7011   FAX (631) 841-8495

SpA.626

575

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

                Plaintiff,

- vs -

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan
K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future
Condominium; RBS Citizens, N.A., et al,

                Defendants.

**Attorney Affirmation
Regarding Computations**

**Index Number
850018/2017**

STATE OF NEW YORK)
COUNTY OF NEW YORK) ss.:

    Lissa Palermo, Esq., an attorney at law, duly admitted to practice before the Courts of the

State of New York, hereby affirms, pursuant to CPLR Section 2106 that:

    1.    I am an Associate Attorney of the law firm of Shapiro, DiCaro & Barak, LLC,

attorneys for the plaintiff herein and, as such, am fully familiar with the proceedings had herein.

I make this affirmation in order to provide additional documentation to support the Report of

Referee sought in connection with the foreclosure of the mortgage herein.

    2.    In support of the Report of Referee the Plaintiff attaches the following

documentation:

- A copy of the Note dated January 30, 2015 in the amount of $1,540,000.00 executed
  by Joseph Ceccarelli and Susan Ceccarelli.  **[Exhibit A]**

- A copy of the recorded Consolidation, Extension, and Modification Mortgage given
  by Joseph Ceccarelli and Susan Ceccarelli to Morgan Stanley Private Bank, National
  Association dated January 30, 2015 given to secure the amount of $1,540,000.00 and

SpA.627

576

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

National Association dated January 30, 2015 given to secure the amount of $1,540,000.00 and recorded in the Office of the City Register of the City of New York on February 20, 2015 in CRFN 2015000058946. To remove MERS as the "mortgagee of record" an Assignment of Mortgage to Plaintiff was executed on August 3, 2016 and recorded August 18, 2016 in CRFN 2016000285133. A copy of that Assignment is also annexed hereto. **[Exhibit B]**

- A copy of the Decision and Order of Reference of the Honorable Arlene P. Bluth dated March 29, 2019 and entered on April 5, 2019. **[Exhibit C]**

- A copy of the Affidavit of Wilma Myiow, Vice President Document Execution of Cenlar FSB, the loan servicer and attorney in fact for the plaintiff herein sworn to on August 20, 2019. **[Exhibit D]**

- A copy of the Power of Attorney from Mortgage Stanley Private Bank, National Association to Cenlar, FSB is annexed hereto as **[Exhibit E]**.

- A copy of the Payment History kept in connection with the servicing of this loan. **[Exhibit F]**

- A copy of the Property Tax Bills of New York County. **[Exhibit G]**

- A copy of the Property Inspection Results in the amount of $32.50. **[Exhibit H]**

3.    The non-specific objections submitted by the mortgagors' counsel do not include any evidence to dispute the payments made by the plaintiff for taxes, insurance, and property inspections. The mortgagors have not submitted copies of any checks not credited to their account, nor have they submitted a sworn statement to refute the amounts claimed to be due.

4.    Affiant wishes to point out that the referee herein is appointed for the limited purpose of computing the amount due pursuant to the note and mortgage herein. The existence

SpA.628

577

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

of a valid note and mortgage have already been established in the plaintiff's motion for summary judgment which was granted by the Court. Allegations made regarding any other defenses or potential defenses are not within the scope of review of the Referee pursuant to the terms of the Order of Appointment, and the referee's duties are limited by the Order of Reference. See, Furman v Wells Fargo Home Mtge., Inc., 105 AD3d 807, 810, 964 N.Y.S.2d 169; see CPLR 4311; Rihal v Kirchhoff, 274 AD2d 567, 567, 715 N.Y.S.2d 849; Lloyds Bank v Kahn Lbr. & Millwork Co., 220 AD2d 645, 645, 632 N.Y.S.2d 966). The plaintiff has established a prima facie case for the foreclosure of the within mortgage, as evidenced by the Court's Order Granting Summary Judgment annexed hereto. Any additional arguments outside of the referee's scope of review must be raised by the defendants in opposition to the plaintiff's motion for the Judgment.

5.  The payment histories and advance histories that are attached to this affirmation have all been provided to affiant's office by Cenlar FSB, the loan servicer and attorney in fact for Mortgage Stanley Private Bank, National Association. As set forth in the affidavit of Wilma Myiow, the computer records annexed hereto are made and kept in the regular course of the business of the plaintiff and the plaintiff's loan servicer and are produced to further support the numbers set forth and allegations contained in the affidavit of Wilma Myiow, sworn to on August 20, 2019. The annexed payment history and advance history are admissible as evidence pursuant to CPLR §4518 (a).

6.  The annexed payment history and advance history are admissible as evidence pursuant to CPLR §4518 (a), which provides:

> *(a) Generally. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. An electronic record, as*

SpA.629

578

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

*defined in section three hundred two of the state technology law, used or stored as such a memorandum or record, shall be admissible in a tangible exhibit that is a true and accurate representation of such electronic record. The court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility. The term business includes a business, profession, occupation and calling of every kind.*

7. As set forth by the Court of Appeals in People v. Guidice, 83 NY2d 630, 635, 634 N.E.2d 951, 612 NYS2d 350 (1994) "[t]he essence of the business records exception to the hearsay rule is that records systematically made for the conduct of a business... are inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant's obligation is to have them truthful and accurate for purposes of the conduct of the enterprise" (quoting People v. Kennedy, 68 NY2d 569, 503 N.E.2d 501, 510 N.Y.S.2d 853. 579). 83 NY2d at 635.

8. Additionally, in Med. Expertise, P.C. v. Trumbull Ins. Co., 196 Misc. 2d 389, 765 N.Y.S.2d 171, 2003 N.Y. Misc. LEXIS 773 (N.Y. Civ. Ct. 2003) the court held that "[t]he very heart of this hearsay exception lies in an inherent understanding that the business of litigants is not to provide testimony in the courtroom but to conduct business outside of the courtroom. Consequently, a business record is admissible even though the person who prepared it is unavailable to testify to the acts or transactions. (Clarke v New York City Tr. Auth., 174 A.D.2d 268, 580 N.Y.S.2d 221 [1992].) The rule obviates the need for the maker of the document to be a witness at trial so long as the document meets the foundational requirements." at 392.

9. As stated in U.S. Bank, N.A. v. Russo, 2016 N.Y. Misc. LEXIS 4673, 2016 NY Slip Op 32462(U) (N.Y. Sup. Ct. Dec. 12, 2016) "... with respect to mortgage foreclosures, a loan servicer's employee may testify on behalf of the mortgagee and a representative of an

SpA.630

579

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

assignee of the original lender can rely upon business records of the original lender to establish its claims for recovery of amounts due from the borrowers provided that the assignee/plaintiff establishes that it relied upon those records in the regular course of business (Landmark Capital Invs. Inc. v. Li-Shan Wang, 94 A.D.3d 418, 941 N.Y.S.2d 144 (1st Dept., 2012); Portfolio Recovery Associates, LLC, v. Lall, 127 AD3d 576, 8 NYS3d 101 (1st Dept., 2015); Merrill Lynch Business Financial Services. Inc. v. Trataros Construction, Inc., 30 AD3d 336, 819 NYS2d 223 (1st Dept., 2006))." 2016 N.Y. Misc. LEXIS at 10.

10. CPLR 4518(a) does not require a person to have personal knowledge of each of the facts asserted in the affidavit of merit put before the court as evidence of a defendant's default in payment (see Citigroup v. Kopelwitz, 147 AD3d 1014, 1015, 48 NYS3d 223 [2d Dept. 2017] "There is no requirement that a plaintiff in a foreclosure action rely on any particular set of business records to establish a prima facie case, so long as the plaintiff satisfies the admissibility requirements of CPLR 4518(a), and the records themselves actually evince the facts for which they are relied upon" Citibank NA v. Abrams, 144 AD3d 1212, 40 NYS3d 653 [3rd Dept., 2016]). As quoted in Bank of America N.A. v. Brannon, (1st Dept., 2017) 156 AD3d 1 at 8, 64 NYS3d 352, at 358.

11. As stated recently by the Second Department in Bank of N.Y. Mellon v. Gordon, 97 N.Y.S.3d 286, a case which involved specifically the business records of a foreclosing lender, "[a] court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record. However, all other circumstances of the making of the memorandum or records, including lack of personal knowledge by the maker, may be proved to affect its weight, *but they shall not affect its admissibility*" (id. See People v. Kangas, 28 NY3d 984, 985-

SpA.631

580

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

986, 41 NYS3d 189, 63 NE3d 1133) cf. *Fed Rules Evid.* rule 803[6]). *As quoted in* Bank of N.Y. Mellon v. Gordon, (2d Dept., 2019) 97 NYS3d 286, at 293, 2019 N.Y. App. Div. Lexis 2338 [emphasis added].

12. Ultimately, unlike references to hear and determine, references to hear and report, pursuant to NY RPAPL Sec. 1321 are advisory only, as the Court is the ultimate arbiter of the issues referred (CPLR 4311). See Shultis v. Woodstock Land Dev. Assoc. 195 A.D.2d 677 (3rd Dept., 1993).

13. As stated by the Court of Appeals in Zuckerman v. New York, (1980) 49, N.Y.2d 557, "[t]he affidavit or affirmation of an attorney, even if he has no personal knowledge of the facts, may, of course, serve as the vehicle for the submission of acceptable attachments which do provide 'evidentiary proof in admissible form', e.g., documents, transcripts" at 563.

14. I am aware that the Court appointed Referee may rely on these computerized business documents in making her report to the Court.

Dated: September 25, 2019

Lissa Palermo, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

SpA.632

581

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

Exhibit A

SpA.633

582

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020



This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS NOTE PROVIDES FOR INTEREST ONLY PAYMENTS FOR TEN (10) YEARS. THIS NOTE ALSO CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE MAXIMUM RATE I MUST PAY.

| January 30, 2015 | NEW YORK CITY | New York |
|---|---|---|
| [Date] | [City] | [State] |

200 EAST 32ND STREET 28B, NEW YORK CITY, NY 10016

[Property Address]

1.  BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $1,540,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Morgan Stanley Private Bank, National Association.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 2.200%. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  PAYMENTS
(A) Time and Place of Payments
Beginning on March 1st, 2015, I will pay interest only on the unpaid principal balance of the Note until 01/31/2025. Thereafter, I will pay principal and interest by making payments every month as provided below. I will make my monthly payments of principal and interest on the first day of each month beginning March, 2025. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1st, 2040 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".
I will make my monthly payments at c/o PHH Mortgage, 1 Mortgage Way Mount Laurel, NJ 08054, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $2,823.33. This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the interest rate and the unpaid principal of the Note that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
06/32/8C (06.03.08)

Initials

(Page 1 of 4)

SpA.634

583

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay will change on the first day of April, 2015, and on that day every month thereafter. Each date on which my adjustable rate could change is called a "Change Date".

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seventy-Five / Thousandths percentage point(s) (2.075%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

(i) Interest-Only Period. The "interest-only period" is the period from the date of this Note through 01/31/2025. For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

(ii) Amortization Period. The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

My interest rate will never be greater than 12.000%.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. Depending on when a partial Prepayment is made, my partial Prepayment may reduce the amount of my monthly payment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials: (Page 2 of 4)

SpA.635

584

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender required immediate payment in full under this Section 18, Lender will give me a notice, which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials

Page 3 of 5

585

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

12. OUR COPY   We/I acknowledge receipt of a signed copy of this Note.

CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE SIGNING.

WITNESS the hand(s) and seal(s) of the undersigned.

_____ (Seal)
Joseph J Ceccarelli              -Borrower

_____ (Seal)
Susan L Ceccarelli               -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

[Sign Original Only]

Note: For Florida property only, the State Documentary Tax due on this Note are been paid on the mortgage securing this indebtedness.

Loan origination organization   Morgan Stanley Private Bank, National Association
NMLS ID                         663185
Loan originator                 Frank J Rivera
NMLS ID                         223230

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(Page 4 of 4)

SpA.637

586

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Exhibit B

SpA.638

587

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

RECORDING AND ENDORSEMENT COVER PAGE — PAGE 1 OF 49

| | | |
|---|---|---|
| Document ID: 2015021301103003 | Document Date: 01-30-2015 | Preparation Date: 02-13-2015 |
| Document Type: AGREEMENT | | |
| Document Page Count: 47 | | |

**PRESENTER:**
TITLE RESOURCE GROUP- CCS
3001 LEADENHALL ROAD
MT LAUREL, NJ 08054
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
MORGAN STANLEY PRIVATE BANK, NA
1 MORTGAGE WAY
MOUNT LAUREL, NJ 08054
SUPPORT@SIMPLIFILE.COM

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 912 | 1165 | Entire Lot 28B | 200 EAST 32ND STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

MANHATTAN    Year: 2000    Reel: 3070    Page: 2071
☒ Additional Cross References on Continuation Page

**PARTIES**

**PARTY 1:**
JOSEPH J. CECCARELLI
200 EAST 32ND STREET, UNIT 28B
NEW YORK CITY, NY 10016

**PARTY 2:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC
1901 E VOORHEES STREET, SUITE C
DANVILLE, IL 61834

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 1,540,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed    02-20-2015 14:12 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | 272.00 | 2015000058946 | | |
| Affidavit Fee: | $ | 8.00 | | | |

City Register Official Signature

SpA.639

588

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)    PAGE 2 OF 49

Document ID: 2015021301103003       Document Date: 01-30-2015        Preparation Date: 02-13-2015
Document Type: AGREEMENT

CROSS REFERENCE DATA
CRFN: 2006000342600
CRFN: 2014000356096

PARTIES

PARTY 1:
SUSAN L. CECCARELLI
200 EAST 32ND STREET, UNIT 28B
NEW YORK CITY, NY 10016

SpA.640

589

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Return To:
Morgan Stanley Private Bank, National Association
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel NJ 08054

Prepared By:
Tammy Mosley
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel, NJ 08054

## Consolidation, Extension, and Modification Agreement

MIN [illegible]73935

**Words Used Often in this Document.**

LC15000021

(A) "Agreement." This document, which is dated January 30, 2015 and exhibits and riders attached to this document will be called the "Agreement."

(B) "Borrower." Joseph J. Ceccarelli and Susan L. Ceccarelli, husband and wife

will be called "Borrower" and sometimes "I" or "me." Borrower's address is 200 East 32nd Street, UNIT 28B New York City, NY 10016

(C) "Lender." Morgan Stanley Private Bank, National Association

will be called "Lender" and sometimes "Note Holder." Lender is a corporation or association which exists under the laws of United States of America
Lender's address is 1 Mortgage Way Mount Laurel, NJ 08054

(D) "Mortgages." The mortgages, deeds of trust, or other security instruments and any additional security instruments and related agreements (such as assignments, extensions, modifications, or consolidations of mortgages) identified in Exhibit A to this Agreement will be called the "Mortgages."

**The Premises are Improved by a One or Two Family Dwelling.**

Section: [illegible]7393   Block: 912   Lot: 1161   Unit:

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP950A(NY) (1302)
Page 1 of 8



590

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P. O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a telephone number of (888) 679-MERS. FOR PURPOSES OF RECORDING THIS AGREEMENT, MERS IS THE MORTGAGEE OF RECORD.

(F) "Note Holder." Lender or anyone who succeeds to Lender's rights under this Agreement and who is entitled to receive the payments I agree to make under this Agreement may be called the "Note Holder."

(G) "Notes." The Notes which are identified in Exhibit A to this Agreement, and which are secured by the Mortgages, will be called the "Notes."

(H) "Property." The property which is described in the Mortgage(s) and in Exhibit B (Property Description) to this Agreement, will be called the "Property." The Property is located at:

200 East 32nd Street, [Street] UNIT 28B

NEW YORK CITY [City] NEW YORK [County]

NY 10016 [State and Zip Code]

I promise and I agree with Lender as follows:

I. **Borrower's Agreement About Obligation Under the Notes and Mortgages.** I agree to take over all of the obligations under the Notes and Mortgages as consolidated and modified by this Agreement as Borrower. This means that I will keep all of the promises and agreements made in the Notes and Mortgages even if some other person made those promises and agreements before me. The total unpaid principal balance of the Notes is U.S. $1,540,000.00 of this amount, U.S. $253,001.62 was advanced to me (or for my account) immediately prior to this consolidation.

II. **Agreement to Combine Notes and Mortgages.**

(A) By signing this Agreement, Lender and I are combining into one set of rights and obligations all of the promises and agreements stated in the Notes and Mortgages including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages. This means that all of Lender's rights in the Property are combined so that under the law Lender has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. This combining of notes and mortgages is known as a "Consolidation."

7393

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 5/01)
VMP365A(NY) (1905)
Page 2 of 8



SpA.642

591

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

(B) In the event that Exhibit A indicates that all of the Notes and Mortgages have already been combined by a previous agreement, then Lender and I agree to change the terms of Section II, paragraph (A) of this Agreement to the following:

Lender and I agree that all of the promises and agreements stated in the Notes and Mortgages -- including any earlier agreements which combined, modified, or extended rights and obligations under any of the Notes and Mortgages -- have been combined into one set of rights and obligations by an earlier agreement which is referred to in Exhibit A. This means that all of the Lender's rights in the Property have already been combined so that under the law Lender already has one mortgage and I have one loan obligation which I will pay as provided in this Agreement. The combining of notes and mortgages is known as a "Consolidation."

III. **Agreement to Change Terms of the Consolidated Note.** Lender and I agree that the terms of the Notes are changed and restated to be the terms of the "Consolidated Note" which is attached to this Agreement as Exhibit C. The Consolidated Note contains the terms of payment for the amounts that I owe to Note Holder. I agree to pay the amounts due under the Notes in accordance with the terms of the Consolidated Note. The Consolidated Note will supersede all terms, covenants, and provisions of the Notes.

IV. **Agreement to Change Terms of the Consolidated Mortgage.** Lender and I agree that the terms of the Mortgages are changed and restated to be the terms of the "Consolidated Mortgage" which is attached to this Agreement as Exhibit D. The Consolidated Mortgage secures the Consolidated Note and will constitute in law a single lien upon the Property. I agree to be bound by the terms set forth in the Consolidated Mortgage which will supersede all terms, covenants, and provisions of the Mortgages.

V. **No Set-Off, Defenses.** I agree that I have no right of set-off or counterclaim, or any defense to the obligations of the Consolidated Note or the Consolidated Mortgage.

VI. **Borrower's Interest in the Property.** I promise that I am the lawful owner occupying the Property and that I have the right to consolidate, modify, and extend the Notes and Mortgages.

VII. **Written Termination or Change of this Agreement.** This Agreement may not be terminated, changed, or amended except by a written agreement signed by the party whose rights or obligations are being changed by that agreement.

VIII. **Obligations of Borrowers and of Persons Taking Over Borrower's or Lender's Rights or Obligations.** If more than one person signs this Agreement as Borrower, each of us is fully and personally obligated to keep all of Borrower's promises and obligations contained in this Agreement. The Note Holder may enforce its rights under this Agreement against each of us individually or against all of us together.

The terms of the Consolidated Note and the Consolidated Mortgage may not allow any person to take over my rights or obligations under this Agreement. Lender and I agree that if any person is permitted to take over my rights and obligations under this Agreement, that person will have all of my rights and will be obligated to keep all of my promises and agreements made in this Agreement. Similarly, any person who takes over Lender's rights or obligations under this Agreement will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Agreement.

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP550A(NY) (1302)
Page 3 of 6



SpA.643

592

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

IX. Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Consolidated Note as a "trust fund;" and (B) use those amounts to pay for "cost of improvement" (as defined in the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section IX.

X. Type of Property. Check box(es) as applicable.

☐ This Agreement covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.

☒ This Agreement covers real property improved, or to be improved, by a one (1) or two (2) family dwelling.

☐ This Agreement does not cover real property improved as described above.

393

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP86QA(NY)(1305)
Page 4 of 6



SpA.644

593

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

By signing this Agreement, Lender and I agree to all of the above.

Morgan Stanley Private Bank, National ASSOCIATION

\- Lender

By: PHH Mortgage, its authorized agent

**Brian Grzebin, Vice President**

Mortgage Electronic Registration Systems, Inc.

\- Mortgagee

By:

**Brian Grzebin, Vice President**

**Borrower**

Joseph J Ceccarelli                    Date
                                        (Seal)

1/30/15

Susan L Ceccarelli                    Date
                                        (Seal)

1.30.15

_____               Date
                                        (Seal)

_____               Date
                                        (Seal)

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

593

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 5/01)
VMP860A(NY) (1302)
Page 5 of 5



SpA.645

594

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

State of New Jersey, Camden County

On the 5th day of February in the year 2015 before me, the undersigned, personally appeared _Brian Krzan_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the city of Mount Laurel in the State of New Jersey .

Signature of the office or
Individual taking acknowledgment

KELLY L KESSEL
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Sept. 13, 2016

SpA.646

595

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

STATE OF NEW YORK, NEW YORK        County ss:

On the 30th day of January, 2015      before me, the undersigned, a notary public in and for said state, personally appeared   Joseph J Ceccarelli, Susan L Ceccarelli ; husband and wife.

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

RONALD A. SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 025A6272123
Qualified in New York County
Commission Expires November 13, 2018

Notary Public      **RONALD A SANON**

STATE OF NEW YORK, NEW YORK        County ss:

On the 30th day of January, 2015      before me, the undersigned, a notary public in and for said state, personally appeared Joseph J Ceccarelli, Susan L Ceccarelli

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

STATE OF NEW YORK, NEW YORK        County ss:

On the 30th day of January, 2015      before me, the undersigned, a notary public in and for said state, personally appeared Joseph J Ceccarelli, Susan L Ceccarelli

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information:
Loan origination organization   Morgan Stanley Private Bank, National Association
NMLS ID 663185
Loan originator   Frank J Rivera
NMLS ID 223230

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP-@
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 5/01)
VMP850A(NY) (1302)
Page 8 of 6



SpA.647

596

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

*See attached*

**EXHIBIT A**

(List of Mortgages, Notes, and Agreements)

☐ (1) This Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli, husband and wife

and dated _____ in favor of _____

securing the original principal amount of U.S. $253,001.62
This Mortgage is on a *Fannie Mae/Freddie Mac Security Instrument* and
☐ will be recorded together with this Agreement.
☐ was recorded on _____, in the _____, State of New York, at _____ of _____
☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $
This Mortgage secures a Note dated _____
☐ This Mortgage was assigned to _____

by Assignment of Mortgage dated _____

☐ and recorded on _____ in the _____
of _____, State of New York, at _____
☐ (2) This Mortgage given by

and dated _____ in favor of Morgan Stanley Private Bank, National Association

securing the original principal amount of U.S. $253,001.62
This Mortgage was recorded on _____, in the _____
of _____, State of New York, at _____
☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $
This Mortgage secures a Note dated _____
☐ This Mortgage was assigned to _____

by Assignment of Mortgage dated _____

☐ and recorded on _____ in the _____
of _____, State of New York, at _____

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 5/01)
VMP850A(NY)(1302)
Page 7 of 8



SpA.648

597

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

☐ (3) This Mortgage given by

and dated                                    in favor of  Morgan Stanley Private Bank, National Association

securing the original principal amount of U.S. $1,540,000.00
This Mortgage was recorded on
of                                          , State of New York, at                    , in the
☐ At this date, the unpaid principal balance secured by this Mortgage is U.S. $1,540,000.00
This Mortgage secures a Note dated
☐ This Mortgage was assigned to

by Assignment of Mortgage dated

☐ and recorded on                                    in the
of                              , State of New York, at

393
NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP ®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP850A(NY) (1302)
Page 6 of 8



SpA.649

598

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

## EXHIBIT A

1. Mortgage made by Joseph J. Ceccarelli and Susan K. Langholz to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 02/07/2000, recorded 03/22/2000 in Reel 3070 Page 2071 in the original amount of $820,000.00 of the Public Record of New York County, NY, (Mortgage tax paid $17,400.00);

1a. Assignment of Mortgage from Merrill Lynch Credit Corporation to Cendant Mortgage Corporation, dated 11/28/2001, recorded 1/30/2002 in Reel 3440 Page 507 of the Public Record of New York County, NY;

1b. Assignment of Mortgage from PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation to Merrill Lynch Credit Corporation, its successors and/or assigns dated 03/09/2006, recorded 06/16/2006 in CRFN 2006000342599 of the Public Record of New York County, NY;

2. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 11/14/2005, recorded 06/16/2006 in CRFN 2006000342600 in the original amount of $457,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $9,348.75);

2a. The above Mortgages were consolidated to form a single lien of $1,277,500.00 by a Consolidation, Extension, and Modification Agreement dated 11/14/2005 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Merrill Lynch Credit Corporation, which said Agreement was recorded on 06/16/2006 in CRFN 2006000342601 of the Public Record of New York County, NY;

2b. Assignment of Mortgage from PHH Mortgage Corporation, attorney in fact for Bank of America, National Association, a National Banking Association, as successor in interest by merger to Merrill Lynch Credit Corporation to Morgan Stanley Private Bank, National Association, its successors and/or assigns , dated 11/16/2012, recorded 10/27/2014 in CRFN 2014000356095 of the Public Record of New York County, NY;

3. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association, as Mortgagee(s) dated 12/28/2012, recorded 10/27/2014 in CRF 2014000356096 in the original amount of $9,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $166.25);

3a. The above Mortgages were consolidated to form a single lien of $1,287,000.00 by a Consolidated, Extension, and Modification Agreement dated 12/28/2012 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Morgan Stanley Private Bank, National Association, which said Agreement was recorded on 10/27/2014 in CRFN 2014000356097, of the Public Record of New York County, NY . Having an unpaid principal balance of $1,286,998.38;

3b. Assignment of Mortgage dated 11/11/2014 made by Morgan Stanley Private Bank, National Association to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association, , its successors and assigns, which Assignment of Mortgage is intended to be recorded simultaneously herewith;

SpA.650

599

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

4. Mortgage dated 01/30/2015 made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association in the amount of $253,001.62, with mortgage tax in the amount of $4,652.20 to be recorded simultaneously herewith;

4a. The above Mortgages are consolidated by a Consolidation, Extension, and Modification Agreement dated 01/30/2015 between Joseph J. Ceccarelli and Susan L. Ceccarelli and Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association to form a single lien in the amount of $1,540,000.00 and to be duly recorded in the Office of the Register of New York County, NY.

SpA.651

600

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

## INSTRUCTIONS

The following instructions apply if this Agreement is used in a consolidation, extension, or modification of a single family loan intended for possible sale to Fannie Mae or Freddie Mac.

(1)    All notes, security instruments, assignments, the most recent consolidation agreement and related agreements that modify, consolidate, or extend prior underlying obligations and which predate this Agreement must be listed in Exhibit A to this Agreement. The language in Exhibit A to this Agreement is only a sample and may be revised as appropriate.

If any new money is advanced, number (1) on Exhibit A should refer to both (a) the "Gap" Mortgage (i.e., the new money mortgage discussed in (6) below), and (b) the "Gap" Note (i.e., new money note discussed in (6) below).

(2)    The metes and bounds description of the Property must be set forth in Exhibit B to this Agreement.

(3)    The Consolidated Note must be the current version of the applicable Single Family Fannie Mae/Freddie Mac Uniform Note (e.g., Forms 3233, 3501, 3502, 3504, or 3514) with the following language inserted at the top of the document:

For Fixed Rate Notes:

### CONSOLIDATED NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

For Adjustable Rate Notes:

### CONSOLIDATED ADJUSTABLE RATE NOTE

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

The Consolidated Note, with all blanks completed, and any applicable addendum or addenda, must be executed by the Borrower(s) and a copy of the executed Consolidated Note must be attached hereto as Exhibit C. The repayment terms of the Consolidated Note (e.g., the consolidated principal amount, the monthly principal and interest payment, the interest rate and provisions for any interest rate and monthly payment changes applicable to the consolidated obligations) must be set forth in the Consolidated Note. The dollar amount entered in the first blank in Section 1 of this Agreement and the consolidated principal amount of the Consolidated Note must be the same.

(4)    The Consolidated Mortgage must be the current version of the New York Single Family Fannie Mae/Freddie Mac Uniform Instrument (Form 3033). The Consolidated Mortgage, with all blanks completed, and any applicable riders (such as an adjustable rate rider), must be attached hereto as Exhibit D. The Consolidated Mortgage need not be signed by the Borrower(s). The dollar amount entered in the first blank in Section 1 of this Agreement and the dollar amount entered in the corresponding blank in the Consolidated Mortgage must be the same.

(5)    For sales of loans to Fannie Mae and Freddie Mac, the Seller/Lender must deliver the executed and recorded original of this Agreement and all exhibits to it (or a certified true copy from the recording clerk, if the original is not yet available), together with the original Consolidated Note signed by the Borrower(s) and each original Note which is the original evidence of any part of Borrower's indebtedness set out in this Agreement.

(6)    If new funds are advanced at the time of the consolidation and modification evidenced by this Agreement, the new obligation must be evidenced by an original of the new money note (the "Gap" Note) and an original of the new money mortgage (the "Gap" Mortgage) on the current Fannie Mae/Freddie Mac Single Family Uniform Instrument (Form 3033). The dollar amount entered in the second blank in Section 1 of this Agreement and the dollar amount entered in the corresponding blank on the Gap Note and Gap Mortgage must be the same. If no new funds are advanced at the time of the consolidation and modification, then the second blank in Section 1 of this Agreement should be zero. This new loan will then become a part of the Consolidated Note and the Consolidated Mortgage. It is not necessary that the repayment terms of the new loan, as set out in the Gap Note, reflect the terms of the Consolidated Note.

7393

NEW YORK CONSOLIDATION, EXTENSION, AND MODIFICATION AGREEMENT WITH MERS
Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP-®
Wolters Kluwer Financial Services

Form 3172 1/01
(rev. 6/01)
VMP850A(NY) (1302)



SpA.652

601

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

Exhibit B

Address:     200 East 32nd Street Unit 28B
New York, NY 10016

## LEGAL DESCRIPTION

County:              NEW YORK

Property Address:    200  East 32nd Street Unit 28B
                     New York, NY 10016

THE CONDOMINIUM UNIT (HEREINAFTER TO AS THE "UNIT) IN THE BUILDING (HEREINAFTER REFERRED TO AS THE "BUILDING") KNOWN AS THE FUTURE AND BY THE STREET NUMBER 200 EAST 32ND STREET, BOROUGH OF MANHATTAN, CITY COUNTY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED AS UNIT NO. 28B IN THAT CERTAIN DECLARATION DATED MARCH 8, 1993 MADE BY 32ND STREET SOUTHEAST COMPANY L.P. PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (HEREINAFTER REFERRED TO AS THE "CONDOMINIUM ACT") ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND (HEREINAFTER REFERRED TO AS THE "LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HERETO AND BY THE REFERENCE MADE A PART HEREOF) WHICH DECLARATION WAS RECORDED IN THE NEW YORK COUNTY OFFICE OF THE REGISTER OF THE CITY OF NEW YORK ON MAY 20, 1993 IN REEL 1972 PAGE 166 (AND HAS BEEN AMENDED AS SET FORTH ON EXHIBIT B ANNEXED HERETO AND BY THIS REFERENCED MADE A PART HEREOF) (WHICH DECLARATION AND ANY AMENDMENTS THERETO ARE HEREINAFTER COLLECTIVELY REFERRED TO A THE "DECLARATION") THIS UNIT IS ALSO DESIGNATED AS TAX LOT 1165 IN BLOCK 912, OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY COSTAS KONDEYLAS, ARCHITECTS, ON APRIL 8, 1993 AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK ON MAY 20, 1993 AND ALSO FILED IN THE CITY REGISTER'S OFFICE ON MAY 20, 1993, AS CONDOMINIUM PLAN NO. 844;

TOGETHER WITH AN UNDIVIDED .761143% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION);

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST 32ND STREET AND THE EASTERLY SIDE OF THIRD AVENUE;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF EAST 32ND STREET, 85 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 110 FEET 8 ¾ INCHES;

THENCE EASTERLY AND PARALLEL WITH EAST 32ND STREET AND 50 FEET;

602

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 36 FEET 9 ¼ INCHES;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 35 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 25 FEET;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 100 FEET TO THE EASTERLY SIDE OF THIRD AVENUE;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF THIRD AVENUE, 172 FEET 6 INCHES TO THE SOUTHERLY SIDE OF EAST 32ND STREET, THE POINT OR PLACE OF BEGINNING.

TAX ID #: BLOCK: 912 LOT: 1165

For Information only: Property Address: 200/202 EAST 32TH STREET UNIT 28B, NEW YORK, NY 10016 A/K/A 453/467 3 AVENUE UNIT 28B, NEW YORK, NY 10016

SpA.654

603

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

"EXHIBIT C"

This Note amends and restates in their entirety, and is given in substitution for, the Notes described in Exhibit A of the New York Consolidation, Extension, and Modification Agreement dated the same date as this Note.

## ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

THIS NOTE PROVIDES FOR INTEREST ONLY PAYMENTS FOR TEN (10) YEARS. THIS NOTE ALSO CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE MAXIMUM RATE I MUST PAY.

| January 30, 2015 | NEW YORK CITY | New York |
|---|---|---|
| [Date] | [City] | [State] |

200 EAST 32ND STREET 28B, NEW YORK CITY, NY 10016

[Property Address]

1.  **BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $1,540,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Morgan Stanley Private Bank, National Association.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.  **INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 2.200%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.  **PAYMENTS**

(A) Time and Place of Payments

Beginning on March 1st, 2015, I will pay interest only on the unpaid principal balance of the Note until 01/31/2025. Thereafter, I will pay principal and interest by making payments every month as provided below. I will make my monthly payments of principal and interest on the first day of each month beginning March, 2025. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1st, 2040 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at c/o PHH Mortgage, 1 Mortgage Way Mount Laurel, NJ 08054, or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $2,823.33. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the interest rate and the unpaid principal of the Note that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index -Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials:

(Page 1 of 4)

SpA.655

604

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

4. **INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay will change on the first day of April, 2015, and on that day every month thereafter. Each date on which my adjustable rate could change is called a "Change Date".

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Seventy-Five / Thousandths percentage point(s) (2.075%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

(i) Interest-Only Period. The "interest-only period" is the period from the date of this Note through 01/31/2025. For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

(ii) Amortization Period. The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

My interest rate will never be greater than 12.000%

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. Depending on when a partial Prepayment is made, my partial Prepayment may reduce the amount of my monthly payment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE ADJUSTABLE RATE One-Month's Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Initials

(Page 2 of 4)

605

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.00% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.  SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Agreements about Lender's Rights If the Property Is Sold or Transferred. Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender required immediate payment in full under this Section 18, Lender will give me a notice, which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(Page 3 of 5)

606

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

12. OUR COPY   We/I acknowledge receipt of a signed copy of this Note.

CAUTION-IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS NOTE BEFORE SIGNING.

WITNESS the hand(s) and seal(s) of the undersigned.

_____ (Seal)
Joseph P Ceccarelli          -Borrower

_____ (Seal)
Susan L Ceccarelli           -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

[Sign Original Only]

Note: For Florida property only, the State Documentary Tax due on this Note has been paid on the mortgage securing this indebtedness.

Loan origination organization   Morgan Stanley Private Bank, National Association
NMLS ID                         663185
Loan originator                 Frank J Rivera
NMLS ID                         223330

MULTISTATE ADJUSTABLE RATE One-Month Note - LIBOR Index - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

(Page 4 of 4)

SpA.658

607

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Return To:
Morgan Stanley Private Bank, National Association
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel NJ 08054

Prepared By:
Tammy Mosley
c/o PHH Mortgage, 1 Mortgage Way, Mount Laurel, NJ 08054

### EXHIBIT D CONSOLIDATED
## Mortgage

LC15000021

MIN         3935

### Words Used Often In This Document

(A) "Security Instrument." This document, which is dated   January 30, 2015  , together with all Riders to this document, will be called the "Security Instrument."

(B) "Borrower."
Joseph J. Ceccarelli and Susan L. Ceccarelli, husband and wife

whose address is 200 East 32nd Street, UNIT 28B New York City, NY 10016

sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, with a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834 and telephone number of (888) 679-MERS. FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

The Premises are improved by a One or Two Family Dwelling.

| Section: | Block: 912 | Lot: 1161 | Unit: |
|---|---|---|---|

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 1 of 21

SpA.659

608

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

(D) "Lender."

Morgan Stanley Private Bank, National Association
will be called "Lender." Lender is a corporation or association which exists under the laws of
United States of America         . Lender's address is  1 Mortgage Way, Mount Laurel,
NJ 08054

(E) "Note." The note signed by Borrower and dated   January 30, 2015      , will be called
the "Note." The Note shows that I owe Lender
One Million Five Hundred Forty Thousand Dollars and Zero Cents
             Dollars (U.S. $1,540,000.00       ) plus interest and other amounts that
may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by
February 01, 2040      .

(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to
Lender of Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and
other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization will be called "Community Association Dues, Fees,
and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other
than by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial
institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are
point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated
teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated
clearinghouse transfers.

by Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Wolters Kluwer Financial Services

Form 3633 1/01
VMP6A(NY) (1302)
Page 2 of 31

SpA.660

609

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

### Borrower's Transfer To Lender Of Rights In The Property

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1002)
Page 3 of 31

SpA.661

610

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

### Description Of The Property

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A)  The Property which is located at
200 East 32nd Street, UNIT 28B          [Street]
NEW YORK CITY                           [City, Town or Village], New York  10016    [Zip Code].
This Property is in NEW YORK                                                County. It has the following
legal description:
See Attached Legal Description

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

### Borrower's Right To Mortgage The Property And Borrower's Obligation To Defend Ownership Of The Property

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 4 of 21

611

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### Plain Language Security Instrument

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

### Covenants

I promise and I agree with Lender as follows:

1.  **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

    Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2.  **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:
    First, to pay interest due under the Note;
    Next, to pay principal due under the Note; and
    Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
    Such payments will be applied to each Periodic Payment in the order in which it became due.
    Any remaining amounts will be applied as follows:
    First, to pay any late charges;
    Next, to pay any other amounts due under this Security Instrument; and
    Next, to reduce the principal balance of the Note.

Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Wolters Kluwer Financial Services

Form 3033 1/51
VMP6A(NY) (1203)
Page 5 of 31

SpA.663

612

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3.  Monthly Payments For Taxes And Insurance.
    (a) Borrower's Obligations.
        I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"
        (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"
        (2) The leasehold payments or ground rents on the Property (if any);
        (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;
        (4) The premium for Mortgage Insurance (if any);
        (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and
        (6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

        After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

        I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

        The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 6 of 21

SpA.664

613

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b)  Lender's Obligations.**
Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c)  Adjustments to the Escrow Funds.**
Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 7 of 21

SpA.665

614

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. **Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

5. **Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3033 1/01

VMP ®    VMP6A(NY) (1302)

Wolters Kluwer Financial Services    Page 6 of 21

SpA.666

615

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (e) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance

Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1303)
Page 6 of 21

SpA.667

616

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**
   (a) **Maintenance and Protection of the Property.**
   I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.
   (b) **Lender's Inspection of Property.**
   Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information

Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 10 of 21

617

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

9. **Lender's Right to Protect Its Rights In The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, this Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 11 of 21

618

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1301)
Page 12 of 21

SpA.670

619

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 13 of 21

SpA.671

620

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

NEW YORK Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 14 of 21

621

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 13 of 21

SpA.673

622

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights if the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 16 of 21

SpA.674

623

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

20. **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property

By-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 17 of 21

SpA.675

624

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

### Non-Uniform Covenants

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

NEW YORK Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 18 of 21

625

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. **Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. **Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1503)
Page 19 of 21

SpA.677

626

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 21 of this Security Instrument and in any Rider signed by me and recorded with it.

**Borrower**

_____          _____
Joseph J Ceccarelli                                Date
                                                   (Seal)

_____          _____
Susan L Ceccarelli                                 Date
                                                   (Seal)

_____          _____
                                                   Date
                                                   (Seal)

_____          _____
                                                   Date
                                                   (Seal)

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 20 of 21

SpA.678

627

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Acknowledgment
State of    New York
County of  NEW YORK
On        January 30, 2015       before me, the undersigned, personally appeared
Joseph J Ceccarelli, Susan L Ceccarelli ;  husband and wife.

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) upon behalf of which the individual(s) acted, executed the instrument.

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 02SA3272123
Qualified in New York County
Commission Expires November 13, 2016

*Notary Public*

*My commission expires:*

Tax Map Information: STARS
                     c/o PHH Mortgage, P.O. Box 5455
Loan origination organization  Morgan Stanley Private Bank, National Association
NMLS ID  663185
Loan originator  Frank J Rivera
NMLS ID  223230

NEW YORK-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3033 1/01
VMP6A(NY) (1302)
Page 21 of 21

SpA.679

628

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 30th day of January, 2015 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **Morgan Stanley Private Bank, National Association**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

200 East 32nd Street, UNIT 28B New York City, NY 10016
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 2.200%. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay will change on the first day of April, 2015 , and on that day every month thereafter. Each date on which my adjustable rate could change is called a "Change Date".

One Month Adjustable Rate Rider

*(Page 1 of 3)*



629

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 1 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date twenty-five (25) days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding

Two and Seventy-Five / Thousandths    percentage point(s) ( 2.075% ) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

(i) **Interest-Only Period.** The "interest-only period" is the period from the date of this Note through January 31, 2025 . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid Principal of my loan. The result of this calculation will be the new amount of my monthly payment.

(ii) **Amortization Period.** The "amortization period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

My interest rate will never be greater than 12.000%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

 Rate Rider

*(Page 2 of 3)*



630

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
Joseph J Ceccarelli   -Borrower

_____ (Seal)
Susan L Ceccarelli   -Borrower

_____ (Seal)
  -Borrower

_____ (Seal)
  -Borrower

_____ (Seal)
  -Borrower

_____ (Seal)
  -Borrower

_____ (Seal)
  -Borrower

_____ (Seal)
  -Borrower

One Month Adjustable Rate Rider

Loan origination organization Morgan Stanley Private Bank, National Association
NMLS ID 663185

(Page 3 of 3)

SpA.682

631

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this    30th    day of    January, 2015    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to  Morgan Stanley Private Bank, National Association

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:  200 East 32nd Street, UNIT 28B New York City, NY 10016

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:  **THE FUTURE CONDOMINUM**

[Name of Condominium Project]

(the "Condominium Project").  If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01
Wolters Kluwer Financial Services
VMP®-8R (0810)
Page 1 of 3                Initials:         Page 1 of 3

632

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. Lender's Prior Consent. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. Remedies. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE **CONDOMINIUM RIDER** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-8R (0810)                           Page 2 of 3          Initials           Form 3140 1/01

SpA.684

633

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_____ (Seal)
Joseph J Ceccarelli                -Borrower

_____ (Seal)
Susan L Ceccarelli                -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

**MULTISTATE CONDOMINIUM RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3140 1/01
VMP®-8R (0810)                    Page 3 of 3

Loan origination organization  Morgan Stanley Private Bank, National Association
NMLS ID  663185



SpA.685

634

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

'Exhibit A'

Address:     200 East 32nd Street Unit 28B
New York, NY 10016

LEGAL **DESCRIPTION**

County:            NEW YORK

Property Address:   200 East 32nd Street Unit 28B
                    New York, NY 10016

THE CONDOMINIUM UNIT (HEREINAFTER TO AS THE "UNIT) IN THE BUILDING (HEREINAFTER REFERRED TO AS THE "BUILDING") KNOWN AS THE FUTURE AND BY THE STREET NUMBER 200 EAST 32ND STREET, BOROUGH OF MANHATTAN, CITY COUNTY AND STATE OF NEW YORK, SAID UNIT BEING DESIGNATED AND DESCRIBED AS UNIT NO. 28B IN THAT CERTAIN DECLARATION DATED MARCH 8, 1993 MADE BY 32ND STREET SOUTHEAST COMPANY L.P. PURSUANT TO ARTICLE 9-B OF THE REAL PROPERTY LAW OF THE STATE OF NEW YORK (HEREINAFTER REFERRED TO AS THE "CONDOMINIUM ACT") ESTABLISHING A PLAN FOR CONDOMINIUM OWNERSHIP OF THE BUILDING AND THE LAND (HEREINAFTER REFERRED TO AS THE "LAND") UPON WHICH THE BUILDING IS SITUATE (WHICH LAND IS MORE PARTICULARLY DESCRIBED IN EXHIBIT A ANNEXED HERETO AND BY THE REFERENCE MADE A PART HEREOF) WHICH DECLARATION WAS RECORDED IN THE NEW YORK COUNTY OFFICE OF THE REGISTER OF THE CITY OF NEW YORK ON MAY 20, 1993 IN REEL 1972 PAGE 166 (AND HAS BEEN AMENDED AS SET FORTH ON EXHIBIT B ANNEXED HERETO AND BY THIS REFERENCED MADE A PART HEREOF) (WHICH DECLARATION AND ANY AMENDMENTS THERETO ARE HEREINAFTER COLLECTIVELY REFERRED TO A THE "DECLARATION") THIS UNIT IS ALSO DESIGNATED AS TAX LOT 1165 IN BLOCK 912, OF THE BOROUGH OF MANHATTAN ON THE TAX MAP OF THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK AND ON THE FLOOR PLANS OF THE BUILDING, CERTIFIED BY COSTAS KONDEYLAS, ARCHITECTS, ON APRIL 8, 1993 AND FILED WITH THE REAL PROPERTY ASSESSMENT DEPARTMENT OF THE CITY OF NEW YORK ON MAY 20, 1993 AND ALSO FILED IN THE CITY REGISTER'S OFFICE ON MAY 20, 1993, AS CONDOMINIUM PLAN NO. 844;

TOGETHER WITH AN UNDIVIDED .761143% INTEREST IN THE COMMON ELEMENTS (AS SUCH TERM IS DEFINED IN THE DECLARATION);

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE BOROUGH OF MANHATTAN CITY, COUNTY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF EAST 32ND STREET AND THE EASTERLY SIDE OF THIRD AVENUE;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF EAST 32ND STREET, 85 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 110 FEET 8 ¼ INCHES;

THENCE EASTERLY AND PARALLEL WITH EAST 32ND STREET AND 50 FEET;

SpA.686

635

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 36 FEET 9 ¼ INCHES;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 35 FEET;

THENCE SOUTHERLY AND PARALLEL WITH THIRD AVENUE, 25 FEET;

THENCE WESTERLY AND PARALLEL WITH EAST 32ND STREET, 100 FEET TO THE EASTERLY SIDE OF THIRD AVENUE;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF THIRD AVENUE, 172 FEET 6 INCHES TO THE SOUTHERLY SIDE OF EAST 32ND STREET, THE POINT OR PLACE OF BEGINNING.

TAX ID #: BLOCK: 912 LOT: 1165

For information only: Property Address: 200/202 EAST 32TH STREET UNIT 28B, NEW YORK, NY 10016 A/K/A 453/467 3 AVENUE UNIT 28B, NEW YORK, NY 10016

SpA.687

636

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



NYC DEPARTMENT OF FINANC[E]
OFFICE OF THE CITY REGISTE[R]

| SUPPORTING DOCUMENT COVER PAGE | | PAGE 1 OF 1 |
|---|---|---|
| Document ID: 2015021301103003 | Document Date: 01-30-2015 | Preparation Date: 02-13-2015 |
| Document Type: AGREEMENT | | |

**SUPPORTING DOCUMENTS SUBMITTED:**

|  | Page Count |
|---|---|
| 255 MORTGAGE TAX EXEMPT AFFIDAVIT | 3 |

SpA.688

637

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

## SECTION 255 AFFIDAVIT

State of New York )

                )

ss.: County of New
york )

Joseph J. Ceccarelli and Susan L. Ceccarelli , being duly sworn, depose and say that:

I/We are the owner(s) of property situate at 200 East 32nd Street, Unit 28B, New York, NY 10016 and the borrowers of the mortgages hereinafter described:

1. Mortgage made by Joseph J. Ceccarelli and Susan K. Langholz to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 02/07/2000, recorded 03/22/2000 in Reel 3070 Page 2071 in the original amount of $820,000.00 of the Public Record of New York County, NY, (Mortgage tax paid $17,400.00);

1a. Assignment of Mortgage from Merrill Lynch Credit Corporation to Cendant Mortgage Corporation, dated 11/28/2001, recorded 1/30/2002 in Reel 3440 Page 507 of the Public Record of New York County, NY;

1b. Assignment of Mortgage from PHH Mortgage Corporation f/k/a Cendant Mortgage Corporation to Merrill Lynch Credit Corporation, its successors and/or assigns dated 03/09/2006, recorded 06/16/2006 in CRFN 2006000342599 of the Public Record of New York County, NY;

2. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation, as Mortgagee(s) dated 11/14/2005, recorded 06/16/2006 in CRFN 2006000342600 in the original amount of $457,500.00 of the Public Record of New York County, NY, (Mortgage tax paid $9,348.75);

2a. The above Mortgages were consolidated to form a single lien of $1,277,500.00 by a Consolidation, Extension, and Modification Agreement dated 11/14/2005 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Merrill Lynch Credit Corporation, which said Agreement was recorded on 06/16/2006 in CRFN 2006000342601 of the Public Record of New York County, NY;

2b. Assignment of Mortgage from PHH Mortgage Corporation, attorney in fact for Bank of America, National Association, a National Banking Association, as successor in interest by merger to Merrill Lynch Credit Corporation to Morgan Stanley Private Bank, National Association, its successors and/or assigns , dated 11/16/2012, recorded 10/27/2014 in CRFN 2014000356095 of the Public Record of New York County, NY;

3. Mortgage made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association, as Mortgagee(s) dated 12/28/2012, recorded 10/27/2014 in CRF 2014000356096 in the original amount of $9,500.00 of the Public Record of New

638

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

York County, NY, (Mortgage tax paid $166.25);

3a. The above Mortgages were consolidated to form a single lien of $1,287,000.00 by a Consolidated, Extension, and Modification Agreement dated 12/28/2012 made between Joseph J. Ceccarelli and Susan L. Ceccarelli and Morgan Stanley Private Bank, National Association, which said Agreement was recorded on 10/27/2014 in CRFN 2014000356097, of the Public Record of New York County, NY. Having an unpaid principal balance of $1,286,998.38;

3b. Assignment of Mortgage dated 11/11/2014 made by Morgan Stanley Private Bank, National Association to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association, , its successors and assigns, which Assignment of Mortgage is intended to be recorded simultaneously herewith;

4. Mortgage dated 01/30/2015 made by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association in the amount of $253,001.62, with mortgage tax in the amount of $4,652.20 to be recorded simultaneously herewith;

4a. The above Mortgages are consolidated by a Consolidation, Extension, and Modification Agreement dated 01/30/2015 between Joseph J. Ceccarelli and Susan L. Ceccarelli and Mortgage Electronic Registration Systems, Inc. as nominee for Morgan Stanley Private Bank, National Association to form a single lien in the amount of $1,540,000.00 and to be duly recorded in the Office of the Register of New York County, NY.

Consolidation, Extension, and Modification Agreement herewith dated 01/30/2015 executed by Owner and mortgagee tendered for recording is given for the purpose of further securing the same principal indebtedness as reduced and said consolidation and/or extension does not create or secure any now or further indebtedness or obligation other than the principal indebtedness secured by said mortgage. That there have been no re-loans or re-advances on said mortgages. The maximum amount secured by all mortgages here is $1,540,000.00

SpA.690

639

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

WHEREFORE, deponent(s) respectfully request that the Modification Agreement tendered therewith for recording be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law of the State of New York.

Joseph J Ceccarelli

Susan L Ceccarelli

Subscribed and sworn to _____

this _____ 3.rd _____ day of _____ JANUARY _____ , 2015

Notary Public

RONALD A SANON
NOTARY PUBLIC - STATE OF NEW YORK
No. 02SA6272123
Qualified in New York County
Commission Expires November 13, 2016

SpA.691

640

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2016081500432001001E4024

**RECORDING AND ENDORSEMENT COVER PAGE** PAGE 1 OF 4

| | | |
|---|---|---|
| Document ID: 2016081500432001 | Document Date: 08-03-2016 | Preparation Date: 08-15-2016 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

**PRESENTER:**
PHH MORTGAGE 4
1 MORTGAGE WAY
MOUNT LAUREL, NJ 08054
SUPPORT@SIMPLIFILE.COM

**RETURN TO:**
PHH MORTGAGE CORPORATION
1760 WEHRLE DRIVE
WILLIAMSVILLE, NY 14221
SUPPORT@SIMPLIFILE.COM

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 912 | 1165 Entire Lot | 28B | 200 EAST 32ND STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

MANHATTAN Year: 2000 Reel: 3070 Page: 2071
☒ Additional Cross References on Continuation Page

**PARTIES**

**ASSIGNOR/OLD LENDER:**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC
1901 E VOORHEES STREET SUITE C
DANVILLE, IL 61834

**ASSIGNEE/NEW LENDER:**
MORGAN STANLEY PRIVATE BANK NATIONAL ASSOCIATION
1 MORTGAGE WAY
MT LAUREL, NJ 08054

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 47.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK
Recorded/Filed 08-18-2016 10:18
City Register File No.(CRFN): 2016000283133

City Register Official Signature

SpA.692

641

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2016081500432001001C42A4

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 4 |
| --- | --- | --- |
| Document ID: 2016081500432001 | Document Date: 08-03-2016 | Preparation Date: 08-15-2016 |
| Document Type: ASSIGNMENT, MORTGAGE | | |

**CROSS REFERENCE DATA**
MANHATTAN Year: 2002 Reel: 3440 Page: 507
CRFN: 2006000342600
CRFN: 2006000342601
CRFN: 2006000342599
CRFN: 2014000356095
CRFN: 2014000356096
CRFN: 2014000356097
CRFN: 2016000058944
CRFN: 2016000058945
CRFN: 2016000058946

**PARTIES**

ASSIGNOR/OLD LENDER:
MORGAN STANLEY PRIVATE BANK NATIONAL
ASSOCIATION
1901 E VOORHEES STREET SUITE C
DANVILLE, IL 61834

SpA.693

642

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

Recording Requested By:
PHH Mortgage Corporation (PHH)

When Recorded Return To:

Legal Entity Review Department
PHH Mortgage Corporation (PHH)
1760 WEHRLE DRIVE
WILLIAMSVILLE, NY 14221

**CORPORATE ASSIGNMENT OF MORTGAGE**

New York, New York
SELLER'S SERVICER # [redacted] CECCARELLI
SIM #: [redacted]

Date of Assignment: August 3rd, 2016
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION ITS SUCCESSORS AND ASSIGNS at PO BOX 2026, FLINT, MI 48501-2026
Assignee: MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION at 1 MORTGAGE WAY, MT LAUREL, NJ 08054
Executed By: JOSEPH J. CECCARELLI AND SUSAN K. LANGHOLZ To: MERRILL LYNCH CREDIT CORPORATION
Date of Mortgage: 03/09/2000 Recorded: 03/28/2000 in Book/Reel/Liber: 3070 Page/Folio: 2071 as Instrument No.: N/A in the County of New York, State of New York.

-Assigned Wholly by MERRILL LYNCH CREDIT CORPORATION TO CENDANT MORTGAGE CORPORATION Dated: 11/05/2001 Recorded: 01/30/2002 in Book/Reel/Liber: 3340 Page/Folio: 507 as Instrument No.: N/A
-New Mortgage: Dated 11/14/2005 and Recorded 03/10/2006 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2006000135900 between JOSEPH J. CECCARELLI AND SUSAN L. CECCARELLI HUSBAND AND WIFE and MERRILL LYNCH CREDIT CORPORATION in the amount of $467,500.00

Mortgage Consolidation, consolidating original mortgage and the above referenced mortgage, constituting a consolidated mortgage Dated 11/14/2005 and Recorded 03/10/2006 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2006000135900 between JOSEPH J. CECCARELLI AND SUSAN L. CECCARELLI HUSBAND AND WIFE and MERRILL LYNCH CREDIT CORPORATION in the amount of $1,277,500.00

-Assigned Wholly by PHH MORTGAGE CORP FKA CENDANT MORTGAGE CORPORATION TO MERRILL LYNCH CREDIT CORPORATION Dated: 03/31/2000 Recorded: 03/18/2005 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2005000245520
-Assigned Wholly by PHH MORTGAGE CORPORATION ATTORNEY IN FACT FOR BANK OF AMERICA, N.A., A NATIONAL BANKING ASSOCIATION SUCCESSOR BY INTEREST BY MERGER TO MERRILL LYNCH CREDIT CORPORATION TO MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION Dated: 10/12/2012 Recorded: 10/24/2014 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2014000352659
-New Mortgage: Dated 12/08/2012 and Recorded 10/27/2014 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2014000352659 between JOSEPH J. CECCARELLI, A MARRIED PERSON AND SUSAN L. CECCARELLI, A MARRIED PERSON and MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION in the amount of $9,000.00

Mortgage Consolidation, consolidating original mortgage and the above referenced mortgage, constituting a consolidated mortgage Dated 12/08/2012 and Recorded 10/27/2014 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2014000352657 between JOSEPH J. CECCARELLI, A MARRIED PERSON AND SUSAN L. CECCARELLI, A MARRIED PERSON and MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION in the amount of $1,287,500.00

-Assigned Wholly by MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS Dated: 11/11/2014 Recorded: 02/20/2015 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2015000053944
-New Mortgage: Dated 01/23/2015 and Recorded 02/20/2015 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2015000053945 between JOSEPH J. CECCARELLI AND SUSAN L. CECCARELLI, HUSBAND AND WIFE and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS in the amount of $262,531.92

Mortgage Consolidation, consolidating original mortgage and the above referenced mortgage, constituting a consolidated mortgage Dated 01/23/2015 and Recorded 02/20/2015 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2015000053946 between JOSEPH J. CECCARELLI AND SUSAN L. CECCARELLI, HUSBAND AND WIFE and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION, ITS SUCCESSORS AND ASSIGNS in the amount of $1,500,000.00

Section/Block/Lot: 942-1165

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC has a physical address at 1901 E Voorhees Street, Suite C, Danville, IL 61834 and a mailing address at P.O. BOX 2026, FLINT, MI 48501-2026

Property Address: 300 EAST 22ND STREET 3EU, NEW YORK, NY 10046
This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of

SpA.694

643

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $528,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION ITS SUCCESSORS AND ASSIGNS

On August 3rd 2016

By _____
JACQUELINE WATKINS, Assistant Secretary

STATE OF New York
COUNTY OF Erie

On the 3rd day of August in the year 2016 before me, the undersigned, personally appeared JACQUELINE WATKINS, Assistant Secretary, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
NUNZIA WALKER
Notary Expires: 11/27/2018 #01WA6051407
Erie, New York
Qualified in Erie County

SpA.695

644

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

Exhibit C

SpA.696

645

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY.

| | | |
|---|---|---|
| PRESENT: HON. ARLENE P. BLUTH | PART | IAS MOTION 32 |
| Justice | | |
| | INDEX NO. | 850018/2017 |
| MORTGAGE STANLEY PRIVATE BANK, NATIONAL ASSOCIATION, | MOTION DATE | N/A |
| Plaintiff, | MOTION SEQ. NO. | 001 |
| - v - | | |
| JOSEPH J. CECCARELLI III aka JOSEPH J. CECCARELLI, SUSAN LAGHOLZ aka SUSAN L. CECCARELLI aka SUSAN LANGHOLZ CECCARELLI, BOARD OF MANAGERS OF THE FUTURE CONDOMINIUM, RBS CITIZENS, N.A., JOHN DOE AND JANE DOE #1 THROUGH #7, THE LAST SEVEN 7 NAMES BEING FICTITIOUS OR UNKNOWN TO THE PLAINTIFF, THE PERSONS OR PARTIES INTENDED BEING THE TENANTS, OCCUPANTS, PERSONS OR PARTIES, IF ANY, HAVING OR CLAIMING AN INTEREST IN OR LIEN UPON THE MORTGAGED PREMISES DESCRIBED IN THE COMPLAINT, | DECISION AND ORDER OF REFERENCE | |
| Defendants. | | |

The following e-filed documents, listed by NYSCEF document number (Motion 001) 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 49, 53, 54, 55, 56, 57, 58, 59, 61, 62

were read on this motion to/for _____ JUDGMENT - SUMMARY .

The motion by plaintiff for summary judgment against defendants Joseph Ceccarelli and

Susan Ceccarelli, a default judgment against the remaining defendants, and for an order of

reference is granted. The cross-motion to *inter alia* compel discovery by the Ceccarellis

("defendants") is denied.

**Background**

Plaintiff seeks to foreclose a property located at 200 East 32nd Street, Apt. 28B in

Manhattan. Defendants raise three issues in opposition to plaintiff's motion and in support of

their cross-motion: (1) discovery is required, (2) the affidavit of merit and amount due is

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI III, JOSEPH J
Motion No. 001

Page 1 of 6

SpA.697

646

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

insufficient because it was signed outside of New York and lacks a certificate of conformity, and (3) plaintiff is not entitled to summary judgment under the doctrine equitable estoppel.

**Discovery**

"A grant of summary judgment cannot be avoided by a claimed need for discovery unless some evidentiary basis is offered to suggest that discovery may lead to relevant evidence" (*Bailey v New York City Tr. Auth.*, 270 AD2d 156, 157, 704 NYS2d 582 [1st Dept 2000]). Here, defendant Ceccarelli claims in opposition and in support of his cross-motion that discovery is necessary to explore whether plaintiff has standing. Defendant complains that the note was sold to an unknown-third party investor.

"Nevertheless, if the note is affixed to the summons and complaint at the time the action is commenced, it is unnecessary to give factual details of the delivery to establish that possession was obtained prior to a particular date" (*Bank of New York Mellon v Knowles*, 151 AD3d 596, 596-97, 57 NYS3d 473 [1st Dept 2017] [internal quotations and citations omitted]). "[I]t is the note, and not the mortgage, that is the dispositive instrument that conveys standing to foreclose" (*Wells Fargo Bank, N.A. v Lawson Ho-Shing*, 168 AD3d 126, 131, 92 NYS3d 194 [1st Dept 2019]).

Here, plaintiff attached the note to the complaint and met its prima facie burden to establish standing (NYSCEF Doc. No. 1, exh D). Defendants failed to raise an issue of fact as to why the Court should question the note attached to the complaint. There is no reason for discovery where plaintiff has established standing and defendants admit that they defaulted on the mortgage. Put simply, there is no question that plaintiff has standing and that defendants fell behind on the payments. Discovery for the sake of discovery is not necessary.

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI, II, JOSEPH J
Motion No. 001

Page 2 of 6

SpA.698

647

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

RECEIVED NYSCEF: 04/05/2019

**Out-of-State Affidavit**

The Court finds that the affidavit from plaintiff's loan servicing agent (NYSCEF Doc. No. 30) is admissible despite the fact that the affiant was in New Jersey and the affidavit lacks a certificate of conformity (see *Midfirst Bank v Agho*, 121 AD3d 343, 991 NYS2d 623 [2d Dept 2014] [finding that an out-of-state affidavit in a foreclosure action was admissible because it was sworn to in a manner rendering it admissible under New York law]).

**Equitable Estoppel**

> "The party invoking a defense of equitable estoppel must establish: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than and inconsistent with, those which the party subsequently seeks to assert; (2) intention, or at least expectation, that such conduct will be acted upon by the other party; (3) and, in some situations, knowledge, actual or constructive, of the real facts . . . The purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted.... Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position" (*757 3rd Ave Assocs., LLC v Patel*, 117 AD3d 451, 453-54, 985 NYS2d 57 [1st Dept 2014]).

Defendant Joseph Ceccarelli claims that while he was negotiating with plaintiff about a potential loan modification, plaintiff suggested that a condition for getting a loan modification for the Manhattan property was paying off the mortgage on a separate property in North Carolina (both loans were apparently held by plaintiff). He complains that he was not given a loan modification after making the payments on the North Carolina property.

This does not establish an issue of fact compelling the Court to deny plaintiff's motion nor does it substantiate defendants' affirmative defense. The fact that a bank representative recommended that defendants pay off another loan to be in a better position for a loan

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI, III, JOSEPH J
Motion No. 001

Page 3 of 6

SpA.699

648

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM
NYSCEF DOC. NO. 63

INDEX . 850018 2017
RECEIVED NYSCEF: 04/05/2019

modification for the Manhattan property does not support a claim for equitable estoppel. Defendants do not argue that plaintiff promised to forgive the entire mortgage on his Manhattan property if he paid off the North Carolina property. Instead, they claim that they should have received a loan modification—that does not justify dismissing the case. In other words, defendants want the Court to wipe away an outstanding debt of $1,676,660.05 (according to plaintiff) because they made a large payment on another loan. A loan modification is a business judgment made by plaintiff to reach a settlement rather than pursue a foreclosure action. This Court will not let negotiations about a possible settlement be used as a justification for giving a defaulting defendant a house free and clear.

Accordingly, it is hereby

ORDERED that plaintiff's motion is granted, the affirmative defenses asserted in the Ceccarellis' amended answer (NYSCEF Doc. No. 18) are severed and dismissed, and plaintiff is granted a default judgment against the non-appearing defendants, and the cross-motion by the Ceccarellis is denied, and it is further

ORDERED that _____Arthur Greig, Esq._____, with an address at 401 Broadway Suite 1902 NY NY 10013 212-941-0230 is hereby appointed Referee in accordance with RPAPL § 1321 to compute the amount due to Plaintiff for principal, interest and other disbursements advanced as provided for in the note and mortgage upon which this action is brought, and to examine whether the mortgaged property can be sold in parcels; and it is further

ORDERED that the Referee may take testimony pursuant to RPAPL § 1321; and it is further

ORDERED that by accepting this appointment the Referee certifies that he is in

850018/2017  MORTGAGE STANLEY PRIVATE vs. CECCARELLI, III, JOSEPH J
Motion No. 001

Page 4 of 6

649

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

compliance with Part 36 of the Rules of the Chief Judge (22 NYCRR Part 36), including, but not limited to §36.2 (c) ("Disqualifications from appointment"), and §36.2 (d) ("Limitations on appointments based upon compensation"), and, if the Referee is disqualified from receiving an appointment pursuant to the provisions of that Rule, the Referee shall immediately notify the Appointing Judge; and it is further

ORDERED that, pursuant to CPLR 8003(a), and in the discretion of the court, a fee of $350 shall be paid to the Referee for the computation of the amount due and upon the filing of her/his report and the Referee shall not request or accept additional compensation for the computation unless it has been fixed by the court in accordance with CPLR 8003(b); and it is further;

ORDERED that the Referee is prohibited from accepting or retaining any funds for himself or paying funds to himself without compliance with Part 36 of the Rules of the Chief Administrative Judge; and it is further

ORDERED that plaintiff shall forward all necessary documents to the Referee within 30 days of the date of this order and shall *promptly* respond to every inquiry made by the referee (promptly means within two business days); and it is further

ORDERED that plaintiff must bring a motion for a judgment of foreclosure and sale within 30 days of receipt of the referee's report; and it is further

ORDERED that if plaintiff fails to meet these deadlines, then the Court may *sua sponte* vacate this order and direct plaintiff to move again for an order of reference and the Court may *sua sponte* toll interest depending on whether the delays are due to plaintiff's failure to move this litigation forward; and it further

ORDERED that "JOHN DOE" and "JANE DOE" #1 through 7 be removed as

850018/2017 MORTGAGE STANLEY PRIVATE vs. CECCARELLI III, JOSEPH J
Motion No. 001

Page 5 of 6

SpA.701

650

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

FILED: NEW YORK COUNTY CLERK 04/05/2019 03:48 PM

NYSCEF DOC. NO. 63

INDEX NO. 850018/2017

RECEIVED NYSCEF: 04/05/2019

defendants, that the caption of this action be amended to reflect the removal of these defendants, and that the Clerk of the Court amend the docket and electronic docket accordingly; and it is further; and it is further

ORDERED that counsel for plaintiff shall serve a copy of this order with notice of entry upon the County Clerk (60 Centre Street, Room 141B) and the General Clerk's Office (60 Centre Street, Room 119), who are directed to mark the court's records to reflect the parties being removed; and it is further

ORDERED that such service upon the County Clerk and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website at the address (ww.nycourts.gov/supctmanh)]; and it is further

ORDERED that Plaintiff shall serve a copy of this Order with notice of entry on all parties and persons entitled to notice, including the Referee appointed herein.

Next Conference: June 27, 2019 at 10 am.

3/29/19
DATE

ARLENE P. BLUTH, J.S.C.
HON. ARLENE P. BLUTH

CHECK ONE:               CASE DISPOSED          X   NON-FINAL DISPOSITION
                    X    GRANTED      ☐ DENIED       GRANTED IN PART     ☐ OTHER
APPLICATION:             SETTLE ORDER              SUBMIT ORDER
CHECK IF APPROPRIATE:    INCLUDES TRANSFER/REASSIGN  FIDUCIARY APPOINTMENT ☐ REFERENCE

850018/2017  MORTGAGE STANLEY PRIVATE vs. CECCARELLI, III, JOSEPH J
Motion No. 001

Page 6 of 6

6 of 6

SpA.702

651

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Exhibit D

SpA.703

652

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff,

-against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K.
Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future Condominium;
RBS Citizens, N.A., et al,

Defendants.

**AFFIDAVIT IN
SUPPORT OF MERIT AND
AMOUNTS DUE**

Index No. 850018/2017

Property Address:

200 East 32nd Street
New York City, NY 10016

Block 912 Lot 1165

STATE OF New Jersey )
                     ) ss.
COUNTY OF Mercer )

Wilma My ow _____, being duly sworn, deposes and says:

1. I am the Vice President Doc. Exec of Cenlar FSB, which is a duly authorized the mortgage loan servicing agent of the Plaintiff, Mortgage Stanley Private Bank, National Association, and have personal knowledge of the facts of this matter. The source of my knowledge is my review of the electronic records of Cenlar FSB, regarding the delinquent account of the Defendant and my own knowledge of how those electronic records are kept and maintained. Those records include, but are not limited to, electronic images of the note and electronic records maintained by Cenlar FSB, to track payments received and advances made in connection with the Defendant's mortgage account. As a loan servicer, Cenlar FSB collects payments from borrowers and maintains up-to-date electronic records concerning the loan it services in its electronic record keeping system. The electronic record keeping system is updated contemporaneously with the receipt of payments and the payment of advances so that those items

17-063874                          Affidavit                          Page 1 of 6

SpA.704

653

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

are reflected at or very near the time they occur. These computer records are made and kept in the regular course of the business of Cenlar FSB as loan servicer.

2. I make this Affidavit in support of the appointment of a Referee and to aid said Referee in computing the sums due on the Note and Mortgage.

3. That Mortgage Stanley Private Bank, National Association is the mortgagee of a consolidated and/or modified Mortgage dated January 30, 2015, in the original principal balance of $1,540,000.00, executed by Joseph J. Ceccarelli and Susan L. Ceccarelli, as Mortgagor(s) to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank, National Association, as Mortgagee, to secure the sum of $1,540,000.00, and recorded in the New York County Office of the City Register on February 20, 2015, in CRFN 2015000058946. The foregoing instrument consolidated and/or modified the following mortgage(s): The Mortgage given by joseph J. Ceccarelli and Susan. K. Langholz to Merill Lynch Credit Corporation to secure the sum of $820,000.00 dated February 7, 2000 and recorded on March 22, 2000 in Reel 3070, page 2071. The Note and Mortgage were transferred to Cendant Mortgage Corporation and said transfer was memorialized by an Assignment of Mortgage dated November 28, 2001 and recorded on January 30, 2002 in Reel 3440, page 0507. The Note and Mortgage were subsequently transferred to Merrill Lynch Credit Corporation and said transfer was memorialized by an Assignment of Mortgage dated March 9, 2006 and recorded on June 16, 2006 in CRFN 2006000342599. the Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $457,000.00 dated November 14, 2005 and recorded on June 16, 2006 in CRFN 2006000342600. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $1,277,500.00 dated

17-063874                           Affidavit                           Page 2 of 6

654

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

November 14, 2005 and recorded on june 16, 2006 in CRFN 2006000342601. The Note and Mortgage were transferred to Morgan Stanley Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 16, 2012 and recorded on October 27, 2014 in CRFN 2014000356095. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association to secure the sum of $9,500.00 dated December 28, 2012 and recorded on october 27, 2014 in CRFN 2014000356096. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association to secure the sum of $1,287,000.00 dated December 28, 2012 and recorded on October 27, 2014 in CRFN 2014000356097. The Note and Mortgage were transferred to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 11, 2014 and recorded on February 20, 2015 in CRFN 2015000058944. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank National Association to secure the sum of $253,001.62 dated January 30, 2015 and recorded on February 20, 2015 in CRFN 2015000058945. The Mortgage was transferred to Morgan Stanley Private Bank, National Association, and said transfer was memorialized by an Assignment of Mortgage executed on August 3, 2016 and recorded August 18, 2016 in CRFN 2016000285133.

4. The servicing records further show that in accordance with the provisions of the mortgage, a notice of default was mailed to the Borrower on April 20, 2016 at the last known address, which is 200 East 32nd Street, New York City, NY 10016.

17-063874                                    Affidavit                                    Page 3 of 6

SpA.706

655

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

5. I reviewed the notice of default and confirm that it complied with the terms of the mortgage, including the time and content requirements contained therein. The default stated in said notice was not cured. A complete copy of the notice(s) of default is attached to this application.

6. The servicing records further show that a ninety (90) day pre-foreclosure notice ("90 Day Notice") with a list of at least five (5) housing counseling agencies was sent, in its own separate envelope, by registered or certified and first class mail to Joseph J. Ceccarelli and Susan L. Ceccarelli on June 2, 2016, to the address of the property, at 200 East 32nd Street, New York City, NY 10016. The text of the 90 Day Notice is typed in fourteen (14) point font. A complete copy of the 90 Day Notice(s) is attached to this application. In addition, within three (3) business days of the mailing of the 90 Day Notice, a notice was electronically filed with the Superintendent of Banks (now known as the Superintendent of Financial Services), as required by both RPAPL § 1306(2) and the Superintendent. A copy of the Proof of Filing Statement is attached to this application.

17-063874                          Affidavit                          Page 4 of 6

SpA.707

656

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

7. The instant loan is due for the March 1, 2016 installment and all subsequent installments, and by reason thereof, the Note and Mortgage are in default. The amount due upon said Note and Mortgage as of July 11, 2019, is as follows:

PRINCIPAL DUE ON NOTE AND MORTGAGE      $1,540,000.00

INTEREST at 2.500% due from 2/1/2016 through 9/30/2016      $185,922.88
INTEREST at 2.625% due from 10/1/2016 through 1/31/2017
INTEREST at 2.750% due from 2/1/2017 through 2/28/2017
INTEREST at 2.875% due from 3/1/2017 through 5/31/2017
INTEREST at 3.000% due from 6/1/2017 through 06/30/2017
INTEREST at 3.125% due from 7/1/2017 through 8/1/2017
INTEREST at 3.250% due from 9/1/2017 through 11/30/2017
INTEREST at 3.375% due from 12/1/2017 through 1/31/2018
INTEREST at 3.500 % due from 2/1/2018 through 2/28/2018
INTEREST at 3.625% due from 3/1/2018 through 4/30/2018
INTEREST at 3.750% due from 5/1/2018 through 5/31/2018
INTEREST at 4.000% due from 6/1/2018 through 7/31/2018
INTEREST at 4.125% due from 08/1/2018 through 10/31/2018
INTEREST at 4.250% due from 11/1/2018 through 11/30/2018
INTEREST at 4.375% due from 12/1/2018 through 07/31/2019

ACCRUED LATE CHARGES PRIOR TO DEFAULT      $320.65

ADVANCES

     Taxes      $ 77,700.05
     Inspections      $32.50
TOTAL ADVANCES      $77,732.55

     TOTAL:      $1,803,976.08

Plus per diem interest from August 1, 2019

SpA.708

657

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

8. Due to the default in payments as described hereinabove, the Plaintiff has the right, pursuant to the Mortgage, to commence foreclosure proceedings.

8/20/19

Cerdar FSB, which is a duly authorized the mortgage loan servicing agent of the Plaintiff, Mortgage Stanley Private Bank, National Association

Subscribed and sworn to before me this 20th day of Aug, 20 19

_____, Notary Public
(Signature required)

State of New Jersey
My Commission expires: 11-15-21
(Notary Stamp/Seal or expiration date required)

ELIZABETH AZCONA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires November 15, 2021
ID# 50049695

TO BE COMPLETED, IN ADDITION TO JURAT (ABOVE), IF EXECUTING OUTSIDE OF NEW YORK STATE

STATE OF New Jersey )
                     ) ss.
COUNTY OF Morus )

On the 20th day of August in the year 20 19 before me, the undersigned, a Notary Public in and for said State, personally appeared
Wilma McKoon _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

ELIZABETH AZCONA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires November 15, 2021
ID# 50049695

17-063874                    Affidavit                    Page 6 of 6

SpA.709

658

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Exhibit E

SpA.710

659

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

## LIMITED POWER OF ATTORNEY

This Limited Power of Attorney is executed as of November 21, 2017, by Morgan Stanley Private Bank, National Association, a national banking association ("MSPBNA"), having its principal place of business at 2000 Westchester Avenue, Purchase, New York 10577, in favor of Cenlar FSB, a federal savings bank ("Subservicer"), having its principal place of business at 425 Phillips Boulevard, Ewing, New Jersey 08618.

MSPBNA and Subservicer have entered into that certain Flow Subservicing Agreement dated as of the June 29, 2017, (the "Agreement") pursuant to which Subservicer subservices MSPBNA's mortgage loans ("Mortgage Loans"), as more fully set forth in the Agreement.

MSPBNA hereby constitutes and appoints Subservicer, by and through the officers listed on Attachment A hereto, each an officer of Subservicer, its true and lawful Attorney-in-Fact, in its name, place and stead and for its benefit, for the limited purposes of endorsing or executing certain documents in the name of MSPBNA necessary and incidental to the subservicing of certain Mortgage Loans pursuant to the Agreement, and taking actions necessary and incidental thereto:

(1)     To ask, demand, sue for, collect and receive all sums of money, debts or other obligations of any kind with respect to a Mortgage Loan which are now or shall after this date become due, owing or payable, or otherwise belong to MSPBNA; to endorse in the name of MSPBNA for deposit in the appropriate account any instrument payable to or to the order of MSPBNA; in each case with respect to a Mortgage Loan.

(2)     To make demand(s) on behalf of MSPBNA upon any or all parties liable on a Mortgage Loan; to declare defaults with respect to a Mortgage Loan; to give notices of intention to accelerate; to give notices of acceleration and any other notices as MSPBNA deems reasonably necessary or appropriate; to post all notices as required by law and the documents securing a Mortgage Loan in order to foreclose such Mortgage Loan; to handle all aspects of foreclosure on behalf of MSPBNA, including, but not limited to, conducting the foreclosure sale, bidding for MSPBNA and executing all documents, including all deeds and conveyances, needed to effect such foreclosure sale and/or liquidation; to execute any documents or instruments necessary for the offer, listing, closing of sale, and conveyance of REO property, including, but not limited to, grant, warranty, quit claim and statutory deeds or similar instruments of conveyance; to execute any documents or instruments in connection with any bankruptcy or receivorship of a mortgagor on a Mortgage Loan; to file suit and prosecute legal actions against all parties liable for amounts due under a Mortgage Loan, including, but not limited to, any deficiency amounts due following foreclosure; to take such other actions and exercise such rights which may be taken by MSPBNA under the terms of any Mortgage Loan, including, but not limited to, satisfaction, release, cancellation or discharge of mortgage, eviction, unlawful detainer, or similar dispossessory proceeding, sale, taking possession of, release of security instruments, realization upon all or any part of a Mortgage Loan or any collateral therefor or guaranty thereof.

This Limited Power of Attorney shall be effective as of the date written above ("the Effective Date") and shall continue in full force and effect until revoked in writing by MSPBNA or upon termination of the Agreement.

Page 1 of 4

SpA.711

660

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

The execution and delivery of this Limited Power of Attorney by MSPBNA shall not be (or be deemed) a waiver or discharge of any representation, warranty, covenant or agreement of MSPBNA or Subservicer in or under the Agreement, and such execution and delivery shall not be (or be deemed) a modification or amendment of any provision of the Agreement in any respect.

Subservicer hereby agrees to indemnify and hold MSPBNA and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by Subservicer of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement.

Until a properly executed revocation of this Limited Power of Attorney is duly executed and delivered to Subservicer, all parties dealing with said Attorney-in-Fact (individually or collectively) in connection with the above described matters may fully rely upon the power and authority of said attorney-in-fact to act for and on behalf of the undersigned, and in its name, place and stead, and may accept and rely on all documents and agreements entered into by said attorney-in-fact pursuant to the powers listed herein.

For the avoidance of doubt, nothing contained herein shall (i) limit in any manner any indemnification provided by Subservicer to MSPBNA under the Agreement, or (ii) be construed to grant Subservicer the power to initiate or defend any suit, litigation or proceeding in the name of MSPBNA.

This Limited Power of Attorney shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to any conflicts of law rules that might apply the laws of any other jurisdiction.

Third parties without actual notice may rely upon the exercise of the powers granted under this Limited Power of Attorney, without inquiry as to the terms and provisions of the Agreement and may be satisfied that this Limited Power of Attorney continues in full force and effect until revoked in writing by MSPBNA or upon termination of the Agreement. The authority of Subservicer as provided herein is specifically and strictly limited to the enumerated powers set forth above in furtherance of Subservicer's obligations under the Agreement. All actions taken by Subservicer pursuant to this Limited Power of Attorney are subject to the terms and conditions of the Agreement.

Nothing in this Limited Power of Attorney shall be construed to prevent MSPBNA from acting on its own behalf as the owner of the Mortgage Loans.

END OF PAGE

SpA.712

661

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

IN WITNESS WHEREOF, the undersigned has executed and delivered this Limited Power of Attorney.

MORGAN STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION

By: _____
Laura E. LoCosa, Chief Operating Officer

State of New York )
) ss:
County of Westchester )

I CERTIFY that on November 21, 2017, Laura E. LoCosa came before me in person and stated to my satisfaction that she:

(a) made the attached instrument; and

(b) was authorized to and did execute this instrument on behalf of and as Chief Operating Officer of Morgan Stanley Private Bank, National Association, the entity named in this instrument.

_____
{Name of Officer}
MARIE L VAN DUYNE
Notary Public, State of New York
No. 01VA4918101
Qualified in Westchester County
Commission Expires 04-19-2018
{Stamp & Seal}

Page 3 of 4

SpA.713

662

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Attachment A

| | |
|---|---|
| Angela Pulli | Assistant Default Manager |
| Carolyn McCauley | Tax Operations Manager |
| David Bench | VP Customer Interaction |
| David J. Miller Jr | EVP, Business Development |
| Donna J. Lynch | Document Control Coordinator |
| Edward Hirsh | VP of Process Improvement/HELOC Manager |
| Eric Kramp | Loan Servicing Manage |
| Francine Bryant | LM Customer/Client Advocate Supervisor |
| Hallie Richards | Document Processing Supervisor |
| Jack Plasket | VP Vendor Manager |
| James Dunmeyer | Portfolio Integration Manager |
| James Scott | Default Manager |
| Jeanne Bader | SVP, Client Relations |
| Jennifer Dobron | Foreclosure Manager |
| Jessica Bradbury | Late Stage Manager |
| Jim McNicholas | Quality Control |
| Joseph Cyrus | 2nd VP, Contact Center Manager |
| Kathleen D'Amore | Investor Reporting Manager |
| Kim Hagen | Default Servicing PMO Department Manager |
| Krista Radwanski | Client Audit Default Manager |
| Lauren Cromer | Escrow Compliance Business Analyst |
| Marianne Doroba | VP of Client Audits |
| Mark Kelbaugh | Customer Interaction Ops Manager |
| Mary Ann Sullivan | Transfer Operations Manager |
| Meredith Gillespie | Bank Operations Manager |
| Michael Blair | EVP, Servicing Operations |
| Nancy Irwin | VP Client Relations |
| Patricia Bracey | Default Claims/Property Preservation Manager |
| Patrick Coon | Head of Servicing Operations |
| Robert Weis | SVP Portfolio Lending, CO, Environmental Risk, |
| Robin Brodsky | Customer Service Manager |
| Steven Kravitz | Default Manager |
| Venicia Basinger | Default Loan Servicing Manager |
| William Long | Head of Servicing Controls |

Page 4 of 4

SpA.714

663

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

Exhibit F

SpA.715

664

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

[handwritten] ... & ... = taxes $77,700.05

[handwritten] ... = property inspections $32.50

```
              CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 08/30/19
REQ BY DXM                                                 PAGE    1


JOSEPH J CECCARELLI
SUSAN L CECCARELLI
C/O JOSEPH J. CECCARELLI        .......CUSTOMER ACTIVITY ACCOUNT HISTORY ......
48 WALL STREET, 11TH FLOOR
NEW YORK            NY 10005

LOAN NUMBER: [redacted]3991
*************************************************************************
------------------------- CURRENT ACCOUNT INFORMATION --------------------
    DATE       TOTAL      PRINCIPAL       LOAN        CURRENT
  PAYMENT     PAYMENT    & INTEREST     INTEREST     PRINCIPAL        ESCROW
    DUE       AMOUNT      PAYMENT         RATE        BALANCE         BALANCE
  03-01-16   3,209.33    3,208.33       2.50000    1540,000.00     77,700.05-
    2ND MORTGAGE:                       0.00  0.00000         0.00
*************************************************************************

              ACTIVITY FOR PERIOD 02/01/16 - 08/30/19
 PROCESS    DUE    TRANSACTION          TRANSACTION          EFFECTIVE DATE
  DATE     DATE    CODE                 DESCRIPTION          OF TRANSACTION
 ------------------------------------------------------------------------
  TRANSACTION   PRIN. PAID/       ESCROW PAID/ ----------OTHER-----------
    AMOUNT      BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
 ------------------------------------------------------------------------
 08-12-19  00-00  631  PROPERTY PRESERVATION
    16.25          0.00       0.00      0.00
 07-11-19  00-00  631  PROPERTY PRESERVATION
    16.25          0.00       0.00      0.00
 06-27-19  00-00  632  STATUTORY EXPENSES
   350.00          0.00       0.00      0.00
 06-25-19  00-00  601  MISC. CORPORATE DISBURSEMENT
  6,612.66         0.00       0.00      0.00
 06-19-19  03-16  161  ESCROW ADVANCE
  5,633.89         0.00       0.00   5633.89
                                    77700.05-   NEW PRINCIPAL/ESCROW BALANCES
 06-19-19  06-19  312  COUNTY TAX
  5,633.89-        0.00       0.00   5633.89
                                    77700.05-   NEW PRINCIPAL/ESCROW BALANCES
 06-07-19  00-00  631  PROPERTY PRESERVATION
    16.25          0.00       0.00      0.00
 05-06-19  00-00  745  CORP. ADVANCE ADJUSTMENT
  4,840.50-        0.00       0.00      0.00
 05-06-19  00-00  745  CORP. ADVANCE ADJUSTMENT
  2,565.00-        0.00       0.00      0.00
```

SpA.716

665

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

```
05-06-19  00-00  745  CORP. ADVANCE ADJUSTMENT
     6,612.66-      0.00      0.00      0.00
```

SpA.717

666

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT              DATE 08/30/19
  REQ BY DXM                                                         PAGE   2


  JOSEPH J CECCARELLI
  LOAN NUMBER: [     ]991

                    ACTIVITY FOR PERIOD 02/01/16 - 08/30/19
    PROCESS    DUE    TRANSACTION        TRANSACTION             EFFECTIVE DATE
     DATE     DATE    CODE               DESCRIPTION             OF TRANSACTION
  - --------- ----- ---------------------------------------- --------------------
     TRANSACTION  PRIN. PAID/      ESCROW PAID/ -----------OTHER------------
       AMOUNT    BALANCE   INTEREST   BALANCE   AMOUNT  CODE/DESCRIPTION
  ---------------------------------------------------------------------------
  04-15-19  00-00  631  PROPERTY PRESERVATION
        110.00      0.00       0.00     0.00
  03-14-19  00-00  633  MISC. F/C AND B/R EXPENSES
         11.00      0.00       0.00     0.00
  03-14-19  00-00  633  MISC. F/C AND B/R EXPENSES
         11.00      0.00       0.00     0.00
  03-12-19  03-16  161  ESCROW ADVANCE
      5,213.12      0.00       0.00   5213.12
                                     72066.16-  NEW PRINCIPAL/ESCROW BALANCES
  03-12-19  03-19  313  CITY TAX
      5,213.12-     0.00       0.00   5213.12-
                                     72066.16-  NEW PRINCIPAL/ESCROW BALANCES
  01-14-19  00-00  633  MISC. F/C AND B/R EXPENSES
         11.00      0.00       0.00     0.00
  12-12-18  03-16  161  ESCROW ADVANCE
      5,213.12      0.00       0.00   5213.12
                                     66853.04-  NEW PRINCIPAL/ESCROW BALANCES
  12-12-18  12-18  313  CITY TAX
      5,213.12-     0.00       0.00   5213.12-
                                     66853.04-  NEW PRINCIPAL/ESCROW BALANCES
  11-19-18  00-00  633  MISC. F/C AND B/R EXPENSES
         11.00      0.00       0.00     0.00
  11-19-18  00-00  633  MISC. F/C AND B/R EXPENSES
         11.00      0.00       0.00     0.00
  10-24-18  00-00  633  MISC. F/C AND B/R EXPENSES
         11.00      0.00       0.00     0.00
  10-08-18  00-00  630  ATTORNEY ADVANCES
         87.50      0.00       0.00     0.00
  10-08-18  00-00  630  ATTORNEY ADVANCES
        525.00      0.00       0.00     0.00
  09-18-18  03-16  161  ESCROW ADVANCE
      5,302.33      0.00       0.00   5302.33
                                     61639.92-  NEW PRINCIPAL/ESCROW BALANCES
```

SpA.718

667

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

09-18-18  09-18  313  CITY TAX
   5,302.33-        0.00       0.00    5302.33
                                      61639.92-  NEW PRINCIPAL/ESCROW BALANCES

SpA.719

668

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

CUSTOMER ACCOUNT ACTIVITY STATEMENT                DATE 08/30/19

REQ BY DXM                                                              PAGE   3

JOSEPH J CECCARELLI
LOAN NUMBER: ▮▮▮▮▮8991

ACTIVITY FOR PERIOD 02/01/16 - 08/30/19

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | AMOUNT | OTHER CODE/DESCRIPTION |
| 08-16-18 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 35.00 | 0.00 | 0.00 | 0.00 | | |
| 08-16-18 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 45.00 | 0.00 | 0.00 | 0.00 | | |
| 06-18-18 | 03-16 | 161 | ESCROW ADVANCE | | |
| 5,346.40 | 0.00 | 0.00 | 5346.40 | | |
| | | | | 56337.59- | NEW PRINCIPAL/ESCROW BALANCES |
| 06-18-18 | 06-18 | 313 | CITY TAX | | |
| 5,346.40- | 0.00 | 0.00 | 5346.40- | | |
| | | | | 56337.59- | NEW PRINCIPAL/ESCROW BALANCES |
| 03-30-18 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 87.50 | 0.00 | 0.00 | 0.00 | | |
| 03-30-18 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 525.00 | 0.00 | 0.00 | 0.00 | | |
| 03-15-18 | 03-16 | 161 | ESCROW ADVANCE | | |
| 5,046.74 | 0.00 | 0.00 | 5046.74 | | |
| | | | | 50991.19- | NEW PRINCIPAL/ESCROW BALANCES |
| 03-15-18 | 03-18 | 313 | CITY TAX | | |
| 5,046.74- | 0.00 | 0.00 | 5046.74- | | |
| | | | | 50991.19- | NEW PRINCIPAL/ESCROW BALANCES |
| 12-11-17 | 03-16 | 161 | ESCROW ADVANCE | | |
| 5,046.74 | 0.00 | 0.00 | 5046.74 | | |
| | | | | 45944.45- | NEW PRINCIPAL/ESCROW BALANCES |
| 12-11-17 | 12-17 | 313 | CITY TAX | | |
| 5,046.74- | 0.00 | 0.00 | 5046.74- | | |
| | | | | 45944.45- | NEW PRINCIPAL/ESCROW BALANCES |
| 09-15-17 | 03-16 | 161 | ESCROW ADVANCE | | |
| 5,185.93 | 0.00 | 0.00 | 5185.93 | | |
| | | | | 40897.71- | NEW PRINCIPAL/ESCROW BALANCES |
| 09-15-17 | 09-17 | 313 | CITY TAX | | |
| 5,185.93- | 0.00 | 0.00 | 5185.93- | | |
| | | | | 40897.71- | NEW PRINCIPAL/ESCROW BALANCES |
| 06-15-17 | 03-16 | 161 | ESCROW ADVANCE | | |

SpA.720

669

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

```
     5,295.58        0.00        0.00    5295.58
                                       35711.78-  NEW PRINCIPAL/ESCROW BALANCES
```

SpA.721

670

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

CUSTOMER ACCOUNT ACTIVITY STATEMENT

REQ BY DXM

DATE 08/30/19
PAGE 4

JOSEPH J CECCARELLI
LOAN NUMBER: █████████991

ACTIVITY FOR PERIOD 02/01/16 - 08/30/19

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN. PAID/ BALANCE | INTEREST | ESCROW PAID/ BALANCE | OTHER AMOUNT | CODE/DESCRIPTION |
|---|---|---|---|---|---|

| Process Date | Due Date | Code | Description | | |
|---|---|---|---|---|---|
| 06-15-17 | 06-17 | 313 | CITY TAX | | |
| 5,295.58- | 0.00 | | 0.00 | 5295.58 | |
| | | | | 35711.78- | NEW PRINCIPAL/ESCROW BALANCES |
| 05-31-17 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 95.00 | 0.00 | | 0.00 | 0.00 | |
| 05-17-17 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 435.00 | 0.00 | | 0.00 | 0.00 | |
| 05-12-17 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 700.00 | 0.00 | | 0.00 | 0.00 | |
| 05-12-17 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 990.00 | 0.00 | | 0.00 | 0.00 | |
| 03-28-17 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 990.00 | 0.00 | | 0.00 | 0.00 | |
| 03-09-17 | 03-16 | 161 | ESCROW ADVANCE | | |
| 5,098.57 | 0.00 | | 0.00 | 5098.57 | |
| | | | | 30416.20- | NEW PRINCIPAL/ESCROW BALANCES |
| 03-09-17 | 03-17 | 313 | CITY TAX | | |
| 5,098.57- | 0.00 | | 0.00 | 5098.57 | |
| | | | | 30416.20- | NEW PRINCIPAL/ESCROW BALANCES |
| 12-20-16 | 00-00 | 630 | ATTORNEY ADVANCES | | |
| 1,050.00 | 0.00 | | 0.00 | 0.00 | |
| 12-13-16 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 461.66 | 0.00 | | 0.00 | 0.00 | |
| 12-05-16 | 03-16 | 161 | ESCROW ADVANCE | | |
| 5,098.57 | 0.00 | | 0.00 | 5098.57 | |
| | | | | 25317.63- | NEW PRINCIPAL/ESCROW BALANCES |
| 12-05-16 | 12-16 | 313 | CITY TAX | | |
| 5,098.57- | 0.00 | | 0.00 | 5098.57- | |
| | | | | 25317.63 | NEW PRINCIPAL/ESCROW BALANCES |
| 12-05-16 | 00-00 | 632 | STATUTORY EXPENSES | | |
| 410.00 | 0.00 | | 0.00 | 0.00 | |
| 09-12-16 | 03-16 | 161 | ESCROW ADVANCE | | |
| 5,081.50 | 0.00 | | 0.00 | 5081.50 | |

SpA.722

671

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

20219.06- NEW PRINCIPAL/ESCROW BALANCES

SpA.723

672

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT           DATE 08/30/19
 REQ BY DXM                                                       PAGE   5


    JOSEPH J CECCARELLI
    LOAN NUMBER:        3991

                   ACTIVITY FOR PERIOD 02/01/16 - 08/30/19
    PROCESS    DUE   TRANSACTION          TRANSACTION           EFFECTIVE DATE
    DATE       DATE  CODE                 DESCRIPTION           OF TRANSACTION
 ------------------------------------------------------------------------------
    TRANSACTION    PRIN. PAID/       ESCROW PAID/ ------------OTHER------------
     AMOUNT        BALANCE   INTEREST  BALANCE  AMOUNT  CODE/DESCRIPTION
 ------------------------------------------------------------------------------
  09-12-16  09-16  313  CITY TAX
     5,081.50-       0.00     0.00   5081.50-
                                     20219.06-  NEW PRINCIPAL/ESCROW BALANCES
  07-21-16  03-16  161  ESCROW ADVANCE
    15,137.56        0.00     0.00   15137.56
                                     15137.56-  NEW PRINCIPAL/ESCROW BALANCES
  07-21-16  06-16  313  CITY TAX
     5,091.46-       0.00     0.00   5091.46-
                                     15137.56-  NEW PRINCIPAL/ESCROW BALANCES
  07-21-16  03-16  313  CITY TAX
     4,821.72-       0.00     0.00   4821.72-
                                     10046.10-  NEW PRINCIPAL/ESCROW BALANCES
  07-21-16  12-15  313  CITY TAX
     4,821.72-       0.00     0.00   4821.72-
                                     5224.38-   NEW PRINCIPAL/ESCROW BALANCES
  07-21-16  00-00  301  MISCELLANEOUS ESCROW DISBURSEMENT
        24.33        0.00     0.00    524.33
                                     402.66-    NEW PRINCIPAL/ESCROW BALANCES
  07-21-16  00-00  301  MISCELLANEOUS ESCROW DISBURSEMENT
       132.96-       0.00     0.00    132.96
                                     378.33-    NEW PRINCIPAL/ESCROW BALANCES
  07-21-16  00-00  301  MISCELLANEOUS ESCROW DISBURSEMENT
       245.37-       0.00     0.00    245.37
                                     245.37-    NEW PRINCIPAL/ESCROW BALANCES
  07-18-16  03-16  152  LATE CHARGE ASSESSMENT
         0.00        0.00     0.00      0.00     64.13-1 LATE CHARGE
  06-16-16  03-16  152  LATE CHARGE ASSESSMENT
         0.00        0.00     0.00      0.00     64.13-1 LATE CHARGE
  05-16-16  03-16  152  LATE CHARGE ASSESSMENT
         0.00        0.00     0.00      0.00     64.13-1 LATE CHARGE
  04-18-16  03-16  152  LATE CHARGE ASSESSMENT
         0.00        0.00     0.00      0.00     64.13-1 LATE CHARGE
  04-04-16  03-16  148  RETURNED PYMNT REVERSAL
```

SpA.724

673

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM          INDEX NO. 850018/2017

NYSCEF DOC. NO. 143                                        RECEIVED NYSCEF: 03/04/2020

0.00          0.00    3,208.33-     0.00

SpA.725

674

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

```
                    CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 08/30/19
REQ BY DXM                                                       PAGE   6


  JOSEPH J CECCARELLI
  LOAN NUMBER:       3991

                  ACTIVITY FOR PERIOD 02/01/16 - 08/30/19
  PROCESS    DUE    TRANSACTION            TRANSACTION              EFFECTIVE DATE
   DATE      DATE   CODE                   DESCRIPTION              OF TRANSACTION
  -------------------------------------------------------------------------------
   TRANSACTION  PRIN. PAID/        ESCROW PAID/ -----------OTHER-------------
     AMOUNT      BALANCE   INTEREST  BALANCE    AMOUNT  CODE/DESCRIPTION
  -------------------------------------------------------------------------------
  04-04-16  04-16  493  ARM LOAN ADJUSTMENT
      NEW INTEREST RATE:  0.02500        NEW PRIN & INT PAYMENT:    3,208.33
  03-29-16  04-16  493  ARM LOAN ADJUSTMENT
      NEW INTEREST RATE:  0.02500        NEW PRIN & INT PAYMENT:    3,208.33
  03-29-16  03-16  173  PAYMENT
      3,208.33      0.00   3,208.33    0.00
  03-18-16  03-16  152  LATE CHARGE ASSESSMENT
          0.00      0.00       0.00    0.00      64.13-1 LATE CHARGE
  03-18-16  03-16  148  RETURNED PYMNT REVERSAL
          0.00      0.00   3,208.33-   0.00
  03-18-16  04-16  493  ARM LOAN ADJUSTMENT
      NEW INTEREST RATE:  0.02500        NEW PRIN & INT PAYMENT:    3,208.33
  03-15-16  04-16  493  ARM LOAN ADJUSTMENT
      NEW INTEREST RATE:  0.02500        NEW PRIN & INT PAYMENT:    3,208.33
  03-15-16  03-16  171  PAYMENT
      3,208.33      0.00   3,208.33    0.00
  02-15-16  03-16  493  ARM LOAN ADJUSTMENT
      NEW INTEREST RATE:  0.02500        NEW PRIN & INT PAYMENT:    3,208.33
  02-15-16  02-16  171  PAYMENT
      3,047.92      0.00   3,047.92    0.00
```

SpA.726

675

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Exhibit G

SpA.727

676

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

## Property Tax Bill
## Quarterly Statement
Activity through June 1, 2019

Owner name: CECCARELLI, JOSEPH J
CECCARELLI, SUSAN L
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

**Mailing address:**
CECCARELLI, JOSEPH J,
200 E. 32ND ST.
NEW YORK NY 10016-6521

### Statement Billing Summary

| | |
|---|---|
| Unpaid charges, if any | $0.00 |
| Current charges | $5,633.89 |
| Total amount due by July 1, 2019. To avoid interest pay on or before July 15th. | $5,633.89 |
| Total property tax amount due July 1, 2019 from Cenlar Federal Sav Bank | $5,633.89 |
| You, the property owner | $0.00 |
| Amount of property tax not due July 1, 2019 but that Cenlar Federal Sav Bank can pre-pay | $16,901.87 |
| If Cenlar Federal Sav Bank wants to pay all property tax owed by July 1, 2019 please pay | $22,422.88 |
| If Cenlar Federal Sav Bank pays all property tax owed by July 1, 2019 you would save | $112.68 |

PTS - NM
1400.01
40 - 1
55060



This statement is for your information only.

**Department of Finance**

Total amount due by July 1, 2019 if you still have a mortgage
Total amount due by July 1, 2019 if you no longer have a mortgage
If you no longer have a mortgage and want to pay everything, please pay

Pay today the easy way
nyc.gov/payonline

$0.00
$5,633.89
$22,422.88

Amount enclosed: [          ]

*8061369190601013*

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Make checks payable & mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

8061369190601 01 1009121165 000000563389 0000000000000 190701312020000   5

SpA.728

677

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



## Property Tax Bill
## Quarterly Statement
Activity through February 1, 2019

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,213.12 |
| **Amount Due** | **$5,213.12** |

*Please pay by April 1, 2019. To avoid interest pay on or before April 15th.*

FT - NM
1400.01
40 - 1
52059

Visit us at nyc.gov/finance or call 311 for more information.

This statement is for your information only.



**Department of Finance**
Total amount due by April 1, 2019 if you still have a mortgage $0.00
Total amount due by April 1, 2019 if you no longer have a mortgage $5,213.12

Amount enclosed:

\#8006446190201014

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

**Make checks payable & mail payment to:**
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

8006446190201 01 1009121165 000000521312 0000000000000 190401270081001    4

SpA.729

678

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

## Property Tax Bill
## Quarterly Statement
Activity through November 16, 2018

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,213.12 |
| **Amount Due** | **$5,213.12** |

Please pay by January 2, 2019. To avoid interest pay on or before January 15th.

FT - NM
1400.01
40 - 1
58082

Visit us at nyc.gov/finance or call 311 for more information.

---



This statement is for your information only.

**Department of Finance**

Total amount due by January 2, 2019 if you still have a mortgage. $0.00
Total amount due by January 2, 2019 if you no longer have a mortgage $5,213.12
If you no longer have a mortgage and want to pay everything, please pay $10,408.51

Amount enclosed:

#842934718111601#

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Make checks payable & mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

842934718116 01 1009121165 000000521312 0000000000000 190102270081001    4

SpA.730

679

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

## Property Tax Bill
## Quarterly Statement
Activity through August 24, 2018

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,302.33 |
| Amount Due | $5,302.33 |

Please pay by October 1, 2018. To avoid interest pay on or before October 15th.

FT - ZD
1400.01
40 - 1
59079

Visit us at nyc.gov/finance or call 311 for more information.

---

This statement is for your information only.



**Department of Finance**

| | |
|---|---|
| Total amount due by October 1, 2018 if you still have a mortgage | $0.00 |
| Total amount due by October 1, 2018 if you no longer have a mortgage | $5,302.33 |
| If you no longer have a mortgage and want to pay everything, please pay | $15,854.50 |

Amount enclosed: [                    ]

*9335060180824401*

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Make checks payable & mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

9335060180824 01 1009121165 0000000530233 0000000000000 181001270081001    1

SpA.731

680

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

## Property Tax Bill
## Quarterly Statement
Activity through June 1, 2018

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1185

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,346.40 |
| Amount Due | $5,346.40 |

Please pay by July 2, 2018. To avoid interest pay on or before July 16th.

FT - NM
1400.01
40 - 1
58007

Visit us at nyc.gov/finance or call 311 for more Information.

This statement is for your information only.



**Department of Finance**

| | |
|---|---|
| Total amount due by July 2, 2018 if you still have a mortgage | $0.00 |
| Total amount due by July 2, 2018 if you no longer have a mortgage | $5,346.40 |
| If you no longer have a mortgage and want to pay everything, please pay | $21,278.67 |

Amount enclosed: [          ]

#83698691806010 10

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Make checks payable & mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

8369869180601 01 1009121185 0000000534640 0000000000000 180702270081001   6

SpA.732

681

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Property Tax Bill**
**Quarterly Statement**
Activity through February 23, 2018

**Department of Finance**

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,046.74 |
| **Amount Due** | **$5,046.74** |

*Please pay by April 2, 2018. To avoid interest pay on or before April 16th.*

FT - NM
1400.01
40 - 1
51799

Visit us at nyc.gov/finance or call 311 for more information.

This statement is for your information only.



**Department of Finance**

| | |
|---|---|
| Total amount due by April 2, 2018 if you still have a mortgage | $0.00 |
| Total amount due by April 2, 2018 if you no longer have a mortgage | $5,046.74 |

Amount enclosed: [            ]

#9632190180223014

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Make checks payable & mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

9632190180223 01 1009121165 000000504674 0000000000000 180402270081001   7

SpA.733

682

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

### Property Tax Bill
### Quarterly Statement
Activity through November 17, 2017

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1166

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,046.74 |
| **Amount Due** | **$5,046.74** |

*Please pay by January 2, 2018. To avoid interest pay on or before January 16th.*

FT - ZD
1400.01
4D - 1
56467

Visit us at nyc.gov/finance or call 311 for more information.

This statement is for your information only.



**Department of Finance**

| | |
|---|---|
| Total amount due by January 2, 2018 if you still have a mortgage | $0.00 |
| Total amount due by January 2, 2018 if you no longer have a mortgage | $5,046.74 |
| If you no longer have a mortgage and want to pay everything, please pay | $10,076.32 |

Amount enclosed: [            ]

*804445017111701*

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

8044450171117 01 1009121165 0000000504674 0000000000000 180102270081001    7

SpA.734

683

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

## Property Tax Bill
## Quarterly Statement
Activity through August 25, 2017

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,185.93 |
| **Amount Due** | **$5,185.93** |

Please pay by October 2, 2017. To avoid interest pay on or before October 17th.

FT - 2D
1400.01
40 - 1
61975

Visit us at nyc.gov/finance or call 311 for more information.

This statement is for your information only.



**Department of Finance**

Total amount due by October 2, 2017 if you still have a mortgage — $0.00
Total amount due by October 2, 2017 if you no longer have a mortgage — $5,185.93
If you no longer have a mortgage and want to pay everything, please pay — $15,506.45

Amount enclosed: [                    ]

#944702617082501#
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

9447026170825 01 1009121165 0000000518593 0000000000000 171002270081001     2

SpA.735

684

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

**Property Tax Bill**
**Quarterly Statement**
Activity through June 2, 2017

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,295.58 |
| **Amount Due** | **$5,295.58** |

Please pay by July 3, 2017. To avoid interest pay on or before July 17th.

Visit us at nyc.gov/finance or call 311 for more information.

FT - NM
1400.01
40 - 1
56736

Did you know you can pay your property taxes using your smartphone? Visit any of our Business Centers to pay using mobile wallet!

This statement is for your information only.



**Department of Finance**

| | |
|---|---|
| Total amount due by July 3, 2017 if you still have a mortgage | $0.00 |
| Total amount due by July 3, 2017 if you no longer have a mortgage | $5,295.58 |
| If you no longer have a mortgage and want to pay everything, please pay | $21,076.41 |

Amount enclosed: [ ]

#9996230170602018

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Mail payment to:
NYC Department of Finance
P.O. Box 680
Newark NJ 07101-0680

9996230170602 01 1009121165 0000000529558 0000000000000 170703270081001 2

SpA.736

685

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

# Property Tax Bill
## Quarterly Statement
Activity through February 24, 2017

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK, NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,098.57 |
| **Amount Due** | **$5,098.57** |

Please pay by April 3, 2017. To avoid interest pay on or before April 17th.

Visit us at nyc.gov/finance or call 311 for more information.

1400.01
40
48197

Did you know you can pay your property taxes using your smartphone? Visit any of our Business Centers to pay using mobile wallet!

This statement is for your information only.



**Department of Finance**

Total amount due by April 3, 2017 if you still have a mortgage
Total amount due by April 3, 2017 if you no longer have a mortgage

$0.00
$5,098.57

Amount enclosed:

#8792109170224401#
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Mail payment to:
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

8792109170224 01 1009121165 0000000509857 0000000000000 170403270081001    0

SpA.737

686

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**Department of Finance**

## Property Tax Bill
## Quarterly Statement
Activity through November 18, 2016

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK, NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,098.57 |
| **Amount Due** | **$5,098.57** |

Please pay by January 3, 2017. To avoid interest pay on or before January 17th.

Visit us at nyc.gov/finance or call 311 for more information.

Did you know you can pay your property taxes using your smartphone? Visit any of our Business Centers to pay using mobile wallet!

This statement is for your information only.



**Department of Finance**

| | |
|---|---|
| Total amount due by January 3, 2017 if you still have a mortgage | $0.00 |
| Total amount due by January 3, 2017 if you no longer have a mortgage | $5,098.57 |
| If you no longer have a mortgage and want to pay everything, please pay | $10,179.80 |

Amount enclosed: [                    ]

#9378089161118 01#

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Mail payment to:
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

9378089161118 01 1009121165 0000000509857 0000000000000 170103270081001   6

SpA.738

687

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**NYC**
Department of
Finance

## Property Tax Bill
## Quarterly Statement
Activity through August 26, 2016

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST,
NEW YORK, NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $0.00 |
| New Charges | $5,081.50 |
| **Amount Due** | **$5,081.50** |

Please pay by October 3, 2016. To avoid interest pay on or before October 17th.

Visit us at nyc.gov/finance or call 311 for more information.

Did you know you can pay your property taxes using your smartphone? Visit any of our Business Centers to pay using mobile wallet!



**NYC**
Department of
Finance

This statement is for your information only.

| | |
|---|---|
| Total amount due by October 3, 2016 if you still have a mortgage | $0.00 |
| Total amount due by October 3, 2016 if you no longer have a mortgage | $5,081.50 |
| If you no longer have a mortgage and want to pay everything, please pay | $15,214.01 |

Amount enclosed: [                    ]

*9121025160826018*

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Mail payment to:
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

9121025160826 01 1009121165 000000050815 0 0000000000000 161003270081001    1

SpA.739

688

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020



**NYC**
Department of
Finance

# Property Tax Bill
## Quarterly Statement
Activity through June 03, 2016

Owner name: CECCARELLI, JOSEPH J.
CECCARELLI, SUSAN L.
Property address: 200 E. 32ND ST. APT. 28B
Borough, block & lot: MANHATTAN (1), 00912, 1165

Mailing address:
CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK, NY 10016-6521

| | |
|---|---|
| Outstanding Charges | $9,974.12 |
| New Charges | $5,091.46 |
| **Amount Due** | **$15,065.58** |

Please pay by July 1, 2016. To avoid interest pay on or before July 15th.

Visit us at nyc.gov/finance or call 311 for more Information.

Did you know you can pay your property taxes using your smartphone? Visit any of our Business Centers to pay using mobile wallet!

---



Please Include this coupon if you pay by mail or in person. 1-00912-1165

**NYC**
Department of
Finance

Total amount due by July 1, 2016
If you want to pay everything you owe by July 1, 2016 please pay

$15,065.58
$30,238.13

Amount enclosed:

#9543560160603 01#

CECCARELLI, JOSEPH J.
200 E. 32ND ST.
NEW YORK NY 10016-6521

Mail payment to:
NYC Department of Finance
P.O. Box 680
Newark, NJ 07101-0680

9543560160603 01 1009121165 0000001506558 0000003023813 160701270081001    8

SpA.740

689

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

--------------------------------------------------Exhibit H--------------------------------------------------

SpA.741

690

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

**FIVE BROTHERS PROPERTY INSPECTION RESULT**

Exterior Only

**Order: 16630266**

| Account #:/FHA Case Number | Inspection Type: | Date Ordered:/Contact: |
|---|---|---|
| 3991 / | PROPERTY INSPECTION | 9/3/2019 / FORECLOSE |
| Account Type: | Department: | Date Completed: |
| CON | FORECLOSURE | 9/4/2019 8:44:37 AM |
| Address: | First Time Vacant Y/N: | Damage: |
| JOSEPH J CECCARELLI | NO | NO EXTERIOR DAMAGES |
| 200 EAST 32ND ST | First Time Vacant Date: | |
| 28B | | Property Address: |
| NEW YORK CITY, NY 10016 | - N/A | GOOD ADDRESS |
| | Key Code: N/A | |
| | Resecure: | |
| Occupied By: | Personal Property: | Utility Water: |
| N/A | N/A | N/A |
| Occupied Verified By: | Property Guarded: | Utility Gas: |
| VISUAL | N/A | N/A |
| Occupied Verified By Neighbor #: | Property Secure: | Utility Electric: |
| | N/A | N/A |
| Exterior Condition: | Lawn Height: | For Sale Sign Type: |
| N/A | Under 6 in | N/A |
| Neighborhood: | Type of Maintenance Needed: | Realtor Name: |
| UNKNOWN | | |
| Contact Card/Letter Left: | | Property For Rent: |
| Yes, card was left. | Pool Exists: | N/A |
| Winter Tag Others Left: | N/A | Realtor Phone: |
| No | Need To Remove Debris: | |
| Winter Tag Ours Left: | NO | Sold Sign: |
| No | | N/A |
| External Notes: | | | |
| Secured building, no access. No HOA information available. | | | |

**INTERVIEW**

No Interview Conducted

| Property Type: | Property Stories: | Primary Phone: |
|---|---|---|
| N/A | | |
| Property Construction: | Property Garage: | Work Phone: |
| N/A | UNKNOWN | |
| Property Color: | Property Common Entry: | |
| N/A | UNKNOWN | |

SpA.742

691

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

| OUTPUT: | Invoice #: | Photos# | Photo Sent. | Inspection Charge | Photos Charge: | Adjustment: | Total Amount Charged: |
|---------|-----------|---------|-------------|-------------------|----------------|-------------|----------------------|
| 9/6/2019 | I16630266 | 1 | 9/5/2019 12:13:36 PM | $16.25 | $0.00 | $0.00 | $16.25 |

Vendor ID: MI2246; J MILASZEWSKI; MI480391030

* This is an exterior inspection of the property: only obvious exterior damages are reported. Damage to the interior of this property is not reported on this inspection.

SpA.743

692

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Account #. ____3991

Order #: 16630266

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016

Case #:



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION

SpA.744

693

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Account #: ____3991

Order #: 16630266

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016

Case #:



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION

SpA.745

694

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Account #: ____3991

Order #: 16630266

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016

Case #:



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION

SpA.746

695

**FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM**
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020

Account #: ████3991

Order #: 16630266

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016

Case #:





Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 09/04/2019
Description: PROPERTY CONDITION

SpA.747

696

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

**FIVE BROTHERS PROPERTY INSPECTION RESULT**

Exterior Only

**Order: 16583331**

| Account #:/FHA Case Number | Inspection Type: | Date Ordered:/Contact: |
|---|---|---|
| 3991 / | PROPERTY INSPECTION | 8/2/2019 / FORECLOSE |
| Account Type: | Department: | Date Completed: |
| CON | FORECLOSURE | 8/6/2019 10:31:33 AM |
| Address: | First Time Vacant Y/N: | Damage: |
| JOSEPH J CECCARELLI | NO | NO EXTERIOR DAMAGES |
| 200 EAST 32ND ST | First Time Vacant Date: | |
| 28B | | Property Address |
| NEW YORK CITY, NY 10016 | - N/A | GOOD ADDRESS |
| | Key Code: **N/A** | |
| | Resecure: | |
| Occupied By: | Personal Property: | Utility Water: |
| N/A | N/A | N/A |
| Occupied Verified By: | Property Guarded: | Utility Gas: |
| N/A | N/A | N/A |
| Occupied Verified By Neighbor #: | Property Secure: | Utility Electric: |
| | N/A | N/A |
| Exterior Condition: | Lawn Height: | For Sale Sign Type: |
| N/A | Under 6 in | N/A |
| Neighborhood: | Type of Maintenance Needed: | Realtor Name: |
| UNKNOWN | | |
| Contact Card/Letter Left: | | Property For Rent: |
| Yes, card was left. | Pool Exists: | N/A |
| Winter Tag Others Left: | N/A | Realtor Phone: |
| No | Need To Remove Debris: | |
| Winter Tag Ours Left: | NO | Sold Sign: |
| No | | N/A |
| External Notes: Secured building, no access. No HOA information available. Security Told Inspector have to come back later and speak with manager. | | |
| INTERVIEW No Interview Conducted | | |
| Property Type: | Property Stories: | Primary Phone: |
| N/A | | |
| Property Construction: | Property Garage: | Work Phone: |
| N/A | UNKNOWN | |
| Property Color: | Property Common Entry: | |
| N/A | UNKNOWN | |

SpA.748

697

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

| OUTPUT: | Invoice #: | Photos#: | Photo Sent: | Inspection Charge | Photos Charge | Adjustment: | Total Amount Charged. |
|---------|-----------|----------|-------------|-------------------|---------------|-------------|----------------------|
| 8/12/2019 | I16583331 | 1 | 8/7/2019 2:25:36 PM | $16.25 | $0.00 | $0.00 | $16.25 |

Vendor ID: MI2246; J MILASZEWSKI; MI460391030

* This is an exterior inspection of the property: only obvious exterior damages are reported. Damage to the interior of this property is not reported on this inspection.

SpA.749

698

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Account #: ____991

Order #: 16583331

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016

Case #:



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION

SpA.750

699

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Account #: ____3991

Order #: 16583331

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016

Case #:



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION

SpA.751

700

FILED: NEW YORK COUNTY CLERK 03/04/2020 02:09 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Account #: ████3991

Order #: 16583331

Address: 200 EAST 32ND ST NEW YORK CITY NY 10016

Case #:



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION



Address: 200 EAST 32ND ST NEW YORK CITY NY 10016
Date Completed: 08/06/2019
Description: PROPERTY CONDITION

SpA.752

701

## DEFENDANTS-MORTGAGORS' REPLY AFFIRMATION IN FURTHER SUPPORT OF SUMMARY JUDGMENT AND RELATED RELIEF, DATED MARCH 10, 2020 [701 - 708]

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 147

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
------------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)
Motion Sequence no. 3

Mortgage Stanley Private Bank, National
Association,

               Plaintiff,

                                  **DEFENDANTS-MORTGAGORS'
                                  REPLY AFFIRMATION IN
                                  FURTHER SUPPORT OF
                                  SUMMARY JUDGMENT AND
                                  FOR RELATED RELIEF**

          -against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

               Defendants.

------------------------------------------------------------------X

Joseph J. Ceccarelli, affirms the following to be true pursuant to CPLR 2106:

1. I am a party Defendant-mortgagor in this action in equity to foreclose on my condominium apartment 28B, located at 200 East 32nd Street, New York, New York ("Apt. 28B"). Having resided in Apt. 28B with my wife, Susan L. Ceccarelli who is a named co-defendant mortgagor in this action since 2000 (hereinafter the "Ceccarellis" or "Mortgagors"). I am fully familiar with the facts and circumstances set forth below.

1

SpA.753

702

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 147

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

2. I am also an attorney duly admitted to practice before the Courts of the State of New York, and managing member of Ceccarelli Law Firm PLLC, attorneys for Mortgagors in this action.

3. This Affirmation is submitted in reply to the opposing attorney's affirmation of Plaintiff, and in further support of the Ceccarellis' Motion for Summary Judgment on their Second Affirmative Defense for an order pursuant to CPLR § § 3212, 3211 (a) (7), 3126, 2004, and 2201: 1) granting summary judgment on Defendants-Mortgagors' Second Affirmative Defense for lack of standing, consolidating the present MS no. 3 with Plaintiff's pending motion for judgment of foreclosure, and Mortgagors' cross-motion (MS no. 2) for disposition, and upon consolidation; 2) denying MS no. 2 as moot, and dismissing this action in equity, together with such other, further and different relief as is just and proper (collectively at times, "MS no. 3").

**THE OPPOSING ATTORNEY'S AFFIRMATION OF PLAINTIFF SERVICER ONLY LENDS FURTHER SUPPORT THAT IT IS UNABLE TO MEET ITS BURDEN OF PROOF ON THE THRESHOLD ISSUE OF STANDING AND THE JUSTICIABILITY OF THE PRESENT ACTION IN EQUITY**

**A. PLAINTIFF SERVICER HAS ALREADY SIZEABLY PROFITED ON ITS PREVIOUS SALE AND SECURITIZATION OF THE CECCARELLIS' NOTE UNDER SECTION 20 OF THE MORTGAGE AT LEAST FIVE MONTHS BEFORE THIS ACTION IN EQUITY WAS EVER COMMENCED**

4. As more fully demonstrated in the accompanying Reply Memorandum of Law:

5. Faced with party admissions and declarations against interest by its own representatives, and irrefutable documentary proof, including a detailed affidavit of the Plaintiff Servicer's representative who has direct personal knowledge regarding originating and overseeing the Ceccarellis' mortgage loan at all relevant times involved in this action, and a qualified expert in the area, as the recipient of the Plaintiff 's

2

SpA.754

703

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 147

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

Mortgage Champion and Liabilities Bonus awards (NYSCEF no. 126)[1], the best that Plaintiff Servicer can muster in response is an opposing attorney's affirmation and accompanying amorphous document dump. The attorney's affirmation, and attached "package" in opposition to this MS no. 3 (NYSCEF nos. 142, 143), ("Opposing Affirm.") only lend further support that Plaintiff Servicer is unable to sustain its burden of proof on the threshold issue of standing and the justiciability of the present action in equity in the following material respects.

6. First, Plaintiff Servicer's self-serving, conclusory claim that it is the true owner of the both the Note and Mortgage at the time of the commencement of this action in January 2017 (Opposing Affirm. ¶ 8), is contradicted by its own pleading, the Complaint[2] (NYSCEF no. 1), which provides in pertinent part:

> "The Plaintiff....has been delegated the authority to institute a mortgage foreclosure against the homeowner by the owner and holder of the subject Mortgage and Note." Complaint, ¶ 25

7. Consistent with Plaintiff's pleading, that it is functioning in the capacity of a mere servicer for the true owner and holder of the Ceccarellis' Note and Mortgage at the time of the commencement of this action in equity is Plaintiff Servicer's own letter in this regard, dated September 26, 2016 *five months before* the action was commenced. It provides that the Ceccarellis have the right to know who the investor is that purchased the Note and related details in accordance with subdivision (g) of U.S.C. Section 1641 of the Truth in Lending Act. (NYSCEF no. 127)[3] U.S.C. Section 1641(g) provides that Plaintiff Servicer was required to notify the Ceccarellis in writing that their Note was sold to a

---

[1] Pellegrino Aff. (2 of 2) in support of MS no. 3.
[2] A copy of the Complaint (NYSCEF no.1) without exhibits is attached as Defendants-Mortgagors Reply Exhbit 1 for the convenience of the Court.
[3] Defendants-Mortgagors Exhibit 1 in support of MS no.3.

3

SpA.755

704

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 147

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

third party investor by providing the following information no later than 30 days after their mortgage loan was sold, including (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) the location of the place where transfer of ownership of the debt is recorded; and (D) any other relevant information regarding the new creditor.

8. Plaintiff Servicer in its Opposing Affirmation does not deny that it is flagrant violation with respect to each of its disclosure obligations in this regard under the Truth in Lending Act[4] , compounded by its related numerous and unexplained failures and still outstanding discovery obligations directly bearing on the threshold issue of standing. These include: 1) the Notice of Document Production (NYSCEF no. 16); 2) Notice of Deposition (NYSCEF no. 17); and 3) most recently Notice of Reference Document Production in accordance with leave granted by the Court (NYSCEF nos. 99, 100).

9. Second, there are two documents in particular buried in Plaintiff Servicer's 129-page "package" (NYSCEF no. 143) that further supports the granting of summary judgment to the Mortgagors on the Second Affirmative Defense of Standing.

10. One is the affidavit of Wilma Myiou for subservicer agent, Cenlar FSB to Plaintiff Servicer agent, dated August 20, 2019, together with supporting Limited Power of Attorney from Plaintiff Servicer to Censlar FSB as subservicer agent, dated November 21, 2017. It shows that only the mortgage, and not the Note was transferred to Plaintiff Servicer (see p.3, ¶ 3, last three sentences) which further corroborates that the Plaintiff's

---

[4] Plaintiff Servicer bank cannot credibly begin to claim that it does not have the resources to have complied with its Truth in Lending Obligations with regard to the Second Affirmative Defense of Lack of Standing, since it is the 6th largest multinational bank in the US with over $850 billion in assets and more than $250,000 employees working for them: https://www.bankllist.us/top-10-banks-in-united-states
2018#:~:text=Morgan%20Stanley%20is%20the%206th,and%20Morgan%20Stanley%20Universal%20Trust.

4

SpA.756

705

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 147

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

role in this action is limited to that of being a mere servicing agent, and not as the true and lawful owner of the Ceccarells' Note at the commencement of this action (see first three paragraphs of the Limited Power of Attorney). A copy of the Myiou Affidavit with supporting Limited Power of Attorney from Plaintiff Servicer to Cenlar FSB as subservicing agent appears attached as Reply Exhibit 2.

11. The other is the Palermo Affirmation which Plaintiff Servicer represents was furnished to the Referee appointed in this action. It further corroborates that only the mortgage was transferred from MERS as "mortgagee of record" to Plaintiff Servicer in August 2016. The Affirmation misleadingly omits in its report to the Court appointed Referee that immediately in the following month of September 2016 that it sold the Ceccarellis' Note to a third party investor *five months before* this action was commenced in January 2017, and as discussed above failed to disclose the details of precisely who the investor is in violation of the Truth in Lending Act. (*see* Palermo Affirm. ¶ 2). A copy of the Palermo Affirmation is attached as Reply Exhibit 3.

12. Plaintiff's violation of its Truth in Lending disclosure requirements in this regard, is of no small moment. It would have further supported that Plaintiff has long since not had standing to commence the present action at least *five months before* it was ever commenced, having already sizeably profited from the sale and securitization of the Ceccarellis' Note to private equity or other investors, and now continuing to do as by realizing fees as a servicer for the Investors. (NYSCEF no. 126, Pellegrino Aff. ¶14-16; NYSCEF no. 129. NY Times Investigative Report, Ex. 3 to MS no. 3).

13. Furthermore, as pointed out by the recipient of Plaintiff's Mortgage Champion and Lending Bonus Awards, Mr. Pellegrino, Plaintiff Servicer's Truth in Lending and related

5

SpA.757

706

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 147

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

discovery defaults, strips the Ceccarellis of a full and fair opportunity to negotiate best market terms to refinance their home with competing lenders regarding the correct, alleged amount of mortgage debt, who want to know who the real parties in interest are who bought the Ceccarellis' Note from Plaintiff and on what terms in accordance with Truth in Lending Act requirements, before refinancing a new mortgage secured against it. (Id.)

14. When Plaintiff became a mere servicing agent and no longer owned the Note long before this action was ever commenced, Plaintiff no longer had any business interest in negotiating a workout agreement with the Ceccarellis (Id.)

15. On the flip side, the Investors who purchased the Ceccarellis' note as part of a package or pool of distressed debt notes can continue to trade and sell them in the securitization market for a further mark-up for an up to 50% upfront purchase of the principal they acquired them for on the strength of the end-note bundler realizing a sizeable profit between the discount they bought the Note for and a sale at foreclosure, This is in addition to enjoying bond yield returns in the interim of as much as 4%. (Id.)

16. All of this comes at the expense of the Ceccarellis losing their family home, and the hard-earned equity they have built up by paying their mortgages the last 25 years before Mr. Ceccarelli had a temporary medical hardship.

17. Third, Plaintiff Servicer's reliance on string citations from the Second and Third Departments in its Opposing Affirmation ¶¶ 5-8, 10 is entirely misplaced. None of these cases involved the evidentiary motion record established here under MS no. 3, conclusively establishing that Plaintiff Servicer has no standing based on separate and

6

SpA.758

707

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM
NYSCEF DOC. NO. 147

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/10/2020

independently corroborating party admissions and declarations against interests by its own representatives, and the irrefutable documentary proof discussed above.

18. Moreover, none of the cases relied upon by Plaintiff Servicer involved the flagrant violation of the new investor creditor disclosure requirements of subdivision (g) of U.S.C. Section 1641 of the Truth in Lending Act, or that Plaintiff as here may not be treated as the true Owner of the Ceccarellis' Note obligation on the basis of the mere delegation or assignment from the real parties in interest, the Investors, who bought the Note under subdivision (f)(2) of U.S.C, Section 1641 of the Truth in Lending Act, despite conceding that this is the case under ¶ 25 of the Complaint (Reply Exhibit 1, attached). To the extent that Plaintiff Servicer is arguing this federal law should be changed or should not apply to it, it is well-settled that such an argument must fail under well-settled federal pre-emption principles of law.

[ The Balance of This Page Is Intentionally Left Blank]

7

SpA.759

708

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 147

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

19. Under these facts and circumstances, and as more fully set forth in the accompanying Reply and the Principal Memoranda of Law under MS no. 3, the Investors who bought the rights and interests to the Ceccarellis' Note at least *five months before* the commencement of the present action in equity, are properly limited to a subsequent action on the alleged extent of the mortgage debt.

WHEREFORE, Mortgagors-Ceccarellis' motion for summary judgment on the Second Affirmative Defense of Plaintiff's lack of standing and related relief should be granted in all respects, together with such other, further and different relief as is just and proper.

Dated: New York, New York
March 10, 2020

Joseph J. Ceccarelli

8

SpA.760

709

EXHIBIT 1 TO CECCARELLI REPLY AFFIRMATION -
SUMMONS AND COMPLAINT, DATED JANUARY 5, 2017
AND E-FILED ON JANUARY 17, 2017
(REPRODUCED HEREIN AT PP. 48-267)

710

EXHIBIT 2 TO CECCARELLI REPLY AFFIRMATION -
AFFIDAVIT OF PLAINTIFF'S SUB-SERVICING AGENT REGARDING
TRANSFER OF MORTGAGE SECURITY INSTRUMENT
TO AGENT, DATED AUGUST 20, 2019 [710 - 719]

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/04/2020
RECEIVED NYSCEF: 03/10/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

Plaintiff,

-against-

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan K.
Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future Condominium;
RBS Citizens, N.A., et al,

Defendants.

**AFFIDAVIT IN
SUPPORT OF MERIT AND
AMOUNTS DUE**

Index No. 850018/2017

Property Address:

200 East 32nd Street
New York City, NY 10016

Block 912 Lot 1165

STATE OF New Jersey )
                     ) ss.
COUNTY OF Mercer     )

_____Wilma Whyow_____, being duly sworn, deposes and says:

1. I am the Vice President Doc. Execut of Cenlar FSB, which is a duly authorized the mortgage loan servicing agent of the Plaintiff, Mortgage Stanley Private Bank, National Association, and have personal knowledge of the facts of this matter. The source of my knowledge is my review of the electronic records of Cenlar FSB, regarding the delinquent account of the Defendant and my own knowledge of how those electronic records are kept and maintained. Those records include, but are not limited to, electronic images of the note and electronic records maintained by Cenlar FSB, to track payments received and advances made in connection with the Defendant's mortgage account. As a loan servicer, Cenlar FSB collects payments from borrowers and maintains up-to-date electronic records concerning the loan it services in its electronic record keeping system. The electronic record keeping system is updated contemporaneously with the receipt of payments and the payment of advances so that those items

17-063874                    Affidavit                    Page 1 of 6

SpA.762

711

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 149

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

are reflected at or very near the time they occur. These computer records are made and kept in the regular course of the business of Cenlar FSB as loan servicer.

2. I make this Affidavit in support of the appointment of a Referee and to aid said Referee in computing the sums due on the Note and Mortgage.

3. That Mortgage Stanley Private Bank, National Association is the mortgagee of a consolidated and/or modified Mortgage dated January 30, 2015, in the original principal balance of $1,540,000.00, executed by Joseph J. Ceccarelli and Susan L. Ceccarelli, as Mortgagor(s) to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank, National Association, as Mortgagee, to secure the sum of $1,540,000.00, and recorded in the New York County Office of the City Register on February 20, 2015, in CRFN 2015000058946. The foregoing instrument consolidated and/or modified the following mortgage(s): The Mortgage given by joseph J. Ceccarelli and Susan. K. Langholz to Merill Lynch Credit Corporation to secure the sum of $820,000.00 dated February 7, 2000 and recorded on March 22, 2000 in Reel 3070, page 2071. The Note and Mortgage were transferred to Cendant Mortgage Corporation and said transfer was memorialized by an Assignment of Mortgage dated November 28, 2001 and recorded on January 30, 2002 in Reel 3440, page 0507. The Note and Mortgage were subsequently transferred to Merrill Lynch Credit Corporation and said transfer was memorialized by an Assignment of Mortgage dated March 9, 2006 and recorded on June 16, 2006 in CRFN 2006000342599. the Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $457,000.00 dated November 14, 2005 and recorded on June 16, 2006 in CRFN 2006000342600. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Merrill Lynch Credit Corporation to secure the sum of $1,277,500.00 dated

17-063874        Affidavit        Page 2 of 6

SpA.763

712

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

November 14, 2005 and recorded on june 16, 2006 in CRFN 2006000342601. The Note and Mortgage were transferred to Morgan Stanley Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 16, 2012 and recorded on October 27, 2014 in CRFN 2014000356095. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association to secure the sum of $9,500.00 dated December 28, 2012 and recorded on october 27, 2014 in CRFN 2014000356096. The Consolidation, Extension and Modification Agreement given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Morgan Stanley Private Bank, National Association to secure the sum of $1,287,000.00 dated December 28, 2012 and recorded on October 27, 2014 in CRFN 2014000356097. The Note and Mortgage were transferred to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank National Association and said transfer was memorialized by an Assignment of Mortgage dated November 11, 2014 and recorded on February 20, 2015 in CRFN 2015000058944. The Mortgage given by Joseph J. Ceccarelli and Susan L. Ceccarelli to Mortgage Electronic Registration Systems, Inc., as nominee for Morgan Stanley Private Bank National Association to secure the sum of $253,001.62 dated January 30, 2015 and recorded on February 20, 2015 in CRFN 2015000058945. The Mortgage was transferred to Morgan Stanley Private Bank, National Association, and said transfer was memorialized by an Assignment of Mortgage executed on August 3, 2016 and recorded August 18, 2016 in CRFN 2016000285133.

4. The servicing records further show that in accordance with the provisions of the mortgage, a notice of default was mailed to the Borrower on April 20, 2016 at the last known address, which is 200 East 32nd Street, New York City, NY 10016.

17-063874          Affidavit          Page 3 of 6

713

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 149

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

5. I reviewed the notice of default and confirm that it complied with the terms of the mortgage, including the time and content requirements contained therein. The default stated in said notice was not cured. A complete copy of the notice(s) of default is attached to this application.

6. The servicing records further show that a ninety (90) day pre-foreclosure notice ("90 Day Notice") with a list of at least five (5) housing counseling agencies was sent, in its own separate envelope, by registered or certified and first class mail to Joseph J. Ceccarelli and Susan L. Ceccarelli on June 2, 2016, to the address of the property, at 200 East 32nd Street, New York City, NY 10016. The text of the 90 Day Notice is typed in fourteen (14) point font. A complete copy of the 90 Day Notice(s) is attached to this application. In addition, within three (3) business days of the mailing of the 90 Day Notice, a notice was electronically filed with the Superintendent of Banks (now known as the Superintendent of Financial Services), as required by both RPAPL § 1306(2) and the Superintendent. A copy of the Proof of Filing Statement is attached to this application.

SpA.765

714

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 1449

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

7. The instant loan is due for the March 1, 2016 installment and all subsequent installments, and by reason thereof, the Note and Mortgage are in default. The amount due upon said Note and Mortgage as of July 11, 2019, is as follows:

| | |
|---|---|
| PRINCIPAL DUE ON NOTE AND MORTGAGE | $1,540,000.00 |
| INTEREST at 2.500% due from 2/1/2016 through 9/30/2016<br>INTEREST at 2.625% due from 10/1/2016 through 1/31/2017<br>INTEREST at 2.750% due from 2/1/2017 through 2/28/2017<br>INTEREST at 2.875% due from 3/1/2017 through 5/31/2017<br>INTEREST at 3.000% due from 6/1/2017 through 06/30/2017<br>INTEREST at 3.125% due from 7/1/2017 through 8/1/2017<br>INTEREST at 3.250% due from 9/1/2017 through 11/30/2017<br>INTEREST at 3.375% due from 12/1/2017 through 1/31/2018<br>INTEREST at 3.500 % due from 2/1/2018 through 2/28/2018<br>INTEREST at 3.625% due from 3/1/2018 through 4/30/2018<br>INTEREST at 3.750% due from 5/1/2018 through 5/31/2018<br>INTEREST at 4.000% due from 6/1/2018 through 7/31/2018<br>INTEREST at 4.125% due from 08/1/2018 through 10/31/2018<br>INTEREST at 4.250% due from 11/1/2018 through 11/30/2018<br>INTEREST at 4.375% due from 12/1/2018 through 07/31/2019 | $185,922.88 |
| ACCRUED LATE CHARGES PRIOR TO DEFAULT | $320.65 |

ADVANCES

| | | |
|---|---|---|
| Taxes | $ 77,700.05 | |
| Inspections | $32.50 | |
| TOTAL ADVANCES | | $77,732.55 |
| TOTAL: | | $1,803,976.08 |

Plus per diem interest from August 1, 2019

17-063874        Affidavit        Page 5 of 6

715

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM
NYSCEF DOC. NO. 143

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/10/2020

8. Due to the default in payments as described hereinabove, the Plaintiff has the right, pursuant to the Mortgage, to commence foreclosure proceedings.

8/20/19

Cenlar FSB, which is a duly authorized the mortgage loan servicing agent of the Plaintiff, Mortgage Stanley Private Bank, National Association

Subscribed and sworn to before me this _20th_ day of _Aug_ 20 _19_
_____, Notary Public
(Signature required)

State of _New Jersey_
My Commission expires: _11-15-21_
(Notary Stamp/Seal or expiration date required)

ELIZABETH AZCONA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires November 15, 2021
ID# 50049695

TO BE COMPLETED, IN ADDITION TO JURAT (ABOVE), IF EXECUTING OUTSIDE OF NEW YORK STATE

STATE OF _New Jersey_ )
                                              ) ss.
COUNTY OF _Morris_ )

On the _20th_ day of _August_ in the year 20 _19_ before me, the undersigned, a Notary Public in and for said State, personally appeared _Wilma Myrion_____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

ELIZABETH AZCONA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires November 15, 2021
ID# 50049695

17-063874                                    Affidavit                                    Page 6 of 6

716

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 149

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

Exhibit E

717

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

## LIMITED POWER OF ATTORNEY

This Limited Power of Attorney is executed as of November 21, 2017, by Morgan Stanley Private Bank, National Association, a national banking association ("MSPBNA"), having its principal place of business at 2000 Westchester Avenue, Purchase, New York 10577, in favor of Cenlar FSB, a federal savings bank ("Subservicer"), having its principal place of business at 425 Phillips Boulevard, Ewing, New Jersey 08618.

MSPBNA and Subservicer have entered into that certain Flow Subservicing Agreement dated as of the June 29, 2017, (the "Agreement") pursuant to which Subservicer subservices MSPBNA's mortgage loans ("Mortgage Loans"), as more fully set forth in the Agreement.

MSPBNA hereby constitutes and appoints Subservicer, by and through the officers listed on Attachment A hereto, each an officer of Subservicer, its true and lawful Attorney-in-Fact, in its name, place and stead and for its benefit, for the limited purposes of endorsing or executing certain documents in the name of MSPBNA necessary and incidental to the subservicing of certain Mortgage Loans pursuant to the Agreement, and taking actions necessary and incidental thereto:

(1)     To ask, demand, sue for, collect and receive all sums of money, debts or other obligations of any kind with respect to a Mortgage Loan which are now or shall after this date become due, owing or payable, or otherwise belong to MSPBNA; to endorse in the name of MSPBNA for deposit in the appropriate account any instrument payable to or to the order of MSPBNA; in each case with respect to a Mortgage Loan.

(2)     To make demand(s) on behalf of MSPBNA upon any or all parties liable on a Mortgage Loan; to declare defaults with respect to a Mortgage Loan; to give notices of intention to accelerate; to give notices of acceleration and any other notices as MSPBNA deems reasonably necessary or appropriate; to post all notices as required by law and the documents securing a Mortgage Loan in order to foreclose such Mortgage Loan; to handle all aspects of foreclosure on behalf of MSPBNA, including, but not limited to, conducting the foreclosure sale, bidding for MSPBNA and executing all documents, including all deeds and conveyances, needed to effect such foreclosure sale and/or liquidation; to execute any documents or instruments necessary for the offer, listing, closing of sale, and conveyance of REO property, including, but not limited to, grant, warranty, quit claim and statutory deeds or similar instruments of conveyance; to execute any documents or instruments in connection with any bankruptcy or receivorship of a mortgagor on a Mortgage Loan; to file suit and prosecute legal actions against all parties liable for amounts due under a Mortgage Loan, including, but not limited to, any deficiency amounts due following foreclosure; to take such other actions and exercise such rights which may be taken by MSPBNA under the terms of any Mortgage Loan, including, but not limited to, satisfaction, release, cancellation or discharge of mortgage, eviction, unlawful detainer, or similar dispossessory proceeding, sale, taking possession of, release of security instruments, realization upon all or any part of a Mortgage Loan or any collateral therefor or guaranty thereof.

This Limited Power of Attorney shall be effective as of the date written above ("the Effective Date") and shall continue in full force and effect until revoked in writing by MSPBNA or upon termination of the Agreement.

Page 1 of 4

SpA.769

718

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 149

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/14/2020

The execution and delivery of this Limited Power of Attorney by MSPBNA shall not be (or be deemed) a waiver or discharge of any representation, warranty, covenant or agreement of MSPBNA or Subservicer in or under the Agreement, and such execution and delivery shall not be (or be deemed) a modification or amendment of any provision of the Agreement in any respect.

Subservicer hereby agrees to indemnify and hold MSPBNA and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by Subservicer of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement.

Until a properly executed revocation of this Limited Power of Attorney is duly executed and delivered to Subservicer, all parties dealing with said Attorney-in-Fact (individually or collectively) in connection with the above described matters may fully rely upon the power and authority of said attorney-in-fact to act for and on behalf of the undersigned, and in its name, place and stead, and may accept and rely on all documents and agreements entered into by said attorney-in-fact pursuant to the powers listed herein.

For the avoidance of doubt, nothing contained herein shall (i) limit in any manner any indemnification provided by Subservicer to MSPBNA under the Agreement, or (ii) be construed to grant Subservicer the power to initiate or defend any suit, litigation or proceeding in the name of MSPBNA.

This Limited Power of Attorney shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to any conflicts of law rules that might apply the laws of any other jurisdiction.

Third parties without actual notice may rely upon the exercise of the powers granted under this Limited Power of Attorney, without inquiry as to the terms and provisions of the Agreement and may be satisfied that this Limited Power of Attorney continues in full force and effect until revoked in writing by MSPBNA or upon termination of the Agreement. The authority of Subservicer as provided herein is specifically and strictly limited to the enumerated powers set forth above in furtherance of Subservicer's obligations under the Agreement. All actions taken by Subservicer pursuant to this Limited Power of Attorney are subject to the terms and conditions of the Agreement.

Nothing in this Limited Power of Attorney shall be construed to prevent MSPBNA from acting on its own behalf as the owner of the Mortgage Loans.

END OF PAGE

Page 2 of 4

SpA.770

719

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 143

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

IN WITNESS WHEREOF, the undersigned has executed and delivered this Limited Power of Attorney.

MORGAN STANLEY PRIVATE BANK,
NATIONAL ASSOCIATION

By: _Laura E. LoCosa_____
Laura E. LoCosa, Chief Operating Officer

State of New York        )
                         ) ss:
County of Westchester    )

I CERTIFY that on November 21, 2017, Laura E. LoCosa came before me in person and stated to my satisfaction that she:

(a)  made the attached instrument; and

(b)  was authorized to and did execute this instrument on behalf of and as Chief Operating Officer of Morgan Stanley Private Bank, National Association, the entity named in this instrument.

_Marie L. Van Duyne_____

MARIE L. VAN DUYNE
Notary Public, State of New York
No. 01VA4816101
Qualified in Westchester County
Commission Expires 04-19-2018

{Name of Officer}
{Stamp & Seal}

Page 3 of 4

SpA.771

720

## EXHIBIT 3 TO CECCARELLI REPLY AFFIRMATION - PLAINTIFF ATTORNEY AFFIRMATION, DATED SEPTEMBER 25, 2019, REGARDING DOCUMENTS FURNISHED TO REFEREE [720 - 725]

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM
NYSCEF DOC. NO. 153

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/10/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Mortgage Stanley Private Bank, National Association,

          Plaintiff,

- vs -

Joseph J. Ceccarelli, III aka Joseph J. Ceccarelli; Susan
K. Lagholz aka Susan L. Ceccarelli aka Susan Langholz
Ceccarelli; Board of Managers of the Future
Condominium; RBS Citizens, N.A., et al,

          Defendants.

**Attorney Affirmation
Regarding Computations**

**Index Number
850018/2017**

STATE OF NEW YORK)
COUNTY OF NEW YORK) ss.:

Lissa Palermo, Esq., an attorney at law, duly admitted to practice before the Courts of the
State of New York, hereby affirms, pursuant to CPLR Section 2106 that:

1.     I am an Associate Attorney of the law firm of Shapiro, DiCaro & Barak, LLC,
attorneys for the plaintiff herein and, as such, am fully familiar with the proceedings had herein.
I make this affirmation in order to provide additional documentation to support the Report of
Referee sought in connection with the foreclosure of the mortgage herein.

2.     In support of the Report of Referee the Plaintiff attaches the following
documentation:

- A copy of the Note dated January 30, 2015 in the amount of $1,540,000.00 executed
  by Joseph Ceccarelli and Susan Ceccarelli.  **[Exhibit A]**

- A copy of the recorded Consolidation, Extension, and Modification Mortgage given
  by Joseph Ceccarelli and Susan Ceccarelli to Morgan Stanley Private Bank, National
  Association dated January 30, 2015 given to secure the amount of $1,540,000.00 and

SpA.772

721

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 153

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

National Association dated January 30, 2015 given to secure the amount of $1,540,000.00 and recorded in the Office of the City Register of the City of New York on February 20, 2015 in CRFN 2015000058946. To remove MERS as the "mortgagee of record" an Assignment of Mortgage to Plaintiff was executed on August 3, 2016 and recorded August 18, 2016 in CRFN 2016000285133. A copy of that Assignment is also annexed hereto. **[Exhibit B]**

- A copy of the Decision and Order of Reference of the Honorable Arlene P. Bluth dated March 29, 2019 and entered on April 5, 2019. **[Exhibit C]**

- A copy of the Affidavit of Wilma Myiow, Vice President Document Execution of Cenlar FSB, the loan servicer and attorney in fact for the plaintiff herein sworn to on August 20, 2019. **[Exhibit D]**

- A copy of the Power of Attorney from Mortgage Stanley Private Bank, National Association to Cenlar, FSB is annexed hereto as **[Exhibit E].**

- A copy of the Payment History kept in connection with the servicing of this loan. **[Exhibit F]**

- A copy of the Property Tax Bills of New York County. **[Exhibit G]**

- A copy of the Property Inspection Results in the amount of $32.50. **[Exhibit H]**

3.     The non-specific objections submitted by the mortgagors' counsel do not include any evidence to dispute the payments made by the plaintiff for taxes, insurance, and property inspections. The mortgagors have not submitted copies of any checks not credited to their account, nor have they submitted a sworn statement to refute the amounts claimed to be due.

4.     Affiant wishes to point out that the referee herein is appointed for the limited purpose of computing the amount due pursuant to the note and mortgage herein. The existence

SpA.773

722

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 159

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

of a valid note and mortgage have already been established in the plaintiff's motion for summary judgment which was granted by the Court. Allegations made regarding any other defenses or potential defenses are not within the scope of review of the Referee pursuant to the terms of the Order of Appointment, and the referee's duties are limited by the Order of Reference. See, Furman v Wells Fargo Home Mtge., Inc., 105 AD3d 807, 810, 964 N.Y.S.2d 169; see CPLR 4311; Rihal v Kirchhoff, 274 AD2d 567, 567, 715 N.Y.S.2d 849; Lloyds Bank v Kahn Lbr. & Millwork Co., 220 AD2d 645, 645, 632 N.Y.S.2d 966). The plaintiff has established a prima facie case for the foreclosure of the within mortgage, as evidenced by the Court's Order Granting Summary Judgment annexed hereto. Any additional arguments outside of the referee's scope of review must be raised by the defendants in opposition to the plaintiff's motion for the Judgment.

5. The payment histories and advance histories that are attached to this affirmation have all been provided to affiant's office by Cenlar FSB, the loan servicer and attorney in fact for Mortgage Stanley Private Bank, National Association. As set forth in the affidavit of Wilma Myiow, the computer records annexed hereto are made and kept in the regular course of the business of the plaintiff and the plaintiff's loan servicer and are produced to further support the numbers set forth and allegations contained in the affidavit of Wilma Myiow, sworn to on August 20, 2019. The annexed payment history and advance history are admissible as evidence pursuant to CPLR §4518 (a).

6. The annexed payment history and advance history are admissible as evidence pursuant to CPLR §4518 (a), which provides:

> *(a) Generally. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. An electronic record, as*

SpA.774

723

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 153

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

*defined in section three hundred two of the state technology law, used or stored as such a memorandum or record, shall be admissible in a tangible exhibit that is a true and accurate representation of such electronic record. The court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record. All other circumstances of the making of the memorandum or record, including lack of personal knowledge by the maker, may be proved to affect its weight, but they shall not affect its admissibility. The term business includes a business, profession, occupation and calling of every kind.*

7. As set forth by the Court of Appeals in People v. Guidice, 83 NY2d 630, 635, 634 N.E.2d 951, 612 NYS2d 350 (1994) "[t]he essence of the business records exception to the hearsay rule is that records systematically made for the conduct of a business... are inherently highly trustworthy because they are routine reflections of day-to-day operations and because the entrant's obligation is to have them truthful and accurate for purposes of the conduct of the enterprise" (quoting People v. Kennedy, 68 NY2d 569, 503 N.E.2d 501, 510 N.Y.S.2d 853, 579). 83 NY2d at 635.

8. Additionally, in Med. Expertise, P.C. v. Trumbull Ins. Co., 196 Misc. 2d 389, 765 N.Y.S.2d 171, 2003 N.Y. Misc. LEXIS 773 (N.Y. Civ. Ct. 2003) the court held that "[t]he very heart of this hearsay exception lies in an inherent understanding that the business of litigants is not to provide testimony in the courtroom but to conduct business outside of the courtroom. Consequently, a business record is admissible even though the person who prepared it is unavailable to testify to the acts or transactions. (Clarke v New York City Tr. Auth., 174 A.D.2d 268, 580 N.Y.S.2d 221 [1992].) The rule obviates the need for the maker of the document to be a witness at trial so long as the document meets the foundational requirements." at 392.

9. As stated in U.S. Bank, N.A, v. Russo, 2016 N.Y. Misc. LEXIS 4673, 2016 NY Slip Op 32462(U) (N.Y. Sup. Ct. Dec. 12, 2016) "... with respect to mortgage foreclosures, a loan servicer's employee may testify on behalf of the mortgagee and a representative of an

724

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 149

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/04/2020

assignee of the original lender can rely upon business records of the original lender to establish its claims for recovery of amounts due from the borrowers provided that the assignee/plaintiff establishes that it relied upon those records in the regular course of business (Landmark Capital Invs. Inc. v. Li-Shan Wang, 94 A.D.3d 418, 941 N.Y.S.2d 144 (1st Dept., 2012); Portfolio Recovery Associates, LLC, v. Lall, 127 AD3d 576, 8 NYS3d 101 (1st Dept., 2015); Merrill Lynch Business Financial Services, Inc. v. Trataros Construction, Inc., 30 AD3d 336, 819 NYS2d 223 (1st Dept., 2006))." 2016 N.Y. Misc. LEXIS at 10.

10.     CPLR 4518(a) does not require a person to have personal knowledge of each of the facts asserted in the affidavit of merit put before the court as evidence of a defendant's default in payment (see Citigroup v. Kopelwitz, 147 AD3d 1014, 1015, 48 NYS3d 223 [2d Dept. 2017] "There is no requirement that a plaintiff in a foreclosure action rely on any particular set of business records to establish a prima facie case, so long as the plaintiff satisfies the admissibility requirements of CPLR 4518(a), and the records themselves actually evince the facts for which they are relied upon" Citibank NA v. Abrams, 144 AD3d 1212, 40 NYS3d 653 [3rd Dept., 2016]). As quoted in Bank of America N.A. v. Brannon, (1st Dept., 2017) 156 AD3d 1 at 8, 64 NYS3d 352, at 358.

11.     As stated recently by the Second Department in Bank of N.Y. Mellon v. Gordon, 97 N.Y.S.3d 286, a case which involved specifically the business records of a foreclosing lender, "[a] court may consider the method or manner by which the electronic record was stored, maintained or retrieved in determining whether the exhibit is a true and accurate representation of such electronic record. However, all other circumstances of the making of the memorandum or records, including lack of personal knowledge by the maker, may be proved to affect its weight, *but they shall not affect its admissibility*" (id. See People v. Kangas, 28 NY3d 984, 985-

SpA.776

725

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 148

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/00/2020

986, 41 NYS3d 189, 63 NE3d 1133) cf. *Fed Rules Evid.* rule 803[6]). *As quoted in* Bank of N.Y. Mellon v. Gordon, (2d Dept., 2019) 97 NYS3d 286, at 293, 2019 N.Y. App. Div. Lexis 2338 [emphasis added].

12.     Ultimately, unlike references to hear and determine, references to hear and report, pursuant to NY RPAPL Sec. 1321 are advisory only, as the Court is the ultimate arbiter of the issues referred (CPLR 4311). See Shultis v. Woodstock Land Dev. Assoc. 195 A.D.2d 677 (3rd Dept., 1993).

13.     As stated by the Court of Appeals in Zuckerman v. New York, (1980) 49, N.Y.2d 557, "[t]he affidavit or affirmation of an attorney, even if he has no personal knowledge of the facts, may, of course, serve as the vehicle for the submission of acceptable attachments which do provide 'evidentiary proof in admissible form', e.g., documents, transcripts" at 563.

14.     I am aware that the Court appointed Referee may rely on these computerized business documents in making her report to the Court.

Dated: September 25, 2019

Lissa Palermo, Esq.
Associate Attorney
SHAPIRO, DICARO & BARAK, LLC
Attorneys for Plaintiff
175 Mile Crossing Boulevard
Rochester, New York 14624
(585) 247-9000
Fax: (585) 247-7380

SpA.777

726

# REPLY MEMORANDUM OF LAW BY DEFENDANTS-MORTGAGORS, DATED MARCH 10, 2020, IN FURTHER SUPPORT OF SUMMARY JUDGMENT AND RELATED RELIEF [726 - 739]

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
-----------------------------------------------------------------X

Mortgage Stanley Private Bank, National Association,

                      Plaintiff,

      -against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

                    Defendants.

-----------------------------------------------------------------x

Index no. 850018/2017
(Bluth, J.)

Motion Sequence No. 3
Oral Argument Requested

## REPLY MEMORANDUM OF LAW BY DEFENDANTS-MORTGAGORS IN FURTHER SUPPORT OF SUMMARY JUDGMENT AND RELATED RELIEF

Ceccarelli Law Firm PLLC
48 Wall Street, 11th Floor
New York, New York 10005
Tel. (212) 889-3675

*Attorneys for Defendants-Mortgagors*
*Joseph J. Ceccarelli and*
*Susan L. Ceccarelli*

Of Counsel:
    Joseph J. Ceccarelli

1 of 14

727

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................................ii

POINT

THE OPPOSING ATTORNEY'S AFFIRMATION OF PLAINTIFF SERVICER
ONLY LENDS FURTHER SUPPORT THAT IT IS UNABLE TO MEET ITS
BURDEN OF PROOF ON THE THRESHOLD ISSUE OF STANDING
AND THE JUSTICIABILITY OF THE PRESENT ACTION IN EQUITY

A. PLAINTIFF SERVICER HAS ALREADY SIZEABLY PROFITED ON ITS
PREVIOUS SALE AND SECURITIZATION OF THE CECCARELLIS' NOTE
UNDER SECTION 20 OF THE MORTGAGE AT LEAST FIVE MONTHS
BEFORE THIS ACTION IN EQUITY WAS EVER COMMENCED..........................2


CONCLUSION...........................................................................................................10

i

SpA.779

728

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

## TABLE OF AUTHORITIES

### CASES

*Altria Group, Inc. v Good,*
555 U.S. 70, 129 S.Ct. 538.................................................................3

*Balbuena v IDR Realty LLC,*
6 NY3d 338.................................................................................3

*City of New York v. Job-Lot Pushcart,*
231 AD2d 210, *aff'd* 88 NY2d 163,
*cert. denied,* 519 U.S. 871, 117 S.Ct. 186.......................................4

*Farragut Gardens No.5 Inc. v Milrot,*
23 AD3d 889................................................................................3

*Freedman v. Chemical Construction,*
56 AD2d 514, 1st Dept., *aff'd* 43 NY2d 260......................................3

*Guice v. Charles Schwab & Co.,*
89 NY2d 31, *cert.denied* 520 U.S. 1118, 117 S.Ct. 1250.......................3

*Kuehne & Nagel, Inc. v Baiden,*
36 NY2d 539................................................................................2

*Indig v. Finkelstein,*
23 NY2d 728................................................................................2

*Matter of Case,*
214 NY 199, 203...........................................................................2

*Matter of People v. Applied Card Sys., Inc.*
111 NY3d 105, 113, *cert. denied* 555 U.S. 1136, 129 S.Ct. 999...............3

*McGahee v. Kennedy,*
48 NY2d 832................................................................................3

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.Co.,*
514 U.S. 645, 115 S.Ct. 1671.............................................................3

*Pollock v Pollock,*
71 NY 137, 153.............................................................................2

ii

SpA.780

729

**FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM**

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

## TABLE OF AUTHORITIES (cont'd)

*Poluliah v. Fidelity High Income Fund,*
    102 AD2d 720, 1ˢᵗ Dept...............................................................2

*Rice v. Sante Fe El Corp.,*
    331 U.S. 218, 67 S.Ct. 1146..............................................4

*Speller v. Ryder Truck Rental, Inc.,*
    47 AD2d 608, 1ˢᵗ Dept.................................................2

*Sportschannel Associates v. Sterling Mets, L.P.*
    25 AD3d 314, 1ˢᵗ Dept...............................................2

### CPLR Sections

2004.............................................................................1,10
2201.............................................................................1,10
3126.............................................................................1,10
3211(a)(7).....................................................................1,10
3212.............................................................................1,10

### Statutes

Truth in Lending Act
15 U.S.C. 1641 (f)(2)......................................................8
15 U.S.C. 1641 (g)..........................................................5,7,8

### U.S. Constitution

Supremacy Clause
Art VI, cl.2....................................................................3

iii

SpA.781

730

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 32 (MFP)
-----------------------------------------------------------------X

Index no. 850018/2017
(Bluth, J.)

Motion Sequence No. 3
Oral Argument Requested

Mortgage Stanley Private Bank, National
Association,

                      Plaintiff,

      -against-

Joseph J. Ceccarelli and Susan L. Ceccarelli et al,

                 Defendants.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSING ATTORNEY'S AFFIRMATION, AND IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS-MORTGAGORS ON THE SECOND AFFIRMATIVE DEFENSE OF STANDING AND FOR RELATED RELIEF**

    This Memorandum of Law is submitted in reply to the opposing attorney's affirmation of Plaintiff, and in further support of Defendants-Mortgagors Joseph J. Ceccarelli and Susan L. Ceccarelli (the "Ceccarellis" or "Mortgagors") motion for an order pursuant to CPLR § § 3212, 3211 (a) (7), 3126, 2004, and 2201: 1) granting summary judgment on Defendants-Mortgagors' Second Affirmative Defense for lack of standing, consolidating the present MS no. 3 with Plaintiff Bank's pending motion for judgment of foreclosure and Defendants-Mortgagors' cross-motion under MS no. 2 for disposition, and upon consolidation; 2) denying MS no. 2 as moot, and

1

SpA.782

731

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

dismissing the present action in equity, together with such other, further and different relief as is just and proper.

## POINT

### THE OPPOSING ATTORNEY'S AFFIRMATION OF PLAINTIFF SERVICER ONLY LENDS FURTHER SUPPORT THAT IT IS UNABLE TO MEET ITS BURDEN OF PROOF ON THE THRESHOLD ISSUE OF STANDING AND THE JUSTICIABILITY OF THE PRESENT ACTION IN EQUITY

### A. PLAINTIFF SERVICER HAS ALREADY SIZEABLY PROFITED ON ITS PREVIOUS SALE AND SECURITIZATION OF THE CECCARELLIS' NOTE UNDER SECTION 20 OF THE MORTGAGE AT LEAST FIVE MONTHS BEFORE THIS ACTION IN EQUITY WAS EVER COMMENCED

When a party has made a *prima facie* showing to entitle it to summary judgment, it is incumbent upon the opposing party to show by evidentiary facts that the defense is real and can be established on a trial (Indig v. Finkelstein, 23 NY2d 728; Speller v Ryder Truck Rental, Inc., 47 AD2d 608, 1st Dept.) "Insufficient evidence is, in the eyes of the law, no evidence." (Pollock v Pollock, 71 NY 137, 153; Matter of Case, 214 NY 199, 203. Upon the moving party making out a *prima facie* basis for the grant of summary judgment, the opposing party must come forward and lay bare its proofs of evidentiary facts showing that there is a *bona fide* issue requiring trial. The opposing party cannot defeat the motion by general conclusory allegations which contain no specific factual references. (Poluliah v. Fidelity High Income Fund,102 A.D.2d 720, 1st Dept.)

Material allegations not denied on a moving party's summary judgment motion are deemed admitted (Kuehne & Nagel, Inc. v Baiden, 36 NY2d 539). Similarly, facts established on a moving party's summary judgment motion which the opposing party does not deny or controvert are deemed admitted (Sportschannel Associates v. Sterling Mets, L.P. 25 AD3d 314 (1st Dept.)

2

SpA.783

732

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

Conclusory allegations are insufficient to defeat summary judgment (McGahee v. Kennedy, 48 NY2d 832; Freedman v. Chemical Construction, 56 AD2d 514, 1st Dept., aff'd 43 NY2d 260) An attorney's affidavit submitted in opposition to a summary judgment motion which lacks personal knowledge is not probative (Farragut Gardens No. 5 Inc. v. Milrot, 23 AD2d 889)

The Supremacy Clause of the United States Constitution provides that Federal laws "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding" (U.S. Const., art. VI, cl. [2] ), and it "vests in Congress the power to supersede not only State statutory or regulatory law but common law as well" (Guice v. Charles Schwab & Co., 89 NY2d 31, cert denied 520 U.S. 1118, 117 S.Ct. 1250. Indeed, " [u]nder the U.S. Constitution's Supremacy Clause (U.S. Const.,art VI, cl.2), the purpose of our preemption analysis is ... to ascertain the intent of Congress" (Matter of People v. Applied Card Sys., Inc., 11 NY 3d 105, 113, *cert. denied* 555 U.S. 1136, 129 S.Ct. 999)

Congressional intent to preempt state law may be established "by express provision, by implication, or by a conflict between federal and state law"(Balbuena v. IDR Realty LLC, 6 NY3d 338,356 quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins.Co,, 514 U.S. 645, 654, 115 S.Ct. 1671). Express preemption occurs when Congress indicates its "pre-emptive intent through a statute's express language or through its structure and purpose" (Altria Group, Inc. v Good, 555 U.S. 70, 129 S.Ct. 538, 543)

Absent explicit preemptive language, implied preemption occurs when "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it ... [o]r the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement

3

SpA.784

733

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

of state laws on the same subject" (Rice v. Sante Fe El.Corp., 331 U.S. 218, 230, 67 S.Ct. 1146). Further, when "[a] conflict occurs either because compliance with both federal and state regulations is a physical impossibility, or because the State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," the State law is preempted (City of New York v. Job-Lot Pushcart, 213 AD2d 210, 210, aff'd 88 NY2d 163, cert. denied 519 U.S. 871, 117 S.Ct. 186 [internal quotation marks and citations omitted] ).

Applying the foregoing well-settled legal principles to the matter at hand:

Faced with party admissions and declarations against interest by its own representatives, and irrefutable documentary proof, including a detailed affidavit of the Plaintiff Servicer's representative who has direct personal knowledge regarding originating and overseeing the Ceccarellis' mortgage loan at all relevant times involved in this action, and a qualified expert in the area, as the recipient of the Plaintiff 's Mortgage Champion and Liabilities Bonus awards (NYSCEF no. 126)[1], the best that Plaintiff Servicer can muster in response is an opposing attorney's affirmation and accompanying amorphous document dump. The attorney's affirmation, and "package" in opposition to this MS no. 3 (NYSCEF nos. 142, 143), ("Opposing Affirm.") only lend further support that Plaintiff Servicer is unable to sustain its burden of proof on the threshold issue of standing and the justiciability of the present action in equity.

First, Plaintiff Servicer's self-serving, conclusory claim that it is the true owner of the both the Note and Mortgage at the time of the commencement of this action in January 2017 (Opposing

---

[1] Pellegrino Aff. (2 of 2) in support of MS no. 3.

4

SpA.785

734

**FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM**
NYSCEF DOC. NO. 151

INDEX NO. 850018/2017
RECEIVED NYSCEF: 03/10/2020

Affirm. ¶ 8), is contradicted by its own pleading, the Complaint[2] (NYSCEF no. 1), which provides in pertinent part:

> "The Plaintiff….has been delegated the authority to institute a mortgage foreclosure against the homeowner by the owner and holder of the subject Mortgage and Note." Complaint, ¶ 25

Consistent with Plaintiff's pleading, that it is functioning in the capacity of a mere servicer for the true owner and holder of the Ceccarellis' Note and Mortgage at the time of the commencement of this action in equity is Plaintiff Servicer's own letter in this regard, dated September 26, 2016 *five months before* the action was commenced. It provides that the Ceccarellis have the right to know who the investor is that purchased the Note and related details in accordance with subdivision (g) of U.S.C. Section 1641 of the Truth in Lending Act. (NYSCEF no. 127)[3] U.S.C. Section 1641(g) provides that Plaintiff Servicer was required to notify the Ceccarellis in writing that their Note was sold to a third party investor by providing the following information no later than 30 days after their mortgage loan was sold, including (A) the identity, address, telephone number of the new creditor; (B) the date of transfer; (C) the location of the place where transfer of ownership of the debt is recorded; and (D) any other relevant information regarding the new creditor.

Plaintiff Servicer in its Opposing Affirmation does not deny that it is flagrant violation with respect to each of its disclosure obligations in this regard under the Truth in Lending Act[4],

---

[2] A copy of the Complaint (NYSCEF no.1) without exhibits is attached as Defendants-Mortgagors Reply Exhbit 1 for the convenience of the Court.

[3] Defendants-Mortgagors Exhibit 1 in support of MS no.3.

[4] Plaintiff Servicer bank cannot credibly begin to claim that it does not have the resources to have complied with its Truth in Lending Obligations with regard to the Second Affirmative Defense of Lack of Standing, since it is the 6th largest multinational bank in the US with over $850 billion in assets and more than $250,000 employees working for them: https://www.bankllist.us/top-10-banks-in-united-states 2018#:~:text=Morgan%20Stanley%20is%20the%206th,and%20Morgan%20Stanley%20Universal%20Trust.

5

SpA.786

735

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

compounded by its related numerous and unexplained failures and still outstanding discovery obligations directly bearing on the threshold issue of standing. These include: 1) the Notice of Document Production (NYSCEF no. 16); 2) Notice of Deposition (NYSCEF no. 17); and 3) most recently Notice of Reference Document Production in accordance with leave granted by the Court (NYSCEF nos. 99, 100).

Second, there are two documents in particular buried in Plaintiff Servicer's 129-page "package" (NYSCEF no. 143) that further supports the granting of summary judgment to the Mortgagors on the Second Affirmative Defense of Standing.

One is the affidavit of Wilma Myiou for subservicer agent, Cenlar FSB to Plaintiff Servicer agent, dated August 20, 2019, together with supporting Limited Power of Attorney from Plaintiff Servicer to Censlar FSB as subservicer agent, dated November 21, 2017. It shows that only the mortgage, and not the Note was transferred to Plaintiff Servicer (*see* p.3, ¶ 3, last three sentences) which further corroborates that the Plaintiff's role in this action is limited to that of being a mere servicing agent, and not as the true and lawful owner of the Ceccarells' Note at the commencement of this action (*see* first three paragraphs of the Limited Power of Attorney). A copy of the Myiou Affidavit with supporting Limited Power of Attorney from Plaintiff Servicer to Cenlar FSB as subservicing agent appears attached as Reply Exhibit 2.

The other is the Palermo Affirmation which Plaintiff Servicer represents was furnished to the Referee appointed in this action. It further corroborates that only the mortgage was transferred from MERS as "mortgagee of record" to Plaintiff Servicer in August 2016. The Affirmation misleadingly omits in its report to the Court appointed Referee that immediately in the following month of September 2016 that it sold the Ceccarellis' Note to a third party investor *five months before* this action was commenced in January 2017, and as discussed above failed to disclose the

6

10 of 14

SpA.787

736

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

details of precisely who the investor is in violation of the Truth in Lending Act. (*see* Palermo Affirm. ¶ 2). A copy of the Palermo Affirmation is attached as Reply Exhibit 3.

Plaintiff's violation of its Truth in Lending disclosure requirements, is of no small moment. It would have further supported that Plaintiff has long since not had standing to commence the present action at least *five months before* it was ever commenced, having already sizeably profited from the sale and securitization of the Ceccarellis' Note to private equity or other investors, and now continuing to do as by realizing fees as a servicer for the Investors. (NYSCEF no. 126, Pellegrino Aff. ¶14-16; NYSCEF no. 129. NY Times Investigative Report, Ex. 3 to MS no. 3).

Furthermore, as pointed out by the recipient of Plaintiff's Mortgage Champion and Lending Bonus Awards, Mr. Pellegrino, Plaintiff Servicer's Truth in Lending and related discovery defaults, strips the Ceccarellis of a full and fair opportunity to negotiate best market terms and conditions to refinance their home with competing lenders regarding the correct, alleged amount of mortgage debt as may ultimately be shown to be fair and accurate under the circumstances. The competing lenders in the marketplace naturally want to know who the real parties-in-interest are who bought the Ceccarellis' Note from Plaintiff bank before it became a mere servicer collecting servicing fees, and on importantly on what precise terms and conditions in accordance with Truth in Lending Act requirements, before moving forward to refinance a new mortgage secured against it on the best terms and conditions for the Ceccarellis. (Id.)[5]

---

[5] The continuing willful defaults by Plaintiff Servicer in suppressing the vital relevant information and details in writing of the true and lawful third-party new creditor, owners of their Note required under 15 U.S.C. 1641 (g) of the Truth in Lending Act is particularly egregious. It compromises, impairs and impedes the Ceccarellis, and their representatives from fully, fairly and effectively competing and negotiating best refinancing terms and conditions with these new creditors and third- party investors.

The importance of the Ceccarellis being able to compete on a level playing field, and negotiate best refinancing terms and conditions as may be ultimately be shown to be the fair and accurate amount of the alleged mortgage debt with the third-party investors who bought their Note under the circumstances, is brought home by present market conditions where current long-term mortgage interest rates are at a 50- year low:

7

SpA.788

737

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

When Plaintiff became a mere servicing agent and no longer owned the Note long before this action was ever commenced, Plaintiff no longer had any business interest in negotiating a workout agreement with the Ceccarellis (Id.)

On the flip side, the Investors who purchased the Ceccarellis' note as part of a package or pool of distressed debt notes can continue to trade and sell them in the securitization market for a further mark-up for an up to 50% upfront purchase of the principal they acquired them for on the strength of the end-note bundler realizing a sizeable profit between the discount they bought the Note for and a sale at foreclosure, This is in addition to enjoying bond yield returns in the interim of as much as 4%. (Id.)

All of this comes at the expense of the Ceccarellis losing their family home, and the hard-earned equity they have built up by paying their mortgages the last 25 years before Mr. Ceccarelli had a temporary medical hardship.

Third, Plaintiff Servicer's reliance on string citations from the Second and Third Departments in its Opposing Affirmation ¶¶ 5-8, 10 is entirely misplaced. None of these cases involved the evidentiary motion record established here under MS no. 3, conclusively establishing that Plaintiff Servicer has no standing based on separate and independently corroborating party admissions and declarations against interests by its own representatives, and the irrefutable documentary proof discussed above.

Moreover, none of the cases relied upon by Plaintiff Servicer involved the flagrant violation of the new investor creditor disclosure requirements of subdivision (g) of U.S.C. Section

---

(see e.g. https://www.realtor.com/news/real-estate-news/mortgage-rates-hit-record-50-year-low/#:~:text=%E2%80%9CThe%20average%2030%2Dyear%20fixed,of%20mortgage%20giant%20Freddie%20Mac.

8

12 of 14

SpA.789

738

**FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM**

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

1641 of the Truth in Lending Act, or that Plaintiff as here may not be treated as the true Owner of the Ceccarellis' Note obligation on the basis of the mere delegation or assignment from the real parties in interest, the Investors, who bought the Note under subdivision (f)(2) of U.S.C, Section 1641 of the Truth in Lending Act, despite conceding that this is the case under ¶ 25 of the Complaint (Reply Exhibit 1, attached). To the extent that Plaintiff Servicer is arguing this federal law should be changed or should not apply to it, it is well-settled that such an argument must fail under well-settled federal pre-emption principles of law.

Under these facts and circumstances, the Investors who bought the rights and interests to the Ceccarellis' Note at least *five months before* the commencement of the present action in equity, are properly limited to a subsequent action on the alleged extent of the mortgage debt.

[The Balance of This Page Is Intentionally Left Blank]

9

SpA.790

739

FILED: NEW YORK COUNTY CLERK 03/10/2020 06:14 PM

NYSCEF DOC. NO. 151

INDEX NO. 850018/2017

RECEIVED NYSCEF: 03/10/2020

## CONCLUSION

For the reasons and upon the authorities set forth above, and in the principal Memorandum of Law, Mortgagors Ceccarellis' motion for an order pursuant to CPLR § § 3212, 3211 (a) (7), 3126, 2004, and 2201: 1) granting summary judgment on Defendants-Mortgagors' Second Affirmative Defense for lack of standing, consolidating the present MS no. 3 with Plaintiff Bank's pending motion for judgment of foreclosure and Defendants-Mortgagors' cross-motion under MS no. 2 for disposition, and upon consolidation; 2) denying MS no. 2 as moot, and dismissing the present action in equity, should be granted in all respects, together with such other, further and different relief as is just and proper.

Dated: New York, New York
        March 10, 2020

Respectfully submitted,

Ceccarelli Law Firm PLLC

By: Joseph J. Ceccarelli
48 Wall Street
11th Floor
New York, New York 10005
Tel. (212) 889-3675
jceccarelli@ceccarellilaw.com

*Attorneys for Defendants-
Mortgagors Joseph J. Ceccarelli
and Susan L. Ceccarelli*

10

SpA.791

740

## CERTIFICATION PURSUANT TO CPLR § 2105

I, Joseph J. Ceccarelli, a member of the firm of Ceccarelli Law Firm PLLC, attorneys for the Defendants-Appellants, hereby certify pursuant to Section 2105 of the CPLR that the foregoing papers constituting the Record on Appeal have been personally compared by me with the originals filed herein and have been found to be true and complete copies of said originals and the whole thereof, all of which are now on file in the office of the Clerk of the County of New York.

Dated: April 28, 2022

Joseph J. Ceccarelli

Attorney for Defendants-Appellants

SpA.792

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of April, two thousand twenty-five.

Before:　　Beth Robinson,
　　　　　　　*Circuit Judge.*

_____

Joseph J. Ceccarelli, Susan L. Ceccarelli,

　　　Plaintiff - Appellants,

　　v.

Morgan Stanley Private Bank, N.A., as Original Holder of Ceccarelli Note and as Successor−In−Interest Servicing Agent for presently Unknown Purchasers Does of Ceccarelli Note as Part of Securitized Pool of Residential Mortgage Notes, and

Purchaser Does in the chain of title after sale of Ceccarelli Note being unknown to Plaintiffs, Principals−New Creditors, Successors−in Interest to Defendant Original Holder of Ceccarelli Note under Mortgage Electronic Recording System, Inc. for Member Banks (MERS),

　　　Defendants - Appellees.

_____

**ORDER**

Docket No. 25-443

Appellants move for leave to file a special appendix exceeding 300 pages and to amend the caption.

IT IS HEREBY ORDERED that the motions are GRANTED. The caption shall be amended to conform with the caption listed above.

For the Court**:**

Catherine O'Hagan Wolfe,
Clerk of Court



SpA.793